May 29, 2020


<u>BY ELECTRONIC FILING</u>

The Honorable Mary Kay Vyskocil
United States District Court
Southern District of New York
500 Pearl Street, Room 2230
New York, NY 10007

Re:     Discovery in *Broidy et al. v. Global Risk Advisors et al.*, 19-cv-11861

Dear Judge Vyskocil:

      Pursuant to the Court's May 20, 2020 order (*see* Dkt. 38), the parties respectfully submit this joint letter discussing their respective views on the nature of discovery to be taken in this case and their respective proposals for a Case Management Order and Discovery Plan.

<b>PLAINTIFFS' POSITION</b>

**I.      The Court Should Adopt Plaintiffs' Proposed Case Management Plan**

      The  parties' proposed case management plans reflect a stark difference in approach. Plaintiffs believe discovery should begin immediately and proceed expeditiously to conserve resources and preserve vanishing electronic evidence.  Defendants (collectively, "GRA") are proposing a stay of all discovery pending its anticipated motion to dismiss, proceed in stages in a manner calculated to delay discovery.  As detailed below, the Court has already resolved this topic, ruling that the "case (and discovery) will not be stayed by reason of the filing of the motion to dismiss." (ECF 38, at 3.)  That decision was sound and should not be revisited.

      Plaintiffs' proposal seeks two departures from the Court's standard form: (1) an extension of the fact discovery period (which is necessitated by the nature of the discovery to be sought, discussed below); and (2) language intended make clear that the form case management plan does not override Plaintiffs' ability to amend their complaint once as of right, as allowed by Rule 15 and the Rule 4.C of the Court's Individual Practices.

The Honorable Mary Kay Vyskocil
May 29, 2020
Page 2

## II.     Discovery Should Begin Immediately

### A.     The Court Already Rejected GRA's Requested Stay

GRA's proposed case management plan would halt all discovery pending its anticipated motion to dismiss, but the Court has already squarely rejected that position. GRA's pre-motion letter to the Court on May 8, 2020, argued for a discovery stay, and the Court's endorsement could not have been clearer: "The case (and discovery) will not be stayed by reason of the filing of the motion to dismiss." (ECF 38, at 3.)

Based on our discussions with GRA, we understand that GRA nonetheless seeks to stay discovery, because it intends to raise an immunity defense, and because it believes it will prevail on its motion to dismiss.  But GRA already made those very points in its pre-motion letter, *see id*. at 2, to which Plaintiffs responded. (ECF 37.)  The Court resolved the issue as noted above, and the case management plan should implement the Court's ruling.

GRA is effectively seeking a motion for reconsideration, but without meeting the "strict" standard—namely, that there were "controlling decisions or data" the Court "overlooked."  *Stone v. Theatrical Inv. Corp*., 80 F. Supp. 3d 505, 506 (S.D.N.Y. 2015). Reconsideration is neither "an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." *Id*. Yet that appears to be exactly what GRA is attempting to do.  On this basis alone, GRA's proposal should be rejected.

### B.     Discovery Should Not Be Stayed Pending
###        GRA's Anticipated Motion to Dismiss

The Court's initial ruling to allow immediate discovery was and is correct.

It is well-settled that discovery "should not be routinely stayed simply on the basis that a motion to dismiss has been filed." *Republic of Turkey v. Christie's, Inc*., 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018) (citation omitted). After all, if "the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, they would contain such a provision." *In re Chase Manhattan Corp. Sec. Litig*., 90 Civ. 6092, 1991 WL 79432, at *1 (S.D.N.Y. May 7, 1991).

In this Court, a party seeking a stay must show that there is "good cause" for a protective order under Rule 26(c).  And that, in turn, generally requires a showing that the defendants are likely to succeed in dismissing the *entire* case.   *See, e.g*., *Osan Ltd. v. Accenture LLP*, No. CV 2005-5048, 2006 WL 1662612, at *1 (E.D.N.Y. June 13, 2006) (denying motion to stay because "[w]hile defendants may have substantial arguments for

The Honorable Mary Kay Vyskocil
May 29, 2020
Page 3

dismissal of several of the claims, this Court is doubtful that defendants will succeed in dismissing the entire lawsuit"); *In re WRT Energy Sec. Litig.*, No. 96 Civ. 3610, 1996 WL 580930, at *1 (S.D.N.Y. Oct. 9, 1996) (denying motion to stay because "the Court cannot conclude on the present record before it that dismissal of the complaint is inevitable").

GRA cannot possibly make that showing here.  In a parallel case in the District of Columbia, the District Court (Judge Freidrich) largely *denied* a motion to dismiss from GRA's co-conspirators. *Broidy Capital Mgmt LLC v. Muzin*, No. 19-cv-0150, 2020 WL 1536350 (D.D.C. Mar. 31 2020).  Judge Friedrich rejected many of the same arguments that GRA has indicated it intends to make here, noting that GRA's primary defense of derivative foreign sovereign immunity (as contrasted with established immunities for diplomats and foreign sovereigns) simply does not exist.

GRA's immunity defense attempts to piggyback on a doctrine that will sometimes allow domestic contractors to derivatively invoke the immunity *of the United States*.  But, as Judge Friedrich found, the rationale for the doctrine—"that the United States and agents of the United States have the same interest in getting the Government's work done"—has no application with respect to agents of a *foreign* sovereign, whose interests may diverge from those of the United States.  *Id*. at *7 (citation and quotations omitted).  The law in the Second Circuit on these issues is not materially different.

Here, the defendants here are not diplomats, or foreign officials.  They are *private* actors and U.S. citizens (with one exception, a Qatari company owned by a U.S. citizen, defendant Kevin Chalker).  They do not get to insulate their misdeeds from liability simply because a foreign power paid them.  *See Saleh v. Titan Corp.*, 436 F. Supp. 2d 55, 58 (D.D.C. 2006) ("[P]articipation in a conspiracy with government actors does not confer government immunities.").

Judge Friedrich refused to certify for interlocutory appeal the question of derivative sovereign immunity, finding that there was not even a substantial basis for disagreement that this theory does not exist.  *See* Minute Order, No. 19-civ-150 (D.D.C. April 23, 2020).

While GRA has suggested that, even apart from the immunity issue, Plaintiffs have not stated a claim for relief, Judge Friedrich upheld Plaintiff's civil conspiracy claim relating to the "hacking scheme purportedly *perpetuated by GRA* and other members of the Qatari Enterprise to infiltrate the BCM servers," and noted that the claim was supported by "detailed factual allegations."  2020 WL 1536350, at *12 (emphasis added).  The minimal Rule 8 standards are easily met here.

Even among the five claims that Judge Friedrich dismissed, two (the Stored Communications Act and a California law analogue) were dismissed only because the court

The Honorable Mary Kay Vyskocil
May 29, 2020
Page 4

found the statutes did not provide for secondary liability for co-conspirators, but instead covered only the primary hackers, *id*. at \*11, \*16-17—who of course are the GRA defendants here.

The prospect of a complete dismissal is vanishingly small, and so a halt to discovery would accomplish nothing but delay. This Court correctly concluded that discovery should proceed, and there is no reason to reverse course.

### C.   GRA Is Not Entitled to a Discovery Stay Merely Because It Intends to Raise an Immunity Defense

GRA has argued that all discovery must be automatically stayed simply by virtue of the fact that GRA intends to raise a defense of derivative sovereign immunity.

But the blanket rule envisioned by GRA does not exist. When considering whether to stay discovery "[n]o categorical rule is appropriate; rather each case should be considered based on its unique facts and context." *Sai v. Dep't of Homeland Security*, 99 F. Supp. 3d 50, 58 (D.D.C. 2015).

Even in the context of domestic derivative immunity, courts have allowed discovery to proceed pending a motion to dismiss. For example, in *McMahon v. Presidential Airways, Inc.*, Case No. 6:05-cv-1002, 2009 WL 10705558 (M.D. Fla., 2009), the surviving family members of service members who died in a plane crash in Iraq sued the government contractor operating the flight, which raised a defense of derivative sovereign immunity. The court refused to stay discovery pending a motion to dismiss because the court could not conclude "that Defendants have an immediate and clear likelihood of success." *Id*. at \*15.

GRA has claimed support for its blanket-stay rule from *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). But *Harlow* concerned a question of qualified immunity for senior aides to the President, not the unrecognized theory of derivative foreign sovereign immunity. The Supreme Court in *Harlow* ruled that until the qualified immunity question was resolved, "discovery should not be allowed." *Id*.

But the Supreme Court later clarified that this snippet from *Harlow* did not announce a categorical rule mandating discovery stays: "Discovery involving public officials is indeed one of the evils that *Harlow* aimed to address, but neither that opinion nor subsequent decisions create an immunity from *all* discovery. *Harlow* sought to protect officials from the costs of 'broad-reaching' discovery." *Crawford-El v. Britton*, 523 U.S. 574, 593 n.14 (1998) (emphasis in original).

The Honorable Mary Kay Vyskocil
May 29, 2020
Page 5

In any event, qualified immunity is easily distinguishable for these purposes. The "basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009). That rationale does not apply in the slightest when the defendants are *private* entities, claiming the immunity of a *foreign* power. We are aware of no case mandating a stay under those circumstances—and that is for good reason. What possible interest is there in sparing private, U.S. citizens the burdens of litigation, just because they were taking orders from a foreign power? As Judge Friedrich noted, there is none.

The court in *Digital Ally, Inc. v. Taser Int'l, Inc.*, Case No. 16-cv-2032, 2016 WL 5944497, at *4 (D. Kan. Oct. 13, 2016), made an analogous point in denying a motion to stay discovery by a defendant who raised (among other defenses) "state-action" immunity. The court found that, because the defendant was a private company, the defendant could not justify a discovery stay by citing to cases involving government actors:

> The concerns expressed by the Supreme Court in *Iqbal* are that the burdens of litigation discovery "will impair the proper execution of the Government." Those cases granting a stay based upon a qualified immunity defense asserted by a government official or entity are therefore distinguishable from this case, where Defendant, a non-governmental entity, is asserting the immunity-based defense.

*Id*. at *3 (footnote omitted). Those observations are equally true here.

Finally, even in the context of an immunity defense raised by a sovereign nation, or a diplomat, a stay might theoretically be justified as advancing comity and reciprocity in foreign relations. *See*, *e.g.*, *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 140 (2014) (foreign state immunity "is, and always has been, a matter of grace and comity" (quotation marks omitted)). (This explains, for example, the discovery stay in Plaintiffs' related case against a diplomat, Jamal Benomar.) But these interests are irrelevant in the context of discovery in U.S. court from Americans arising from violations of U.S. law on U.S. soil, targeting American victims. There is no possible suggestion that Qatar (or any other country) would grant similar immunity to its own subjects if they violated its laws at the behest of the United States.

Put simply, there is no good reason to give special treatment to GRA's immunity defense. Discovery should proceed alongside GRA's motion to dismiss.

The Honorable Mary Kay Vyskocil
May 29, 2020
Page 6

### D.    A Stay of Discovery Would Be Prejudicial to Plaintiffs.

An independent reason to deny any stay is that delay would be prejudicial to Plaintiffs.  This is an internet hacking case that that will necessarily involve electronic discovery from third parties such as telephone companies, internet service providers and others.  There are no mandatory data retention laws in the United States applicable to ISPs or related electronic data vendors, which may have widely divergent data retention policies. Critical evidence risks being lost if discovery is fully halted for months on end.

Courts recognize that these very concerns are reason enough to keep discovery moving forward.  *See, e.g.*, *Malibu Media, LLC v. Braun*, No. 14-CV-12409, 2015 WL 1014951, at *2 (E.D. Mich. Mar. 9, 2015) (denying stay of discovery and finding that "[p]laintiff is entitled to access the crucial evidence—defendant's hard drives and other electronic storage devices—before time lapses and older deleted files naturally are overwritten by newer files"); *Sandoval v. Friendlum, Inc.*, No. 17CV1917-MMA (BGS), 2018 WL 1150837, at *5 (S.D. Cal. Mar. 2, 2018) ("[T]he Court finds that a stay would result in the potential of prejudicing Plaintiff with regards to delayed discovery . . . if the Court grants a stay in this case, [plaintiff] may struggle to obtain call logs from third-party carriers with retention periods lasting as short as six months.").

### E.    Phased Discovery Is Inappropriate

Defendants' proposal also would introduce delay by breaking discovery into three phases, focusing first on Plaintiffs' trade secret claims, followed by party discovery, and then, finally, other discovery.  This proposal makes no practical sense and should be rejected.

Phased discovery is generally appropriate only "where there are certain factual issues that may be key to summary judgment or settlement." David F. Herr, Annotated Manual for Complex Litigation § 31.6.  That is not the case here.  Only two of Plaintiffs' ten claims concern trade secrets, and there is no practical reason to hold up the rest of the case—with independent claims that do not depend at all on whether or not trade secrets were stolen— while trade secrets alone are addressed.  The trade secrets aspect of the case will not drive settlement, and even if GRA somehow dismisses those claims in full, the rest of the case will proceed.

On the other side of the ledger, artificially subdividing discovery into phases will "delay the resolution of the litigation in derogation of Rule 1," which calls for the "the just, speedy, and inexpensive determination of every action." *In re Plastics Additives Antitrust Litig.*, No. Civ.A. 03-2038, 2004 WL 2743591, at *3 (E.D. Pa. Nov. 29, 2004) (rejecting phased discovery).  The prejudice is particularly pronounced because of the ongoing risk of

The Honorable Mary Kay Vyskocil
May 29, 2020
Page 7

lost evidence, as discussed above, and because of Plaintiffs' need for iterative discovery, discussed in the following section.

Finally, phasing discovery "will result in duplication of efforts and needless line-drawing dispute." *Hines v. Overstock, Com, Inc*., No. 09-CV-991 (SJ), 2010 WL 2775921, at *1 (E.D.N.Y. July 13, 2010). Plaintiffs' trade secrets were stolen via the same hacking scheme underlying the rest of the case. Trying to separate trade secrets issues from the rest is a recipe for endless disputes about what discovery measures belong in what phase of the case.

**II.     The Nature of Discovery and Defendants'
           Proposal for a Longer Fact Discovery Period**

Plaintiffs are proposing that fact discovery be completed by November 27, 2020, which is 182 days from today. The Court's form Case Management Plan indicates that the period should not exceed 120 days, unless the "case presents unique complexities or other exceptional circumstances."

Plaintiffs respectfully submit that this case presents unique complexities that justify the additional time (which, in our view, remains aggressive). This is a case about covert, state-sponsored hacking, and thus, by necessity, will involve the challenge of uncovering what sophisticated hackers have gone to great lengths to conceal. This is not a contract dispute where all the evidence will be on the corporate server of one party or another.

A few examples below will illustrate that discovery will necessarily be complex and time-consuming.

First, GRA hid its hacking behind multiple virtual private networks ("VPNs") or virtual private servers ("VPSs") owned by third parties based in the United States. These include as Micfo LLC and InstaVPS, that are in the business of providing VPNs or leasing VPSs to customers who wish to conceal their internet activity. Certain of the IP addresses were leased to companies that appear to be intermediaries and that, in turn, provided those IP addresses to act as VPNs or VPSs used by others.

Plaintiffs expect to issue successive discovery requests to trace these transactions to the end users, including GRA or its co-conspirators. This will likely involve international discovery, as one of the frequently-used VPN providers leased the IPs at issue to a customer in Hong Kong. We expect this will be an iterative process, because we need to work through layers of obfuscation the attackers built into their scheme. Issuing discovery in this manner—discovery that is itself aimed at identifying "persons who know of any discoverable matter"—is "deeply entrenched in practice" and is critical in a case like this one, involving

The Honorable Mary Kay Vyskocil
May 29, 2020
Page 8

sophisticated and concealed wrongdoing.  *See* Fed. R. Civ. P. 26, advisory committee's notes to 2015 amendments; *see also* 8A Charles Alan Wright, et al., Federal Practice & Procedure § 2046 (3d ed. 2010) ("Often use of one discovery device will lead naturally to use of another.").

Along similar lines, the hacked, GRA physically distributed stolen emails to the media via (among other means) an anonymous email address, LA.Confidential@mail.com. A sequence of subpoenas will likely be necessary to trace the point of access to that account, again in an iterative process.

As a final example, we expect subpoenas to telephone companies will reconfirm whom the conspirators were calling at the relevant times, and will assist in uncovering who else (whether wittingly or not) was helping the scheme or may have knowledge relevant to the allegations.

Adding to the complexity is the fact that GRA has already indicated to us that it will resist discovery, taking the position that vast portions of the discovery are protected from discovery by diplomatic immunity.  We have our doubts that any of these objections will be valid, but it appears likely that discovery will be hotly contested, and that the State of Qatar will intervene to block discovery of its U.S.-based hackers' activity.  That will inevitably cause delay.

A final factor, of course, is the COVID-19 pandemic, which makes it a bit more challenging to hold meetings and conduct depositions, and which may impair the ability of the parties or third parties in timely producing discovery.  While we are confident that we can manage the impediments from COVID-19, it is nonetheless the case that the normal pace of litigation may be affected.

**III.    The Case Management Plan Should Not Impair
         Plaintiffs' Ability to Amend Once as of Right**

The Court's form Case Management Plan states that leave of Court is required to amend a complaint, and we have added a proviso as follows: "[e]xcept for amendments as of right under FRCP 15(a)(1) and Rule 4.C of the Court's Individual Practices."

Under Rule 15, a plaintiff is afforded one amendment as of right within 21 days of a motion to dismiss.  Fed. R. Civ. P. 15(a)(1)(B).  The Court's Individual Practices are in accord.  When a motion to dismiss is filed, the non-moving party must notify the Court and its adversary whether "it intends to file an amended pleading and when it shall do so." Individual Practices, Hon. Mary Kay Vyskocil, R. 4.C.

The Honorable Mary Kay Vyskocil
May 29, 2020
Page 9

The right to this one amendment is important, insofar as it allows plaintiffs to "amend[] to meet the arguments in the motion" and potentially "reduce the number of issues to be decided." Fed. R. Civ. P. 15,  advisory committee notes to 2009 amendment.

Plaintiffs believe the current complaint states a claim as to each cause of action. Nonetheless, we do not know exactly what GRA will argue in its motion to dismiss, and it is likely that its arguments will include assertions that one or more causes of action should be dismissed for the failure to plead certain facts.  If necessary, Plaintiffs should be able to exercise their right, as Rule 15 allows, to "meet the arguments" with an amended complaint addressing any alleged deficiencies GRA may identify.

## DEFENDANTS' POSITION

On May 20, 2020, the Court ordered that discovery "will not be stayed by reason of the filing of the motion to dismiss" that Defendants will file on or before June 17, 2020.  Dkt. 38.  Defendants understand the Court's order and do not intend to seek a stay based solely on the filing of a case-dispositive motion.  The grounds for Defendants' motion to dismiss, however, include matters of diplomacy, foreign sovereign immunity, and international comity that set this case apart from cases in which a plaintiff merely fails to state a claim. Defendants respectfully submit that these grounds justify a departure from the Court's standard case management order and discovery plan, consistent with the approach Judge Seibel took in a lawsuit brought by these same Plaintiffs alleging similar facts and claims. *See Broidy Capital Management, LLC v. Benomar*, No. 7:18-cv-6615 (S.D.N.Y. Jul. 23, 2018).  Thus, for the reasons set forth below and as detailed in the accompanying proposed order, Defendants propose that discovery should be stayed briefly (*i.e.*, until the Court has had an opportunity to rule on Defendants' Rule 12(b)(1) motion), then proceed in a manner that ensures discovery will be "proportional to the needs of the case."  *See* Fed. R. Civ. P. 26(b)(1).

A.    **Defendants' sovereign immunity defense requires that discovery be briefly postponed.**

Each Defendant intends to move to dismiss on the grounds of derivative sovereign immunity.  The Supreme Court has made clear that "[u]ntil th[e] threshold immunity question is resolved, discovery **should not be allowed**."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (emphasis added); *see also Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (immunity gives a defendant the "right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery'" (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985))); *Benomar*, 944 F.3d 436, 446 (2d Cir. 2019) ("[S]overeign immunity . . . protects [against] '. . . the expense, intrusiveness, and hassle of litigation.  Achieving this goal requires that a court must be circumspect in allowing discovery before the plaintiff has

The Honorable Mary Kay Vyskocil
May 29, 2020
Page 10

established that the court has jurisdiction." (citation and internal quotation marks omitted));
*X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 65 (2d Cir. 1999) (immunity prohibits imposing the
burden of "submitting to discovery on the merits").

On the face of the Complaint, Defendants are entitled to derivative foreign sovereign
immunity because they are alleged to be agents of the State of Qatar. *See* Dkt. 1 ¶ 67
("These cyber-attacks resemble a pattern of known international attacks by sophisticated,
*nation-sponsored cyber hackers*." (emphasis added)); *id.* ¶¶ 176, 261 (Defendants
"misappropriated Plaintiffs' trade secrets intentionally *for the benefit of their foreign client,
Qatar*" (emphasis added)).  "It is 'well-settled law'" in this District "'that contractors and
common law agents acting within the scope of their employment . . . have derivative
sovereign immunity.'" *Moriah v. Bank of China Ltd.*, 107 F. Supp. 3d 272, 277 (S.D.N.Y.
2015) (alteration in original) (quoting *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir.
2000)).  In fact, in *Benomar*, Judge Seibel recognized the defendant, Jamal Benomar, would
be entitled to derivative sovereign immunity based on his role as an agent of Qatar in the
**same** alleged conspiracy at issue in this case. *Benomar*, Dkt. 61-2, at 44–45, Dec. 21, 2018.

It is therefore essential that the Court resolve the question of whether Defendants are
entitled to derivative sovereign immunity before discovery can commence.  If discovery
proceeds before the Court rules on the validity of the immunity defense, Defendants will
have lost the exact protection that derivative sovereign immunity is supposed to provide:
freedom "from the expense, intrusiveness, and hassle of litigation." *Benomar*, 944 F.3d at
446 (denying motion to expedite discovery and granting Benomar's motion to stay); *see also
id.*, Dkt. 33 at 47:5–7, Oct. 15, 2018 ("I don't think that you should go back to the races until
I've decided[] at least the immunity issue."); *id.* Dkt. 36, Oct. 18, 2018 ("[D]iscovery will
await the determination of the immunity motion.").  It is also why Judge Friedrich of the
D.C. District Court denied the same request for expedited discovery, by the same Plaintiffs,
in another suit alleging substantially similar facts and claims. *See Broidy Capital
Management, LLC v. Muzin*, No. 1:19-cv-00150 (D.D.C. Jan. 24, 2019), Minute Order, June
17, 2019.  The Court should apply the same analysis here and postpone discovery until this
critical issue is resolved.

### B.    Plaintiffs' plan for discovery is disproportionate to the needs of the case.

During the parties' May 27, 2020 meet and confer, Plaintiffs did not agree to impose
any limits on discovery or to phase discovery in a manner that would minimize the burden on
non-parties.  Instead, Plaintiffs intend to use both party and non-party discovery broadly.  In
fact, there is every reason to believe that non-party discovery, in this case from a non-party
that has already been found to be immune from suit (the State of Qatar), is the very
motivation for Plaintiffs' launching of this fourth successive lawsuit.  This is consistent with

The Honorable Mary Kay Vyskocil
May 29, 2020
Page 11

Plaintiffs' position in all three of the previously filed actions alleging similar facts and claims, in which Plaintiffs have sought to take maximal discovery of the State of Qatar regardless of whether Qatar was a party.  *See BCM v. State of Qatar* ("*State of Qatar*"), No. 18-cv-02421 (C.D. Cal. Mar. 26, 2018), Dkt. 198, Aug. 8, 2018.

In *State of Qatar*, Plaintiffs served no fewer than 84 subpoenas before the case could be dismissed, including several subpoenas that demanded all documents and communications involving Qatar and related to Plaintiffs.  *See* Mot. to Stay Discovery at 13, Dkt. 80, June 6, 2018 (noting that Plaintiffs' requests "encompass[ed] official correspondence from the embassy of Qatar and other consular records").  Plaintiffs later admitted that many subpoena recipients and subjects of other subpoenas participated in sensitive conversations with Qatar regarding its diplomatic relations.  *See, e.g.*, *Muzin*, Compl. ¶¶ 6, 8–9, 18, 64–66, 68, 80, 200, Dkt. 11-1, Feb. 8, 2019.  Plaintiffs' requests thus directly "implicate diplomatic correspondence and consular records" that are protected under the Vienna Convention on Diplomatic Relations and the Foreign Sovereign Immunities Act.  *State of Qatar*, Mot. to Stay Discovery at 13.[1]  Plaintiffs' counsel here has indicated that Plaintiffs intend to re-serve the same subpoenas from *State of Qatar*, and likely others, as soon as possible, but they have not explained how any of that discovery will help them prove their claims against Defendants.

This is not the first time that Plaintiffs have sought to declare open season on sensitive information belonging to Qatar and others, under the pretext of seeking discovery pertinent to another matter.  As noted above, in *Benomar*, Judge Seibel denied Plaintiffs' request for expedited discovery and granted a stay until Benomar's Rule 12(b)(1) motion to dismiss could be decided.  *See Benomar*, Dkt. 33 at 48:9–12.[2]  The court eventually granted Benomar's motion, noting that if it were to reach the issue of sovereign immunity, it would find that Benomar had derivative sovereign immunity as an agent of Qatar.  Dkt. 61-2 at 41:14–17 ("I tend to think that [the defendant] does have the better of the [derivative sovereign immunity] argument."); *id.* at 44:25–45:4 ("[I]f I had to reach the issue, I likely

---

[1]   Under the Vienna Convention on Diplomatic Relations, correspondence of a diplomat "enjoy[s] inviolability."  Vienna Convention on Diplomatic Relations, art. 30(2), Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95.  The Vienna Convention also protects the "official correspondence of the mission," providing that it similarly "shall be inviolable."  *Id.* art. 27(2). The Convention defines "official correspondence" in broad terms, as "all correspondence relating to the mission and its functions."  *Id.*  This provision precludes courts from using such correspondence as evidence.  *See* Eileen Denza, DIPLOMATIC LAW: COMMENTARY ON THE VIENNA CONVENTION ON DIPLOMATIC RELATIONS 189 (4th ed. 2016).

[2]   In conference, Judge Seibel noted that there had "already been a ton of discovery taken in a case [*State of Qatar*] that eventually went away," *id.* at 46:15–18, and that "typically," plaintiffs "don't file a case, get gobs of discovery, get [their] case dismissed, then use that information to file a new case which itself might get dismissed, and then use that information to file a new case[,]" *id.* at 48:6–9.

The Honorable Mary Kay Vyskocil
May 29, 2020
Page 12

would find that I lack subject matter jurisdiction on grounds of derivative sovereign immunity."). Similarly, in *Muzin*, the district court in the District of Columbia denied Plaintiffs' motion for expedited discovery while defendants' motion to dismiss was pending. *See* Minute Order, June 17, 2019. The one time discovery was allowed in any of the myriad nearly-identical lawsuits filed by Plaintiffs, by the California federal court in *State of Qatar*, subpoenaed documents were leaked to the press. *See* Dkt. 96 at 1, June 18, 2018; *see also id.* Exs. 1–3 (press reports disclosing the contents of "subpoenaed phone records").

Plaintiffs' counsel has not shown why any discovery is necessary right now—let alone why non-party discovery against the State of Qatar and others should proceed without limitation. Plaintiffs waited 16 months to file this action after Defendants GRA and Chalker were dismissed from the *State of Qatar* case, *see* Dkt. 212, Aug. 22, 2018, and then waited another *three months* to effect service, *see* Dkt. 1 (complaint filed December 27, 2019); Dkt. 22–26 (waivers of service filed March 23, 2020). Despite that delay, Plaintiffs' counsel now suggests that discovery is necessary to preserve data before it is deleted by third parties, an argument that Judge Seibel questioned in *Benomar*. *See* Dkt. 33 at 47:3–6 (noting that Plaintiffs had not pointed to "something . . . that [was] going to turn into a pumpkin" before the court ruled on the motion to dismiss); *id.* at 48:1–5 ("[I]f there's going to be discovery, it should be only for things that we really have reason to believe might not be there later on if the case survives."). If Plaintiffs had particular concerns about the preservation of evidence, they could have taken steps in the interim to put the relevant parties on notice, and they could have filed this case (and addressed Defendants' jurisdictional objections) sooner. Indeed, Judge Friedrich addressed this in her denial of Plaintiffs' motion for expedited discovery and concluded that Plaintiffs had not shown a concrete risk of spoliation. *Muzin*, Minute Order, June 17, 2019. Furthermore, Plaintiffs do not dispute that they have preserved the returns from the *State of Qatar* subpoenas, which undermines any claim that that information has been lost.

C.      **If discovery commences, it should be sequenced in an efficient manner reflecting the nature of Plaintiffs' claims.**

The Complaint purports to plead trade secrets claims and other related causes of action. Indeed, each of Plaintiffs' ten counts relates in some way to "confidential business information" that Defendants allegedly obtained through Plaintiffs' computer systems, and Plaintiffs cannot prevail on any of their claims without showing that they had something of

The Honorable Mary Kay Vyskocil
May 29, 2020
Page 13

value which Defendants then took.[3]  Accordingly, the most important evidence in this case relates to the nature of that information and what Defendants allegedly did to access it.[4]

In this District, there is ample precedent for how to sequence discovery in a trade secrets case.  For example, in *Next Communications, Inc. v. Viber Media, Inc.*, No. 1:14-cv-08190 (S.D.N.Y. Oct. 14, 2014), Judge Sullivan recognized that phased discovery would provide the "most efficient manner to resolve the claims in this action."[5]  Dkt. 85, May 16, 2016.  The Court entered a Case Management Plan and Scheduling Order that modified this District's standard form, requiring a three-month first phase in which information about the "trade secrets or confidential information" at issue would be the focus, followed by a six-month second phase during which other fact discovery would be conducted.  Dkt. 87, May 23, 2016.  This approach is consistent with the law governing Plaintiffs' California trade secret claim, which requires a plaintiff to "provide reasonable guidance in ascertaining the scope of appropriate discovery."  *See Diodes, Inc. v. Franzen*, 67 Cal. Rptr. 19, 24 (Cal. Ct. App. 1968); *see also* Cal. Civ. Proc. Code § 2019.210 (requiring plaintiffs in California trade secrets cases to "identify the trade secret with reasonable particularity" "before commencing discovery relating to the trade secret").  Federal courts regularly require specific early disclosures in California-law trade secrets actions.  *See, e.g.*, *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, 2018 WL 2117424, at *4 (N.D. Cal. May 8, 2018); *accord Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 852477, at *4–5 (N.D. Cal. Feb. 28, 2014).[6]  There is a good reason to require a similar process here:  if Plaintiffs cannot meet their burden to demonstrate that confidential business information has been misappropriated, then many, if

---

[3]   Plaintiffs assert claims based on the Stored Communications Act, the Computer Fraud and Abuse Act, the Digital Millennium Copyright Act ("DMCA"), the Defend Trade Secrets Act, the California Uniform Trade Secrets Act, the California Comprehensive Computer Data Access and Fraud Act, common law conversion, common law civil conspiracy, and RICO.  Dkt. 1.

[4]   Plaintiffs claim that this is not a trade secrets case, but a "hacking case."  That is a distinction without a difference.  Either way, Defendants need discovery into what got hacked before they can meet Plaintiffs' allegations.  Similarly, any argument that this is a RICO case is unavailing.  As the court concluded in *Muzin*, Plaintiffs' RICO claims fail as a matter of law because Plaintiffs cannot plead a pattern of racketeering activity.  *Muzin*, Mem. Op. at 18, 22, Dkt. 51, Mar. 31, 2020.

[5]   In *Next Communications*, the plaintiffs also asserted claims for breach of contract and unjust enrichment. *See* Dkt. 72, Mar. 30, 2016.

[6]   In both *Openwave* and *Jobscience*, the court required the plaintiff to disclose:  "(1) a summary of the specific trade secret; (2) the background of the trade secret and a description of how each secret has derived independent, actual or potential economic value by virtue of not being generally known to the public; (3) a description of how each secret has been the subject of reasonable efforts to maintain its secrecy; and finally (4) each of the precise claimed trade secrets, numbered, with a list of the specific elements for each, as claims would appear at the end of a patent."  *Openwave*, 2018 WL 2117424, at *4 (quoting *Jobscience*, 2014 WL 852477, at *5).

The Honorable Mary Kay Vyskocil
May 29, 2020
Page 14

not all, of Plaintiffs' claims will be candidates for early summary judgment.  *See also Capitol Records, LLC v. Vimeo, LLC*, No. 1:09-cv-10101 (S.D.N.Y. Dec. 10, 2009), Dkt. 24, Apr. 22, 2010 (phasing discovery to allow for early summary judgment in a DMCA case).

       In the parties' accompanying submission, Defendants propose an order similar to the one in *Next Communications*, with two important modifications.

       First, Defendants propose that discovery should commence immediately upon resolution of Defendants' motion to dismiss.  This will allow the Court to enter a Case Management Order and Discovery Plan immediately, while still preserving Defendants' rights during the pendency of the motion.

       Second, Defendants propose to postpone non-party discovery until Phase III.  This will reduce the risk that the case becomes a burden on non-parties and increase the likelihood that the case can be resolved during earlier Phases.

       In the end, Defendants' proposal would allow the same amount of time for discovery as Judge Sullivan allowed in *Next Communications*, despite the fact that Plaintiffs here assert three times as many claims against five times as many Defendants.

* * *

       We thank the Court for its consideration of these issues.

Respectfully submitted,


*/s/ Filberto Agusti*                                    */s/ Orin Snyder*
Filberto Agusti                                             Orin Snyder
Steptoe & Johnson LLP                             Gibson, Dunn & Crutcher LLP
*Counsel for Plaintiffs*                              *Counsel for Defendants*


cc:  All Counsel of Record via ECF