Filiberto Agusti
202 429 6428 direct
202 261 7512 fax
fagusti@steptoe.com

**Steptoe**

1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202 429 3000 main
www.steptoe.com

June 3, 2020

**Via ECF**

Hon. Mary Kay Vyskocil
United States District Court
Southern District of New York
500 Pearl St., Room 2230
New York, New York 10007

Re:   *Broidy et al. v. Global Risk Advisors LLC, et al.*, 19 Civ. 11861 (S.D.N.Y.)

Dear Judge Vyskocil:

We write on behalf of Plaintiffs Elliot Broidy and Broidy Capital Management, LLC (collectively "Broidy") to respond to yesterday's letter from the defendants (collectively "GRA"), complaining that Broidy has issued nonparty subpoenas to telephone companies.

At the outset, GRA cannot dispute that Broidy has a right to seek discovery and to do so now.  GRA earlier asked for a discovery stay, and the Court made clear that the "case (and discovery) will not be stayed by reason of the filing of the motion to dismiss."  (ECF 38, at 3.)  The Court's default Case Management Schedule contemplates an aggressive timetable for fact discovery, and it should not surprise GRA that we are not interested in wasting any time.

Notably, GRA's letter does not identify any rule, statute, order, or common law doctrine that has been violated.  GRA vaguely suggests that the subpoenas we have issued are objectionable, but GRA lacks "standing to object to a subpoena directed to a non-party witness." *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975).  Regardless, the subpoenas were just issued in the past two days, with return dates weeks away.  If the subpoena targets have specific objections, those can be addressed in due course. GRA's real complaint appears to be that Broidy sought too much evidence, but GRA fails to cite any case law or standard to explain why or how that is so.  In fact, it was perfectly prudent for Broidy to have issued thorough discovery requests, given the nature of the case and the importance of securing evidence that might otherwise be lost with the passage of time.

As the Court will recall, this is a case about a sophisticated hacking scheme.  The State of Qatar hired its go-to firm for hacking operations—GRA—to hack into Broidy's computers and steal confidential material that was then leaked in curated batches to the media, all as payback for Broidy's advocacy against Qatar's sponsorship of terrorism.

The discovery in this case will necessarily be extensive and complex, because Broidy must unravel a scheme that GRA has gone to great lengths to conceal, including, for example, by

Hon. Mary Kay Vyskoci
June 3, 2020
Page 2



hiding its hacking behind multiple virtual private networks.  The same hackers who took such pains to hide their tracks will doubtfully have written down their plans in, say, corporate minutes of GRA board meetings that will be turned over in response to a simple Rule 34 request.  Instead, we expect that the most probative, corroborating evidence will more likely be found in the hands of third parties that GRA cannot control, such as phone companies, vendors, and others.

There was a brief window for jurisdictional discovery in the Central District of California case, and there, too, Broidy focused discovery mostly on third parties.  GRA complains that Broidy is seeking "re-production of 30 subpoena responses from that dismissed case" (GRA Letter, at 1.)  But GRA fails to mention what we have already told GRA is the reason for doing so:  GRA and the other defendants in that case improperly marked huge swaths of that material as "Confidential" under the protective order, preventing its use for this case (including for the Complaint).  GRA has seen that evidence and well knows that the material is probative of matters here.  The re-discovered material has already been collected and involves *zero burden* to produce.  What is objectionable about re-discovering evidence that is already collected and known to be probative, so that it can be used in this case?  GRA's letter does not say.

As for the new telephone evidence being sought, we appropriately gave priority to this information because of the risk of losing this evidence.  Telephone companies have all manner of data recycling policies, and, as we are just past two years from the most critical events, important evidence could otherwise get overwritten. Generally speaking, the subpoenas seek non-content information about calling activity and the like for GRA personnel most likely involved in the hacking, and others (including many registered agents of Qatar) whom we have reason to believe were involved in the scheme or likely were in contact with those who were.  The scheme was an extensive operation, with the hackers having weeks of unimpeded access to millions of Broidy's files, and ultimately resulting in stolen material being cited in over 25 news articles over at least a six-month period.  A scheme of such breadth calls for commensurately wide discovery.[1]

GRA's next complaint is that this discovery is somehow intended to "circumvent the stay of discovery" in the District of Columbia case.  (GRA Letter, at 3.)  But there is in fact *no stay* of discovery at present.  Unlike in this District, the Local Rules in the District of Columbia provide that discovery is generally halted pending a pre-answer motion to dismiss.  *See* D.D.C. Loc. R. R. 16.3(b) (parties need not hold a Rule 26(f) conference before an answer); Fed. R. Civ. P. 26(d)(1) (barring discovery before Rule 26(f) conference)).  Judge Friedrich denied Broidy's

---

[1] GRA complains about phone numbers that they allege are associated, for example, with its CEO's teenage son, and with a college intern.  We identified pertinent phone numbers based on a variety of sources, including commercial databases, and did not intend to target numbers associated with people whose calling activity would be irrelevant. If there are specific concerns with particular numbers, we are happy to discuss those issues with GRA, but GRA did not even try to raise any concerns with us.  It demanded that we withdraw every subpoena, and three hours later (before we could respond), wrote to the Court.

Hon. Mary Kay Vyskoci
June 3, 2020
Page 3

**Steptoe**

motion to conduct pre-answer expedited discovery, concluding there was no need for discovery "before resolution of the defendants' motions." Minute Order, 1:19-cv-00150-DLF (D.D.C. June 17, 2019). The defendants' motion was largely *denied* on March 31, 2020. The *Muzin* defendants then moved to stay the case and for an interlocutory appeal, but Judge Friedrich *denied* the motion. Minute Order, 1:19-cv-00150-DLF (D.D.C. April 23, 2020). Then, the *Muzin* defendants sought additional delay by filing a notice of appeal under the pretext that their unprecedented foreign immunity theory entitled them to appeal under the collateral order doctrine. This illustrates the extreme lengths to which the Qatar cabal is willing to go to delay discovery to promote disappearance of electronic evidence.

In any event, given that the two cases involve substantial factual overlap, it is unremarkable that some discovery here may also be relevant in the other case. That is not "circumvent[ing]" anything. If GRA wants to argue that a particular aspect of discovery is *irrelevant* to the case here, it may do so. But the fact that discovery happens to also bear on a case involving GRA's co-conspirators is to be expected and does not suggest anything untoward.

Finally, GRA argues that the Court should stay all discovery in the "interests of diplomacy, foreign sovereign immunity, and comity." (GRA Letter, at 2.) As with its prior two times trying to make this argument, GRA resorts to labels without spelling out exactly how any of these interests are in fact implicated on the facts at hand. They are not. The GRA defendants here are *Americans* (or, in the case of one defendant, a company owned by a U.S. citizen, defendant Kevin Chalker) who stand accused of an egregious hacking scheme committed against fellow Americans on American soil. The concept of international comity GRA has invoked is designed "to promote cooperation and reciprocity with foreign lands." *Pravin Banker Assocs, Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 854 (2d Cir. 1997). The classic example is that U.S. courts will recognize foreign judgments "to the extent that we would wish for reciprocal enforcement of U.S. judgments in foreign courts." *D'Amico Dry Ltd. v. Primera Maritime (Hellas) Ltd.*, 756 F.3d 151, 161 (2d Cir. 2014). And foreign diplomats have immunity in this country so that foreign countries do not "subject[] U.S. diplomats to controversial litigation in foreign jurisdictions." *Devi v. Silva*, 861 F. Supp. 2d 135, 142 (S.D.N.Y. 2012).

Comity interests are not implicated in the slightest here. No country would excuse wrongdoing committed by their own citizens against fellow citizens, simply because another country financed the scheme. Granting immunity in these circumstances would not encourage other countries to follow the same bizarre, illogical rule; it would instead encourage foreign countries to hire local mercenaries in the United States, knowing they would face no consequences. This does not advance foreign relations, diplomacy, or any legitimate interest. That is why GRA's co-conspirators' immunity claims were rejected in the District of Columbia case, and why GRA's arguments are likewise meritless here. The Court should not halt all discovery on GRA's slim hope that the outcome here will somehow be different.

\* \* \*

We thank the Court for its consideration of these matters.

Hon. Mary Kay Vyskoci
June 3, 2020
Page 4

**Steptoe**

Respectfully,

Filberto Agusti