UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                               :

ELLIOT BROIDY and BROIDY CAPITAL    :
MANAGEMENT, LLC,                    :

              Plaintiffs,        :

       - against -          :

                           :     Case No. 19-cv-11861

GLOBAL RISK ADVISORS LLC, GRA    :
MAVEN LLC, GRA QUANTUM LLC,      :
GLOBAL RISK ADVISORS EMEA       :
LIMITED, and KEVIN CHALKER,      :

           Defendants.     :

---------------------------------------------------------x

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................................ iv

TABLE OF ABBREVIATIONS ................................................................................................. xi

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ........................................................................................................................ 2

ARGUMENT .............................................................................................................................. 3

I.    THIS ACTION SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER
      JURISDICTION. .............................................................................................................. 3

      A.    ALL DEFENDANTS ARE ENTITLED TO SOVEREIGN IMMUNITY. ................. 3

      B.    PLAINTIFFS' FORUM SHOPPING VIOLATES THE PRIOR PENDING
            ACTION DOCTRINE. ................................................................................................. 6

II.   MAVEN, QUANTUM, AND EMEA ARE NOT SUBJECT TO PERSONAL
      JURISDICTION. .............................................................................................................. 7

III.  EACH COUNT SHOULD BE DISMISSED FOR ADDITIONAL INDEPENDENT
      REASONS. ........................................................................................................................ 9

      A.    PLAINTIFFS FAIL TO PLEAD FACTS ATTRIBUTING MISCONDUCT
            TO ANY DEFENDANT ............................................................................................... 9

      B.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER ANY FEDERAL
            STATUTE ....................................................................................................................... 11

            1.    Plaintiffs Fail to State a Claim Under the SCA (Count I) .................................. 11

            2.    Plaintiffs Fail to State a Claim Under the CFAA (Count II). ........................... 12

            3.    Plaintiffs Fail to State a Claim Under the DMCA (Count III) ......................... 13

            4.    Plaintiffs Fail to State a Claim Under the DTSA (Count IV). .......................... 14

            5.    Plaintiffs Fail to State a RICO Claim (Count IX) .............................................. 16

            6.    Plaintiffs Fail to State a Claim for RICO Conspiracy (Count X). ................... 21

      C.    THE COURT SHOULD DISMISS PLAINTIFFS' STATE LAW CLAIMS ........... 22

            1.    Plaintiffs Fail to State a Claim Under CUTSA (Count V) ................................ 22

2.      Plaintiffs Fail to State a Claim Under CDAFA (Count VI). .............................. 23

3.      Plaintiffs Fail to State a Claim for Conversion (Count VII). ............................ 23

4.      Plaintiffs Fail to State a Claim for Civil Conspiracy (Count VIII). ................... 24

CONCLUSION ......................................................................................................................... 25

APPENDIX A ........................................................................................................................... 27

## TABLE OF AUTHORITIES

**Cases**

*Accumulage Diagnostics Corp. v. Terarecon, Inc.*,
   260 F. Supp. 2d 941 (N.D. Cal. 2003) ........................................................................25

*Anza v. Ideal Steel Supply Co.*,
   547 U.S. 451 (2006) ....................................................................................................20

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
   869 P.2d 454 (Cal. 1994) ............................................................................................25

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................. *passim*

*ATS Products, Inc. v. Champion Fiberglass, Inc.*,
   2015 WL 224815 (N.D. Cal. Jan. 15, 2015) ...............................................................25

*Atuahene v. City of Hartford*,
   10 F. App'x 33 (2d Cir. 2001) ....................................................................................11

*BCM v. Benomar*,
   944 F.3d 436 (2d Cir. 2019) ..........................................................................................3

*BCM v. Muzin*,
   2020 WL 1536350 (D.D.C. Mar. 31, 2020) ......................................................... *passim*

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................3, 9

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007) ......................................................................................7, 8

*Boyle v. United States*,
   556 U.S. 938 (2009) ....................................................................................................21

*Bristol-Myers Squibb Co. v. Superior Court*,
   137 S. Ct. 1773 (2017) ..................................................................................................8

*Butters v. Vance International*,
   225 F.3d 462 (4th Cir. 2000) ......................................................................................4, 5

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
   69 F. Supp. 3d 342 (S.D.N.Y. 2014) ..........................................................................21

*Cave v. E. Meadow Union Free Sch. Dist.*,
   514 F.3d 240 (2d Cir. 2008) ........................................................................................22

*Cent. Bank of Denver N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994)........................................................................................12

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
    187 F.3d 229 (2d Cir. 1999).............................................................................18

*Colo. River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976)..........................................................................................6

*Combier v. Portelos*,
    2018 WL 3302182 (E.D.N.Y. July 5, 2018) ............................................12, 13

*Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*,
    2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012)....................................18, 19, 22

*Corley v. Vance*,
    365 F. Supp. 3d 407 (S.D.N.Y. 2019)...............................................................3

*Curtis v. Citibank, N.A.*,
    226 F.3d 133 (2d Cir. 2000)..............................................................................6

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)..........................................................................................8

*Davenport v. Litton Loan Servicing, LP*,
    725 F. Supp. 2d 862 (N.D. Cal. 2010) ............................................................25

*DeFalco v. Bernas*,
    244 F.3d 286 (2d Cir. 2001)......................................................................16, 20

*Democratic Nat'l Comm. v. Russian Fed'n*,
    392 F. Supp. 3d 410 (S.D.N.Y. 2019)....................................................*passim*

*Dish Network L.L.C. v. World Cable Inc.*,
    893 F. Supp. 2d 452 (S.D.N.Y. 2012).............................................................14

*Dornberger v. Metro. Life Ins. Co.*,
    961 F. Supp. 506 (S.D.N.Y. 1997) .................................................................19

*Elsevier Inc. v. Doctor Evidence, LLC*,
    2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) ...........................................15, 16

*Elsevier Inc. v. W.H.P.R., Inc.*,
    692 F. Supp. 2d 297 (S.D.N.Y. 2010).............................................................21

*Erhart v. Bofl Holding, Inc.*,
    2020 WL 1550207 (S.D. Cal. Mar. 31, 2020) ................................................23

*First Capital Asset Mgmt. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004)................................................................................18, 19

*Freeman v. DirecTV, Inc.*,
    457 F.3d 1001 (9th Cir. 2006) ...............................................................................12

*Freeplay Music, LLC v. Rigol Techs. USA, Inc.*,
    2020 WL 564232 (S.D.N.Y. Feb. 4, 2020)......................................................3, 7, 8

*Gains v. District of Columbia*,
    961 F. Supp. 2d 218 (D.D.C. 2013) .......................................................................14

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)..................................................................................................8

*Gross v. Waywell*,
    628 F. Supp. 2d 475 (S.D.N.Y. 2009).....................................................................20

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989)................................................................................................18

*Heaney v. Gov't of Spain*,
    445 F.2d 501 (2d Cir. 1971).....................................................................................4

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    938 F.3d 985 (9th Cir. 2019) .................................................................................23

*Hollander v. Flash Dancers Topless Club*,
    173 F. App'x 15 (2d Cir. 2006) ........................................................................19, 20

*Howard v. Klynveld Peat Marwick Goerdeler*,
    977 F. Supp. 654 (S.D.N.Y. 1997) ...........................................................................7

*I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*,
    307 F. Supp. 2d 521 (S.D.N.Y. 2004).....................................................................14

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
    2016 WL 748089 (E.D.N.Y. Jan. 7, 2016) .............................................................17

*In re Terrorist Attacks on Sept. 11, 2001*,
    122 F. Supp. 3d 181 (S.D.N.Y. 2015)......................................................................4

*Kimm v. Chang Hoon Lee & Champ, Inc.*,
    196 F. App'x 14 (2d Cir. 2006) ..............................................................................19

*Kolari v. N.Y.-Presbyterian Hosp.*,
    455 F.3d 118 (2d Cir. 2006)....................................................................................22

*Leptha Enters., Inc. v. Longenback,*
   1991 WL 183373 (S.D.N.Y. Sept. 9, 1991)..................................................................6

*Lerner v. Fleet Bank, N.A.,*
   459 F.3d 273 (2d Cir. 2006)..................................................................................20

*Lexico Enters., Inc. v. Cumberland Farms, Inc.,*
   686 F. Supp. 2d 221 (E.D.N.Y. 2010) ......................................................................6

*LivePerson, Inc. v. 24/7 Customer, Inc.,*
   83 F. Supp. 3d 501 (S.D.N.Y. 2015).......................................................................13

*Matar v. Dichter,*
   563 F.3d 9 (2d Cir. 2009)........................................................................................5

*Mattel, Inc. v. MGA Entm't, Inc.,*
   782 F. Supp. 2d 911 ..............................................................................................24

*Moriah v. Bank of China Ltd.,*
   107 F. Supp. 3d 272 (S.D.N.Y. 2015)...................................................................4, 5

*New Show Studios LLC v. Needle,*
   2014 WL 2988271 (C.D. Cal. June 30, 2014) .....................................................23, 24

*NLRB v. Thalbo Corp.,*
   171 F.3d 102 (2d Cir. 1999)...................................................................................17

*NovelPoster v. Javitch Canfield Grp.,*
   140 F. Supp. 3d 938 (N.D. Cal. 2014) ....................................................................23

*Ochre LLC v. Rockwell Architecture Planning & Design, P.C.,*
   2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012), *aff'd,* 530 F. App'x 19 (2d Cir.
   2013) .............................................................................................................9, 11

*Oleg Cassini, Inc. v. Serta, Inc.,*
   2012 WL 844284 (S.D.N.Y. Mar. 13, 2012) .............................................................7

*Omari v. Ras Al Khaimah Free Trade Zone Auth.,*
   2017 WL 3896399 (S.D.N.Y. Aug. 18, 2017)............................................................5

*Parklane Hosiery Co. v. Shore,*
   439 U.S. 322 (1979)..............................................................................................17

*Patrizzi v. Bourne in Time, Inc.,*
   2012 WL 4833344 (S.D.N.Y. Oct. 11, 2012) ..........................................................18

*Philpot v. Kos Media, LLC,*
   2017 WL 2270248, at *7 (S.D.N.Y. Apr. 21, 2017)...................................................9

*Purgess v. Sharrock*,
 806 F. Supp. 1102 (S.D.N.Y. 1992)...................................................................22

*R.B. Dev., Co. v. Tutis Capital LLC*,
 2015 WL 10567830 (E.D.N.Y. Nov. 6, 2015).........................................................22

*Reves v. Ernst & Young*,
 507 U.S. 170 (1993)....................................................................................20, 21

*Samantar v. Yousuf*,
 560 U.S. 305 (2010)........................................................................................4

*Schatzki v. Weiser Capital Mgmt., LLC*,
 2012 WL 2568973 (S.D.N.Y. July 3, 2012) ....................................................12, 13

*Sedima, S.P.R.L. v. Imrex Co.*,
 473 U.S. 479 (1985).......................................................................................16

*Shmuel Shmueli, Bashe, Inc. v. Lowenfeld*,
 68 F. Supp. 2d 161 (E.D.N.Y. 1999) ...................................................................6

*Silvaco Data Sys. v. Intel Corp.*,
 184 Cal. App. 4th 210 (2010) ..........................................................................23

*Simon v. Capital Merch. Servs., LLC*,
 2020 WL 615091 (S.D.N.Y. Feb. 10, 2020).........................................................17

*Space Data Corp. v. X*,
 2017 WL 5013363, at *1 (N.D. Cal. Feb. 16, 2017) ...............................................23

*Spool v. World Child Int'l Adoption Agency*,
 520 F.3d 178 (2d Cir. 2008)............................................................................19

*Sporting Supplies Int'l, Inc. v. Tulammo USA, Inc.*,
 2011 WL 13135282 (C.D. Cal. Jan. 3, 2011) ......................................................25

*Sykes v. Mel S. Harris & Assocs. LLC*,
 780 F.3d 70 (2d Cir. 2015)..............................................................................16

*Tantaros v. Fox News Network, LLC*,
 2018 WL 2731268 (S.D.N.Y. May 18, 2018) ..................................................10, 11

*TPTCC NY, Inc. v. Radiation Therapy Servs., Inc.*,
 784 F. Supp. 2d 485 (S.D.N.Y. 2011), *aff'd in part*, 453 F. App'x 105 (2d Cir.
 2011) ........................................................................................................14

*Turbon Int'l, Inc. v. Hewlett-Packard Co.*,
 769 F. Supp. 2d 262 (S.D.N.Y. 2011).................................................................22

*United States v. Aurora Las Encinas, LLC*,
   2012 WL 12895302, at \*10 (C.D. Cal. Sept. 6, 2012)............................................................24

*United States v. Cain*,
   671 F.3d 271 (2d Cir. 2012)...............................................................................................21

*United States v. Kidd*,
   394 F. Supp. 3d 357 (S.D.N.Y. 2019).................................................................................10

*United States v. Turkette*,
   452 U.S. 576 (1981).............................................................................................................21

*Weiss v. Marcus*,
   51 Cal. App. 3d 590, 599 (1975) .......................................................................................24

*Westchester Cty. Indep. Party v. Astorino*,
   137 F. Supp. 3d 586 (S.D.N.Y. 2015)...........................................................................16, 19

*Ziemba v. Clark*,
   167 F. App'x 831 (2d Cir. 2006) .........................................................................................6

**Statutes**

17 U.S.C. § 102(a) ...............................................................................................................14

17 U.S.C. § 1201(a) .............................................................................................................14

18 U.S.C. § 1030..................................................................................................................13

18 U.S.C. § 1836(b) .............................................................................................................14

18 U.S.C. § 1839(3) .............................................................................................................15

18 U.S.C. § 1962(c) .............................................................................................................20

18 U.S.C. § 1964..................................................................................................................16

18 U.S.C. § 1965(b), (d) ........................................................................................................6

18 U.S.C. § 2701(a) .............................................................................................................11

28 U.S.C. § 1367(c) .............................................................................................................22

**Other Authorities**

Mario Trujillo, *Computer Crimes*, 56 AM. CRIM. L. REV. 615 (Summer 2019)............................14

**Rules**

C.P.L.R. 302(a) ..........................................................................................................................7, 8

Fed. R. Civ. P. 8(a)(2)....................................................................................................................11

Fed. R. Civ. P. 12(b)(6)...........................................................................................................2, 3, 6

## TABLE OF ABBREVIATIONS

| BCM | Plaintiff Broidy Capital Management LLC |
|---|---|
| *Benomar* | *Broidy Capital Management LLC et al. v. Benomar*, 7:18-CV-06615-CS (S.D.N.Y. Jul. 23, 2018) |
| Broidy | Plaintiff Elliott Broidy |
| CDAFA | California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502 |
| CFAA | Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* |
| Chalker | Defendant Kevin Chalker |
| CUTSA | California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 |
| DMCA | Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.* |
| DTSA | Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* |
| EMEA | Defendant Global Risk Advisors EMEA Ltd. |
| FSIA | Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.* |
| GRA | Defendant Global Risk Advisors LLC |
| Maven | Defendant GRA Maven LLC |
| *Muzin* | *Broidy Capital Management LLC et al. v. Muzin et al.*, 1:19-CV-00150-DLF (D.D.C. Jan. 24, 2019) |
| Quantum | Defendant GRA Quantum LLC |
| RICO | Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* |
| SCA | Stored Communications Act, 18 U.S.C. § 2701 *et seq.* |
| *State of Qatar* | *Broidy Capital Management LLC et al. v. State of Qatar et al.*, 2:18-CV-02421-JFW (C.D. Cal. Mar. 26, 2018) |

## PRELIMINARY STATEMENT

This action is Elliott Broidy's fourth attempt to use the courts to wage a public relations campaign against the State of Qatar. His first two attempts failed for lack of jurisdiction. In March, a third court dismissed half of Broidy's claims as legally defective and the remainder are on appeal.

In each case, Broidy accuses Qatar of a coordinated effort to undermine his purported standing in world affairs. Because Qatar and its public officials are clearly immune from suit, Broidy has embarked on a mission to file suit against any person or entity he can identify as having a connection to Qatar. The complaint here takes aim at cyber-security firms that he alleges covertly assisted Qatar in hacking and distributing his still undefined "confidential business information." But this lawsuit, like those that preceded it, is dead on arrival. Because Broidy alleges these Defendants are all agents of Qatar, they are immune from suit under this Circuit's well-established law. Because Broidy has already filed three other suits against Qatar and Defendants' other alleged "co-conspirators," including one still-pending suit that Broidy admits is a "parallel action," Compl. ¶ 1, this Court can and should dismiss the Complaint under the prior pending action doctrine. Finally, three of the five Defendants here are foreign corporations that are plainly not subject to this Court's personal jurisdiction.

If the Court does reach the merits of Broidy's wide-ranging conspiracy theories—which it need not do in light of these insurmountable jurisdictional deficiencies—the Court should dismiss each claim with prejudice. As an initial matter, many of these theories have already been dismissed as implausible in the prior, "parallel action" pending in the District of Columbia. Broidy has done nothing here to remedy the failings of that complaint, despite having taken extensive discovery in the prior actions and having conducted various "forensic investigations." *See, e.g.*, *id.* ¶ 3. Broidy's case boils down to an allegation that hacks resulting in the theft of his unidentified "trade secrets" originated from IP addresses located in states where various Defendants operate.

1

Therefore, he says, one or more Defendants must be the culprit.  Beyond that spurious assertion, the 64-page complaint contains little more than "[t]hreadbare recitals of the causes of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Broidy does not even bother to distinguish between the five Defendants here—an additional pleading error that is fatal in this Circuit.

If this case is allowed to proceed, it would violate principles of sovereign immunity, exceed this Court's subject matter and personal jurisdiction, and allow Broidy to make an end-run around other federal courts that have already denied similar requests for relief.  Broidy has ample freedom to air his political and personal grievances in other fora; this case should be dismissed, with prejudice, to avoid conscripting courts into his service.

## BACKGROUND

Since 2018, Plaintiffs have filed four suits alleging that Broidy and his company BCM are victims of an elaborate hacking campaign directed by the State of Qatar, which resulted in the acquisition and disclosure of still-unidentified "private communications, business documents, and other material" to various news outlets.  Compl. ¶ 1.  So far, Plaintiffs have filed suit against the State of Qatar itself, the Emir's brother, and a Qatari diplomat (in *State of Qatar*); multiple registered foreign agents of Qatar (in *State of Qatar* and *Muzin*); and Jamal Benomar, a Moroccan diplomat alleged to have been working as an agent of Qatar (in *Benomar*).

Defendants Chalker and GRA were initially sued in the *State of Qatar* action and raised similar defenses to those raised here.  Because the Central District of California clearly lacked personal jurisdiction over Chalker and GRA, the court dismissed Plaintiffs' claims against those parties with prejudice on August 22, 2018, without reaching the merits of Defendants' sovereign immunity or Rule 12(b)(6) challenges to the complaint.  *See State of Qatar*, Dkt. 212 at 12 & n.3.

In this action, Plaintiffs assert a total of ten Counts, each against all five Defendants

together, claiming various violations of state and federal law.  Nine of these counts were pleaded

against other alleged "co-conspirators" in the *Muzin* case; five of those counts were dismissed on

March 31, 2020.  *Muzin*, Dkt. 51, 2020 WL 1536350.  The remaining Counts are now on appeal.

Defendants here move to dismiss on the grounds set forth below and summarized in Appendix A.

## ARGUMENT

Plaintiffs bear the burden of proving, by a preponderance of the evidence, that subject

matter jurisdiction exists.  *BCM v. Benomar*, 944 F.3d 436, 443 (2d Cir. 2019).  Plaintiffs also bear

the burden of establishing that the court has personal jurisdiction.  *Corley v. Vance*, 365 F. Supp.

3d 407, 430 (S.D.N.Y. 2019).  "[P]laintiff must plead facts sufficient for a prima facie showing of

jurisdiction" and "may not rely on conclusory statements without any supporting facts."  *Freeplay

Music, LLC v. Rigol Techs. USA, Inc.*, 2020 WL 564232, at \*2 (S.D.N.Y. Feb. 4, 2020).

Under Rule 12(b)(6), a complaint must be dismissed if it does not contain "enough facts to

state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Claims are not

"plausible" if a complaint "pleads facts that are 'merely consistent' with a defendant's liability,"

and thereby "'stops short of the line between possibility and plausibility of entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 558).

**I.**      **This Action Should Be Dismissed for Lack of Subject Matter Jurisdiction.**

**A.**      **All Defendants Are Entitled to Sovereign Immunity.**

Throughout the Complaint, Plaintiffs describe Defendants as contractors for the State of

Qatar.  *See, e.g.*, Compl. ¶ 1 ("Qatar hired its go-to firm for underhanded cyber-operations,

Defendant GRA, to unlawfully hack into Mr. Broidy's emails . . . ."); *id.* ¶ 261 (Defendants

"misappropriated Plaintiffs' trade secrets . . . for the benefit of their foreign client, Qatar").

Plaintiffs made similar allegations in *State of Qatar*.  *See, e.g.*, First Am. Compl. ¶ 31, Dkt. 47,

May 24, 2018 ("Upon information and belief, the State of Qatar engaged the GRA Defendants and

the Agent Defendants . . . .").  In *State of Qatar*, Qatar was held to be immune to Plaintiffs' claims,

but the Court did not reach the issue as to GRA or Chalker.  Dkt. 198 at 5–12, 14, Aug. 8, 2018;

Dkt. 212 at 12 & n.3, Aug. 22, 2018.  Under the common-law doctrine of derivative sovereign

immunity, Plaintiffs' allegations deprive this Court of subject matter jurisdiction.

　　　　While FSIA governs the immunity of foreign states, individuals who carry out the state's

sovereign acts possess a derivative form of immunity under common law.  *See Samantar v. Yousuf*,

560 U.S. 305, 322 (2010).[1]  Were that not the case, plaintiffs could evade sovereign immunity

merely by suing the foreign state's representatives for acts that are attributable to the foreign state.

*See Moriah v. Bank of China Ltd.*, 107 F. Supp. 3d 272, 279 (S.D.N.Y. 2015) (citing *Heaney v.

Gov't of Spain*, 445 F.2d 501, 504 (2d Cir. 1971)); *see also Benomar*, Dkt. 61-2,  at 44–45, Dec.

21, 2018 ("To allow plaintiffs to sue Benomar would be to allow a suit for conduct that plaintiffs'

claim was actually committed by the sovereign or that Benomar committed at the sovereign's

direction and on the sovereign's behalf.").  As the Fourth Circuit held in *Butters v. Vance

International*, 225 F.3d 462, 466 (4th Cir. 2000), "[a]ll sovereigns need flexibility to hire private

agents to aid them in conducting their governmental functions."  That is why the rule in this District

is that the foreign sovereign's immunity "extends beyond current and former government officials

to individuals acting as an agent for the government."  *Moriah*, 107 F. Supp. 3d at 277.

　　　　Defendants qualify for derivative sovereign immunity because Plaintiffs allege conduct

undertaken on behalf of a foreign state.  "The State Department has consistently recommended

conduct-based sovereign immunity [for officials] when (1) the foreign state requests it and (2) the

defendant acted in his official capacity on behalf of a recognized foreign government."  *In re

Terrorist Attacks on Sept. 11, 2001*, 122 F. Supp. 3d 181, 188 (S.D.N.Y. 2015).  Where, as here,

---

[1]　　If the U.S. State Department does not make a suggestion of immunity, the court "ha[s] authority to decide for
itself whether all the requisites for such immunity exists."  *Samantar*, 560 U.S. at 311–12 (citation omitted).

the conduct in question involves clandestine operations, courts look to the second prong alone, *i.e.*, whether the defendant acted in an official (albeit secret) capacity. *See Omari v. Ras Al Khaimah Free Trade Zone Auth.*, 2017 WL 3896399, at *10 (S.D.N.Y. Aug. 18, 2017) (allegations in complaint sufficient to dismiss where acts in pursuit of unlawful rendition were allegedly "undertaken through . . . official channels and on behalf of the [foreign state], presumptively in furtherance of its enforcement of its laws").

Another judge in this District has already addressed Broidy's arguments to the contrary. In *Benomar*, Judge Seibel dismissed Broidy's claims on the basis of Benomar's diplomatic immunity as a Moroccan diplomat, Dkt. 61-2, at 20–41, 46–48, but also recognized that the complaint would "likely" be dismissed "[b]ecause plaintiffs' own allegations suggest that he [Benomar] acted on behalf of a foreign state [Qatar] and that his conduct is attributable to it," *id.* at 44–45. The same logic applies here. Although Plaintiffs have filed a new complaint, they have merely rehashed their theory that Qatar is behind everything, substituting one set of alleged agents for another. Like Benomar, Defendants are not Qatari officials, but are still entitled to derivative sovereign immunity for the acts they allegedly undertook on behalf of Qatar.

Similarly, in *Moriah*, Judge Scheindlin noted that "[i]t is 'well-settled law that contractors and common law agents acting within the scope of their employment . . . have derivative sovereign immunity.'" *Moriah*, 107 F. Supp. at 277 (second alteration in original) (quoting *Butters*, 225 F.3d at 466); *see also Matar v. Dichter*, 563 F.3d 9, 14 (2d Cir. 2009) ("An immunity based on acts — rather than status—does not depend on tenure in office."). Here, Defendants are alleged to be private contractors who, in the direct course of their employment by Qatar, engaged in the activities giving rise to the claimed harms. Plaintiffs never allege that Defendants acted to further any interests independent of Qatar's or outside the scope of their duties.

**B.      Plaintiffs' Forum Shopping Violates the Prior Pending Action Doctrine.**

RICO provides for nationwide service of process for all alleged co-conspirators and personal jurisdiction for related claims.  *See* 18 U.S.C. § 1965(b), (d).  Thus, each of Plaintiffs' claims against Defendants (which include RICO claims) could have been brought as part of the *Muzin* case (in which the district court dismissed those RICO claims under Rule 12(b)(6)).  Instead, Plaintiffs chose to file a second, "parallel action" in this Court, Compl. ¶ 1, splitting claims that Plaintiffs admit "share[] a common nucleus of operative facts," *id.* ¶ 127.  Because this gamesmanship violates the prior pending action doctrine, this later-filed case must be dismissed. *See Shmuel Shmueli, Bashe, Inc. v. Lowenfeld*, 68 F. Supp. 2d 161, 164–66 (E.D.N.Y. 1999) (dismissing duplicative complaint asserting RICO violations); *see also Leptha Enters., Inc. v. Longenback*, 1991 WL 183373, at *2 (S.D.N.Y. Sept. 9, 1991) (dismissing RICO claims as barred by a prior pending action that named previously unnamed defendants as co-conspirators).

Absent "extraordinary circumstances," "the first suit should have priority."  *Schmuel Shmueli, Bashe,* 68 F. Supp. 2d at 164 (citation and quotation marks omitted); *see also Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts, . . . the general principle is to avoid duplicative litigation.").  The Court should "consider the equities of the situation when exercising its discretion" to dismiss a parallel action.  *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000).  Dismissal is warranted where "the same or connected transactions are at issue and the same proof is needed to support the claims in both suits." *Lexico Enters., Inc. v. Cumberland Farms, Inc.*, 686 F. Supp. 2d 221, 224 (E.D.N.Y. 2010) (quoting *Curtis*, 226 F.3d at 139); *see also Ziemba v. Clark*, 167 F. App'x 831, 832 (2d Cir. 2006).

Plaintiffs recently confirmed that this case and *Muzin* are duplicative.  *See* Dkt. 43 at 3, June 3, 2020 ("[G]iven that the two cases involve substantial factual overlap, it is unremarkable that some discovery here may also be relevant in the other case.").  The Complaint itself alleges

that the *Muzin* First Amended Complaint "shares a common nucleus of operative facts . . . , and the allegations[] and Counts . . . overlap substantially." Compl. ¶ 127. Further, that "parallel action," *id.* ¶ 1, was brought by Plaintiffs against parties whom they allege to be Defendants' "co-conspirators." *Id.* ¶ 74. Courts regularly dismiss later-filed actions on similar facts. *See Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 664 (S.D.N.Y. 1997) (dismissing action asserting "essentially the same claims" but naming additional defendants); *see also Oleg Cassini, Inc. v. Serta, Inc.*, 2012 WL 844284, at *3 (S.D.N.Y. Mar. 13, 2012).

The equities clearly weigh in favor of dismissal here. Plaintiffs are merely shopping their claims around to find a court that will allow them to proceed despite the immunity issue that remains on appeal in *Muzin*.

## II.     Maven, Quantum, and EMEA Are Not Subject to Personal Jurisdiction.

The claims against Maven, Quantum, and EMEA must be dismissed because the Court lacks personal jurisdiction over these Defendants.[2] To determine whether personal jurisdiction exists, the Court first looks to New York law. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007); *Freeplay Music, LLC*, 2020 WL 564232, at *2. If no provision of New York's long-arm statute allows for jurisdiction, the analysis ends and the case must be dismissed. If the statute allows for jurisdiction, the Court must determine "whether personal jurisdiction comports with the Due Process Clause." *Freeplay Music*, at 2020 WL 564232, at *2 (citation omitted).

First, Plaintiffs allege that Maven and Quantum each "maintain[] an office" in New York, Compl. ¶¶ 12, 17–18, and that EMEA and Quantum "regularly conduct[] business" in New York, *id.* ¶ 17. These allegations are insufficient under the long-arm statute. Under C.P.L.R. 302(a),

---

[2]  Although this Court has personal jurisdiction to adjudicate Plaintiffs' RICO claims, as discussed *supra* Section I.B., those claims must be dismissed. *See infra* Section III.B.5–6. All other claims against Maven, Quantum, and EMEA should then be dismissed for lack of personal jurisdiction.

there must be a "*substantial* relationship" between the transacted business and the claims asserted. *Freeplay Music, LLC*, 2020 WL 564232, at *5 (emphasis added) (quoting *Best Van Lines*, 490 F.3d at 246); *Best Van Lines*, 490 F.3d at 249 ("merely coincidental" connection "insufficient to support jurisdiction" under C.P.L.R. 302(a) (citation omitted)).   Here, Plaintiffs do not plausibly allege *any* relationship—let alone a *substantial* one—between their claims and either Maven's and Quantum's New York offices or any "business" EMEA and Quantum "conduct[ed]" in New York.

Second, the Due Process Clause prohibits the exercise of personal jurisdiction unless either (1) the defendant is "at home" in the forum State, and thus is subject to the State's general jurisdiction, or (2) the lawsuit "arise[s] out of or relate[s] to the defendant's contacts with the forum," thereby allowing the court to exercise specific jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (citations omitted).   Even if Plaintiffs had satisfied C.P.L.R. 302(a), due process would preclude the exercise of personal jurisdiction.

General jurisdiction can exist over corporate defendants like Maven, Quantum, and EMEA only if the entity's "affiliations" with the forum state are "so continuous and systematic as to render [it] essentially at home" there. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quotation marks omitted).   A corporation is "at home" for purposes of general jurisdiction where it is incorporated and where its principal place of business is located. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).   None of GRA's subsidiaries are incorporated or headquartered in New York. *See* Compl. ¶¶ 12, 17 (Maven); *id.* ¶ 17 (Quantum); *id.* ¶¶ 17, 30 (EMEA).

To establish specific jurisdiction, (1) "the defendant must have . . . purposefully directed its conduct into the forum State"; (2) "the plaintiff's claim must arise out of or relate to the defendant's forum conduct"; and (3) "the exercise of jurisdiction must be reasonable under the circumstances." *Bristol-Myers*, 137 S. Ct. at 1785–86.   "[G]eneral connections" with the forum

state, as alleged here, "are not enough." *Id.* at 1781. Only *two* of 291 paragraphs in the Complaint concern conduct in New York—specifically, the use of New York City IP addresses. *See* Compl. ¶¶ 48, 63. In neither instance do Plaintiffs suggest the IP address is connected to any Defendant.

Even if Plaintiffs had alleged some connection between these IP addresses and one or more of the foreign Defendants, exercising personal jurisdiction based on the location of an IP address alone would be plainly unreasonable. *Cf. Philpot v. Kos Media, LLC*, 2017 WL 2270248, at *7, *11 (S.D.N.Y. Apr. 21, 2017) ("New York IP address" "[was] not enough" for personal jurisdiction), *R&R adopted by* 2017 WL 2269531 (S.D.N.Y. May 23, 2017). To do so would subject countless entities to this Court's jurisdiction whenever they or their affiliates access an IP address in New York, regardless of their physical location, the nature of the use, or whether any actions are directed towards this forum.

III.   **Each Count Should Be Dismissed for Additional Independent Reasons.**

A.   **Plaintiffs Fail to Plead Facts Attributing Misconduct to Any Defendant.**

The Complaint suffers from two pleading errors that require dismissal of each and every Count. First, Plaintiffs fail to make any plausible allegations actually tying Defendants to the alleged wrongdoing. *See Iqbal*, 556 U.S. at 678 (insufficient to "plead[] facts that are 'merely consistent' with a defendant's liability" and "'stop[] short of the line between possibility and plausibility of entitlement to relief'" (quoting *Twombly*, 550 U.S. at 558)). Second, Plaintiffs impermissibly lump all five Defendants together in every claim, without ever specifying the factual allegations against each. *See Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, 2012 WL 6082387, at *6–7 (S.D.N.Y. Dec. 3, 2012) (dismissing with prejudice for failure to specify which defendants engaged in infringing activities), *aff'd*, 530 F. App'x 19 (2d Cir. 2013).

Plaintiffs repeatedly allege that they suffered "cyber-attacks" giving rise to each of their ten claims, *e.g.*, Compl. ¶¶ 12, 34, 36, but never actually connect Defendants to those attacks.

Plaintiffs base their claims against Defendants entirely on the pedestrian observation that some Defendants operate in the same states as certain IP addresses associated with the hacks. *See id.* ¶¶ 48 ("[O]ne of the unauthorized logins . . . was from an identifiable IP address, registered to MIST Harlem, a restaurant and event space located less than a mile from GRA Maven's 'Urban Climbing Course.'"), 63 ("An IP address based in New York, NY, where GRA is headquartered, accessed [an email address allegedly used to deliver Plaintiffs' stolen emails to journalists]."), 64 (claiming that "another IP address [was] traced to . . . a server in Chapel Hill, North Carolina, . . . roughly an hour's drive from GRA Maven's location and . . . towns where GRA employees lived"). But an IP address alone is insufficient to denote an individual's or corporation's physical location. *See United States v. Kidd*, 394 F. Supp. 3d 357, 366 (S.D.N.Y. 2019) ("To be sure, an IP address does not refer to a physical location itself."). And even if Defendants were in proximity of the devices at issue, Plaintiffs do not plausibly allege that any Defendant used them.

In *State of Qatar*, the court rejected a similar argument. *See* Dkt. 37 at 3 (Plaintiffs' evidence of "IP addresses registered to physical locations in . . . Doha, Qatar . . . failed to demonstrate . . . that the computer (or the individual doing the hacking) had any relationship with the government of Qatar."). Plaintiffs fare no better here. *See also, e.g.*, *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 433, 438 (S.D.N.Y. 2019) [hereinafter "*DNC*"] (even "connections and communications between the defendants and [ ] people loosely connected to the Russian Federation" failed to "show plausibly that any of the defendants, other than the Russia[n] Federation, had any role in hacking"); *Tantaros v. Fox News Network, LLC*, 2018 WL 2731268, at *8 (S.D.N.Y. May 18, 2018) (dismissing claim where plaintiff "fail[ed] to plead *any* facts connecting . . . any Defendant . . . to [the] . . . account that allegedly harassed [p]laintiff").

Even if Plaintiffs had tied one or more Defendants to the IP addresses they believe were

involved in the wrongdoing, that would not justify group pleading here. "Where a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants." *Ochre*, 2012 WL 6082387, at *6. Plaintiffs "cannot merely 'lump[] all the defendants together in each claim'" and "force the various defendants to guess at the nature of [plaintiffs'] claims." *Id.* at *6, *7 (first alteration in original) (quoting *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)).

All ten Counts contain allegations against all five Defendants collectively, without any distinction between individual Defendants. *See, e.g.*, Compl. ¶ 133 ("*Defendants* willfully and intentionally accessed . . . BCM's computer systems . . . as well as Google's servers . . . ." (emphasis added)); *id.* ¶¶ 144, 157, 173, 192, 204, 212, 217, 227, 286. These allegations force Defendants to guess which Defendant is alleged to have engaged in which alleged acts of misconduct—a clear violation of Rule 8. *See* Fed. R. Civ. P. 8(a)(2); *Atuahene*, 10 F. App'x at 34.

### B.     Plaintiffs Fail to State a Claim Under Any Federal Statute.

#### 1.     Plaintiffs Fail to State a Claim Under the SCA (Count I).

The SCA creates a cause of action against anyone who "intentionally accesses without authorization a facility through which an electronic communication service is provided . . . *and thereby* obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such a system." 18 U.S.C. § 2701(a)(1) (emphasis added). Plaintiffs offer nothing more than the threadbare allegation that Defendants "accessed" Plaintiffs' "email servers" and "computer systems," Compl. ¶ 133, which is merely a "formulaic recitation of the elements" of an SCA claim. *See Iqbal*, 556 U.S. at 678. Moreover, there is no allegation, let alone a description, of any electronic communication that was "obtain[ed]," "alter[ed]," or otherwise rendered inaccessible to Plaintiffs. *See Tantaros*, 2018 WL 2731268, at *9–10 (dismissing SCA claim where plaintiff failed to provide any factual support for her conclusory allegations that Fox

News paid individual defendants to hack her personal computer and electronic devices).

Plaintiffs also fail to allege facts giving rise to liability under the narrow terms of the SCA. Plaintiffs base their claim on the theory that Defendants "*directed* the activities of cyber mercenaries" and "*coordinated and supervised* the execution of spear phishing emails," at best alleging that they aided and abetted the actions of the individuals who actually violated the SCA by accessing Plaintiffs' electronic communications. Compl. ¶¶ 33–34 (emphases added); *id.* ¶ 132 (asserting that Defendants are liable for "supervising" the alleged hacking). But it is well-established that there is no secondary liability under the SCA. *See Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1006 (9th Cir. 2006) (rejecting "argument that secondary liability should be imposed" under the SCA); *see also Cent. Bank of Denver N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182 (1994) (rejecting "vast expansion of federal law" that would result from attaching "aiding and abetting . . . to all federal civil statutes, even laws that do not contain an explicit aiding and abetting provision"). Plaintiffs' wholly conclusory legal statement that "Defendants are directly liable" should plainly be disregarded, because Plaintiffs have not even attempted to name a Defendant who acted directly. *See* Compl. ¶¶ 132–33; *Iqbal*, 556 U.S. at 678–79.[3]

## 2.    Plaintiffs Fail to State a Claim Under the CFAA (Count II).

Similarly, Plaintiffs' CFAA claim falls outside the scope of that statute. The CFAA only "permits a private right of action when a party has suffered damages and a loss of at least $5,000 during a one-year period." *Combier v. Portelos*, 2018 WL 3302182, at *9 (E.D.N.Y. July 5, 2018), *R&R adopted by* 2018 WL 4678577 (E.D.N.Y. Sept. 28, 2018), *aff'd*, 788 F. App'x 774 (2d Cir. 2019). Both "damage" and "loss" are interpreted "narrowly." *Schatzki v. Weiser Capital Mgmt., LLC*, 2012 WL 2568973, at *2–3 (S.D.N.Y. July 3, 2012). "Damage" is defined as "any

---

[3]  The court dismissed Plaintiffs' SCA claims in *Muzin* on this basis, estopping any argument to the contrary. *See Muzin*, 2020 WL 1536350, at *11.

impairment to the integrity or availability of data, a program, a system, or information," 18 U.S.C. § 1030(e)(8), and "loss" is limited to "only costs actually related to computers," *Schatzki*, 2012 WL 2568973, at *3 (citation omitted).  Thus, a plaintiff must allege, "with some particularity," "the 'damage' and 'loss' (as defined in the CFAA) claimed to be involved" and "facts showing that the $5,000 threshold . . . is satisfied." *Combier*, 2018 WL 3302182, at *9 (citation omitted).

Plaintiffs make no effort to meet this standard.  Plaintiffs' "damage" allegation simply parrots the statutory definition.  *Compare* 18 U.S.C. § 1030(e)(8) (defining "damage" as "any impairment to the integrity or availability of data, a program, a system, or information"), *with* Compl. ¶ 149 (Plaintiffs "suffered damage, including harm to the integrity and availability of their servers, and to emails and documents physically located on those servers").  Rather than providing specific allegations as to "loss," Plaintiffs merely assert that this case meets the $75,000 threshold for diversity jurisdiction. *See id.* ¶¶ 150, 212, 219 (alleging for entire action—but not specifically with respect to the CFAA count—that Plaintiffs suffered losses "in an amount to be proven at trial, but in any event, in excess of $75,000"); *see also id.* ¶ 15.  Judges in this district regularly dismiss similar CFAA claims. *See, e.g., LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 514 (S.D.N.Y. 2015) (dismissing claim seeking "an amount well in excess of the diversity jurisdictional threshold of $75,000" that did not "specify what portion . . . constitute[d] either loss or damage under the [CFAA]"); *Schatzki*, 2012 WL 2568973, at *3–4.[4]

### 3.     Plaintiffs Fail to State a Claim Under the DMCA (Count III).

Plaintiffs allege that "Defendants conducted a targeted attack to circumvent . . . technological measures . . . by stealing usernames and passwords . . . obtained from [ ] spear

---

[4]  The *Muzin* court declined to dismiss Plaintiffs' CFAA claim on these grounds, but did not address any case law. *Muzin*, 2020 WL 1536350, at *12.

phishing attacks." Compl. ¶ 157.[5]  The DMCA does not extend to such schemes.

The DMCA requires:  (1) the existence of a technological measure; (2) that effectively controls access to (or effectively protects) a copyrighted work; and (3) circumvention of that technical measure.  17 U.S.C. § 1201(a)(1)(A).  Unauthorized usage alone does not constitute the "circumvention" proscribed by the DMCA.  *See I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521, 533 (S.D.N.Y. 2004) (concluding that the "unauthorized use of an otherwise legitimate, owner-issued password" does not qualify as circumvention, and dismissing DMCA claim); *see also Dish Network L.L.C. v. World Cable Inc.*, 893 F. Supp. 2d 452, 464 (S.D.N.Y. 2012) ("[U]sing deception to gain access to copyrighted material is not the type of 'circumvention' that Congress intended to combat in passing the DMCA . . . .").

Plaintiffs also fail to plead the existence of copyrighted works.  "Presentations, proprietary business plans and proposals, and strategic correspondence," Compl. ¶ 155, do not fall within the statutory definition.  *See* 17 U.S.C. § 102(a).  It is also well established that "[f]acts and ideas— including ideas couched as 'business plans'—are *never* subject to copyright."  *Gains v. District of Columbia*, 961 F. Supp. 2d 218, 223 (D.D.C. 2013) (citation omitted) (emphasis added); *TPTCC NY, Inc. v. Radiation Therapy Servs., Inc.*, 784 F. Supp. 2d 485, 499–500 (S.D.N.Y. 2011) (business plan was not a copyrighted work), *aff'd in part*, 453 F. App'x 105 (2d Cir. 2011).  Plaintiffs' conclusory assertion to the contrary, *see* Compl. ¶ 155, cannot save their DMCA claim.[6]

### 4.    Plaintiffs Fail to State a Claim Under the DTSA (Count IV).

Plaintiffs' claim under Section 1836(b)(1) of the DTSA fails because the Complaint does not identify any "trade secrets" that Defendants allegedly misappropriated.  Under the DTSA, "a

---

[5]  "Spear phishing" involves obtaining valid access credentials through a targeted ruse, then making unauthorized use of them.  *See* Mario Trujillo, *Computer Crimes*, 56 Am. Crim. L. Rev. 615, 621, 624–25 (Summer 2019).

[6]  There was no DMCA claim in *Muzin*.

plaintiff must plausibly allege that (1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret." *DNC*, 392 F. Supp. 3d at 447. "Trade secret" is defined as:

> [A]ny form of financial or business information, "including patterns, plans[,] . . . methods, techniques, process, [and] procedures . . . [that] (A) the owner thereof has taken reasonable measures to keep . . . secret; and (B) . . . derives independent economic value, actual or potential, from not being generally known."

*Id.* at 448 (alterations in original) (quoting 18 U.S.C. § 1839(3)(A)–(B)).

A DTSA claim must be dismissed unless the plaintiff "put[s] forth specific allegations as to the information owned and its value." *Id.* A plaintiff cannot rely on "conclusory statements that simply restate the elements of a trade secret," but rather must "specify 'the general contours of the alleged trade secrets.'" *Id.*; *cf. Elsevier Inc. v. Doctor Evidence, LLC*, 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018) ("Alleging the existence of general categories of 'confidential information,' without providing any details, . . . does not give rise to a plausible allegation of a trade secret's status." (citation omitted)).

Plaintiffs do not meet this burden. Plaintiffs allege only that BCM's computer systems and email servers contained "highly confidential business plans and proposals; research . . . , including cost proposals and service projections; information concerning business strategies and opportunities; and contacts for important business relationships." Compl. ¶ 167. Similarly, Plaintiffs allege that their emails "contained confidential information involving contracts, business proposals, and cost estimates" that "contained sensitive information about Mr. Broidy's clients and his company's confidential technology and methods." *Id.* ¶ 169. But the mere fact that something is labeled "confidential" does not convert run-of-the-mill business information into information that "derives independent economic value . . . from not being generally known." *See* 18 U.S.C. § 1839(3)(A), (B).

Plaintiffs' vague descriptions cannot survive dismissal. In *DNC*, 392 F. Supp. 3d at 448,

the court dismissed a DTSA claim based on allegations that the defendant published the plaintiff's "donor lists" and "fundraising strategies," because the plaintiff failed to plead "anything about the process" of developing the materials or "how their particular value derive[d] from their secrecy." And in *Elsevier*, 2018 WL 557906, at \*4–7, the court dismissed allegations that a plaintiff's "clinical methods," "data configuration protocols," "interpretation of data," and "processes" constituted trade secrets, because the plaintiff failed to plead "the information's value, the extent to which it is known by [others], the amount of effort or money spent to develop the information, and the ease with which the information could be acquired or developed by outsiders." Absent these basic allegations giving rise to a trade secret, the complaint did not even "come close to . . . support[ing] trade secret status." *Id.* at \*5. Plaintiffs' assertion here—that the information was "confidential"—does nothing to make out a claim. *Cf. id.* at \*6 ("General allegations regarding 'confidential information' . . . simply do not give rise to a plausible trade secrets claim.").[7]

### 5. Plaintiffs Fail to State a RICO Claim (Count IX).

To even have standing to bring a RICO claim, a plaintiff must plausibly allege (1) "injury to his or her business or property [(2)] caused 'by reason of the substantive RICO violation.'" *Westchester Cty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 612 (S.D.N.Y. 2015) (quoting *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 91 (2d Cir. 2015)); 18 U.S.C. § 1964. Then, "a plaintiff must show: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Plaintiffs do not plead any of these elements.

Because the *Muzin* court dismissed Plaintiffs' RICO claims for failure to plead the merits element of "pattern," *Muzin*, 2020 WL 1536350, at \*11, and Plaintiffs here advance the same

---

[7] The *Muzin* court declined to dismiss Plaintiffs' DTSA claim, but did not address the case law in this District, relying instead upon decisions from other Circuits. *See Muzin*, 2020 WL 1536350, at \*12–13.

theory that was rejected in *Muzin*, *see* Compl. ¶ 127, Defendants begin with that element.

**a.**   **Plaintiffs Fail to Plead a "Pattern" and Are Collaterally Estopped From Arguing Otherwise.**

The *Muzin* court concluded that Plaintiffs failed to adequately allege a pattern of racketeering activity, *Muzin*, 2020 WL 1536350, at \*11, and Plaintiffs are estopped from arguing otherwise here. Collateral estoppel applies where "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and [ ] decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue . . . was necessary to support a valid and final judgment on the merits." *NLRB v. Thalbo Corp.*, 171 F.3d 102, 109 (2d Cir. 1999). Non-mutual defensive collateral estoppel "prevent[s] a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant," as is the case here. *Simon v. Capital Merch. Servs., LLC*, 2020 WL 615091, at \*7 (S.D.N.Y. Feb. 10, 2020) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4 (1979)), *appeal filed*, No. 20-850 (2d Cir. Mar. 10, 2020).

The four requirements are met here. First, as Plaintiffs concede, their RICO claims in both cases "overlap substantially." Compl. ¶ 127. Second, the *Muzin* defendants specifically raised the pattern issue on a motion to dismiss. Third, Plaintiffs had ample opportunity to litigate the issue, through a full round of briefing and an amended pleading. *See Muzin*, 2020 WL 1536350, at \*1. Finally, the issue was expressly decided in the *Muzin* defendants' favor, leading directly to the dismissal of the RICO claims. *See id.* at \*11 ("By not adequately pleading continuity, Broidy has not adequately pled a pattern of racketeering activity. The Court will therefore dismiss Count I, which alleges a substantive civil RICO violation [and] . . . Count II, which alleges a RICO conspiracy . . . ."). Though an appeal is pending, *see* Dkt. 56, that has no bearing on the finality— and therefore, the preclusive effect—of the court's RICO dismissals. *See In re Am. Express Anti-Steering Rules Antitrust Litig.*, 2016 WL 748089, at \*5 (E.D.N.Y. Jan. 7, 2016); *United States v.*

17

*Int'l Bhd. of Teamsters*, 905 F.2d 610, 621 (2d Cir. 1990).

Even if collateral estoppel did not apply, Plaintiffs' claim would still be subject to dismissal for the same reasons articulated in *Muzin*.  To plead a RICO "pattern," the plaintiff must allege that "the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989).  "[A] plaintiff 'must allege either an **open-ended** pattern of racketeering activity (*i.e.*, past criminal conduct coupled with an adequately pled threat of future criminal conduct) or a **closed-ended** pattern of racketeering activity (*i.e.*, past criminal conduct extending over a substantial period of time).'" *Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*, 2012 WL 1231775, at *7 (S.D.N.Y. Apr. 12, 2012) (emphases added) (quoting *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004)).  Plaintiffs do not plausibly allege either type of "pattern."

No Open-Ended Scheme.  To plead open-ended continuity, the plaintiff must put forth "specific allegations," *Patrizzi v. Bourne in Time, Inc.*, 2012 WL 4833344, at *4 (S.D.N.Y. Oct. 11, 2012), "show[ing] that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed," *Cont'l Petroleum Corp.*, 2012 WL 1231775, at *7 (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)). Here, the Complaint alleges only a "one time racket," not an open-ended scheme, because "[t]he alleged hacking already has happened, and the stories that were meant to silence Broidy already have been published." *Muzin*, 2020 WL 1536350, at *9 (citation omitted).  Indeed, all of the details in the Complaint concern alleged activity that ended nearly two years ago, *see, e.g.*, Compl. ¶ 94, not an open-ended scheme that continues "to the present day," *id.* ¶ 273.

No Closed-Ended Scheme.  The *Muzin* court also concluded that Plaintiffs failed to allege closed-ended continuity because "the alleged scheme had a single goal, targeted only a few

victims, and took just five months from start to finish." *Muzin*, 2020 WL 1536350, at \*10.  To

establish a closed-ended scheme, "a plaintiff must demonstrate that the activity involves predicate

acts extending over a substantial period of time." *Cont'l Petroleum Corp.*, 2012 WL 1231775, at

\*7 (citation and quotation marks omitted).  In this Circuit, "two years is 'the *minimum* duration

necessary to find closed ended-continuity.'" *Id.* (quoting *First Capital*, 385 F.3d at 181); *see also*

*Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008) ("[T]he duration of

a pattern of racketeering activity is measured by the RICO predicate acts." (citation omitted)).

Here, the first alleged predicate is that Broidy's spouse was sent a phishing email on December

27, 2017, Compl. ¶ 38, and the last alleged predicate came just five months later on May 21, 2018,

when an article "based on Mr. Broidy's emails" was published, *id.* ¶ 94.

**b.**     **Plaintiffs Also Lack Standing to Assert a RICO Claim.**

Courts in this Circuit require a plaintiff to "allege actual, quantifiable injury" and to plead

"concrete financial loss in order to show injury under RICO." *Westchester Cty.*, 137 F. Supp. 3d

at 613 (citation omitted).  The alleged injury "must be 'clear and definite,' rather than speculative,"

to survive dismissal.  *Id.* (citation and quotation marks omitted); *Dornberger v. Metro. Life Ins.*

*Co.*, 961 F. Supp. 506, 521 (S.D.N.Y. 1997) (RICO injury to "business or property" "requires a

showing of some actual, out-of-pocket financial loss").  Here, the Complaint contains only

speculative and conclusory allegations that "Plaintiffs have suffered injury to their business and

property . . . in an amount to be proven at trial." *See, e.g.*, Compl. ¶¶ 245, 258, 264, 272, 279, 288.

The Second Circuit has made clear that precisely this type of allegation is defective:  "Merely

restating the requirements of RICO in the form of an allegation does not suffice to state a claim."

*Hollander v. Flash Dancers Topless Club*, 173 F. App'x 15, 18 (2d Cir. 2006); *see also Kimm v.*

*Chang Hoon Lee & Champ, Inc.*, 196 F. App'x 14, 16 (2d Cir. 2006) (affirming dismissal of RICO

claims for lack of standing and holding that "generalized reputational harms . . . are too speculative

19

to constitute an injury to business or property").

Even if Plaintiffs had adequately pleaded injuries under RICO, they have nonetheless failed to allege that Defendants caused those injuries. RICO standing requires both proximate and but-for causation of a concrete injury. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283–84 (2d Cir. 2006); *Anza v. Ideal Steel Supply Co.*, 547 U.S. 451, 457, 461 (2006). Here, Plaintiffs claim "loss caused by the investigation of the hackings" and "los[s] [of] existing business relationships because customers and potential business partners were concerned about the security of their data following the cyber-attack." Compl. ¶ 279. The Second Circuit regularly affirms dismissals of RICO complaints "where the alleged injuries were proximately caused not by the alleged racketeering violations, but by the public exposure of those activities or their discovery by the victim and the consequences of that exposure or discovery." *Hollander*, 173 F. App'x at 17–19 (holding that loss of business opportunities and other damages stemming from the plaintiff's investigation into alleged RICO violations were proximately caused by the plaintiff's own acts, not by the violations, and collecting cases).

### c.    The RICO Counts Suffer from Manifold Additional Defects.

<u>Impermissible Group Pleading.</u>  Plaintiffs rely solely on allegations about "Defendants" as a group. *See supra* Section III.A. It is well-established, however, that "[t]he requirements of section 1962(c) must be established as to each individual defendant." *DeFalco*, 244 F.3d at 306; *Gross v. Waywell*, 628 F. Supp. 2d 475, 495 (S.D.N.Y. 2009) ("[L]umping the defendants into collective allegations results in a failure to demonstrate the elements of § 1962(c) with respect to each defendant individually, as required.").

<u>No Operation or Management.</u>  "[T]he plaintiff must show that each defendant 'conduct[ed] or participate[d], directly or indirectly, in the conduct of [the] enterprise's affairs.'" *DNC*, 392 F. Supp. 3d at 440–41 (alterations in original) (quoting *Reves v. Ernst & Young*, 507

U.S. 170, 177 (1993)).  This "operation or management" pleading requirement is "extremely rigorous," *id.* at 441 (citation omitted), requiring facts that would "demonstrate some degree of control over the enterprise," *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307–08 (S.D.N.Y. 2010).  It is implausible that Defendants exercise any degree of control over a foreign sovereign.

No Enterprise.  Plaintiffs fail to plead a RICO enterprise, which requires an association-in-fact having "at least three structural features:  (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose." *DNC*, 392 F. Supp. 3d at 439 (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)).  Conclusory allegations that "various individuals and entities have committed acts to further the scheme," without alleging "any facts suggesting hierarchy or organization," are inadequate. *Id.* at 439–40.  Here, Plaintiffs only identify the alleged participants, *see* Compl. ¶ 228, and describe the enterprise by reference to its "pattern of racketeering activity" and "tortious conduct," *id.* ¶¶ 228–29.  A RICO enterprise must be "an entity separate and apart from the . . . activity in which it [allegedly] engages." *United States v. Cain*, 671 F.3d 271, 289 n.7 (2d Cir. 2012) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).  There is no attempt to delineate each Defendant's role in the enterprise, as is required. *See BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 360 (S.D.N.Y. 2014) (dismissing RICO claims where plaintiffs "failed to provide any information whatsoever regarding the [d]efendants' respective roles in the enterprise" and "[e]ach allegation of purported conduct set out in the complaint [was] attributed to 'Defendants' as a group").

### 6.    Plaintiffs Fail to State a Claim for RICO Conspiracy (Count X).

The RICO conspiracy claim should be dismissed for the same reasons it was dismissed in *Muzin*—and Plaintiffs are estopped from arguing otherwise in support of this dependent claim. *See supra* Sections I.B, III.B.5.a.  First, "[d]ismissal of plaintiff's substantive RICO claim . . .

mandates dismissal of the conspiracy to commit RICO claim . . . as well." *Cont'l Petroleum Corp*, 2012 WL 1231775, at *8 (alterations in original) (quoting *Purgess v. Sharrock*, 806 F. Supp. 1102, 1110 n.9 (S.D.N.Y. 1992)). Second, to plead RICO conspiracy, a plaintiff must additionally allege, "as to *each* alleged co-conspirator: (1) an agreement to join the conspiracy; (2) the acts of each co-conspirator in furtherance of the conspiracy; and (3) that the co-conspirator knowingly participated in the same." *Cont'l Petroleum Corp.*, 2012 WL 1231775, at *8 (emphasis added) (citation omitted). Again, group pleading dooms Plaintiffs' claim.

### C.    The Court Should Dismiss Plaintiffs' State Law Claims.

Because Plaintiffs have failed to state any claim for relief under federal law, this Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. *See* 28 U.S.C. § 1367(c); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122–24 (2d Cir. 2006) (abuse of discretion to exercise supplemental jurisdiction over state law claims where "[p]laintiffs' federal-law claims were eliminated on a motion to dismiss . . . and [the Court discerned] no extraordinary inconvenience or inequity occasioned by permitting the claims to be refiled in state court").

In any event, Plaintiffs fail to state a claim under state law.[8]

### 1.    Plaintiffs Fail to State a Claim Under CUTSA (Count V).

Plaintiffs attempt to plead a violation of CUTSA based on the same conclusory allegations lodged in support of their DTSA claim. Because Plaintiffs have not identified "trade secrets" with the specificity required by those statutes, Plaintiffs' claim under CUTSA also fails. *See supra*

---

[8] For purposes of this motion, Defendants do not dispute that California law governs Plaintiffs' state law claims. Thus, the Court need not engage in a choice-of-law analysis. *See Turbon Int'l, Inc. v. Hewlett-Packard Co.*, 769 F. Supp. 2d 262, 266 (S.D.N.Y. 2011) (citation omitted). Moreover, at least with respect to Plaintiffs' common-law conversion and conspiracy claims, there is no actual conflict between New York and California law. *See, e.g.*, *R.B. Dev., Co. v. Tutis Capital LLC*, 2015 WL 10567830, at *3 (E.D.N.Y. Nov. 6, 2015), *R&R adopted by* 2016 WL 1271033 (E.D.N.Y. Mar. 29, 2016).

Section III.B.4; *Space Data Corp. v. X*, 2017 WL 5013363, at *1–2 (N.D. Cal. Feb. 16, 2017)

(applying same analysis to dismiss DTSA and CUTSA claims where plaintiff "merely provide[d]

a high-level overview of [its] purported trade secrets" (citations omitted)).  And even if Plaintiffs

had sufficiently identified trade secrets, the claim would still fail because Plaintiffs do not plead

damages, a required element.  *See Space Data Corp*, 2017 WL 5013363, at *1.[9]

### 2.    Plaintiffs Fail to State a Claim Under CDAFA (Count VI).

As with Plaintiffs' CFAA claim (Count II), Plaintiffs' CDAFA claim fails because the

Complaint is devoid of any factual allegations plausibly alleging "damage" or "loss." *See supra*

Section III.B.2; *hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 999 n.10 (9th Cir. 2019) (noting

that the CDAFA is "California's CFAA analogue"); *see also, e.g.*, *NovelPoster v. Javitch Canfield*

*Grp.*, 140 F. Supp. 3d 938, 948–51 (N.D. Cal. 2014) (granting judgment on the pleadings for both

claims because plaintiffs failed to plead damage or loss with "any specific details") (citation

omitted)); *New Show Studios LLC v. Needle*, 2014 WL 2988271, at *6–7 (C.D. Cal. June 30, 2014).

### 3.    Plaintiffs Fail to State a Claim for Conversion (Count VII).

CUTSA preempts Plaintiffs' common-law conversion claim because both claims are based

on Defendants' alleged misappropriation of Plaintiffs' "confidential business information." *See*

Compl. ¶¶ 185, 212.  "CUTSA provides the exclusive civil remedy for conduct falling within its

terms, so as to supersede other civil remedies 'based upon misappropriation of a trade secret.'"

*Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010) (citation omitted); *see also*

*Erhart v. Bofl Holding, Inc.*, 2020 WL 1550207, at *36–37 (S.D. Cal. Mar. 31, 2020) ("CUTSA

displaces all claims premised on the wrongful taking and use of confidential business and

proprietary information, even if that information does not meet the statutory definition of a trade

---

[9]  The *Muzin* court declined to dismiss the CUTSA claim, but failed to consider what must be pleaded to plausibly allege the existence of a trade secret within these definitional limits.

secret." (citation and quotation marks omitted)); *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011). Here, Plaintiffs' CUTSA and conversion claims are grounded in the same nucleus of facts, *i.e.*, that Defendants allegedly obtained and disseminated Plaintiffs' emails and electronic documents. *See* Compl. ¶¶ 185–86, 191–92, 210–11.

Even if Plaintiffs' conversion claim were not preempted, it fails as a matter of law because Plaintiffs retained access to their credentials, emails, and electronic documents. *See, e.g.*, Compl. ¶¶ 61, 268 (alleging that Defendants only copied Plaintiffs' files and obtained login credentials without Plaintiffs' dispossession). To state a valid conversion claim, a plaintiff must plausibly allege an act of "dominion" over its property to the exclusion of its ownership rights. *United States v. Aurora Las Encinas, LLC*, 2012 WL 12895302, at *10 (C.D. Cal. Sept. 6, 2012) ("Conversion is an act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." (quoting *Weiss v. Marcus*, 51 Cal. App. 3d 590, 599 (1975))). At no point do Plaintiffs allege that they lost access to their electronic documents or credentials, and the law is clear that mere copying does not satisfy the "dominion" requirement of a conversion claim. *See, e.g.*, *Aurora Las Encinas, LLC*, 2012 WL 12895302, at *10–11 (copying documents and disclosing photocopies to the media "legally insufficient" (collecting cases)).[10]

#### 4.   Plaintiffs Fail to State a Claim for Civil Conspiracy (Count VIII).

CUTSA also preempts Plaintiffs' civil conspiracy claim, which also hinges on "the same nucleus of facts as trade secret misappropriation." *Needle*, 2014 WL 2988271, at *10 (citation omitted); *see* Compl. ¶ 216 (alleging that Defendants "misappropriate[ed] Plaintiffs' trade secrets"). Plaintiffs' conspiracy count not only incorporates the allegations in the preceding Counts, including the CUTSA count, but also asserts nearly identical damages as the CUTSA

---

[10]   The *Muzin* court dismissed Plaintiffs' conversion claim on this basis. *See Muzin*, 2020 WL 1536350, at *19.

claim.  *Compare* Compl. ¶ 193 (CUTSA), *with id.* ¶ 219 (conspiracy).  Because the alleged

conspiracy is based on the same facts—and allegedly caused the same damages—as the CUTSA

claim, it is preempted.  *See ATS Products, Inc. v. Champion Fiberglass, Inc.*, 2015 WL 224815, at

*1–2 (N.D. Cal. Jan. 15, 2015) (conspiracy claim preempted by CUTSA).

Even if this claim were not preempted, it should be dismissed.  To state a claim under

California law, a plaintiff must sufficiently allege:  (1) an agreement between two or more parties

to commit an underlying tort; (2) acts in furtherance of that agreement; and (3) damages.  *See*

*Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 881 (N.D. Cal. 2010) (citing *Applied*

*Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 457–58 (Cal. 1994)).  Plaintiffs have failed

to plausibly allege either an underlying tort, *see supra, e.g.*, Sections III.C.1–3, or an agreement

that Defendants acted to further.  *See Accumulage Diagnostics Corp. v. Terarecon, Inc.*, 260 F.

Supp. 2d 941, 948 (N.D. Cal. 2003) (requiring plaintiff to "clearly allege specific action on the

part of each defendant" to enter into an agreement and act in furtherance of that agreement).  By

consistently failing to identify the individual acts of each Defendant, Plaintiffs have doomed their

conspiracy claim.  *See Sporting Supplies Int'l, Inc. v. Tulammo USA, Inc.*, 2011 WL 13135282, at

*4 (C.D. Cal. Jan. 3, 2011) (dismissing conspiracy claim where the plaintiff failed to allege "which

[d]efendants were involved in the various parts of the alleged conspiracy" or "specific actions

taken by each [d]efendant"); *Davenport*, 725 F. Supp. 2d at 881.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated:   New York, New York
         June 12, 2020

GIBSON, DUNN & CRUTCHER LLP


By: */s/ Orin Snyder*⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    Orin Snyder
    Zainab Ahmad
    Paul J. Kremer
    Samantha Weiss

    200 Park Avenue
    New York, NY 10166-0193
    Tel.: (212) 351-4000
    Fax: (212) 351-4035
    osnyder@gibsondunn.com
    zahmad@gibsondunn.com
    pkremer@gibsondunn.com
    sweiss@gibsondunn.com

    *Attorneys for Defendants*

**APPENDIX A**
Bases for Dismissal

<u>As to All Defendants:</u>
- All Defendants have derivative sovereign immunity (Arg. § I.A).
- The case should be dismissed under the prior pending action doctrine (Arg. § I.B).
- The Complaint fails to connect any specific Defendant to any alleged wrongdoing (Arg. § III.A).

<u>As to Defendants Maven, Quantum, and EMEA:</u>
- The Court lacks personal jurisdiction over Maven, Quantum, and EMEA (Arg. § II).

<u>Additional Bases as to Specific Counts:</u>
I   Stored Communications Act ("SCA") (Arg. § III.B.1)
- Plaintiffs do not plead any elements of the claim.
- The SCA does not provide for secondary liability.

II   Computer Fraud and Abuse Act ("CFAA") (Arg. § III.B.2)
- Plaintiffs do not plead "damage or loss" as required by the CFAA.

III   Digital Millennium Copyright Act ("DMCA") (Arg. § III.B.3)
- "Spear-phishing" does not constitute "circumvention" under the DMCA.
- Business plans are not subject to copyright.

IV   Defend Trade Secrets Act ("DTSA") (Arg. § III.B.4)
- Plaintiffs do not "specifically allege" a trade secret.

V   California Uniform Trade Secrets Act ("CUTSA") (Arg. § III.C.1)
- The Court should decline to exercise its supplemental jurisdiction.
- Plaintiffs do not plead a trade secret or damages as required by CUTSA.

VI   California Comprehensive Computer Data Access and Fraud Act ("CDAFA") (Arg. III.C.2)
- The Court should decline to exercise its supplemental jurisdiction.
- Plaintiffs do not plead "damage or loss" as required by CDAFA.

VII   Conversion (Arg. § III.C.3)
- The Court should decline to exercise its supplemental jurisdiction.
- Plaintiffs' claim is preempted by CUTSA.
- "Copying" electronic files does not constitute conversion under state law.

VIII   Civil Conspiracy (Arg. § III.C.4)
- The Court should decline to exercise its supplemental jurisdiction.
- Plaintiffs' claim is preempted by CUTSA.
- Plaintiffs do not plead any underlying torts or agreements.

IX   RICO (Arg. § III.B.5)
- Plaintiffs have not pleaded "pattern" and are estopped from arguing otherwise.
- Plaintiffs lack standing.
- Plaintiffs do not plead specific acts, "operation or management," or "enterprise."

X   RICO Conspiracy (Arg. § III.B.6)
- Plaintiffs' underlying RICO claim fails.
- Plaintiffs do not plead a conspiracy.