UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                              :

ELLIOTT BROIDY and BROIDY CAPITAL  :
MANAGEMENT, LLC,                      :

              Plaintiffs,         :

          - against -         :

GLOBAL RISK ADVISORS LLC,       :
GRA MAVEN LLC,                 :    Case No. 19-cv-11861-MKV
GRA QUANTUM LLC,            :
GLOBAL RISK ADVISORS EMEA LIMITED,  :    **Oral Argument Requested**
GRA RESEARCH LLC,            :
QRYPT, INC.,                   :
KEVIN CHALKER,               :
DENIS MANDICH,               :
ANTONIO GARCIA, and          :
COURTNEY CHALKER,          :

          Defendants.        :

---------------------------------------------------------------x

# DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS
## <u>THE FIRST AMENDED COMPLAINT</u>

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES .................................................................................................... iv

TABLE OF ABBREVIATIONS ............................................................................................... x

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ...................................................................................................................... 2

ARGUMENT ........................................................................................................................... 3

I.     This Action Should Be Dismissed For Lack Of Subject Matter Jurisdiction. ..................... 3

      A.    The GRA Defendants Are Entitled To Sovereign Immunity ....................................... 3

      B.    Plaintiffs' Forum Shopping Violates The Prior Pending Action Doctrine. ................. 6

II.    The Five Foreign Defendants Are Not Subject To Personal Jurisdiction............................ 7

III.   Each Count Should Be Dismissed For Additional Independent Reasons........................... 10

      A.    Plaintiffs Fail To Plead Facts Attributing Misconduct To Any Defendant. ............... 10

      B.    Plaintiffs Fail To State A Claim Under Any Federal Statute....................................... 12

            1.    Plaintiffs Fail to State a Claim Under the SCA (Count I)................................ 12

            2.    Plaintiffs Fail to State a Claim Under the CFAA (Count II). ........................... 13

            3.    Plaintiffs Fail to State a Claim Under the DTSA (Count III). ......................... 13

            4.    Plaintiffs Fail to State a RICO Claim (Count IX)............................................. 15

            5.    Plaintiffs Fail to State a Claim for RICO Conspiracy (Count X). ................... 21

      C.    The Court Should Dismiss Plaintiffs' State Law Claims............................................. 22

            1.    Plaintiffs Fail to State a Claim Under the CUTSA (Count IV). ...................... 22

            2.    Plaintiffs Fail to State a Claim Under the CDAFA (Count V). ....................... 22

            3.    Plaintiffs Fail to State a Claim for Receipt and Possession of Stolen Property (Count VI). ....................................................................................... 23

            4.    Plaintiffs Fail to State a Claim for Civil Conspiracy (Count VII). .................. 23

5.    Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion (Count VIII). ................................................................................................................ 24

CONCLUSION ............................................................................................................................ 25

APPENDIX A ...................................................................................................................... App'x 1

# TABLE OF AUTHORITIES

**Cases**

*Accumulage Diagnostics Corp. v. TeraRecon, Inc.*,
   260 F. Supp. 2d 941 (N.D. Cal. 2003) .................................................................24

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
   2016 WL 748089 (E.D.N.Y. Jan. 7, 2016) ...........................................................16

*Anza v. Ideal Steel Supply Co.*,
   547 U.S. 451 (2006)..............................................................................................20

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
   869 P.2d 454 (Cal. 1994) ......................................................................................24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................... *passim*

*ATS Prod., Inc. v. Champion Fiberglass, Inc.*,
   2015 WL 224815 (N.D. Cal. Jan. 15, 2015)....................................................23, 24

*Atuahene v. City of Hartford*,
   10 F. App'x 33 (2d Cir. 2001) ...............................................................................12

*BCM v. Benomar*,
   944 F.3d 436 (2d Cir. 2019)....................................................................................3

*BCM v. Muzin*,
   No. 19-cv-0150 (DLF), 2020 WL 1536350 (D.D.C. Mar. 31, 2020) ............ *passim*

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................3, 25

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007).................................................................................7, 8

*Boyle v. United States*,
   556 U.S. 938 (2009)...............................................................................................21

*Bristol-Myers Squibb Co. v. Superior Court*,
   137 S. Ct. 1773 (2017)..........................................................................................8, 9

*Butters v. Vance International*,
   225 F.3d 462 (4th Cir. 2000) ...............................................................................4, 5

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
   69 F. Supp. 3d 342 (S.D.N.Y 2014)......................................................................21

*Cave v. E. Meadow Union Free Sch. Dist.*,
    514 F.3d 240 (2d Cir. 2008).................................................................22

*Cline v. Reetz-Laiolo*,
    329 F. Supp. 3d 1000 (N.D. Cal. 2018) ...............................................25

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
    187 F.3d 229 (2d Cir. 1999)................................................................17

*Colliton v. Cravath, Swaine & Moore, L.L.P.*,
    2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008)..............................11, 13

*Colo. River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976).............................................................................6

*Cont'l Petrol. Corp. v. Corp. Funding Partners, LLC*,
    2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012)............................... *passim*

*Corley v. Vance*,
    365 F. Supp. 3d 407 (S.D.N.Y. 2019)....................................................3

*Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*,
    891 F. Supp. 2d 13 (D.D.C. 2012) ......................................................12

*Curtis v. Citibank, N.A.*,
    226 F.3d 133 (2d Cir. 2000)..................................................................6

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)..............................................................................9

*Davenport v. Litton Loan Servicing, LP*,
    725 F. Supp. 2d 862 (N.D. Cal. 2010) ................................................24

*Democratic Nat'l Comm. v. Russian Fed'n*,
    392 F. Supp. 3d 410 (S.D.N.Y. 2019)......................................... *passim*

*E. & J. Gallo Winery v. Instituut Voor Landbouw*,
    2018 WL 2463869 (E.D. Cal. June 1, 2018) .......................................22

*Elsevier Inc. v. Doctor Evidence, LLC*,
    2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) ..................................14, 15

*Elsevier Inc. v. W.H.P.R., Inc.*,
    692 F. Supp. 2d 297 (S.D.N.Y. 2010)..................................................20

*In re Facebook Internet Tracking Litig.*,
    263 F. Supp. 3d 836 (N.D. Cal. 2017) ................................................25

*Fink v. Time Warner Cable*,
    2009 WL 2207920 (S.D.N.Y. July 23, 2009) ........................................................13

*First Cap. Asset Mgmt. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004).....................................................16, 18, 19, 21

*Freeman v. DirecTV, Inc.*,
    457 F.3d 1001 (9th Cir. 2006) ..........................................................12

*Freeney v. Bank of Am. Corp.*,
    2016 WL 5897773 (C.D. Cal. Aug. 4, 2016).......................................23

*Freeplay Music, LLC v. Rigol Techs. USA, Inc.*,
    2020 WL 564232 (S.D.N.Y. Feb. 4, 2020).......................................3, 7, 8

*GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*,
    67 F.3d 463 (2d Cir. 1995)...............................................................16

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011).........................................................................9

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989).......................................................................16

*Heaney v. Gov't of Spain*,
    445 F.2d 501 (2d Cir. 1971)..............................................................4

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    938 F.3d 985 (9th Cir. 2019) ...........................................................23

*Hollander v. Flash Dancers Topless Club*,
    173 F. App'x 15 (2d Cir. 2006) ........................................................20

*Howard v. Klynveld Peat Marwick Goerdeler*,
    977 F. Supp. 654 (S.D.N.Y. 1997).....................................................7

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ................................................25

*In re Terrorist Attacks on Sept. 11, 2001*,
    122 F. Supp. 3d 181 (S.D.N.Y. 2015).................................................4

*Island Intell. Prop., LLC v. StoneCastle Asset Mgmt. LLC*,
    2020 WL 2793000 (S.D.N.Y. May 29, 2020) ....................................14

*Jus Punjabi, LLC v. Get Punjabi Inc.*,
    2015 WL 2400182 (S.D.N.Y. May 20, 2015) ....................................19

*Kolari v. N.Y.-Presbyterian Hosp.*,
455 F.3d 118 (2d Cir. 2006)..................................................................................22

*Leptha Enters., Inc. v. Longenback*,
1991 WL 183373 (S.D.N.Y. Sept. 9, 1991).............................................................7

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006)..................................................................................20

*Lexico Enters., Inc. v. Cumberland Farms, Inc.*,
686 F. Supp. 2d 221 (E.D.N.Y. 2010) ....................................................................6

*Lundy v. Cath. Health Sys.*,
711 F.3d 106 (2d Cir. 2013)..................................................................................19

*Matar v. Dichter*,
563 F.3d 9 (2d Cir. 2009) .......................................................................................4

*Moriah v. Bank of China Ltd.*,
107 F. Supp. 3d 272 (S.D.N.Y. 2015)..................................................................4, 5

*Nat'l Union Fire Ins. Co. v. Archway Ins. Servs. LLC*,
2012 WL 1142285 (S.D.N.Y. Mar. 23, 2012) ...............................................18, 19

*New Show Studios LLC v. Needle*,
2014 WL 2988271 (C.D. Cal. June 30, 2014) .......................................................24

*NLRB v. Thalbo Corp.*,
171 F.3d 102 (2d Cir. 1999)..................................................................................16

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) ...................................................................23

*Ochre LLC v. Rockwell Architecture Plan. & Design, P.C.*,
2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012), *aff'd*, 530 F. App'x 19 (2d Cir.
2013) ...............................................................................................................10, 12

*Oleg Cassini, Inc. v. Serta, Inc.*,
2012 WL 844284 (S.D.N.Y. Mar. 13, 2012) ...........................................................6

*Omari v. Ras Al Khaimah Free Trade Zone Auth.*,
2017 WL 3896399 (S.D.N.Y. Aug. 18, 2017)..........................................................5

*Philpot v. Kos Media, LLC*,
2017 WL 2270248 (S.D.N.Y. Apr. 21, 2017), *R. & R. adopted by* 2017 WL
2269531 (S.D.N.Y. May 23, 2017)...........................................................................9

*Phoenix Ancient Art, S.A. v. J. Paul Getty Trust*,
  2018 WL 1605985 (S.D.N.Y. Mar. 29, 2018) ........................................................................13

*Rajaratnam v. Motley Rice, LLC*,
  --- F. Supp. 3d ----, 2020 WL 1476171 (E.D.N.Y. Mar. 26, 2020) ........................................19

*Ray Larsen Assocs., Inc. v. Nikko Am., Inc.*,
  1996 WL 442799 (S.D.N.Y. Aug. 6, 1996) ............................................................................17

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) .................................................................................................................20

*Roque v. Suntrust Mortg., Inc.*,
  2010 WL 546896 (N.D. Cal. Feb. 10, 2010) ..........................................................................24

*Samantar v. Yousuf*,
  560 U.S. 305 (2010) ............................................................................................................4, 5

*Sathianathan v. Smith Barney, Inc.*,
  2007 WL 576097 (S.D.N.Y. Feb. 21, 2007) ..........................................................................18

*Sedima, S.P.R.L. v. Imrex Co.*,
  473 U.S. 479 (1985) ...........................................................................................................15, 18

*Space Data Corp. v. X*,
  2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) ........................................................................22

*Spool v. World Child Int'l Adoption Agency*,
  520 F.3d 178 (2d Cir. 2008).....................................................................................................17

*Sporting Supplies Int'l, Inc. v. Tulammo USA, Inc.*,
  2011 WL 13135282 (C.D. Cal. Jan. 3, 2011) .........................................................................24

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015).......................................................................................................15

*Tantaros v. Fox News Network, LLC*,
  2018 WL 2731268 (S.D.N.Y. May 18, 2018) ........................................................................11

*Turbon Int'l, Inc. v. Hewlett-Packard Co.*,
  769 F. Supp. 2d 262 (S.D.N.Y. 2011).....................................................................................22

*United States v. Int'l Bhd. of Teamsters*,
  905 F.2d 610 (2d Cir. 1990).....................................................................................................16

*W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*,
  2004 WL 2187069 (S.D.N.Y. Sept. 29, 2004)........................................................................19

*Westchester Cty. Indep. Party v. Astorino*,
    137 F. Supp. 3d 586 (S.D.N.Y. 2015) .................................................................................15

*Ziemba v. Clark*,
    167 F. App'x 831 (2d Cir. 2006) ........................................................................................6

**Statutes**

18 U.S.C. § 1030(g) ...............................................................................................................13

18 U.S.C. § 1831 ...............................................................................................................13, 20

18 U.S.C. § 1832 ...............................................................................................................13, 20

18 U.S.C. § 1836 ...................................................................................................................13

18 U.S.C. § 1839(3) ...............................................................................................................14

18 U.S.C. § 1957 ...................................................................................................................19

18 U.S.C. § 1961(5) ...............................................................................................................18

18 U.S.C. § 1964 ...................................................................................................................15

18 U.S.C. § 1965 .....................................................................................................................6

28 U.S.C. § 1367(c) ...............................................................................................................22

**Rules**

C.P.L.R. 302(a) ...................................................................................................................7, 8

Fed. R. Civ. P. 8(a)(2) ...........................................................................................................12

Fed. R. Civ. P. 9(b) ..........................................................................................................18, 19

Fed. R. Civ. P. 12(b)(6) ...........................................................................................................3

## <u>TABLE OF ABBREVIATIONS</u>

| | |
|---|---|
| BCM | Plaintiff Broidy Capital Management LLC |
| *Benomar* | *Broidy Capital Management LLC et al. v. Benomar*, 7:18-CV-06615-CS (S.D.N.Y. Jul. 23, 2018) |
| Broidy | Plaintiff Elliott Broidy |
| Compl. | Dkt. 1, Complaint filed December 27, 2019 |
| CDAFA | California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502 |
| CFAA | Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* |
| CUTSA | California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 |
| DTSA | Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* |
| EMEA | Defendant Global Risk Advisors EMEA Ltd. |
| FAC | Dkt. 57, First Amended Complaint filed June 26, 2020 (Ex. A) |
| Foreign Defendants | Maven, Research, Quantum, EMEA, and Courtney Chalker |
| FSIA | Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.* |
| Garcia | Defendant Antonio Garcia |
| GRA | Defendant Global Risk Advisors LLC |
| GRA Defendants | Defendants EMEA, GRA, Maven, Qrypt, Quantum, Research, Kevin Chalker, Garcia and Mandich (*i.e.*, all Defendants except Courtney Chalker) |
| Mandich | Defendant Denis Mandich |
| Maven | Defendant GRA Maven LLC |
| *Muzin* | *Broidy Capital Management LLC et al. v. Muzin et al.*, 1:19-CV-00150-DLF (D.D.C. Jan. 24, 2019) |
| Qrypt | Defendant Qrypt, Inc. |
| Quantum | Defendant GRA Quantum LLC |
| Research | Defendant GRA Research LLC |
| RICO | Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* |
| SCA | Stored Communications Act, 18 U.S.C. § 2701 *et seq.* |
| Section 496 | Cal. Penal Code § 496 |
| *State of Qatar* | *Broidy Capital Management LLC et al. v. State of Qatar et al.*, 2:18-CV-02421-JFW (C.D. Cal. Mar. 26, 2018) |

## PRELIMINARY STATEMENT

This action is Elliott Broidy's fourth attempt to use the American courts to wage a public relations campaign against the State of Qatar.  His first two attempts failed for lack of jurisdiction; a third was largely dismissed in March as legally defective, with the few surviving claims on appeal.  Dismissal of this fourth duplicative suit is required on the basis of derivative sovereign immunity and the prior pending action doctrine alone.  This case also fails independently as a matter of law on the merits.

In all four cases he has brought, Broidy accuses Qatar of a coordinated effort to undermine his purported standing in world affairs.  Because that sovereign nation and its public officials are clearly immune from suit, Broidy has instead taken aim at U.S. companies he believes have a connection to Qatar, in this case private cyber-security firms that he alleges covertly assisted Qatar in hacking and distributing his still-undefined "confidential business information."  But this lawsuit, like those that preceded it, is dead on arrival.  Because Broidy alleges that the nine GRA Defendants are all agents of Qatar, they are immune from suit under this District's well-established law.  And because Broidy has already filed three other suits against these Defendants' alleged "co-conspirators," including one still-pending suit that Broidy admits is a "parallel action," FAC ¶ 10, this Court can and should dismiss the Complaint under the prior pending action doctrine.  Finally, because half of the Defendants named here are not even subject to this Court's personal jurisdiction, they should be dismissed on that basis as well.

If the Court does reach the merits of Broidy's conspiracy theories—which it need not do in light of these fatal jurisdictional deficiencies—the Court should dismiss each claim with prejudice.  Broidy has already re-pleaded once, and had several of these same claims dismissed as implausible in the "parallel action," *Muzin*.  He has done nothing to remedy the failings of his prior complaints, despite having taken extensive discovery and having conducted various "forensic

1

investigations."  *See, e.g.*, *id.* ¶ 96.  Broidy's case still boils down to the bare allegation that the "cyberattacks" resulting in the alleged theft of his still-unidentified "trade secrets" originated from IP addresses located in states where various Defendants operate.  *See id.* ¶ 73.  Therefore, Broidy says, one or more Defendants must be the culprit.  Beyond that laughable assertion, the 112-page FAC contains little more than "[t]hreadbare recitals of the causes of action, supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Broidy does not even bother to meaningfully distinguish between the ten Defendants lumped together here—an additional pleading error that is fatal in this Circuit.

If this case is allowed to proceed, it would violate principles of sovereign immunity, exceed this Court's subject matter and personal jurisdiction, and allow Broidy to make an end-run around other federal courts that have already heard (and are still deciding) his case.  Broidy has ample freedom to air his political and personal grievances against Qatar elsewhere; this case should be dismissed, with prejudice, to avoid conscripting this Court into his service.

## BACKGROUND

Since 2018, Broidy has filed four suits alleging that Qatar and its agents conspired to "hack" his "confidential systems, steal his confidential materials, and then give those materials to public relations experts so they could inflict maximum damage."  FAC ¶ 29.  In prior cases, Broidy has sued the State of Qatar itself, the Emir's brother, and a Qatari diplomat (in *State of Qatar*); multiple registered foreign agents of Qatar (in *State of Qatar* and *Muzin*); and Jamal Benomar, a Moroccan diplomat alleged to have been working clandestinely as an agent of Qatar (in *Benomar*).

In this action, Plaintiffs assert a total of ten counts.  Each of these counts was pleaded against the alleged "co-conspirators" in *Muzin*; four counts, including the RICO claims, were dismissed on March 31, 2020.  *Muzin*, Dkt. 51, 2020 WL 1536350.  The remaining counts are on appeal.  Defendants here move to dismiss as set forth below and as summarized in Appendix A.

## <u>ARGUMENT</u>

Plaintiffs must establish that this Court has subject-matter and personal jurisdiction.  *BCM v. Benomar*, 944 F.3d 436, 443 (2d Cir. 2019); *Corley v. Vance*, 365 F. Supp. 3d 407, 430 (S.D.N.Y. 2019).  Plaintiffs "may not rely on conclusory statements without any supporting facts." *Freeplay Music, LLC v. Rigol Techs. USA, Inc.*, 2020 WL 564232, at *2 (S.D.N.Y. Feb. 4, 2020).

Under Rule 12(b)(6), a complaint must be dismissed if it does not contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Claims are not "plausible" if a complaint "pleads facts that are 'merely consistent' with a defendant's liability," and thereby "'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 558).

## I.      This Action Should Be Dismissed for Lack of Subject Matter Jurisdiction.

### A.      The GRA Defendants Are Entitled to Sovereign Immunity.

Throughout the FAC, Plaintiffs describe the GRA Defendants as contractors for the State of Qatar.  *See, e.g.*, FAC ¶ 150 ("Qatar hired Mr. Chalker and GRA to conduct multiple operations. . . ."); *id.* ¶ 161 ("GRA was retained in part to target Qatar's political enemies. . . ."); *id.* ¶¶ 240, 365 (GRA Defendants "misappropriated Plaintiffs' trade secrets intentionally for the benefit of their foreign client, Qatar").  Plaintiffs made similar allegations in the original complaint (*see, e.g.*, Compl. ¶ 261) and in *State of Qatar*.  *See, e.g.*, *State of Qatar*, First Am. Compl. ¶ 31, Dkt. 47, May 24, 2018 (" . . . Qatar engaged the GRA Defendants. . . .").  In *State of Qatar*, Qatar was held to be immune to Plaintiffs' claims, but the court did not reach the issue as to any Defendants here.  Dkt. 198 at 5–12, 14, Aug. 8, 2018, appeal pending, No. 18-56256 (9th Cir. Sept. 24, 2018); Dkt. 212 at 12 & n.3, Aug. 22, 2018.  Under the common-law doctrine of derivative sovereign immunity, however, Plaintiffs' allegations deprive this Court of jurisdiction.

While FSIA governs the immunity of foreign states, individuals who carry out the state's

sovereign acts possess a derivative form of common-law immunity.  *See Samantar v. Yousuf*, 560 U.S. 305, 322 (2010).  Were that not the case, plaintiffs could evade sovereign immunity merely by suing a foreign state's representatives for acts that are attributable to the state.  *See Moriah v. Bank of China Ltd.*, 107 F. Supp. 3d 272, 279 (S.D.N.Y. 2015) (citing *Heaney v. Gov't of Spain*, 445 F.2d 501, 504 (2d Cir. 1971)); *see also Benomar*, Dkt. 61-2 at 44–45, Dec. 21, 2018 ("To allow plaintiffs to sue Benomar would be to allow a suit for conduct that plaintiffs claim was actually committed by the sovereign or that Benomar committed at the sovereign's direction and on the sovereign's behalf.").  As the Fourth Circuit held in *Butters v. Vance International*, 225 F.3d 462, 466 (4th Cir. 2000), "[a]ll sovereigns need flexibility to hire private agents to aid them in conducting their governmental functions."  That is why "[i]t is 'well-settled law'" in this District that "'contractors and common law agents acting within the scope of their employment . . . have derivative sovereign immunity.'"  *Moriah*, 107 F. Supp. 3d at 277 (second alteration in original) (quoting *Butters*, 225 F.3d at 466).  This immunity "extends beyond current and former government officials to individuals acting as an agent for the government."  *Id.*; *see also Matar v. Dichter*, 563 F.3d 9, 14 (2d Cir. 2009) ("An immunity based on acts—rather than status—does not depend on tenure in office.").

The GRA Defendants qualify for derivative sovereign immunity because Plaintiffs allege conduct undertaken on behalf of a foreign state.  "The State Department has consistently recommended conduct-based sovereign immunity [for officials] when (1) the foreign state requests it and (2) the defendant acted in his official capacity on behalf of a recognized foreign government."  *In re Terrorist Attacks on Sept. 11, 2001*, 122 F. Supp. 3d 181, 188 (S.D.N.Y. 2015).  Where, as here, the State Department has not been asked to issue a suggestion of immunity (which is unsurprising given that Broidy's claims allege clandestine conduct), courts look to the second

prong alone, *i.e.*, whether the defendant acted in a state-sanctioned capacity.  *See Omari v. Ras Al Khaimah Free Trade Zone Auth.*, 2017 WL 3896399, at *10 (S.D.N.Y. Aug. 18, 2017) (dismissing complaint where unlawful rendition was allegedly "undertaken through . . . official channels and on behalf of the [foreign state], presumptively in furtherance of its enforcement of its laws").[1] Because Plaintiffs allege that the GRA Defendants acted on behalf of Qatar in pursuit of its sovereign foreign policy, they are entitled to immunity.

Another judge in this District has already rejected Plaintiffs' arguments to the contrary.  In *Benomar*, Judge Seibel dismissed Plaintiffs' claims because Benomar was a Moroccan diplomat, Dkt. 61-2 at 20–41, 46–48, but separately recognized that the complaint would "likely" be dismissed "[b]ecause plaintiffs' own allegations suggest that he [Benomar] acted on behalf of a foreign state [Qatar] and that his conduct is attributable to it," *id.* at 44–45.  The same logic applies here.  Like Benomar, the GRA Defendants are not Qatari public officials, but they are still entitled to derivative sovereign immunity for the acts they allegedly undertook on behalf of Qatar.

There can be no dispute that the GRA Defendants are alleged to be "contractors [or] common law agents acting within the scope of their employment."  *Moriah*, 107 F. Supp. 3d at 277 (quoting *Butters*, 225 F.3d at 466).  The FAC consistently alleges that the GRA Defendants are private contractors who, in the direct course of their employment by Qatar, engaged in the activities giving rise to the claimed harms.  Plaintiffs never allege that Defendants acted to further any interests independent of Qatar's or outside the scope of their duties to Qatar.  To the contrary, Plaintiffs allege that the GRA Defendants "work[ed] directly with Qatar's Special Forces and intelligence collection agencies."  FAC ¶¶ 168, 392.

---

[1]  If the State Department does not make a recommendation regarding immunity, the Court "ha[s] authority to decide for itself whether all the requisites for such immunity exists."  *Samantar*, 560 U.S. at 311–12 (citation omitted).

### B.   Plaintiffs' Forum Shopping Violates the Prior Pending Action Doctrine.

RICO provides for nationwide service of process and personal jurisdiction for related claims.  *See* 18 U.S.C. § 1965(b), (d).  Thus, each of Plaintiffs' claims against the GRA Defendants should have been brought as part of the earlier-filed *Muzin* case.  Instead, Plaintiffs waited to file a second, admittedly "parallel" action in this Court, FAC ¶¶ 10, 52, splitting claims that they previously admitted "share[] a common nucleus of operative facts," Compl. ¶ 127.[2]  Plaintiffs now seek an inconsistent ruling from this Court on RICO and their other previously dismissed claims.  Because such gamesmanship violates the prior pending action doctrine and constitutes improper claim-splitting, this later-filed case must be dismissed.[3]

While the Court should "consider the equities of the situation when exercising its discretion," *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000), the "general principle is to avoid duplicative litigation," *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *see also Oleg Cassini, Inc. v. Serta, Inc.*, 2012 WL 844284, at *3 (S.D.N.Y. Mar. 13, 2012) ("Because parties 'should be free from the vexation of concurrent litigation over the same subject matter,' there is a strong presumption that a later lawsuit will be dismissed in favor of the first-filed lawsuit." (citation omitted)).  Dismissal of the second action is warranted where, as here, "the same or connected transactions are at issue and the same proof is needed to support the claims in both suits." *Lexico Enters., Inc. v. Cumberland Farms, Inc.*, 686 F. Supp. 2d 221, 224 (E.D.N.Y. 2010) (quoting *Curtis*, 226 F.3d at 139); *see also Ziemba*, 167 F. App'x at 832.

Plaintiffs have confirmed that this case and *Muzin* require the same order of proof.  *See*

---

[2]  Plaintiffs have removed this gratuitous admission from the FAC, but there can be no dispute that Plaintiffs are advancing the same conspiracy theory here as they are in *Muzin*.  *See, e.g.*, FAC ¶ 54 ("The PR strategist members of the Qatari-Funded Criminal Enterprise include, among others, Nicholas Muzin . . . .").

[3]  Courts in this Circuit equate the prior pending action doctrine with the rule against claim-splitting.  Both prohibit exactly what Plaintiffs attempt here:  taking a second bite at the apple by filing a duplicative lawsuit.  *See, e.g.*, *Ziemba v. Clark*, 167 F. App'x 831, 832 (2d Cir. 2006).

Dkt. 43 at 3, June 3, 2020 ("[G]iven that the two cases involve substantial factual overlap, it is unremarkable that some discovery here may also be relevant in the other case."). Indeed, they allege more than once that *Muzin* is a "parallel" suit, FAC ¶¶ 10, 52, and that Defendants here and the defendants in *Muzin* are "co-conspirators" for all of the most salient allegations. *See, e.g.*, *id.* ¶¶ 314–15. Courts regularly dismiss later-filed actions where plaintiffs hedge their bets by bringing a separate action against additional alleged "co-conspirators." *See Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 664 (S.D.N.Y. 1997) (dismissing action asserting "virtually identical" claims but naming additional defendants); *Leptha Enters., Inc. v. Longenback*, 1991 WL 183373, at *2 (S.D.N.Y. Sept. 9, 1991) (dismissing RICO claims as barred by a prior pending action that named previously unnamed defendants as co-conspirators).

The equities weigh in favor of dismissal here. Plaintiffs *chose* to split their claims against the GRA Defendants and the *Muzin* defendants, and now insist on proceeding with both cases simultaneously even though several claims here have already been dismissed in *Muzin*. This is a flagrant violation of the prior pending action doctrine and the rule against claim-splitting.

## II.     The Five Foreign Defendants Are Not Subject to Personal Jurisdiction.

Because Plaintiffs' RICO claims are subject to immediate dismissal (*see supra* Section I; *infra* Sections III.A, III.B.4–5), RICO cannot provide a basis for personal jurisdiction for the other counts here. Accordingly, the Court should dismiss all of Plaintiffs' claims against Maven, Research, Quantum, and EMEA. The Court should also dismiss Plaintiffs' claims against Courtney Chalker irrespective of the its RICO analysis, as he is not accused of RICO violations.

To determine whether personal jurisdiction exists, the Court first looks to New York's long-arm statute, C.P.L.R. 302(a). *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 243–44 (2d Cir. 2007); *Freeplay Music, LLC*, 2020 WL 564232, at *2. If no provision allows for jurisdiction, the case must be dismissed. If the statute allows for jurisdiction, the court must then determine

"whether personal jurisdiction comports with the Due Process Clause." *Freeplay Music*, at 2020 WL 564232, at *2 (citation omitted).  Under this two-part test, no Foreign Defendant is subject to personal jurisdiction.

Long-Arm Statute.  First, Plaintiffs make no allegations regarding Courtney Chalker's business or residency.  He should be dismissed on that basis.  Second, Plaintiffs allege only that Maven and Quantum both "maintain[] an office" in New York, FAC ¶¶ 25, 27, and that Quantum, EMEA, and Research "regularly conduct[] business" in New York, *id.* ¶ 25.  These allegations are insufficient under C.P.L.R. 302(a).

C.P.L.R. 302(a)*(1)* requires a "*substantial* relationship" between some in-state business conducted by the defendant and the claims asserted.  *Best Van Lines*, 490 F.3d at 246 (emphasis added) (citation omitted); *see also id.* at 249 ("merely coincidental" connection "insufficient to support jurisdiction" (citation omitted)).  Here, Plaintiffs do not allege *any* relationship—let alone a *substantial* one—between the alleged "hacking" activities and the Foreign Defendants' New York operations.  Likewise, Plaintiffs do not allege any "tortious act[s] within the state," as would be required for jurisdiction under C.P.L.R. 302(a)*(2)*.  Finally, although Plaintiffs allege in a conclusory manner that certain Defendants "regularly" conduct business in New York under C.P.L.R. 302(a)*(3)*, Plaintiffs do not allege that those Defendants caused any "injury to person or property *within the state*," another requirement of that section.

Due Process Clause.  The Due Process Clause prohibits the exercise of personal jurisdiction unless either (1) the defendant is "at home" in the forum State or (2) the lawsuit "arise[s] out of or relate[s] to the defendant's contacts with the forum."  *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (alteration and citation omitted).

Again, Courtney Chalker is not alleged to reside in New York.  *See* FAC ¶ 25.  Meanwhile,

the corporate Foreign Defendants would be subject to jurisdiction only if their "affiliations" with the forum state were "so continuous and systematic as to render them essentially at home" there. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citation and internal quotation marks omitted); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (holding that corporation is "at home" where it is incorporated and in its principal place of business). But none of them is alleged to be incorporated or headquartered in New York. *See* FAC ¶¶ 18–19, 25.

To establish specific jurisdiction instead, (1) "the defendant must have . . . purposefully avail[ed] itself of the privilege of conducting activities within the forum state . . . [or] directed its conduct into the forum State"; (2) "the plaintiff's claim must arise out of or relate to the defendant's forum conduct"; and (3) "the exercise of jurisdiction must be reasonable under the circumstances." *Bristol-Myers*, 137 S. Ct. at 1785–86 (citations and internal quotation marks omitted). "[G]eneral connections with the forum state," as alleged here, "are not enough." *Id.* at 1781. Here, only *three* of the 415 paragraphs in the FAC concern conduct in New York—specifically, the use of an "IP address located at a restaurant and event space in [ ] Harlem," the "physical[]" destruction of "electronic evidence" in New York, and a "celebrat[ion]" in New York City. *See* FAC ¶¶ 98, 72, 75. None of these allegations comes close to supporting jurisdiction.

*First*, Plaintiffs do not plead any facts showing that the Harlem IP address was connected to any Foreign Defendant. Even if they had, exercising personal jurisdiction based on the location of an IP address alone would be plainly unreasonable. To do so would subject countless entities to this Court's jurisdiction whenever they access an IP address in New York, regardless of their physical location, the nature of the use, or whether any actions are directed towards this forum. *Cf. Philpot v. Kos Media, LLC*, 2017 WL 2270248, at *7, *10–11 (S.D.N.Y. Apr. 21, 2017) ("New York IP address" "[was] not enough" for personal jurisdiction), *R. & R. adopted by* 2017 WL

2269531 (S.D.N.Y. May 23, 2017).

*Second*, Plaintiffs' allegation suggesting the spoliation of evidence is as unhelpful for jurisdictional purposes as it is spurious. *See* FAC ¶ 72. As a matter of law, "'acts of concealment done after the[ ] central objectives [of the conspiracy] have been attained, for the purpose of covering up after the crime,' are not considered part of the conspiracy." *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 444 (S.D.N.Y. 2019) [hereinafter "*DNC*"] (alterations in original) (citation omitted). As a result, Plaintiffs' claims against the Foreign Defendants do not "arise out of or relate" to this alleged conduct in New York, and such an allegation cannot form the basis for personal jurisdiction.

*Third*, Plaintiffs falsely allege that Defendant Kevin Chalker "celebrated the launch of the spear phishing campaign" in New York. FAC ¶ 75. This is not an allegation of tortious conduct, and it has nothing to do with any of the Foreign Defendants. Plaintiffs' claims against the five Foreign Defendants should therefore be dismissed.

## III.   Each Count Should Be Dismissed for Additional Independent Reasons.

### A.   Plaintiffs Fail to Plead Facts Attributing Misconduct to Any Defendant.

The FAC suffers from two pleading errors that require dismissal of each and every count. First, Plaintiffs fail to make any allegations plausibly tying Defendants to the claimed wrongdoing. *Cf. Iqbal*, 556 U.S. at 678. Second, Plaintiffs impermissibly lump all ten Defendants together, without specifying the wrongful conduct attributed to each Defendant. *See Ochre LLC v. Rockwell Architecture Plan. & Design, P.C.*, 2012 WL 6082387, at *6–7 (S.D.N.Y. Dec. 3, 2012) (dismissing with prejudice for failure to specify which defendants engaged in infringing activities), *aff'd*, 530 F. App'x 19 (2d Cir. 2013).

Plaintiffs repeatedly allege that the GRA Defendants' "cyberattacks" gave rise to each of Plaintiffs' ten claims, *e.g.*, FAC ¶¶ 20, 42, 106, 160, but Plaintiffs never actually connect

Defendants to these attacks.  Plaintiffs base their claims against Defendants entirely on the pedestrian observation that some Defendants operate in the same U.S. states as IP addresses that Plaintiffs associate with the hacks.  *See, e.g.*, *id.* ¶ 98 ("Additionally, hackers accessed the Gmail account of Mr. Broidy's Executive Assistant from an IP address located at a restaurant and event space in the Harlem area of New York City on January 14, 2018."); *id.* ¶ 388 (alleging that Maven and GRA employees were located "roughly an hour's drive" away from another IP address).  But proximity to an IP address alone is insufficient to demonstrate an individual's or corporation's physical location.  And even if some Defendants were located in the vicinity of the internet access points at issue, Plaintiffs do not plausibly allege that any Defendant actually used them.[4]

The court rejected Plaintiffs' theory in *State of Qatar*.  *See* Dkt. 37 at 3 (Plaintiffs' evidence of "IP addresses registered to physical locations in . . . Doha, Qatar . . . failed to demonstrate . . . that the computer (or the individual doing the hacking) had any relationship with the government of Qatar.").  And similarly vague insinuations have fared no better in this District.  *See, e.g.*, *DNC*, 392 F. Supp. 3d at 433, 438 ("connections and communications between the defendants and [ ] people loosely connected to the Russian Federation" failed to "show plausibly that any of the defendants, other than the Russia[n] Federation, had any role in hacking"); *Tantaros v. Fox News Network, LLC*, 2018 WL 2731268, at *8 (S.D.N.Y. May 18, 2018) (plaintiff "fail[ed] to plead *any* facts connecting . . . any Defendant . . . to [the] . . . account that allegedly harassed [p]laintiff").

Furthermore, even if Plaintiffs had tied one or more Defendants to any act of wrongdoing, that would not justify group pleading against all ten Defendants.  "Where a complaint names

---

[4]  Plaintiffs initially pleaded too much, admitting that the "Harlem" IP address was "registered" to an unaffiliated non-party.  Compl. ¶ 48.  They removed this self-defeating allegation from the FAC, but the Court need not accept the edit.  "Where a plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss . . . [and] directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true."  *Colliton v. Cravath, Swaine & Moore, L.L.P.*, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) (alterations in original) (citation and internal quotation marks omitted).

multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants." *Ochre*, 2012 WL 6082387, at *6. Plaintiffs "cannot merely 'lump[ ] all the defendants together in each claim'" and "force the various defendants to guess at the nature of [plaintiffs'] claims." *Id.* at *6, *7 (first alteration in original) (quoting *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)).

Each non-RICO count in the FAC seeks relief from at least nine Defendants collectively, without distinguishing between individual Defendants. *See, e.g.*, FAC ¶ 200 ("The GRA Defendants willfully and intentionally accessed . . . BCM's computer systems. . . ."). These allegations force Defendants to guess which Defendant is alleged to have engaged in which alleged acts of misconduct—a clear violation of Rule 8. *See* Fed. R. Civ. P. 8(a)(2); *Atuahene*, 10 F. App'x at 34. Although Plaintiffs purport to distinguish between the nine GRA Defendants within the RICO counts, *see* FAC ¶¶ 370–400, there remain dozens of allegations even in those counts that are directed simply to "the GRA Defendants." *See, e.g.*, FAC ¶¶ 318, 326, 328, 331, 339.

### B.   Plaintiffs Fail to State a Claim Under Any Federal Statute.

#### 1.   Plaintiffs Fail to State a Claim Under the SCA (Count I).

It is well established that there is no secondary liability under the SCA. *See Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1005–06 (9th Cir. 2006) (rejecting "argument that secondary liability should be imposed" under the SCA); *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 26 (D.D.C. 2012) (rejecting assertion that the SCA countenances liability where a defendant "conspire[s] with" others). But Plaintiffs allege that "contractors," *id.* ¶ 73; "subcontractors," *id.* ¶ 290; or other "hackers" or "cyber-firms," *e.g.*, *id.* ¶¶ 386, 388, 389—not any Defendant—actually conducted the hacks.[5] Plaintiffs' wholly

---

[5] Plaintiffs also previously alleged that Defendants "*directed* the activities of cyber mercenaries" and "*coordinated* . . . the execution of spear phishing emails." Compl. ¶¶ 33–34 (emphases added). To the extent that

conclusory legal statement that "Defendants are directly liable" should be disregarded, because Plaintiffs have not even attempted to name any Defendant who acted directly.  FAC ¶ 199; *see Iqbal*, 556 U.S. at 678–79; *see also supra* Section III.A.  Moreover, because the *Muzin* court dismissed Plaintiffs' SCA claims on this same legal basis, Plaintiffs are collaterally estopped from arguing this point.  *See Muzin*, 2020 WL 1536350, at *11; *see also infra* Section III.B.4.a.

### 2.  Plaintiffs Fail to State a Claim Under the CFAA (Count II).

Plaintiffs fail to plausibly allege that any Defendant "knowingly accessed a computer without authorization or exceeding authorization and thereby obtain[ed] . . . information from any protected computer."  18 U.S.C. § 1030(g).  Instead, Plaintiffs rely on boilerplate allegations.  *See* FAC ¶¶ 216–19, 223–24 (alleging only that "GRA Defendants" violated the CFAA).  Such boilerplate—in a group pleading or otherwise—is insufficient.  *See Fink v. Time Warner Cable*, 2009 WL 2207920, at *4 (S.D.N.Y. July 23, 2009) (dismissing CFAA claim that "merely parrot[ed] the statutory language" (citing *Iqbal*, 559 U.S. at 678)).[6]

### 3.  Plaintiffs Fail to State a Claim Under the DTSA (Count III).

Plaintiffs' DTSA claim under 18 U.S.C. § 1836 should be dismissed because Plaintiffs have failed to plead any trade secrets.[7]  Under the DTSA, "a plaintiff must plausibly allege that . . . it possessed a trade secret," defined as:

> any form of financial or business information, "including patterns, plans[,] . . . methods, techniques, process, [and] procedures . . . [that] (A) the owner thereof has taken reasonable measures to keep . . . secret; and (B) . . . derives independent economic value, actual or potential, from not being generally known."

---

Plaintiffs are now repudiating their initial allegations to circumvent the bar on secondary liability, the Court should reject such gamesmanship.  *See Colliton*, 2008 WL 4386764, at *6.

[6]  The *Muzin* court declined to dismiss Plaintiffs' CFAA claims, but did not address any case law concerning what must be pleaded.  *See Muzin*, 2020 WL 1536350, at *12.

[7]  Sections 1831 and 1832 of the DTSA do not confer a private right of action.  *See* FAC ¶¶ 226–229, 247; *Phoenix Ancient Art, S.A. v. J. Paul Getty Trust*, 2018 WL 1605985, at *9 (S.D.N.Y. Mar. 29, 2018).

*DNC*, 392 F. Supp. 3d at 447–48 (alterations in original) (quoting 18 U.S.C. § 1839(3)(A)–(B)). A plaintiff "must put forth specific allegations as to the information owned and its value." *Id.* (quoting *Elsevier Inc. v. Doctor Evidence, LLC*, 2018 WL 557906, at *4 (S.D.N.Y. Jan. 23, 2018)); *Island Intell. Prop., LLC v. StoneCastle Asset Mgmt. LLC*, 2020 WL 2793000, at *7 (S.D.N.Y. May 29, 2020) (the complaint must provide, "in at least some identifying detail, the trade secret [the defendant] is alleged to have misappropriated"). "[E]xtremely general" allegations are routinely dismissed. *See, e.g.*, *Island Intell. Prop., LLC*, 2020 WL 2793000, at *7 (dismissing claim based on "certain proprietary, secret and confidential information relating to cash management and money regulation systems and . . . to the implementation of [ ] inventions" (internal quotation marks omitted)).

Here, Plaintiffs allege only that BCM's computer systems and email servers contained broad categories of information, including "highly confidential business plans and proposals; . . . cost proposals and service projections; information concerning business strategies and opportunities; and contacts for important business relationships." *See, e.g.*, FAC ¶ 231; *cf. Island Intell. Prop.*, 2020 WL 2793000, at *7. But the mere fact that something is labeled "confidential" does not convert run-of-the-mill business information into material that "derives independent economic value . . . from not being generally known." 18 U.S.C. § 1839(3)(B).

Similar cases show how Plaintiffs have utterly failed to describe what makes their information worthy of trade secret protection. In *DNC*, 392 F. Supp. 3d at 448, the court dismissed a DTSA claim based on allegations that a defendant published the plaintiff's "donor lists" and "fundraising strategies," because the plaintiff failed to plead "anything about the process" of developing the materials or "how their particular value derive[d] from their secrecy." In *Elsevier*, 2018 WL 557906, at *5–7, the court dismissed a claim alleging that the plaintiff's "clinical

methods," "data configuration protocols," "interpretation of data," and "processes," among other categories, constituted trade secrets, because the plaintiff failed to plead "the information's value, the extent to which it [was] known by [others], the amount of effort or money spent to develop the information, and the ease with which the information could [have] be[en] acquired or developed by outsiders."  Absent these basic allegations, the complaint did not even "come close to . . . support[ing] trade secret status."  *Id.* at *5.  Plaintiffs' threadbare argument for trade secrecy here— that the information was "confidential"—should fail for the same reasons.[8]

### 4. Plaintiffs Fail to State a RICO Claim (Count IX).

To even have standing to bring a RICO claim, a plaintiff must plausibly allege (1) "injury to his or her business or property" (2) "caused 'by reason of the substantive RICO violation.'" *Westchester Cty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 612 (S.D.N.Y. 2015) (quoting *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 91 (2d Cir. 2015)); 18 U.S.C. § 1964.  Then, the plaintiff must show:  "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

Because the *Muzin* court dismissed Plaintiffs' same RICO claims for failure to plead the third merits element (a continuous pattern of racketeering activity), *Muzin*, 2020 WL 1536350, at *11, that element is addressed first below.

### a. Plaintiffs Cannot Plead a "Pattern of Racketeering Activity" and Are Collaterally Estopped From Arguing Otherwise.

Collateral estoppel bars a plaintiff from re-litigating such a judgment where:

> (1) [T]he issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and [ ] decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue . . . was necessary to support a valid and final judgment on

---

[8]  In declining to dismiss Plaintiffs' DTSA claim, the *Muzin* court relied upon Wisconsin and California district court decisions that do not bind this Court.  *See Muzin*, 2020 WL 1536350, at *12.

the merits.

*NLRB v. Thalbo Corp.*, 171 F.3d 102, 109 (2d Cir. 1999).

The four requirements are met here.  First, as Plaintiffs concede, their RICO claims in this case and *Muzin* "overlap substantially."  Compl. ¶ 127; *see also* FAC ¶ 10 (describing *Muzin* as a "parallel action").  Second, the *Muzin* defendants specifically raised Plaintiffs' failure to allege pattern in their motion to dismiss, and the court adopted it as the basis for dismissal.  *See Muzin* Dkt. 40-1, 41-1, 45; *Muzin*, 2020 WL 1536350, at *11.  Third, Plaintiffs had ample opportunity to litigate the issue through a full round of briefing and an amended pleading.  *See id.* at *1.  Finally, this issue was the reason for dismissal of the RICO claims.  *See id.* at *11.[9]

Even if collateral estoppel did not apply, Plaintiffs' claim would still be subject to dismissal for the same reasons articulated in *Muzin*.  To plead a RICO "pattern," a plaintiff must allege at least two predicate acts within a ten-year period, *see infra* p.18–19, that "the predicate acts are related[,] and that they amount to, or pose a threat of, *continuing* criminal activity."  *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 465 (2d Cir. 1995) (emphasis added) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).  To satisfy this "'continuity' requirement," *id.*, "a plaintiff 'must allege either an **open-ended** pattern of racketeering activity (*i.e.*, past criminal conduct coupled with an adequately pled threat of future criminal conduct) or a **closed-ended** pattern of racketeering activity (*i.e.*, past criminal conduct extending over a substantial period of time),'" *Cont'l Petrol. Corp. v. Corp. Funding Partners, LLC*, 2012 WL 1231775, at *7 (S.D.N.Y. Apr. 12, 2012) (emphases added) (quoting *First Cap. Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004)).  Plaintiffs do not plausibly allege either type of pattern; instead, they

---

[9]  That an appeal is pending in *Muzin* has no bearing on the judgment's finality.  *See United States v. Int'l Bhd. of Teamsters*, 905 F.2d 610, 621 (2d Cir. 1990); *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 2016 WL 748089, at *5 (E.D.N.Y. Jan. 7, 2016).

allege a one-time scheme to hack and distribute Plaintiffs' confidential information.

No Open-Ended Scheme.  To plead open-ended continuity, the plaintiff must put forth specific allegations "show[ing] that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999).  The FAC alleges only a "one time racket," not an open-ended scheme, because "[t]he alleged hacking already has happened, and the stories that were meant to silence Broidy already have been published."  *Muzin*, 2020 WL 1536350, at *9 (citation omitted); *see also* FAC ¶ 324 (alleged scheme was the "2017-18 hacking of Mr. Broidy").

Plaintiffs nonetheless try to manufacture open-endedness by reference to irrelevant articles that do not even mention Broidy or BCM.  *See, e.g.*, *id.* ¶ 49 n.6; *id.* ¶¶ 326–29 (alleging that GRA Defendants targeted FIFA Executive Committee members to ensure Qatar's status as host of the 2022 World Cup).  But the *pertinent* acts alleged in the FAC—those that concern *Broidy*—all ended nearly two years ago.  *See, e.g.*, *id.* ¶¶ 119, 322; *cf. Ray Larsen Assocs., Inc. v. Nikko Am., Inc.*, 1996 WL 442799, at *7 (S.D.N.Y. Aug. 6, 1996) (noting that "acts . . . unrelated to the predicate acts which allegedly injured *plaintiff* . . . c[ould] not be considered as part of the activity to extend the scope of the 'pattern,'" and dismissing RICO claim (emphasis added)).

No Closed-Ended Scheme.  The *Muzin* court also concluded that Plaintiffs failed to allege closed-ended continuity, because "the alleged scheme had a single goal, targeted only a few victims, and took just five months from start to finish."  *Muzin*, 2020 WL 1536350, at *10.  To establish a closed-ended scheme, "a plaintiff must demonstrate that the activity involves predicate acts extending over a substantial period of time."  *Cont'l Petrol. Corp.*, 2012 WL 1231775, at *7 (citation and quotation marks omitted); *see also Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008) ("[T]he duration of a pattern of racketeering activity is measured by

the RICO predicate acts." (citation omitted)).   In this Circuit, "two years is 'the *minimum* duration necessary to find closed ended-continuity.'"   *Cont'l Petrol. Corp.*, 2012 WL 1231775, at *7 (quoting *First Cap.*, 385 F.3d at 181) (emphasis in original).   Here, the first alleged predicate act that targeted Plaintiffs is the phishing email sent to Broidy's spouse on December 27, 2017, FAC ¶ 75, and the alleged racketeering, at most, "ended in late 2018," less than one year later, *id.* ¶ 322; *see also id.* ¶ 119 (alleging that articles "based on the contents of Mr. Broidy's hacked emails" were published just months after the first alleged act, "in March and May, 2018").

    That should be the end of the analysis.   Plaintiffs' attempt to expand the number of victims (and thus the timeline) by pointing to unrelated third parties, *e.g.*, *id.* ¶¶ 326–27, 331, does nothing to save their claim.   Plaintiffs' speculation that "Qatar[] and . . . GRA[] were likely involved" in wire fraud "targeting over 1,000 people and entities," *id.* ¶ 324, must be disregarded because it lacks the particularity required by Rule 9(b).   *See infra* p.19; *Muzin*, 2020 WL 1536350, at *10 (Broidy's allusion to thousands of victims of wire fraud insufficient for closed-ended continuity); *see also Sathianathan v. Smith Barney, Inc.*, 2007 WL 576097, at *4 (S.D.N.Y. Feb. 21, 2007) (no cognizable pattern where plaintiff "refer[red] to predicate acts against other victims").   Disregarding these irrelevant and insufficiently pleaded allegations, *e.g.*, FAC ¶¶ 327, 331, Plaintiffs are left with only a single scheme "to silence and neutralize Mr. Broidy," FAC ¶ 160, which the *Muzin* court correctly found insufficient.   *See Muzin*, 2020 WL 1536350, at *10–11.

    <u>No Racketeering Activity</u>.   Plaintiffs also fail to adequately allege any racketeering acts, much less a "pattern" of them.   To state a valid RICO claim, a plaintiff must allege that *each* defendant caused the plaintiff harm, through at least *two* predicate acts of racketeering activity committed by each such defendant within the last 10 years, 18 U.S.C. § 1961(5)—and even two acts for each defendant "may not be sufficient."   *Sedima*, 473 U.S. at 496 n.14; *see also Nat'l*

18

*Union Fire Ins. Co. v. Archway Ins. Servs. LLC*, 2012 WL 1142285, at \*5 (S.D.N.Y. Mar. 23, 2012) ("In a RICO case with more than one defendant, it is necessary for a plaintiff to particularize and prove each defendant's participation in the fraud and each defendant's enactment of the two necessary predicate acts." (citation and internal quotation marks omitted)). Here, Plaintiffs have not even pleaded a single predicate act—let alone several for each individual GRA Defendant.

*First*, Plaintiffs do not even attempt to meet Rule 9(b)'s standard for pleading wire fraud. *See First Cap.*, 385 F.3d at 178 ("[A]ll allegations of fraudulent predicate acts[] are subject to the heightened pleading requirements of [Rule] 9(b)."). Plaintiffs needed to "adequately specify the statements [they] claim[ ] were false or misleading," "give particulars as to the respect in which plaintiff[s] contend[ ] the statements were fraudulent," "state when and where the statements were made," and "identify those responsible for the statements." *Jus Punjabi, LLC v. Get Punjabi Inc.*, 2015 WL 2400182, at \*5 (S.D.N.Y. May 20, 2015) (alterations in original) (quoting *Lundy v. Cath. Health Sys.*, 711 F.3d 106, 119 (2d Cir. 2013)). They did none of that. *See* FAC ¶¶ 329, 334, 343 (alleging only that "GRA Defendants" committed "acts of wire fraud").

*Second*, Plaintiffs fail to plead money laundering under 18 U.S.C. § 1957, which "outlaws monetary transactions in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity." *Rajaratnam v. Motley Rice, LLC*, --- F. Supp. 3d ----, 2020 WL 1476171, at \*18 (E.D.N.Y. Mar. 26, 2020) (citing 18 U.S.C. § 1957). As an initial matter, money laundering cannot be a predicate act unless the underlying crime (*i.e.*, the "specified unlawful activity") is also adequately pleaded, and Plaintiffs have failed to state a claim for wire fraud as described *supra*. *See W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*, 2004 WL 2187069, at \*9–10 (S.D.N.Y. Sept. 29, 2004). Moreover, because Plaintiffs do not describe

the material allegedly stolen from them, any claim that the "criminally derived property" is worth more than $10,000 is sheer speculation.

*Third*, Plaintiffs' trade secrets claims under RICO fare no better than their independent DTSA claim.  *See supra* Section III.B.3; *see also DNC*, 392 F. Supp. 3d at 442–43 (noting that 18 U.S.C. §§ 1831 and 1832 "guard against the same types of threats to trade secrets," and dismissing RICO claims based on both sections together (citation omitted)).

### b.      Plaintiffs Also Lack Standing to Assert a RICO Claim.

Plaintiffs have failed to allege that Defendants' predicate acts caused any cognizable injuries.  RICO standing requires both proximate and but-for causation of a concrete injury.  *See Anza v. Ideal Steel Supply Co.*, 547 U.S. 451, 457, 461 (2006); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283–84 (2d Cir. 2006).  Here, Plaintiffs claim losses that were allegedly caused by Plaintiffs' *response* to the alleged racketeering, *e.g.*, "investigating the hacking, taking remedial measures in response to the hacking, and responding to . . . media inquiries."  FAC ¶ 402.  The Second Circuit does not recognize "alleged injuries" that are "proximately caused not by the alleged racketeering violations, but by the public exposure of those activities or their discovery by the victim and the consequences of that exposure or discovery."  *Hollander v. Flash Dancers Topless Club*, 173 F. App'x 15, 17–19 (2d Cir. 2006).

### c.      The RICO Counts Suffer From Other Additional Defects.

<u>No Operation or Management.</u>  To state a claim, "the plaintiff must show that each defendant 'conduct[ed] or participate[d], directly or indirectly, in the conduct of [the] enterprise's affairs.'"  *DNC*, 392 F. Supp. 3d at 440–41 (alterations in original) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 177 (1993)).  This "operation or management" pleading requirement is "extremely rigorous," *id.* at 441 (citation omitted), requiring facts that would "demonstrate some degree of control over the enterprise," *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307–

08 (S.D.N.Y. 2010).  It is simply implausible that *any* Defendant exercised any degree of control over the sovereign nation of Qatar, and Plaintiffs offer no reason to conclude otherwise.

No Enterprise.  Plaintiffs fail to plead "any facts suggesting hierarchy or organization," as required to establish an association-in-fact enterprise.  *DNC*, 392 F. Supp. 3d at 439–40 (citing *Boyle v. United States*, 556 U.S. 938, 946 (2009)); *First Cap.*, 385 F.3d at 174–75 (affirming dismissal of RICO claim where plaintiffs "failed to provide . . . any solid information regarding the hierarchy, organization and activities of th[e] alleged . . . enterprise . . . from which [the court] could fairly conclude that its members functioned as a unit" (citation and internal quotation marks omitted)).  Instead, Plaintiffs lump all the Defendants together and *avoid* differentiating between their roles.  *See, e.g.*, FAC ¶¶ 371, 378, 381 (alleging that Chalker, Mandich, and Garcia all "use[d] *his* unique expertise and skillset to develop, plan and launch the cyberattacks . . . , and to synchronize those attacks with the work of lobbyists and public relations professionals" (emphasis added)); *id.* ¶¶ 386, 387, 389, 390, 398, 400 (GRA, Maven, Quantum, EMEA, Research, and Qrypt used "to facilitate the multiple predicate acts").  Plaintiffs thus "fail[] to provide any information whatsoever regarding the [d]efendants' respective roles in the enterprise," as is required.  *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 361 (S.D.N.Y 2014).

### 5.  Plaintiffs Fail to State a Claim for RICO Conspiracy (Count X).

The RICO conspiracy claim should be dismissed for the same reasons it was dismissed in *Muzin*—and Plaintiffs are estopped from arguing otherwise.  *See supra* Section III.B.4.a.  First, "[d]ismissal of plaintiff's substantive RICO claim . . . mandates dismissal of the conspiracy to commit RICO claim . . . as well."  *Cont'l Petrol. Corp*, 2012 WL 1231775, at *8 (alterations in original) (citation omitted).  Second, to plead RICO conspiracy, a plaintiff must additionally allege, "as to *each* alleged co-conspirator:  (1) an agreement to join the conspiracy; (2) the acts of each co-conspirator in furtherance of the conspiracy; [and] (3) that the co-conspirator knowingly

participated in the same." *Id.* at \*8 (emphasis added) (citation omitted).  Plaintiffs' vague group pleading, which alleges that the "GRA Defendants" collectively engaged in racketeering, dooms Plaintiffs' claim.  *See, e.g.*, FAC ¶¶ 407, 409–10.

**C.   The Court Should Dismiss Plaintiffs' State Law Claims.**

Because Plaintiffs have failed to state a claim under federal law, this Court should decline to exercise jurisdiction over Plaintiffs' state law claims.  *See* 28 U.S.C. § 1367(c); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122–24 (2d Cir. 2006) (abuse of discretion to exercise jurisdiction where "federal-law claims were eliminated on a motion to dismiss" and there was "no extraordinary inconvenience or inequity occasioned by permitting the claims to be refiled in state court").

In any event, Plaintiffs fail to state a claim under state law.[10]

**1.   Plaintiffs Fail to State a Claim Under the CUTSA (Count IV).**

As with the DTSA claim, Plaintiffs do not—and evidently cannot—describe any trade secret that Defendants allegedly misappropriated.  *See Space Data Corp. v. X*, 2017 WL 5013363, at \*12 (N.D. Cal. Feb. 16, 2017) (dismissing DTSA and CUTSA claims where plaintiff "merely provided[d] a high-level overview of [its] purported trade secrets"); *see supra* Section III.B.3.

Plaintiffs also "ha[ve] alleged no facts to support [their] statement that [D]efendants' actions damaged [them]," a specific requirement for CUTSA claims.  *See E. & J. Gallo Winery v. Instituut Voor Landbouw*, 2018 WL 2463869, at \*7–8 (E.D. Cal. June 1, 2018).

**2.   Plaintiffs Fail to State a Claim Under the CDAFA (Count V).**

---

[10] For purposes of this motion, Defendants do not dispute that California law governs Plaintiffs' state law claims. Thus, the Court need not engage in a choice-of-law analysis at this time. *See Turbon Int'l, Inc. v. Hewlett-Packard Co.*, 769 F. Supp. 2d 262, 266 (S.D.N.Y. 2011) (citation omitted).

The CDAFA "does not provide for secondary liability," *Muzin*, 2020 WL 1536350, at \*16, and Plaintiffs are estopped from arguing otherwise. *Cf.* Section III.B.1 (discussing SCA).

Moreover, as with Plaintiffs' CFAA claim (Count II), Plaintiffs' CDAFA claim fails because the FAC does not plausibly plead the elements as to any Defendant. *See supra* Section III.B.2 (discussing CFAA); *see also hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 999 n.10 (9th Cir. 2019) (noting that the CDAFA is "California's CFAA analogue"); *see also, e.g.*, *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 950 (N.D. Cal. 2014).

### 3. Plaintiffs Fail to State a Claim for Receipt and Possession of Stolen Property (Count VI).

Plaintiffs' receipt and possession of stolen property claim should be dismissed because it is preempted by the CUTSA. *ATS Prod., Inc. v. Champion Fiberglass, Inc.*, 2015 WL 224815, at \*1–2 (N.D. Cal. Jan. 15, 2015). Plaintiffs admit as much: the stolen property count not only incorporates all of Plaintiffs' previous allegations, including the CUTSA count, *see* FAC ¶ 277, but also asserts identical damages. *Compare id.* ¶ 258 (CUTSA), *with id.* ¶ 284 (stolen property).

Even if this claim were not preempted, it should still be dismissed because Plaintiffs fail to plausibly plead that any Defendant "receiv[ed] stolen property [and] . . . had actual knowledge that the [property] [] received . . . [was] in fact stolen." *Freeney v. Bank of Am. Corp.*, 2016 WL 5897773, at \*12 (C.D. Cal. Aug. 4, 2016) (dismissing receipt of stolen property claim in amended complaint with prejudice); *supra* Section III.A. (detailing Plaintiffs' improper group pleading). Again, Plaintiffs provide nothing more a threadbare recitation of the statutory language. *See, e.g.*, FAC ¶ 283 ("The GRA Defendants received . . . property knowing that it was stolen and obtained through theft."); *but see Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' . . . will not do." (citation omitted)).

### 4. Plaintiffs Fail to State a Claim for Civil Conspiracy (Count VII).

The CUTSA similarly preempts Plaintiffs' conspiracy claim, which also hinges on "the same nucleus of facts as trade secret misappropriation," *New Show Studios LLC v. Needle*, 2014 WL 2988271, at *10 (C.D. Cal. June 30, 2014) (citation omitted), and which also seeks identical damages. *See* FAC ¶ 289 (alleging Defendants "misappropriate[ed] Plaintiffs' trade secrets"); *id.* ¶ 293 (boilerplate damages allegation); *ATS Prods., Inc.*, 2015 WL 224815, at *1–2.

Even if this claim were not preempted, it should still be dismissed. To state a claim, a plaintiff must plead an underlying tort as well as: (1) an agreement to commit it; (2) acts in furtherance of that agreement; and (3) damages. *See Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 881 (N.D. Cal. 2010) (citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 457 (Cal. 1994)). Plaintiffs here have failed to plausibly allege any underlying torts. *See supra, e.g.*, Sections III.C.1–2; *Roque v. Suntrust Mortg., Inc.*, 2010 WL 546896, at *5 (N.D. Cal. Feb. 10, 2010) ("None of plaintiff's causes of action in the TAC states a valid tort claim. . . . Thus plaintiff's cause of action, for civil conspiracy fails."). Nor do Plaintiffs specifically allege acts taken in furtherance of the tortious "conspiracy." *See Accumulate Diagnostics Corp. v. TeraRecon, Inc.*, 260 F. Supp. 2d 941, 948 (N.D. Cal. 2003) (requiring plaintiff to "clearly allege specific action on the part of each defendant"); *Sporting Supplies Int'l, Inc. v. Tulammo USA, Inc.*, 2011 WL 13135282, at *4 (C.D. Cal. Jan. 3, 2011) (similar).

### 5. Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion (Count VIII).

The CUTSA also preempts Plaintiffs' intrusion upon seclusion claim. *See Needle*, 2014 WL 2988271, at *11 (dismissing invasion of privacy claim as preempted by the CUTSA).

Moreover, the claim should be dismissed because Plaintiffs have not alleged facts showing that *any* Defendant intentionally intruded upon Plaintiffs' seclusion, *see supra* Section III.A; *see also, e.g.*, FAC ¶¶ 298, 300. Nor have Plaintiffs adequately alleged a reasonable expectation of

privacy, as required under California law.  To state a valid intrusion claim, a plaintiff must sufficiently allege "that the defendant intentionally intruded into a place, conversation, or matter as to which the plaintiff had a reasonable expectation of privacy."  *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017).  To demonstrate a reasonable expectation of privacy in emails, a plaintiff must "plead specific email content in specific emails." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1042 (N.D. Cal. 2014).

Here, Plaintiffs allege only in wholly conclusory terms that their "email servers and computer systems contained private information."  FAC ¶ 297; *see also id.* ¶ 298.  But "there is no legally protected privacy interest and reasonable expectation of privacy in emails as a general matter."  *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1041 (dismissing invasion of privacy claim where plaintiffs "merely alleg[ed] that . . . emails were 'private' without alleging any facts related to what particular emails Yahoo intercepted, or the content within particular emails"); *cf. Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1052 (N.D. Cal. 2018) (in declining to dismiss intrusion claim, focusing on "numerous examples of 'specific email content'" (citation omitted)).  Absent such factual allegations, Plaintiffs' intrusion claim "stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 558).[11]

## CONCLUSION

For the reasons stated herein, the FAC should be dismissed with prejudice.

---

[11] The *Muzin* court declined to dismiss a similar claim on this ground but did not address this case law.  *See Muzin*, 2020 WL 1536350, at *19.

Dated:   New York, New York
         August 10, 2020

                               GIBSON, DUNN & CRUTCHER LLP


                         By: */s/ DRAFT*_____
                             Orin Snyder
                             Zainab Ahmad (admitted *pro hac vice*)
                             Paul J. Kremer
                             Samantha Weiss

                             200 Park Avenue
                             New York, NY 10166-0193
                             Tel.: (212) 351-4000
                             Fax: (212) 351-4035
                             osnyder@gibsondunn.com
                             zahmad@gibsondunn.com
                             pkremer@gibsondunn.com
                             sweiss@gibsondunn.com

                             *Attorneys for Defendants*

## APPENDIX A
Bases for Dismissal

As to All Defendants (All Counts):
- The case should be dismissed under the prior pending action doctrine (Arg. § I.B).
- Plaintiffs fail to connect any specific Defendant to any alleged wrongdoing (Arg. § III.A).

As to the GRA Defendants (All Counts):
- The GRA Defendants have derivative sovereign immunity (Arg. § I.A).

As to the Foreign Defendants (All Counts):
- The Court lacks personal jurisdiction over the Foreign Defendants (Arg. § II).

Additional Bases for Dismissal of Specific Counts:

I   Stored Communications Act ("SCA") (Arg. § III.B.1)
- The SCA does not provide for secondary liability.
- Plaintiffs fail to plead any elements of the claim.

II   Computer Fraud and Abuse Act ("CFAA") (Arg. § III.B.2)
- Plaintiffs fail to plead any elements of the claim.

III   Defend Trade Secrets Act ("DTSA") (Arg. § III.B.3)
- Plaintiffs do not "specifically allege" a trade secret.

IV   California Uniform Trade Secrets Act ("CUTSA") (Arg. § III.C.1)
- The Court should decline to exercise its supplemental jurisdiction.
- Plaintiffs do not plead a trade secret or damages as required by CUTSA.

V   California Comprehensive Computer Data Access and Fraud Act ("CDAFA") (Arg. III.C.2)
- The Court should decline to exercise its supplemental jurisdiction.
- CDAFA does not provide for secondary liability.
- Plaintiffs fail to plead any elements of the claim.

VI   Receipt and Possession of Stolen Property (Arg. § III.C.3)
- The Court should decline to exercise its supplemental jurisdiction.
- Plaintiffs' claim is preempted by CUTSA.
- Plaintiffs fail to plead any elements of the claim.

VII   Civil Conspiracy (Arg. § III.C.4)
- The Court should decline to exercise its supplemental jurisdiction.
- Plaintiffs' claim is preempted by CUTSA.
- Plaintiffs fail to plead any elements of the claim.

VIII   Intrusion Upon Seclusion (Arg. § III.C.5)
- The Court should decline to exercise its supplemental jurisdiction.
- Plaintiffs' claim is preempted by CUTSA.
- Plaintiffs fail to plead a reasonable expectation of privacy, as required.

IX   RICO
- Plaintiffs cannot plead a "pattern of racketeering activity" (Arg. § III.B.4.a).
- Plaintiffs lack standing (Arg. § III.B.4.b).
- Plaintiffs fail to plead other elements of a RICO claim (Arg. III.B.4.c).

X   RICO Conspiracy (Arg. § III.B.5)
- Plaintiffs' underlying RICO claim fails.
- Plaintiffs do not specifically plead a conspiracy.