UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
:
ELLIOTT BROIDY and BROIDY CAPITAL :
MANAGEMENT, LLC, :
:
               Plaintiffs, :
:
        - against - :
:
GLOBAL RISK ADVISORS LLC, :
GRA MAVEN LLC, :     Case No. 19-cv-11861-MKV
GRA QUANTUM LLC, :
GLOBAL RISK ADVISORS EMEA LIMITED, :     **Oral Argument Requested**
GRA RESEARCH LLC, :
QRYPT, INC., :
KEVIN CHALKER, :
DENIS MANDICH, :
ANTONIO GARCIA, and :
COURTNEY CHALKER, :
:
               Defendants. :
:
---------------------------------------------------------------x

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS
<u>THE FIRST AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ................................................................................................. iii

TABLE OF ABBREVIATIONS ............................................................................................. v

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ............................................................................................................................ 1

I.   This Action Should Be Dismissed For Lack Of Subject Matter Jurisdiction. ............... 1

    A.   All Defendants Are Entitled To Sovereign Immunity. ............................................ 1

    B.   Plaintiffs' Forum Shopping Violates The Prior Pending Action Doctrine. ............. 3

II.  The Five Foreign Defendants Are Not Subject To Personal Jurisdiction. ..................... 4

III. Plaintiffs Fail To Plead Facts Attributing Misconduct To Any Defendant. ................... 4

IV.  Plaintiffs Have Failed To State A Claim Under Any Applicable Law. ......................... 5

    A.   Plaintiffs Fail To State A "Hacking" Claim (I, II, and V). ...................................... 5

    B.   Plaintiffs Fail To State A Trade Secrets Claim (III and IV). .................................. 6

    C.   Plaintiffs Fail To State A RICO Claim (IX and X). ................................................ 7

        1.   Plaintiffs Fail To Plead RICO Standing. ........................................................... 7

        2.   Plaintiffs Cannot Plead A "Pattern." .................................................................. 7

        3.   The RICO Counts Suffer From Additional Defects. ......................................... 9

    D.   Plaintiffs' State Law Claims Are Preempted And Are Defective (VI–VIII). ........ 9

        1.   Plaintiffs Fail To State A Receipt Of Stolen Property Claim (VI). ................. 10

        2.   Plaintiffs Fail To State A Civil Conspiracy Claim (VII). ................................ 10

        3.   Plaintiffs Fail To State An Intrusion Claim (VIII). .......................................... 10

CONCLUSION ...................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

*7 W. 57th St. Realty Co. v. Citigroup, Inc.*,
  2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015), *aff'd*, 771 F. App'x 498 (2d Cir. 2019) ................................................................................................................................ 3

*Ahmed v. Magan*,
  No. 2:10-cv-00342 (S.D. Ohio Mar. 15, 2011) ............................................................... 2

*Angermeir v. Cohen*,
  14 F. Supp. 3d 134 (S.D.N.Y. 2014) ............................................................................... 9

*BCM v. Muzin*,
  2020 WL 1536350 (D.D.C. Mar. 31, 2020) .................................................................... 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................ 5

*Boyle v. United States*,
  556 U.S. 938 (2009) ........................................................................................................ 9

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
  187 F.3d 229 (2d Cir. 1999) ........................................................................................... 8

*Curtis v. Citibank, N.A.*,
  226 F.3d 133 (2d Cir. 2000) ........................................................................................... 3

*D'Addario v. D'Addario*,
  901 F.3d 80 (2d Cir. 2018) ............................................................................................. 9

*DNC v. Russian Fed'n*,
  392 F. Supp. 3d 410 (S.D.N.Y. 2019) ............................................................................ 2

*Fried v. LVI Servs., Inc.*,
  557 F. App'x 61 (2d Cir. 2014) ...................................................................................... 3

*Gross v. Waywell*,
  628 F. Supp. 2d 475 (S.D.N.Y. 2009) ............................................................................ 8

*H.J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989) ........................................................................................................ 8

*Hecht v. Com. Clearing House, Inc.*,
  897 F.2d 21 (2d Cir. 1990) ............................................................................................. 7

*Hickerson v. City of N.Y.*,
  146 F.3d 99 (2d Cir. 1998) ............................................................................................. 7

*In re Initial Pub. Offering Sec. Litig.*,
    544 F. Supp. 2d 277 (S.D.N.Y. 2008) ..................................................................................5

*Jus Punjabi, LLC v. Get Punjabi Inc.*,
    2015 WL 2400182 (S.D.N.Y. May 20, 2015) ......................................................................8

*Kraus USA, Inc. v. Magarik*,
    2020 WL 2415670 (S.D.N.Y. May 12, 2020) ......................................................................6

*Lundy v. Cath. Health Sys.*,
    711 F.3d 106 (2d Cir. 2013) .................................................................................................8

*Matar v. Dichter*,
    563 F.3d 9 (2d Cir. 2009) ................................................................................................2, 3

*Medtech Prods. Inc. v. Ranir, LLC*,
    596 F. Supp. 2d 778 (S.D.N.Y. 2008) ..................................................................................6

*Patrizzi v. Bourne in Time, Inc.*,
    2012 WL 4833344 (S.D.N.Y. Oct. 11, 2012) ......................................................................8

*Reers v. Deutsche Bahn AG*,
    320 F. Supp. 2d 140 (S.D.N.Y. 2004) ..................................................................................4

*Sacerdote v. Cammack Larhette Advisors, LLC*,
    989 F.3d 498 (2d Cir. 2019) .................................................................................................3

*Strategic Partners Inc. v. Vestagen Protective Techs. Inc.*,
    2016 WL 10611186 (C.D. Cal. Nov. 23, 2016) ...................................................................6

*United States v. $1,399,313.74 in U.S. Currency*,
    591 F. Supp. 2d 365 (S.D.N.Y. 2008) ..................................................................................9

*Vaughn v. Air Line Pilots Ass'n, Int'l*,
    395 B.R. 520 (E.D.N.Y. 2008), *aff'd,* 377 F. App'x 88 (2d Cir. 2010) ...................................8

*Wexner v. First Manhattan Co.*,
    902 F.2d 169 (2d Cir. 1990) .................................................................................................9

**Rules**

Rule 8 ..........................................................................................................................................5, 9

Rule 9(b) .....................................................................................................................................8, 9

Rule 12(b)(6) ...................................................................................................................................3

## TABLE OF ABBREVIATIONS

| BCM | Plaintiff Broidy Capital Management LLC |
|---|---|
| *Benomar* | Broidy Capital Management LLC et al. v. Benomar, 7:18-CV-06615-CS (S.D.N.Y. Jul. 23, 2018) |
| Broidy | Plaintiff Elliott Broidy |
| Compl. | Dkt. 1, Complaint filed December 27, 2019 |
| CDAFA | California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502 |
| CFAA | Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* |
| CUTSA | California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 |
| DTSA | Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* |
| EMEA | Defendant Global Risk Advisors EMEA Ltd. |
| FAC | Dkt. 57, First Amended Complaint filed June 26, 2020 |
| Foreign Defendants | Maven, Research, Quantum, EMEA, and Courtney Chalker |
| FSIA | Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.* |
| Garcia | Defendant Antonio Garcia |
| GRA | Defendant Global Risk Advisors LLC |
| GRA Defendants | Defendants EMEA, GRA, Maven, Qrypt, Quantum, Research, Kevin Chalker, Garcia and Mandich (*i.e.*, all Defendants except Courtney Chalker) |
| Mandich | Defendant Denis Mandich |
| Maven | Defendant GRA Maven LLC |
| Mot. | Dkt. 73, Memorandum in Support of Motion to Dismiss the FAC filed August 10, 2020 |
| *Muzin* | Broidy Capital Management LLC et al. v. Muzin et al., 1:19-CV-00150-DLF (D.D.C. Jan. 24, 2019) |
| Opp. | Dkt. 76, Memorandum in Opposition to Motion to Dismiss the FAC filed September 21, 2020 |
| Qrypt | Defendant Qrypt, Inc. |
| Quantum | Defendant GRA Quantum LLC |
| Research | Defendant GRA Research LLC |
| RICO | Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* |
| SCA | Stored Communications Act, 18 U.S.C. § 2701 *et seq.* |
| *State of Qatar* | Broidy Capital Management LLC et al. v. State of Qatar et al., 2:18-CV-02421-JFW (C.D. Cal. Mar. 26, 2018) |

**PRELIMINARY STATEMENT**

Broidy's insistence that his inflammatory allegations be accepted as true is fatal to his case. It means that this Court lacks subject matter jurisdiction because the FAC repeatedly alleges that ***Defendants acted at the direction of a foreign sovereign*** to run a government-sanctioned counterintelligence operation against Broidy. The district court in *State of Qatar* already held that Qatar would be immune from suits concerning such activity, and when the FAC is taken as true, as is required, this case against Qatar's alleged agents must be dismissed for the same reason. Similarly, the FAC repeatedly alleges that Defendants are part of the same RICO conspiracy that Broidy attempted to plead in *Muzin*; acceptance of those allegations as true means the RICO claims must be dismissed by this Court like they were by the district court in *Muzin*. Broidy is estopped from relitigating them here.

As over-the-top and self-defeating as Broidy's allegations can be, his silence also speaks volumes. Broidy either cannot or will not identify the senders of the "spear phishing" emails that he says compromised his computer systems; nor will he name the "hackers" who accessed his "confidential business information" or even begin to describe the information allegedly stolen. These omissions are also fatal. They render Broidy's ultimate and bald conclusion—that the ten Defendants violated a slew of federal and state laws—utterly implausible. Broidy's continued failure to state a claim, despite amending his complaint in response to these same challenges and with the benefit of other courts' rulings on his claims' insufficiency, makes clear that he had no legitimate or actionable basis to bring this lawsuit in the first place.

**ARGUMENT**

I.  **This Action Should Be Dismissed for Lack of Subject Matter Jurisdiction.**

  A.  **All Defendants Are Entitled to Sovereign Immunity.**

1

This is the fourth time that Plaintiffs have sought to hold alleged co-conspirators liable for acts allegedly "committed . . . at the behest of" Qatar. Opp. at 3; *see also* Mot. at 2–3, 5. In *State of Qatar*, Qatar was held to be immune from any suit based on Plaintiffs' conspiracy theories. *See* Mot. at 3.[1] In *Benomar*, this District recognized that derivative sovereign immunity would "likely" protect alleged agents of Qatar. *Id.* at 5. And in *Muzin*, the district court's decision that the defendants did not enjoy sovereign immunity—in conflict with *Benomar*—is now on appeal. *See Muzin*, No. 20-7040 (D.C. Cir. Sept. 17, 2020) (briefing to conclude December 21, 2020).

Plaintiffs nonetheless insist that this case should proceed, claiming that there is no common law support for immunity. *See* Opp. at 3–8. To the contrary, courts in this District have long acknowledged their common law authority to recognize the immunity of covert actors. *See* Mot. at 4–5; *see also DNC v. Russian Fed'n*, 392 F. Supp. 3d 410, 429 (S.D.N.Y. 2019) (Russian Federation immune from suit despite no admission by Russia that it was involved). And there is no risk to doing so here, because the immunity arises from Plaintiffs' *own* allegations about who committed the acts and why. *See* Mot. at 3, 5.[2]

There can be no dispute that the activities alleged here (however "illegal" Plaintiffs say they are) have been recognized as core state functions. In *Matar v. Dichter*, 563 F.3d 9 (2d Cir. 2009), the U.S. Government argued that litigation over a foreign intelligence service's decision to bomb an apartment complex would "intrude on core aspects of the foreign state's sovereignty and give rise to serious diplomatic tensions" by allowing "for discovery and passing of judgment concerning the foreign state's intelligence-gathering," and that suing an agent would improperly

---

[1] Plaintiffs have appealed that decision to the Ninth Circuit, which heard oral argument in February 2020.

[2] Plaintiffs are also wrong to suggest that "the State Department has long made clear that U.S. citizens are generally not entitled to foreign immunity." Opp. at 4. The State Department does not have a citizenship test and has expressly said that U.S. residency is "not, in itself, determinative," because "immunity is for the protection of the foreign state," not the individual. Statement of Interest of the United States at 9, *Ahmed v. Magan*, No. 2:10-cv-00342 (S.D. Ohio Mar. 15, 2011), ECF No. 45.

2

"circumvent[]" the sovereign's immunity.  Brief for the United States as Amicus Curiae at 23–25, *Matar*, 2007 WL 6931924.  It is not for Plaintiffs or this Court to circumvent Qatar's immunity and pass on the legitimacy of intelligence-gathering acts that Broidy attributes to that sovereign.

### B. Plaintiffs' Forum Shopping Violates the Prior Pending Action Doctrine.

To avoid dismissal of this later-filed, admittedly "parallel" suit, Plaintiffs insist that Defendants "are not in any type of legal partnership" with the *Muzin* defendants.  Opp. at 1, 9.  But courts in this Circuit routinely dismiss subsequently filed actions against alleged co-conspirators.  *See* Mot. at 7; *see also, e.g.*, *7 W. 57th St. Realty Co. v. Citigroup, Inc.*, 2015 WL 1514539, at *27 (S.D.N.Y. Mar. 31, 2015) ("alleged co-conspirators are 'in privity'"), *aff'd*, 771 F. App'x 498 (2d Cir. 2019).  Plaintiffs' reliance on *Sacerdote v. Cammack Larhette Advisors, LLC*, 989 F.3d 498 (2d Cir. 2019) (Opp. at 8), is unavailing.  In *Sacerdote*, there were independent bases for each defendant's potential ERISA liability.  *Id.* at 508.  Here, all defendants are alleged to have taken concerted action in furtherance of the same conspiracy.  *See* Opp. at 1–2 (reiterating that *Muzin* is a "parallel action" against Defendants' alleged co-conspirators); FAC ¶¶ 2, 52–54.

The equities also favor dismissal.  The prior pending action doctrine is specifically intended to prevent Plaintiffs from reviving claims that failed elsewhere.  *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000).  Plaintiffs claim that they filed this action only to avoid jurisdictional dismissal in D.C., but then admit that the *Muzin* court actually had personal jurisdiction, Opp. at 9 & n.3—putting the lie to that argument.  Plaintiffs' real grievance is that the *Muzin* court has already dismissed several of Plaintiffs' theories as implausible under Rule 12(b)(6)—a fate they seek to avoid by trying again in this Court.  *See id.* at 9 n.3.  That is plain "gamesmanship," *id.* at 9, and the Court cannot fix Plaintiffs' mess with a cross-jurisdictional consolidation order.  *See Fried v. LVI Servs., Inc.*, 557 F. App'x 61, 65 (2d Cir. 2014) (rejecting consolidation because the "two cases were not . . . pending before the same judge, or . . . even in the same district court").

3

## II. The Five Foreign Defendants Are Not Subject to Personal Jurisdiction.

Plaintiffs insist that anyone related to Kevin Chalker or GRA is subject to personal jurisdiction here because Mr. Chalker is the alleged "'mastermind' of the scheme" and all the corporate Defendants are "mere departments" of GRA. Opp. at 23–24; *but see* Mot. at 7–10. These conclusions are not supported by facts. *First*, "mere department" or "alter ego" jurisdiction requires "factors beyond common ownership" that "suggest that separate corporate identities are a mere façade"—in short, factual allegations of "extraordinary control." *Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 150, 156, 158 (S.D.N.Y. 2004). All Plaintiffs do here is allege that different GRA entities got paid for different work. *See* Opp. at 24 (citing FAC ¶¶ 69, 167). *Second*, Plaintiffs never allege that Kevin Chalker *acted on behalf of* the Foreign Defendants. Thus, there is no plausible basis to conclude that any of Chalker's acts were acts of the Foreign Defendants. *Finally*, as explained in Defendants' opening brief and below, Plaintiffs have failed to plead that the Foreign Defendants were involved in a conspiracy in New York. *See* Mot. at 21–22, 24.

## III. Plaintiffs Fail to Plead Facts Attributing Misconduct to Any Defendant.

Plaintiffs are adamant that "[t]his is an internet hacking case." Dkt. 41 at 6. But Plaintiffs fail to explain how any Defendant could plausibly be held liable without allegations tying them to the actual hacking. *See* Mot. at 10–11; Opp. at 10. Furthermore, Plaintiffs offer no plausible basis for holding all ten Defendants liable for any hacking that did occur. *See* Mot. at 11–12.

Contrary to Plaintiffs' assertion that they made "detailed allegations as to who executed the hacks," Opp. at 10, nowhere in the 111-page FAC do Plaintiffs identify who actually sent the spear phishing emails or accessed Plaintiffs' computer systems—let alone how those individuals' acts would render all ten Defendants liable. At most, Plaintiffs claim to have identified certain IP addresses that were used by intruders, FAC ¶ 98, and suggest that unspecified Defendants had access to those IP addresses, *id.* ¶ 99, but Plaintiffs never actually allege that any Defendant used

one of those IP addresses to either send a phishing email or access Plaintiffs' systems. For example, Plaintiffs do not (and cannot) allege that a GRA-owned device logged into Plaintiffs' systems, or that a GRA employee sent the spear phishing emails from one of the IP addresses at issue. Absent such allegations, there can be no claim "that GRA did the hacking." Opp. at 10.[3]

Plaintiffs jump straight from this missed connection to holding six corporate entities and four individuals liable for various acts of one or more still-undisclosed people. But Plaintiffs cannot spray scattershot allegations without articulating how each Defendant was involved. *See* Mot. at 11–12. To allow otherwise would not only invite implausibility, but absurdity. For example, the FAC alleges that nine distinct legal entities sent one spear phishing email. *See* FAC ¶ 78. Neither Rule 8 nor Plaintiffs' cited cases allow such implausibly broad allegations.[4]

## IV. Plaintiffs Have Failed to State a Claim Under Any Applicable Law.

### A. Plaintiffs Fail to State a "Hacking" Claim (I, II, and V).

There is no dispute that the SCA and CDAFA apply only to primary actors. *See* Opp. at 13, 21 (conceding that there is no "secondary[] liability" under these statutes). However, as explained above, no Defendant is plausibly accused of directly accessing Plaintiffs' systems. *See* Mot. at 12–13, 23. The SCA and CDAFA claims fail on that basis.

Plaintiffs also concede that the CFAA is focused on the unauthorized access of certain computers (*i.e.*, who "conducted the hacking"). *See* Opp. at 13; Mot. at 13. Because Plaintiffs do

---

[3] Plaintiffs focus on establishing Defendants' *ability* to perform spear phishing attacks. *See id.* at 10–11. But such allegations "stop[] short of the line between possibility and plausibility of entitle[ment] to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (second alteration in original) (internal quotation marks omitted).

[4] Plaintiffs' own cases confirm that a plaintiff must plead facts supporting each defendant's involvement in the conduct giving rise to a claim. *See* Opp. at 10–12. Here, Plaintiffs have pleaded no facts tying any Defendant to the spear phishing emails or instances of unauthorized access. Thus, they have not "carefully cabin[ed] the persons" accused to those who are alleged to have been involved. *In re Initial Pub. Offering Sec. Litig.*, 544 F. Supp. 2d 277, 291 (S.D.N.Y. 2008) (citation omitted) (Opp. at 10).

5

not say who actually "accessed" Plaintiffs' systems, it is impossible to attribute that entity or person's actions to any Defendant, dooming the CFAA claim.  *See* Mot. at 10–12, 13.

> **B.     Plaintiffs Fail to State a Trade Secrets Claim (III and IV).**

The law in this District is clear:  to state a trade secrets claim, the plaintiff must actually identify a trade secret.  *See* Mot. at 13–15; *Kraus USA, Inc. v. Magarik*, 2020 WL 2415670, at *4 (S.D.N.Y. May 12, 2020) (Opp. at 14) (plaintiff "must 'specify the general contours of a trade secret' without merely restating the elements of one" (citation omitted)).  Plaintiffs have utterly failed to do so, and their own recounting of the FAC confirms that they cannot.  *See* Opp. at 13 (claiming theft of "valuable information," including "confidential business plans and proposals" and "information concerning business strategies and opportunities"); *but see* Mot. at 13–15.

In the multiple DTSA cases cited by Defendants, claims based on similarly vague allegations were dismissed.  *See* Mot. at 13–15.  In the one DTSA case cited by Plaintiffs, the plaintiff pleaded the types of details that are entirely absent from the FAC—further proving Defendants' point.  *See Kraus*, 2020 WL 2415670, at *5 (describing "specific categories of information," such as "technical product specifications"); *see also Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 789 (S.D.N.Y. 2008) (Opp. at 14 n.7) (pre-DTSA claim alleging "manufacturing cost details, drawings, test data, and . . . information about the design and manufacturing process").

The same holds true for the CUTSA.  *See* Mot. at 22.  Once again, Plaintiffs' one cited case lays bare the difference between a well-pleaded claim and Plaintiffs' boilerplate.  *See Strategic Partners Inc. v. Vestagen Protective Techs. Inc.*, 2016 WL 10611186, at *5 (C.D. Cal. Nov. 23, 2016) (Opp. at 14) (claim based on secret "specialty fabric" made with described "formulation").

By contrast, the FAC does little more than confirm that Mr. Broidy works in "business."  *See* Mot. at 14.  Plaintiffs respond that the *Muzin* court allowed these same vague allegations to

6

proceed, *see* Opp. at 14, but the *Muzin* court did not cite this District's or California's myriad opinions pointing in the other direction.  Mot. at 15 n.8.

### C. Plaintiffs Fail to State a RICO Claim (IX and X).

#### 1. Plaintiffs Fail to Plead RICO Standing.

Plaintiffs argue that every sort of damage they claim was "reasonably foreseeable" because Defendants sought to "inflict maximum damage." Opp. at 15 (citations omitted). Plaintiffs do not cite a single case supporting their expansive view of proximate cause; instead, the one case they cite undermines their position. *See Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir. 1990) (loss of business commissions "was not proximately caused by [RICO] violations").

#### 2. Plaintiffs Cannot Plead a "Pattern."

Plaintiffs' only response to the estoppel created by *Muzin* is that they should have done a better job pleading that case. *See* Opp. at 16.  Plaintiffs suggest that the issues "are not identical" to those in *Muzin* because the FAC here contains "newly uncovered facts," but Plaintiffs do not say which facts are new or when they were uncovered. *See id.*  Instead, Plaintiffs point vaguely to 69 paragraphs, most of which refer to news articles and documents that were publicly available when Plaintiffs filed the *Muzin* complaint.  In any event, Plaintiffs "cannot avoid issue preclusion simply by offering evidence in the second proceeding that could have been admitted, but was not, in the first." *Hickerson v. City of N.Y.*, 146 F.3d 99, 108 n.6 (2d Cir. 1998) (citation omitted).

Nevertheless, Plaintiffs suggest that the FAC demonstrates closed-ended continuity through three other victim groups. Opp. at 17.  By Plaintiffs' own admission, however, the conduct allegedly directed at the UAE Ambassador occurred only "a half-year" before the conduct directed at Plaintiffs, FAC ¶ 176, which is no help.  *See* Mot. at 16–18.  Plaintiffs are thus left with "FIFA officials and related figures" and "over 1,000 people and entities" not identified, Opp. at 17.  But

7

Plaintiffs' allegations regarding those vaguely defined groups amount to little more than buzzword soup—nothing near the allegations necessary to plead predicate acts under Rule 9(b).  *See* Mot. at 19.  Plaintiffs also fail to explain how the acts against each group are "related."  *See id.* at 17–18.[5]

Further, the putative "open-ended" scheme is too short-lived.  *See Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999).  Contrary to Plaintiffs' assertion that an "ongoing" threat exists, *see* Opp. at 18, Plaintiffs do not plausibly allege a single act after May 2018.  *See* Mot. at 17; *Vaughn v. Air Line Pilots Ass'n, Int'l*, 395 B.R. 520, 551 n.25 (E.D.N.Y. 2008) ("[P]laintiffs' inability to demonstrate any continued criminal activity is . . . evident from their failure to add any new allegations . . . after amending the complaint[.]"), *aff'd*, 377 F. App'x 88 (2d Cir. 2010).  Conclusory assertions of an ongoing scheme, *e.g.*, FAC ¶ 313, do not suffice.  *See Patrizzi v. Bourne in Time, Inc.*, 2012 WL 4833344, at *4 (S.D.N.Y. Oct. 11, 2012).[6]

Moreover, Plaintiffs neither "adequately specify the statements [they] claim[ ] were false or misleading," nor "give particulars as to the respect in which plaintiff[s] contend[ ] the statements were fraudulent," as required to allege RICO predicate acts based on fraud.  *Jus Punjabi, LLC v. Get Punjabi Inc.*, 2015 WL 2400182, at *5 (S.D.N.Y. May 20, 2015) (alterations in original) (quoting *Lundy v. Cath. Health Sys.*, 711 F.3d 106, 119 (2d Cir. 2013)); Mot. at 19.  Plaintiffs' claim that necessary details are "particularly within the [D]efendant's knowledge," Opp. at 19, is

---

[5] "The relatedness test requires that the predicate acts relied upon 'share the same or similar purposes, results, participants, victims or methods, or otherwise are interrelated . . . .'" *Gross v. Waywell*, 628 F. Supp. 2d 475, 485 (S.D.N.Y. 2009) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989)).  Here, the victims are different; the methods are different—*e.g.*, there are no allegations of spear phishing or leaking; and the results are alike only insofar as victims of crime are always, in some sense, "silence[d]" or "neutralize[d]."  FAC ¶ 320.

[6] Plaintiffs' argument for open-ended continuity evades the *Muzin* court's decision—the very decision that Plaintiffs contend is binding when convenient.  Plaintiffs argue that Defendants made a "mistake[]" in arguing that the FAC "alleges only a 'one time racket,'" Opp. at 18 (quoting Mot. at 17), but Defendants were merely quoting *Muzin*.  *See* 2020 WL 1536350, at *9 (D.D.C. Mar. 31, 2020).

not credible when Plaintiffs allege other features of the emails, *see* FAC ¶ 182.[7]

Plaintiffs cannot even plead predicate acts taken against themselves. *See* Mot. at 18–20; Opp. at 18–20. The "speculative assertions and innuendo" Plaintiffs recount cannot satisfy even Rule 8, let alone the heightened Rule 9(b) standard that applies here. *See United States v. $1,399,313.74 in U.S. Currency*, 591 F. Supp. 2d 365, 374 (S.D.N.Y. 2008).[8]

### 3. The RICO Counts Suffer From Additional Defects.

Plaintiffs misread *Boyle v. United States*, 556 U.S. 938 (2009) (Opp. at 15), and ignore the cases applying it in this District, *see* Mot. at 21. *Boyle* recognized that RICO requires "some sort of framework . . . for carrying out [the organization's] objectives," such that "the various members . . . function[ed] as a continuing unit to achieve a common purpose." 556 U.S. at 951 (last alteration in original) (citation omitted). Plaintiffs' vague allegations regarding collective "management," FAC ¶ 313, do not suffice. *See* Mot. at 20–21. And *D'Addario v. D'Addario*, 901 F.3d 80 (2d Cir. 2018) (Opp. at 15), is not to the contrary. *See id.* at 101–02 (six defendants were not an "enterprise" absent allegations of how they coordinated, even under "*Boyle*'s relaxed test").

Finally, Plaintiffs do not dispute that their RICO conspiracy claim must fall if their substantive RICO claim does, as is the case here. *See* Opp. at 20; Mot. at 21.

### D. Plaintiffs' State Law Claims Are Preempted and Are Defective (VI–VIII).

California courts overwhelmingly agree that the CUTSA preempts all related state-law claims based on "the same nucleus of facts as trade secret misappropriation," Mot. at 24 (citation

---

[7] Plaintiffs allege, without anything close to particularity, that GRA engaged in non-specific acts of "hacking and surveillance." *See* FAC ¶¶ 326–28. Even if pertinent details are "particularly within [GRA's] knowledge," Opp. at 19, that does not give Plaintiffs "license to base claims of fraud on speculation and conclusory allegations." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990).

[8] Plaintiffs' reliance on *Angermeir v. Cohen*, 14 F. Supp. 3d 134 (S.D.N.Y. 2014) (Opp. at 19), is misplaced, because Plaintiffs are alleging that "the [wire] communications [themselves] . . . contained false or misleading information." *Id.* at 145 (second and third alterations in original) (citation omitted).

omitted), including receipt of stolen property, civil conspiracy, and intrusion upon seclusion claims. *Id.* at 23–24. Once again, Plaintiffs' only response to this is that the *Muzin* court stands, apparently alone, in disagreement. *See* Opp. at 21–22. This Court should abide by the rulings of the California courts that have squarely addressed this issue and dismiss the claims.

### 1. Plaintiffs Fail to State a Receipt of Stolen Property Claim (VI).

Plaintiffs' failure to identify the source of the allegedly stolen property (*i.e.*, the actual "hackers") makes it impossible to plead that Defendants later received property from those hackers with knowledge that it was stolen. Plaintiffs' response—that Defendants *themselves* "stole the material," *see* Opp. at 22—is unsupported, for all the reasons cited above and in Defendants' opening brief. *See* Mot. at 10–12. Count VI should be dismissed.

### 2. Plaintiffs Fail to State a Civil Conspiracy Claim (VII).

Plaintiffs fail to "clearly allege specific action on the part of each defendant." Mot. at 24 (citation omitted). Plaintiffs do not dispute that they have failed to make specific conspiracy allegations for each Defendant; instead, they argue that a Defendant's "[t]acit consent" to the acts of others is "enough" to sustain a claim against that Defendant. Opp. at 22 (alteration in original). That is not the law, *see* Mot. at 24, but even if it were, Plaintiffs cannot meet their own standard. *See* Opp. at 22 (citing FAC ¶¶ 68–105, 141–87). These paragraphs consistently lump Defendants together, making it impossible to infer that any Defendant consented to specific actions of another.

### 3. Plaintiffs Fail to State an Intrusion Claim (VIII).

Plaintiffs insist that "Broidy need not reprint all the emails that were splashed across the pages of the country's largest newspapers," and ask the Court to simply conclude that Broidy's emails are inherently private. *See* Opp. at 21. That is legally insufficient. *See* Mot. at 24–25.

## CONCLUSION

The FAC should be dismissed with prejudice.

Dated: New York, New York
October 5, 2020

        GIBSON, DUNN & CRUTCHER LLP

        By: /s/ Orin Snyder
            Orin Snyder
            Zainab Ahmad
            Paul J. Kremer
            Samantha Weiss

            200 Park Avenue
            New York, NY 10166-0193
            Tel.: (212) 351-4000
            Fax: (212) 351-4035
            osnyder@gibsondunn.com
            zahmad@gibsondunn.com
            pkremer@gibsondunn.com
            sweiss@gibsondunn.com

            *Attorneys for Defendants*