Case 1:19-cv-11861-MKV   Document 81   Filed 12/17/20   Page 1 of 4

Filiberto Agusti
202 429 6428 direct
202 261 7512 fax
fagusti@steptoe.com



1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202 429 3000 main
www.steptoe.com

December 17, 2020

**Via ECF**

Hon. Mary Kay Vyskocil
United States District Court
Southern District of New York
500 Pearl St., Room 2230
New York, New York 10007

**Re:**   *Broidy et al. v. Global Risk Advisors LLC, et al.*, **19 Civ. 11861 (S.D.N.Y.)**

Dear Judge Vyskocil:

We write on behalf of Plaintiffs Elliot Broidy and Broidy Capital Management, LLC (collectively, "Broidy") in response to the letter from the defendants (collectively, "GRA" or the "GRA Defendants") dated December 10, 2020 arguing that the Ninth Circuit's recent decision in *Broidy Capital Management, LLC v. State of Qatar*, No. 18-56256, 2020 WL 7051945 (9th Cir. Dec. 2, 2020) supports GRA's pending motion to dismiss. It does not.

As detailed below, *State of Qatar* merely affirmed a California federal court's ruling from 2018 that Qatar is immune from Broidy's claims. Whether the GRA Defendants can cloak themselves in Qatar's sovereign immunity is a separate question under very different standards, not addressed in *State of Qatar*. Broidy's arguments on the motion to dismiss before this Court *assumed* Qatar itself would be immune, and so are not affected in the slightest.

GRA also tries to stretch the *State of Qatar* decision as somehow being instructive on whether Broidy has adequately pleaded GRA's direct involvement in the hacking, and on whether Broidy has stated a conspiracy claim. This is incorrect also. The Ninth Circuit did not address Broidy's pleading in this case, or change settled doctrines of common law conspiracy.

***State of Qatar* Does Not Rescue GRA's Meritless Immunity Defense**

As the Court will recall, Broidy's First Amended Complaint alleges that Qatar hired the GRA Defendants, a group of U.S. citizens and affiliated companies incorporated or doing business in the United States, to hack into Broidy's computer systems to steal private documents that were then leaked, in curated batches, to the media by a group of public relations professionals. (*See* ECF 57 ("Am. Compl.").) The aim of the scheme was to silence Broidy's efforts to expose Qatar's support for terrorist groups, such as al Qaeda and the Taliban. (*Id.* ¶ 2.)

GRA moved to dismiss on "derivative" sovereign immunity grounds (among others). GRA recognized that the Foreign Sovereign Immunities Act (the "FSIA") governs only "the immunity of foreign states," but argued for "derivative" immunity under the "common law." (ECF 73, at 3-4.)

Hon. Mary Kay Vyskoci
December 17, 2020
Page 2

Broidy opposed the motion because GRA cannot show, as the common law requires, that the immunity sought "is one which it is the established policy of the State Department to recognize." (ECF 76, at 3 (quoting *Samantar v. Yousuf*, 560 U.S. 305, 312 (2010).) To the contrary, the State Department has repeatedly taken the position in court proceedings that U.S. residents who "enjoy the protections of U.S. law ordinarily should be subject to the jurisdiction of the courts, particularly when sued by U.S. residents." (*Id*. at 4 (citation omitted).) The same conclusion flows from longstanding common law principles under the *Restatement of Foreign Relations Law* whereby agents of a foreign nation are not immune unless their acts are done in an "official capacity," and unless the suit would effectively "enforce a rule of law against the state." (*Id*. at 5 (citations omitted).) The court in the parallel case in the District of Columbia concluded that GRA's co-conspirators, who are also Americans, were not immune under these standards. *Broidy Capital Mgmt. LLC v. Muzin*, 2020 WL 1536350, at *6-8 (D.D.C. Mar. 31, 2020).

GRA's reply brief devoted just over a page to the immunity issue and did not point to any State Department policy (much less "established" policy) in its favor. (ECF 77, at 2-3.)

The questions raised by the parties' briefing before this Court are not affected by the Ninth Circuit's affirming Qatar's immunity, because both sides here *assumed* Qatar's immunity. After all, Broidy's complaint here alleged that the California court had "dismissed [Broidy's] lawsuit against Qatar on grounds of foreign sovereign immunity." (Am. Compl. ¶ 191.) Broidy did not try to have this Court re-litigate what the court in California decided two years ago.

The underlying reasoning of the Ninth Circuit has no bearing on this case, either, because the questions presented concerned *statutory* immunity under the FSIA, not common law immunity. Specifically, the two questions before the Ninth Circuit were: first, whether Qatar's alleged conduct was "discretionary" (and hence fell within an exception to the "tortious activity" exception of the FSIA); and second, whether that conduct fell within the "commercial activity" exception of the FSIA. 2020 WL 7051945, at *4-8. Neither has anything to do with whether the State Department has an "established" policy to grant immunity for U.S. residents like the GRA Defendants, or any other issue in this case. Courts commonly recognize that, contrary to what GRA is suggesting, agents of a foreign country are not immune simply because the foreign country is immune. *See*, *e.g.*, *Carpenter v. Republic of Chile*, 610 F.3d 776, 779 (2d Cir. 2010) (upholding immunity for Chile because (among other reasons) the commercial activity exception did not apply, but remanding to assess immunity of Chilean officials).

GRA nonetheless seizes on the Ninth Circuit's description of the underlying "covert cyberespionage" operation as a "sovereign action[]," and on the description of certain GRA Defendants as "irregular operatives," *id*. at *7, to argue that sovereign immunity can reach conduct even where it is not "not carried out by 'state officials.'" (GRA Letter at 2.) But whether sovereign nation may retain *its immunity* under these circumstances simply does not address whether its operatives can cloak themselves in that immunity. If anything, the language the Ninth Circuit used—referring to "*covert*" operations by "*irregular* operatives"—undermines GRA's position because a foreign sovereign's agents generally cannot receive immunity for covert, unofficial activity that the sovereign itself does not acknowledge or ratify. (ECF 76 at 5.)

Hon. Mary Kay Vyskoci
December 17, 2020
Page 3

Steptoe

     At bottom, nothing in the Ninth Circuit opinion addresses the issues before this Court, nor did its reasoning lend any support for the extraordinary theory GRA advances—namely, that Americans engaging in a vicious hack-and-smear operation against other Americans from U.S. soil are immune from liability, simply because the paymaster was an adverse foreign country.

### *State of Qatar* Did Not Address or Impact Any Other Issues

     GRA argues that that Ninth Circuit's decision somehow "confirmed" that unnamed "cyber mercenaries," and not GRA, conducted the hacks. (GRA Letter at 2.) This is nonsense. Setting aside the fact that the Ninth Circuit's summary of the complaint in that case cannot alter the complaint before this Court, the excerpt from the California complaint quoted by the Ninth Circuit—that GRA "introduced Qatar 'to cyber mercenaries in various countries to coordinate technical aspects of the illegal intrusion,'" 2020 WL 7051945, at *2—plainly does not mean that GRA had no direct involvement. In fact, the complaint in California is quite clear that GRA "participated in the strategic planning for and *execution of the attacks*." First Amended Complaint, *Broidy v. State of Qatar*, No. 18-cv-02421, 2018 WL 8300108, at ¶ 8 (May 24, 2018) (emphasis added). This is consistent with the allegation here that GRA "knowingly and unlawfully conducted the hacking of BCM's computer systems and email servers." (Am. Comp. ¶ 272.) These facts must be *assumed true* for purposes of GRA's motion.

     GRA also argues that the Ninth Circuit ruled that there is no civil conspiracy cause of action under California, and urges dismissal on that basis. (GRA Letter at 2.) First, the Court should not consider this new argument because GRA mentioned it nowhere in its moving papers or reply brief. It is far too late to amend GRA's motion. In any event, as the Ninth Circuit noted, while conspiracy allegations cannot proceed as an "independent cause of action," they *can* supply a "theory of liability" for those who "share with the tortfeasor or tortfeasors a common plan or design in its perpetration." *State of Qatar*, 2020 WL 7051945, at *2 (citation omitted). Courts in California routinely uphold conspiracy allegations when they are pleaded alongside other valid claims. *See*, *e.g.*, *Logtale, Ltd. v. Canton*, No. 20-cv-01207, 2020 WL 4464907, at *6 (N.D. Cal. Aug. 3 2020) (allowing conspiracy claim to proceed and distinguishing cases "where the plaintiff failed to state a claim for any other civil wrongs"); *Blatt v. Pambakian*, 432 F. Supp. 3d 1141, 1175 (C.D. Cal. 2020) (recognizing that "there is no civil conspiracy 'claim' as such under California law" but denying motion to dismiss allegations of "liability allegedly arising from the civil conspiracy"); *Carney v. Bank of Am. Corp.*, SACV 11-00571, 2011 WL 13130901, at *2 (C.D. Cal. Oct. 20, 2011) (allowing conspiracy allegations to proceed because theory was "not alleged as a stand-alone tort"). Broidy's complaint states several underlying tort claims, and so the civil conspiracy allegations should be upheld as a means to hold responsible those who knowingly joined in the wrongdoing.

* * *

     We thank the Court for its consideration of these matters.

Hon. Mary Kay Vyskoci
December 17, 2020
Page 4

Steptoe

Respectfully,

Filberto Agusti