UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                          :

ELLIOTT BROIDY and BROIDY CAPITAL    :
MANAGEMENT, LLC,                        :
                          :

            Plaintiffs,           :
                          :

        - against -           :
                          :

GLOBAL RISK ADVISORS LLC,         :
GRA MAVEN LLC,                   :       Case No. 19-cv-11861-MKV
GRA QUANTUM LLC,              :
GLOBAL RISK ADVISORS EMEA LIMITED,  :      **Oral Argument Requested**
GRA RESEARCH LLC,              :
QRYPT, INC.,                     :
KEVIN CHALKER,                 :
DENIS MANDICH,                 :
ANTONIO GARCIA, and          :
COURTNEY CHALKER,           :
                          :

           Defendants.        :
                          :
------------------------------------------------------------------x

## DEFENDANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ................................................................................................ 1

FACTS ..................................................................................................................................... 3

    I.  From Day One, Plaintiffs Have Based Their Entire Case on the Promise of "Forensic" Evidence. ................................................................................................. 3

    II.  The Court Dismissed the First Amended Complaint for a Lack of "Forensic" Allegations. ........................................................................................................... 4

    III.  Plaintiffs' Second Amended Complaint Fails to Deliver the Missing Allegations. ........................................................................................................... 5

    IV.  Plaintiffs' New Gambit Raises Serious Ethical and Due Process Concerns. ................ 7

    V.  Plaintiffs Have Repeatedly Acted in Bad Faith to Smear and Harass Defendants. ......... 7

LEGAL STANDARD .............................................................................................................. 8

ARGUMENT ........................................................................................................................... 8

    I.  Plaintiffs Are Acting in Bad Faith, After Undue Delay, and With a Dilatory Motive. .................................................................................................................. 9

    II.  Defendants Have Been Unfairly Prejudiced by Plaintiffs' Tactics and Would Be Further Prejudiced by This Amendment. ................................................................. 12

    III.  The Proposed SAC Is Futile Because It Fails to Remedy the Specific Deficiency That Doomed Every Cause Of Action in the FAC. ............................................ 14

CONCLUSION ....................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACE Am. Ins. Co. v. Sprain Assocs., LLC*,
   2021 WL 1687277 (S.D.N.Y. Apr. 29, 2021)..........................................................................8

*AEP Energy Servs. Gas Holding Co. v. Bank of American N.A.*,
   626 F.3d 699 (2d Cir. 2010)................................................................................................12

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
   671 F.3d 140 (2d Cir. 2011)................................................................................................16

*Austin v. Ford Models, Inc.*,
   149 F.3d 148 (2d Cir. 1998), *abrogated on other grounds*,
   534 U.S. 506 (2002)..............................................................................................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................15

*Classicberry Ltd. v. Musicmaker.com, Inc.*,
   2001 WL 1658241 (S.D.N.Y. Dec. 20, 2001) ......................................................................10

*Coral Crystal, LLC v. Fed. Ins. Co.*,
   2021 WL 84308 (S.D.N.Y. Jan. 11, 2021) ...........................................................................11

*De Jesus v. Sears, Roebuck & Co.*,
   1995 WL 122726 (S.D.N.Y. Mar. 22, 1995), *aff'd*, 87 F.3d 65 (2d Cir. 1996).....................15

*Galvez v. Means*,
   1996 WL 487962 (S.D.N.Y. Aug. 27, 1996) ........................................................................15

*Hord v. Jackson*,
   281 F. Supp. 3d 417 (S.D.N.Y. 2017)....................................................................................8

*United States ex rel. Ladas v. Exelis, Inc.*,
   824 F.3d 16 (2d Cir. 2016)....................................................................................................8

*Leines v. Homeland Vinyl Prod., Inc.*,
   2020 WL 6044037 (E.D. Cal. Oct. 13, 2020) ......................................................................10

*McCarthy v. Dun & Bradstreet Corp.*,
   482 F.3d 184 (2d Cir. 2007)..................................................................................................8

*Nightingale Grp., LLC v. CW Cap. Mgmt., LLC*,
   2012 WL 2674539 (S.D.N.Y. July 5, 2012) .........................................................................10

iii

*Tantaros v. Fox News Network, LLC*,
    2018 WL 2731268 (S.D.N.Y. May 18, 2018) .........................................................................15

*In re Terrorist Attacks on Sept. 11, 2001*,
    298 F. Supp. 3d 631 (S.D.N.Y. 2018).......................................................................................15

*United States v. Pokerstars*,
    2016 WL 4411421 (S.D.N.Y. Aug. 19, 2016)…………………………………………....11

## PRELIMINARY STATEMENT

For more than three years, two-time convicted felon Elliott Broidy has been telling courts across the country that he has "forensic" evidence that GRA, a consultant to the State of Qatar, orchestrated a 2017 hack on Broidy's computer systems. But in hundreds of pages of complaints filed against GRA and its affiliates in multiple courts, Broidy has never set forth any link between GRA and the IP addresses that he claims were used in the attacks. In fact, he has never even identified the alleged IP addresses. He also has never said what, specifically, allegedly was stolen from him; how he was harmed; or why the ten named Defendants here should all share legal responsibility under the alphabet soup of narrowly drawn federal and state statutes he invokes.

What Broidy has done is used these cases as cover to wage a public relations war against a non-party, Qatar, because the courts have held that he cannot sue that sovereign nation directly. And for years, GRA and the other Defendants here have been caught in the line of fire: Broidy has launched dozens of subpoenas targeting the personal phone records of journalists, GRA employees, and Defendant Kevin Chalker's minor children; repeatedly defamed Chalker as an unregistered foreign agent and sponsor of terrorism; and levied countless irrelevant and inflammatory allegations against everyone from the Emir of Qatar to Kevin's brother Courtney, a cattle rancher in Texas.

Enough is enough. As this Court recognized in its March 31, 2021 opinion dismissing Broidy's First Amended Complaint ("FAC"), Broidy has failed to state a claim because he has never alleged "any connection between GRA and these IP addresses." Dkt. 89 at 19. Indeed, by going all-in on the promise of "forensic" evidence and failing to deliver, Broidy has actually made it "less plausible that GRA had a role in the hacking attacks." *Id.* Broidy now seeks leave to file a Second Amended Complaint ("SAC"), which would be his fifth against a GRA entity. Yet the SAC, like its predecessors, makes no effort whatsoever to address the missing link identified by

this Court, leading conclusively to the inference that there is none.  Apparently realizing that they had talked themselves out of court, Plaintiffs nonetheless persisted in bad faith, deleting several allegations about IP addresses from the FAC and going all-in on an entirely new, equally spurious, theory.

In lieu of the forensic evidence he once claimed was the lynchpin of his case, Broidy brazenly replaces one "smoking gun" with another:  he baldly asserts that at some point in time, apropos of nothing, Kevin Chalker "told GRA personnel that Chalker and GRA were responsible for the hack-and-smear operation."  Dkt. 97-1 (SAC) ¶ 116.  This general statement of ultimate liability cannot pass muster under *Twombly* and *Iqbal*, even if it is couched as a vague party admission.  In fact, it is entirely implausible that any such admission was made in the first place: the source for Broidy's allegation is triple hearsay of an anonymous declarant who says no such thing in the actual declaration that Plaintiffs have attached to the SAC.  That declaration—obtained two months after the Court's dismissal order, in full view of the infirmities of the FAC—states only that the declarant "was in a position to obtain knowledge that Kevin Chalker had knowledge of the Broidy hacking and GRA was responsible for the hacking"—in short, if "GRA was responsible," then the declarant would have heard about it.  *Id.* Ex. A (Decl.) ¶ 6.

Neither the declaration, nor the derivative allegations in the SAC, speak to the IP addresses used in the hacks, or any other "forensic" evidence, let alone the fatal deficiency identified by this Court.  Nor do they provide a plausible alternative basis for concluding that any Defendant is responsible for the hacks.  If the Court had any doubts as to Plaintiffs' bad faith and dilatory motive, it need only consider the mechanism by which Broidy is offering this fig leaf declaration.  Rather than plead actual, specific facts in the possession of this alleged "whistleblower" as part of the publicly filed SAC, Broidy's counsel proposes to meet with the Court *ex parte* to plead his

case.  For the reasons addressed in Defendants' June 15, 2021 letter to the Court, the Court should not countenance this end-run around the Federal Rules and due process.  *See* Dkt. 101 (Defs.' Ltr. in Opp. to *Ex Parte* Review).

Defendants have been unfairly prejudiced by Broidy's bad-faith litigation conduct for far too long.  By first failing to ever disclose the IP addresses allegedly at issue, and now disclaiming any reliance on forensic evidence, Broidy has made it impossible for Defendants to investigate and defend themselves against his "claims."  And by lobbing a never-ending series of falsehoods at Defendants, all likely to be dismissed before Defendants ever have an opportunity to refute them, Broidy has injured the businesses and reputations of two well-regarded startup companies and their founders.  Defendants should not now face the prospect of defending against an entirely new theory of liability—based on an anonymous "source" from the shadows—that also has no concrete support.

Because Broidy cannot meet the basic threshold requirement of stating a plausible claim, and because his proposed new amendments are the result of Plaintiffs' dilatory motive and bad faith attempts to continue his defamatory attacks on Defendants dressed up in a pleading, Plaintiffs' motion for leave to amend should be denied, and this case should be dismissed with prejudice.

## **FACTS**

### I.     **From Day One, Plaintiffs Have Based Their Entire Case on the Promise of "Forensic" Evidence.**

In December 2019, Plaintiffs launched their first complaint in this case on an allegedly high note, boasting that they had already "hired experts to conduct forensic investigations into the unlawful hacks" and "gained additional information even before merits discovery."   Dkt. 1

(Compl.) ¶ 3.[1]  But the bravado fell flat:  the best Plaintiffs could offer was IP addresses located in the same state as certain Defendants.  *See, e.g.*, *id.* ¶ 48.

Defendants repeatedly and specifically called Plaintiffs out on their untenable position that, simply because the hacks allegedly originated from IP addresses located in states where various Defendants allegedly operate, one or more Defendants must be the culprit.  *See* Dkt. 46 (MTD Compl.) at 1–2; Dkt. 34 (Ltr. Request for Pre-MTD Conference) at 2; *see also* Dkt. 73 (MTD FAC) at 2 (same).  Responding to these challenges, Plaintiffs amended their original complaint on June 26, 2020, revising the key allegations about IP addresses.  *See, e.g.*, Dkt. 57 (FAC) ¶¶ 96–98, 102.  But as the Court ultimately found, Plaintiffs again failed to allege facts that would make it plausible that Defendants operated the computers at any of those locations.  *See* Dkt. 73 (MTD FAC) at 2, 10–11.

## II.    The Court Dismissed the First Amended Complaint for a Lack of "Forensic" Allegations.

Defendants moved to dismiss again, on largely the same grounds.  *See* Dkt. 72–74.  On March 31, 2021, this Court agreed that Plaintiffs had still failed to allege the missing link.  In dismissing the FAC, the Court recognized that Plaintiffs had staked their entire case on allegations about the IP addresses:  "Plaintiffs' primary allegations directly connecting Defendants to the hacks are based on the IP addresses Plaintiffs were able to capture from a forensic examination."  Dkt. 89 (Op.) at 17.  The Court found that Plaintiffs failed to connect any of those IP addresses to any Defendant, dooming the FAC in its entirety.  *See, e.g.*, *id.* ("Plaintiffs never establish why that IP address make[s] it plausible that GRA or its agents were behind the hacking."); *id.* at 18 (in

---

[1]  This echoed similar proclamations in *Broidy Capital Management LLC et al. v. State of Qatar et al.*, 2:18-CV-02421-JFW (C.D. Cal. 2018), filed 21 months earlier, in which Plaintiffs alleged that "Broidy's advanced cyber unit was able to uncover problems with the attacker's obfuscation technique on February 14, 2018, which revealed that the attack originated in Qatar."  *See id.* Dkt. 1 ¶ 73.

discussing Plaintiffs' "attempt to link the alleged hacks to Defendants through an IP address affiliated with the Carolina Research and Education Network," finding that "any purported link to Defendants is wholly speculative").

Plaintiffs' problem went beyond omissions.  They had effectively talked themselves out of court by alleging knowledge of the IP addresses involved but not "providing any connection between GRA and these IP addresses."  *Id.* at 19.  As the Court noted, the FAC's allegations actually made it "*less* plausible that GRA had a role in the hacking attacks."  *Id.* (emphasis added). "This conclusion" was deemed "fatal to each of Plaintiffs' claims."  *Id.* at 20.

### III.    Plaintiffs' Second Amended Complaint Fails to Deliver the Missing Allegations.

Faced with several rounds of briefing on the issue and this Court's dismissal opinion, any good-faith plaintiff would have responded by re-pleading with everything it had learned from its "forensic investigations," identifying the IP addresses at issue, and alleging specific facts to show that they were used at some point in time by Defendants or their agents—if that was in fact the case.

But that was not the case.  Instead of providing details regarding their purportedly extensive forensic examinations and the IP addresses they touted throughout the FAC, Plaintiffs *deleted numerous references to them entirely*.  The proposed SAC walks back the allegations of knowledge of IP addresses and results of "forensic investigations" and contains new, inconsistent allegations in their place, which belie any possibility of good faith.  Gone is the allegation that one of the IP addresses belonged to an event space in Harlem—even though Plaintiffs previously relied on that allegation in an effort to tie GRA and Kevin Chalker, as residents of New York, to the hacks.  Dkt. 76 (Pls.' Opp'n to MTD FAC) at 23 (citing FAC ¶¶ 98, 194).  Also gone are the allegations about an IP address registered to the "guest" Wi-Fi network at the University of North Carolina ("UNC"),

which Plaintiffs previously said was evidence of Defendants' involvement in the hacks.  *See* FAC ¶¶ 102–03 (alleging that UNC is one hour from GRA Maven's office, and that one of Defendant Kevin Chalker's aides was taking class there, in a desperate effort to tie Defendants to that IP address).

Plaintiffs removed these allegations because the Court saw them for what they are:  purely speculative.  *See* Dkt. 89 (Op.) at 17–18.  Plaintiffs now allege that, aside from a single IP address in Qatar and two in Vermont (where no Defendant resides or operates), the connections used in the hacks are actually "untraceable."  Dkt. 97-1 (SAC) ¶¶ 112–13.  That is a remarkable change from the FAC, in which Plaintiffs' "primary allegations" were "based on the IP addresses Plaintiffs were able to capture from a forensic examination."  Dkt. 89 (Op.) at 17.  At best, this about-face is an attempt to make the Court forget about prior allegations that were so speculative they effectively pointed *away* from Defendants; at worst, it is proof that Plaintiffs have never had any reliable "forensic" evidence of hacking in the first place, and that their prior reliance on the promise of such evidence was a falsehood designed to maintain a baseless complaint.  Either way, Plaintiffs' latest amendment screams bad faith.  *See Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir. 1998) (affirming denial of leave to amend where proposed amended complaint deleted contrary allegations from prior complaint), *abrogated on other grounds*, 534 U.S. 506 (2002).

Instead of delivering the evidence Plaintiffs loudly claimed to possess, the SAC offers a brand new, threadbare allegation that Defendant Kevin Chalker "told GRA personnel that Chalker and GRA were responsible for the hack-and-smear operation."  Dkt. 97-1 (SAC) ¶ 116.  As conclusory as that allegation is, it is not even supported by the declaration that purports to serve as its basis.  *See id.* ¶ 119; *id.* Ex. A (Decl.) ¶ 6 (stating only that "I was in a position to obtain knowledge that Kevin Chalker had knowledge of the Broidy hacking and GRA was responsible

for the hacking"). This mystery declarant does not actually say that Kevin Chalker confessed to anything—only that, if Mr. Chalker *had* confessed or if GRA *had* been responsible, the declarant believes he would have heard about it.

It is implausible that the declarant has more to say. Plaintiffs' counsel allegedly obtained the declaration in May 2021, in full view of the Court's dismissal order, knowing that this would be Plaintiffs' last chance to state a plausible claim.

**IV.   Plaintiffs' New Gambit Raises Serious Ethical and Due Process Concerns.**

In a shameless attempt to add credibility to this half-baked "admission," Plaintiffs have requested a Star Chamber session with the Court. Under the guise of safely identifying the declarant and bolstering his facially insufficient statements, Plaintiffs propose to bend the Court's ear in private. *See* Dkt. 98 (Ltr. Request). This request to open an *ex parte* dialogue with the Court is, as set forth in Defendants' June 15, 2021 letter (Dkt. 101), inappropriate, and the Court should reject it out of hand.

**V.   Plaintiffs Have Repeatedly Acted in Bad Faith to Smear and Harass Defendants.**

As inappropriate as Plaintiffs' recent tactics are, they are par for the course for Broidy. While he has never successfully stated a claim against GRA or any of its affiliates in any court, that has not stopped him from launching dozens of dragnet subpoenas covering the phone records of reporters, attorneys, and children (including Mr. Chalker's then-minor son). *See generally* Dkt. 42 (Defs.' Ltr. re Discovery). If there were any doubt about Plaintiffs' ulterior motive—a wide-ranging harassment campaign against anyone Broidy believes is connected to the State of Qatar (whom he cannot legally sue)—the Court need only consider how fervently Plaintiffs campaigned for more "early discovery" in this case, despite failing to bring any of their early discovery from other cases to bear in saving the FAC. *See* Dkt. 41 (Joint Ltr.); Dkt. 43 (Pls.' Ltr. re Discovery).

After the Court dismissed the FAC, Defendants' counsel met and conferred with Plaintiffs' new counsel to discuss, among other things, the irrelevant and bad faith allegations in the FAC that had defamed Defendants. Defendants' counsel explained, for example, that Kevin Chalker did not and could not have hosted a party to celebrate the Broidy hack at Sapphire Gentleman's Club in New York on December 27, 2017, because Chalker had been traveling from Texas to California with his family for Christmas on that day. Defendants' counsel explained that they could easily prove that, but Plaintiffs' counsel never asked to see the evidence. It is attached here. *See* Snyder Decl., Ex. A (Chalker family boarding passes). The inflammatory strip club allegation remains in the SAC. *See* Dkt. 97-1 (SAC) ¶ 99.

## LEGAL STANDARD

The decision to grant or deny leave to amend under Fed. R. Civ. P. 15(a) is "within the sound discretion of the district court." *Hord v. Jackson*, 281 F. Supp. 3d 417, 427 (S.D.N.Y. 2017) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). Leave "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (citation omitted). Amendment is futile where, as here, "as a matter of law, . . . proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *ACE Am. Ins. Co. v. Sprain Assocs., LLC*, 2021 WL 1687277, at *2 (S.D.N.Y. Apr. 29, 2021) (Vyskocil, J.).

## ARGUMENT

Plaintiffs' motion should be denied, and this case should be dismissed with prejudice, for three independent reasons.

First, Plaintiffs' motion is a result of bad faith, undue delay, and dilatory motive. At best,

Plaintiffs exaggerated the results of their "forensic" investigations, withheld basic information about that theory to Defendants' detriment, then insisted on filing another complaint on a flimsy new basis; at worst, they lied.

Second, Plaintiffs' shifting-sands approach to litigation and their insistence on making demonstrably false, inflammatory allegations have unfairly prejudiced Defendants, both in their defense of this case and in their ability to conduct business. Rather than alleging the IP addresses at issue at the outset—which would have given Defendants a fighting shot at investigating Plaintiffs' claims more than three years ago—Plaintiffs have insisted on hiding the ball. Plaintiffs have also insisted on larding up their complaint with false and irrelevant allegations about Mr. Chalker, his brother, and Mr. Chalker's businesses, to their personal and professional detriment.

Third, the proposed SAC is futile on numerous grounds. Most importantly, it fails to remedy the deficiency that doomed the FAC—a deficiency that Plaintiffs have repeatedly failed to address across no fewer than five complaints. Moreover, the SAC is replete with improper group-pleading and fails to plead certain elements for every cause of action, including elements that Defendants identified as missing last time.[2]

## I.  Plaintiffs Are Acting in Bad Faith, After Undue Delay, and With a Dilatory Motive.

Plaintiffs' request for leave to amend should be denied because it is a bad-faith attempt to forestall dismissal of this case, which never had a legitimate basis, and which is merely a vehicle for Plaintiffs to defame Defendants and their clients with impunity and to declare open season for discovery into anyone Plaintiffs deem an ally of Qatar.

---

[2]  If the Court is inclined to grant Plaintiffs' motion for leave to amend, Defendants would respectfully request an opportunity to present those Rule 12(b)(6) arguments, which the Court did not reach in dismissing the FAC, in a renewed motion to dismiss.

Even if a proposed amended complaint states a claim, "a court may deny leave to amend if requested in bad faith." *Classicberry Ltd. v. Musicmaker.com, Inc.*, 2001 WL 1658241, at *3 (S.D.N.Y. Dec. 20, 2001). "In the context of a motion for leave to amend, 'bad faith' means acting with the intent to deceive, harass, mislead, delay, or disrupt." *Leines v. Homeland Vinyl Prod., Inc.*, 2020 WL 6044037, at *4 (E.D. Cal. Oct. 13, 2020). In addition, denial of leave to amend is appropriate when the movant "knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay." *Nightingale Grp., LLC v. CW Cap. Mgmt., LLC*, 2012 WL 2674539, at *11 (S.D.N.Y. July 5, 2012) (internal quotations omitted).

The SAC is tainted by a long and documented history of bad faith. As an initial matter, it reveals that Plaintiffs never had a "forensic" basis for filing this case after all—despite the fact that, in four prior complaints, "Plaintiffs' primary allegations" were "based on the IP addresses Plaintiffs were able to capture from a forensic examination." Dkt. 89 (Op.) at 17. The SAC makes clear that all of Plaintiffs' prior allegations about IP addresses were a sham. It would have been relatively simple to allege in the SAC the actual IP addresses used in the alleged hacks; that Plaintiffs have never done so, even in the face of a dismissal order focused on that issue, is proof-positive that this case was premised on false allegations of forensic evidence. No such evidence exists.

Furthermore, by entirely giving up on the IP address theory that served as their "primary allegations" in the prior complaints, Dkt. 89 (Op.) at 17, Plaintiffs have effectively admitted that they had *no* putative basis for accusing Defendants of the hacks until May 2021—two months *after* the dismissal of the FAC—when Plaintiffs' new counsel made contact with an alleged former employee of GRA. *See* Dkt. 98-1 (Terwilliger Decl.) ¶ 4. Such a plain violation of Rule 11 also

warrants denying leave to amend.  *See Coral Crystal, LLC v. Fed. Ins. Co.*, 2021 WL 84308, at *6–7 (S.D.N.Y. Jan. 11, 2021) (denying leave to amend where plaintiffs failed to make allegations with the requisite support under Rule 11(b)(3)).

Plaintiffs have never suggested that they had access to this declarant's testimony prior to May 2021.  But if they did, that would be no better:  it would simply mean that Plaintiffs hid the actual putative basis for their claims for upwards of three years and repeatedly offered a fake justification ("forensic" investigations) for accusing Defendants of the hacks.  That would also constitute bad faith and warrant dismissal with prejudice.  *See United States v. Pokerstars*, 2016 WL 4411421, at *6 (S.D.N.Y. Aug. 19, 2016) (denying leave to amend where plaintiff "attempt[ed] to assert new facts or theories that it could have raised sooner").

Plaintiffs' dilatory conduct has already caused substantial harm to Defendants and a waste of judicial resources.  Plaintiffs duped Defendants and courts into taking the IP address theory seriously for *years*.  The theory formed the basis for four prior complaints filed in two different courts dating back to 2018, each of which Defendants and their counsel spent countless hours analyzing and addressing.  It was the focus of extensive briefing on multiple motions to dismiss, including one for which this Court issued a 21-page written opinion.  Plaintiffs now wish to take the case in an entirely different direction, basing it on the thin reed of an equivocal "whistleblower" statement which, even if true, would not sustain a claim, and to extend a case that Plaintiffs clearly have no hope of ever proving.

Plaintiffs' improper pleading tactics visited harm upon non-parties as well:  Despite apparently having no basis for their initial complaint, Plaintiffs used this case as a justification to serve 20 subpoenas under this Court's authority (*see* Dkt. 42); several subpoena targets had to seek

11

relief from this Court (*see, e.g.*, Dkt. 49), and the Court had to intervene to impose a stay of discovery until the motion to dismiss could be decided.  *See* Dkt. 44 (Order).

Finally, Plaintiffs' latest attempt to backfill the record and rewrite their theory of liability includes a blatantly obvious attempt to engage in *ex parte* argument on the viability of the SAC. Plaintiffs' request demonstrates that this motion (and the proffer of an anonymous declaration) are a charade intended to bypass adversarial scrutiny of the new allegations and get this case to discovery, during which Plaintiffs will visit even more harassment on Defendants and others.  The Court should not even have to read between the lines of the written complaint, let alone give Plaintiffs a private audience in which to make additional unsupportable allegations.

## II. Defendants Have Been Unfairly Prejudiced by Plaintiffs' Tactics and Would Be Further Prejudiced by This Amendment.

The Second Circuit has "referred to the prejudice to the opposing party resulting from a proposed amendment as among the 'most important' reasons to deny leave to amend." *AEP Energy Servs. Gas Holding Co. v. Bank of American N.A.,* 626 F.3d 699, 725 (2d Cir. 2010) (citation omitted).  "Amendment may be prejudicial when, among other things, it would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *Id.* at 725–26 (internal quotation marks and citation omitted).

Here, the prejudice to Defendants is two-fold:  Plaintiffs have both deprived Defendants of an opportunity to investigate Plaintiffs' actual claims and deluged Defendants with a mass of irrelevant and defamatory allegations that will cost untold resources to address.

First, Plaintiffs have hid the alleged basis for their claims for more than three years.  When Plaintiffs supported their first four complaints with IP addresses, Plaintiffs refused to plead those IP addresses or other facts that would have given Defendants an opportunity to investigate who

they belonged to.  To the extent that Defendants might have been in a position to determine whether they had any relationship to the IP addresses at issue, those efforts were frustrated by Plaintiffs' refusal to plead facts they claimed to possess.  Now, Plaintiffs are offering a similarly obscure theory, based on an anonymous declarant who has provided no detail whatsoever regarding Kevin Chalker's alleged admission.  By refusing to even plead the declarant's identity, let alone facts regarding the alleged admission of liability as required by Rule 8(a), Plaintiffs have substantially multiplied the costs of investigating and responding to the SAC.

Second, Plaintiffs have repeatedly served up voluminous pleadings larded with inflammatory and demonstrably false statements about Kevin Chalker, his family, and his businesses.  Some allegations—such as the claim that Mr. Chalker, a dedicated family man, threw a party at a strip club to celebrate the Broidy hack over Christmas, *see* Dkt. 97-1 (SAC) ¶ 99—can easily and unequivocally be disproven.  *See* Snyder Decl., Ex. A.  But others—such as the claim that Mr. Chalker and his businesses have "harmed U.S. national security by helping enhance the covert, illicit capabilities of a known supporter of terrorist groups," *see* Dkt. 97-1 (SAC) ¶ 91— would require Defendants to indulge Plaintiffs' vast conspiracy theory, try to muster discovery about the intentions of foreign sovereigns (which Plaintiffs well know is impossible), and expend untold resources trying to prove a negative, just to clear Mr. Chalker's name in a case that is, ostensibly, about Broidy's financial trade secrets.  *See id.* ¶¶ 247–69.

The motivation for these sideshows is plain.  Because Plaintiffs cannot state a claim under any relevant statute, let alone prove such a claim in court, Plaintiffs' only hope is to use the SAC itself as a vehicle to harm Qatar and those that Plaintiffs consider allies of Qatar.  Meanwhile, the unfair prejudice to Defendants is clear from the face of the SAC:  According to Plaintiffs themselves, Mr. Chalker and his colleagues are "former intelligence, national security and military

personnel" (*id.* ¶ 46), founders of two successful businesses also named in the SAC (*id.* ¶¶ 47, 131), and trusted by a foreign nation with high-value contracts (*id.* ¶ 64). This Court should not be used as a mechanism for a bad faith smear campaign.

The SAC is a bad faith attempt to injure Defendants, both in terms of impeding their defense and in terms of what it will cost to ultimately clear their names. That is not the purpose of a complaint, and this Court should not allow it.

## III.   The Proposed SAC Is Futile Because It Fails to Remedy the Specific Deficiency That Doomed Every Cause Of Action in the FAC.

The SAC should also be rejected because it fails to remedy, or even address, the critical deficiency that doomed the FAC. This Court dismissed the FAC "for the simple reason that it never plausibly connect[ed] the hacking activity to GRA or its agents." Dkt. 89 (Op.) at 17. That "hacking activity" was extensively described by reference to various IP addresses, none of which Plaintiffs could tie to any Defendants. *See, e.g.*, Dkt. 57 (FAC) ¶¶ 94–98. The Court found that these allegations, which remain in the SAC, made it "*less* plausible that GRA had a role in the hacking attacks." Dkt. 89 (Op.) at 19 (emphasis added). The SAC purports to remedy the deficiency through an anonymous declarant who has nothing to say whatsoever about Defendants' role in the alleged hacks—let alone the IP addresses that were used to perform them. In short, neither the SAC nor the declaration it attaches does anything to address the specific deficiency identified by the Court, and, as a result, the SAC—like its predecessors—fails to connect any Defendant to any address used in the hacks.

In the SAC, Plaintiffs allege that "Chalker told GRA personnel that Chalker and GRA were responsible for the hack-and-smear operation targeting [Plaintiffs]." Dkt. 97-1 (SAC) ¶ 116. That allegation should be disregarded for three reasons.

First, the declaration on which it is based says no such thing. It carefully and artfully says

only that the declarant "was *in a position* to obtain knowledge that Kevin Chalker *had knowledge of the Broidy hacking and GRA was responsible for the hacking*"—*not that he in fact has such knowledge. Id.* Ex. A ¶ 6 (emphases added).  This language establishes nothing more than if GRA was behind the alleged hack (it was not), then the declarant would have known.  Plaintiffs' overblown reading of the declaration in paragraph 116 of the SAC is entitled to no weight.  *See De Jesus v. Sears, Roebuck & Co.*, 1995 WL 122726, at *4 (S.D.N.Y. Mar. 22, 1995), *aff'd*, 87 F.3d 65 (2d Cir. 1996) ("In situations where an exhibit is attached to a party's pleadings, the document itself, and not the party's interpretation of that document, prevails.").

Second, Plaintiffs cannot plead that "Chalker and GRA" were "responsible" for the hacks without alleging any supporting *facts* to make that legal conclusion plausible.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  Such "conclusory facts" or "bald assertions" regarding ultimate liability should not be considered under Rule 12(b)(6), and are not made better simply because they are laundered through a putative fact witness or a vague allegation of a party admission.  *Galvez v. Means*, 1996 WL 487962, at *1 (S.D.N.Y. Aug. 27, 1996) ("unsupported" allegations in "plaintiff's [d]eclaration" contained "bald assertions that will not defeat a Rule 12(b)(6) motion"); *Tantaros v. Fox News Network, LLC*, 2018 WL 2731268, at *6 (S.D.N.Y. May 18, 2018) ("non-concluso[r]y" facts are "required under . . . *Twombly* and *Iqbal*").

Third, it is plainly implausible that any admission of "responsibility" was ever made at all.  Plaintiffs rely on the triple hearsay of what their lawyers say an anonymous declarant told them about what Kevin Chalker said, but do not allege anything about the specific content of the statements or the circumstances of when, where, and to whom they were made.  This last-ditch attempt to tie Defendants to the hacks—through a declarant's "incoherent and hearsay-within-hearsay testimony," is "inadequate to withstand scrutiny under Rule 12."  *In re Terrorist Attacks*

*on Sept. 11, 2001*, 298 F. Supp. 3d 631, 647 (S.D.N.Y. 2018).

Setting aside the allegations in the SAC, Plaintiffs' anonymous declaration also does not provide an alternative plausible basis for liability.  The declarant does not allege a single *fact* from which the Court could reasonably infer that any Defendant engaged in any of the specific conduct alleged in the SAC.  *See Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) (finding "conclusory statement from an anonymous source" to be "insufficient to make plausible an allegation").  The declarant does not provide the IP addresses that Plaintiffs contend were used to hack their computers; nor does he provide any other facts about the hacking operation that could establish a plausible link between GRA and those IP addresses.

At best, the declarant adds to Plaintiffs' allegations that GRA possessed the skill set or capacity to commit the attacks.  But so too do countless other actors.  As this Court has correctly held, allegations of capacity are "legally insufficient to state a claim."  *See* Dkt. 89 (Op.) at 19. Like the FAC, the clear limitations of the SAC and its attachments "make[] it *less* plausible that GRA had a role in the hacking attacks."  *Id.* (emphasis added).  Leave to amend should therefore be denied.

Finally, the proposed SAC suffers from numerous additional pleading deficiencies—many of which Defendants identified in their prior motion to dismiss, and many of which have been identified by other courts that have dismissed Plaintiffs' substantially identical claims against other alleged "co-conspirators."  *See, e.g.*, *Broidy Capital Management LLC et al. v. Muzin et al.*, 1:19-CV-00150-DLF (D.D.C. 2019), Dkt. 51.  Should the Court grant Plaintiffs leave to amend, Defendants intend to move to dismiss the amended pleading under Rule 12, and to brief all of these additional deficiencies in support of that motion.  But as explained above, Plaintiffs' bad faith and dilatory motive in continuing to prosecute this case—and their failure to cure the fatal flaw with

their claims this Court previously identified—demonstrate that the time to dismiss this case with prejudice is now.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for leave to amend should be denied with prejudice.


Dated:   New York, New York
         July 13, 2021

GIBSON, DUNN & CRUTCHER LLP


By: */s/ Orin Snyder*
      Orin Snyder
      Zainab Ahmad (admitted *pro hac vice*)
      Paul J. Kremer
      Samantha Weiss
      Doran J. Satanove

      200 Park Avenue
      New York, NY 10166-0193
      Tel.: (212) 351-4000
      Fax: (212) 351-4035
      osnyder@gibsondunn.com
      zahmad@gibsondunn.com
      pkremer@gibsondunn.com
      sweiss@gibsondunn.com
      dsatanove@gibsondunn.com

      *Attorneys for Defendants*