IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

ELLIOTT BROIDY, et al.,

                Plaintiffs,

—v.—

GLOBAL RISK ADVISORS LLC, et al.,

                Defendants.

Case No. 1:19CV11861 (MKV)

**<u>PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND</u>**

George J. Terwilliger III
Michael Francisco
McGuireWoods LLP
888 16th Street NW, Suite 500
Washington, DC 20006
Phone: (202) 857-1700
Fax: (202) 857-1737
gterwilliger@mcguirewoods.com
mfrancisco@mcguirewoods.com

Brooks H. Spears
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
Tysons, VA 22102
Phone: (703) 712-5000
Fax: (703) 712-5050
bspears@mcguirewoods.com

*Counsel for Plaintiffs*

**INTRODUCTION**

Before the Court is a motion for leave to amend a complaint that the Court previously identified as lacking one material allegation: a link between the alleged hacking and the defendants. Plaintiffs have now supplied that link in the form of an admission by Kevin Chalker that Defendants undertook the hacking. Rather than substantively address this development, Defendants relitigate the prior complaint and make scurrilous allegations of improper motive and bad faith.

Hacking is a serious, significant, and widespread intrusion on the personal privacy of U.S. citizens and companies. "Cybercrime is a serious and growing problem, resulting in (by some estimates) over $100 billion in losses per year." Jonathan Mayer, *Cybercrime Litigation*, 164 U. Pa. L. Rev. 1453, 1505 (2016). Remedies at law for such actions have been established. There is no doubt that Broidy's privacy was so invaded. The question in this case is simply if Defendants are responsible for that invasion of privacy. The proposed second amended complaint ("SAC") alleges they are, established at least in part by the admission of one of the principal Defendants. This is enough for the complaint to be amended and the case to proceed.

**ARGUMENT**

**I.     Chalker's admission of liability is more than sufficient to connect Defendants to the hacking under a plausibility standard.**

Plaintiffs' SAC plausibly connects Defendants to the illegal hacking that occurred. Nothing more is required at this stage. *See Feldman v. Comp Trading, LLC*, No. 19CV4452, 2021 WL 930222, at *3 (E.D.N.Y. Mar. 11, 2021) ("Rule 8 imposes a 'lenient standard' for pleading [hacking claims]."). The proposed Second Amended Complaint re-alleges the facts that previously led to the Court to conclude that, "Plaintiffs adequately allege that Defendants had the ability to

1

commit the spear phishing and hack campaign." ECF No. 89 at 20. This time, however, Plaintiffs also allege connecting facts:

- "Chalker told GRA personnel that Chalker and GRA were responsible for the hack-and-smear operation targeting Broidy/BCM." ECF No. 97-1 ¶ 116.

- Chalker admitted that he and his co-defendants "destroyed electronic devices and other materials containing evidence of the Broidy/BCM hacking." *Id.* ¶ 117.

- "Chalker and GRA also directed the electronic and physical surveillance of Broidy, according to former GRA personnel." *Id.* ¶ 118.

These allegations are confirmed by the whistleblower's declaration. The whistleblower is a former GRA employee. *See* ECF No. 97-1, Ex. A ¶ 4. As such, the whistleblower has direct, "personal knowledge about the matters stated in this declaration." *Id.* ¶ 2. Based on that personal knowledge, the whistleblower states under oath that "GRA was responsible for the hacking."[1] *Id.* ¶ 6. The allegations and the supporting declaration allege specific admissions of liability made by Defendant Chalker. Contrary to Defendants' argument, an admission of liability "supplies a specific, nonconclusory factual allegation." *Davison v. Bennis*, 152 F.3d 917, *1 (2d Cir. 1998) (internal quotation marks omitted).

Defendants' futility argument also highlights the inconsistency of their position. One month ago, Defendants urged the Court not to consider the whistleblower's declaration and conceded that "Mr. Broidy would enjoy the presumption of truth for any factual allegation he makes in good faith."[2] ECF No. 101 at 2. On the other hand, Defendants now urge the Court to

---

[1] Defendants rely on *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140 (2d Cir. 2011), in urging the Court to reject the whistleblower's statements. *See* ECF No. 104 at 16. But *Amidax* involved a quote from an article in the *New York Times*, which was provided to the newspaper from an anonymous source whose identity was unknown to any of the parties or the court. *See Amidax*, 671 F.3d at 146. Here, by contrast, Plaintiffs rely on a declaration sworn to by a known individual whom Plaintiffs have interviewed in seeking leave to amend under Rule 15.

[2] Defendants rely on *Galvez v. Means*, No. 95 Civ. 9479, 1996 WL 487962 (S.D.N.Y. Aug. 27, 1996), to argue that statements from a plaintiff's declaration should not be considered on a motion to dismiss. *See* ECF No. 104 at 15. Because neither Broidy nor BCM has submitted a declaration, *Galvez* is entirely inapplicable.

2

consider *only* the declaration while ignoring the allegations in the SAC. *See* ECF No. 104 at 14-15. Despite Defendants' vacillation, the Court should consider both the SAC's allegations and the incorporated supporting declaration.[3] *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (permitting court to consider "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint").

### II. The law does not require a forensic link to state a viable hacking claim.

Multiple courts, including this one, have *denied* motions to dismiss hacking claims, even where there is no alleged forensic link and the allegations are far less detailed than those in Plaintiffs' proposed SAC. Defendants misinterpret the Court's prior Order and the established pleading requirements for hacking claims. This mistaken premise permeates each of Defendants' arguments about bad faith, prejudice, and futility. *See* ECF No. 104 at 10 ("The SAC makes clear that all of Plaintiffs' prior allegations about IP addresses were a sham."); *id.* at 12-13 ("Plaintiffs refused to plead those IP addresses or other facts that would have given Defendants an opportunity to investigate who they belonged to."); *id.* at 14 ("[T]he SAC—like its predecessors—fails to connect any Defendant to any address used in the hacks."). IP addresses are not the only way to plead or prove a hacking claim.

### A. Many courts have rejected Defendants' proposed pleading requirement.

In *Snyder v. Fantasy Interactive, Inc.*, No. 11 Civ. 3593, 2012 WL 569185, at *3 (S.D.N.Y. Feb. 9, 2012), Judge Pauley denied a motion to dismiss a hacking claim where, as here, the plaintiff alleged an admission of liability made to company personnel. *See Snyder*, 2012 WL 569185 at *1 ("Plaintiffs allege that in December 2010, Knight told several Fantasy employees that he 'hacked'

---

[3] Contrary to Defendants' argument, a court should only ignore the complaint in favor of an attached document when there is a conflict between the two. *See Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 607 F. Supp. 2d 500, 502 (S.D.N.Y. 2009) ("Where a conclusory allegation in the complaint conflicts with a statement made in a document attached to the complaint, the document controls and the allegation is not accepted as true."). Here, there is no conflict.

3

into Snyder's Skype account at the direction of the Martins."). Similarly, the court in *Integrated Bus. Techs., LLC v. Netlink Solutions, LLC*, No. 16-CV-48, 2016 WL 4742306, at *6 (N.D. Okla. Sept. 12, 2016), denied a motion to dismiss a hacking claim based on the plaintiff's allegations that, "Defendants, in concert with one another and as part of their overall conspiracy, intentionally accessed, or attempted to access, [plaintiff's] computers.…" The court explained:

> Although Defendants contend this is merely a formulaic recitation of the elements, in this specific context, little else is required to state a plausible claim for relief.… [The plaintiff] likely lacks knowledge as to how its computers were hacked, when they were hacked, and other details surrounding their allegations but, upon information and belief, they have sufficiently alleged that Defendants did so. Defendants are on notice of the alleged conduct that violated the statute and the type of damage it caused—namely, obtaining information that caused [the plaintiff] to lose customers.

*Integrated Business*, 2016 WL 4742306 at *4. Just so here. Defendants' are mistaken to suggest that Plaintiffs must allege the details of "when, where, and to whom," ECF No. 104 at 15; it is enough that Chalker admitted responsibility to an employee.

The decision in *Cloudpath Networks, Inc. v. SecureW2 B.V.*, 157 F. Supp. 3d 961 (D. Colo. 2016), is also analogous. There, the plaintiff (Cloudpath) claimed that the defendant (SecureW2) hacked its computer system using "anonymous proxies" in foreign countries, even though Cloudpath could not directly link SecureW2 to the IP addresses. *See id.*, ECF No. 37 (First Am. Compl.) ¶¶ 54-58. Although Cloudpath merely "suspect[ed] that SecureW2 was the perpetrator," the court explained, that was sufficient to state a claim. *Id.* at 985 ("These allegations are plausibly pleaded."). If mere suspicion and a lack of direct forensic evidence was enough to state a claim in *Cloudpath*, then Plaintiffs' far more detailed allegations are enough in this case.

Finally, in *Tyan, Inc. v. Garcia*, No. CV-15-5443, 2016 WL 7655790, at *3-4 (C.D. Cal. May 19, 2016), the court denied a motion for summary judgment on the same federal and California state hacking claims asserted here. The defendant in *Tyan*, like Defendants here, argued

that "no evidence supports his alleged involvement in the plot to hack Plaintiff's computer system." *Id.* at *3. But this lack of direct evidence—including the lack of forensic evidence—did not preclude the claims from proceeding to trial. Rather, the court identified "substantial *circumstantial* evidence from which a reasonable jury could conclude that Defendant [] played a central role in the hacking incident[.]" *Id.* (emphasis added). Critically, this evidence included a statement from a former employee linking the defendant to the hacking. *See id.* at *2. If this "circumstantial" evidence in *Tyan* could defeat summary judgment under Rule 56, then the analogous allegations in Plaintiffs' complaint easily satisfy the liberal standard of Rule 15.[4]

### B. This Court did not require a forensic link in its prior Order.

Defendants also twist this Court's prior Order to argue that *only* allegations about IP addresses would be sufficient to support Plaintiffs' claims. *See, e.g.*, ECF No. 104 at 1 ("As this Court recognized in its March 31, 2021 opinion dismissing Broidy's [FAC], Broidy has failed to state a claim because he has never alleged 'any connection between GRA and these IP addresses.'") (quoting ECF No. 89 at 19). But that is a gross mischaracterization of the Court's decision. The Court discussed the allegations regarding IP addresses only because it viewed them as Plaintiffs' "primary allegations" in the FAC. ECF No. 89 at 17. In the proposed SAC, by contrast, the primary allegations connecting Defendants to the hacks are the admissions of Kevin Chalker. *See* ECF No. 97-1 ¶¶ 116-18. In light of the overwhelming case law, these direct admissions of liability—in conjunction with the abundant circumstantial allegations—are sufficient for the Court to grant Plaintiffs leave to amend.

---

[4] Defendants highlight what they characterize as a "false and irrelevant" allegation that Kevin Chalker's brother, Courtney Chalker, destroyed evidence of the hacking. *See* 104 at 1, 9. But this allegation, taken as true at this stage, is enough to state a hacking claim against Courtney Chalker. *See Shah v. Warrick & Boyn, LLP*, No. 3:13CV103, 2019 WL 1324606, at *3 (N.D. Ind. Mar. 25, 2019) (denying motion to dismiss hacking claim based on allegation that defendant engaged in after-the-fact spoliation of evidence).

### III. Plaintiffs have not been dilatory.

Plaintiffs have acted with appropriate dispatch. Within two weeks of Defendants' moving to dismiss the original complaint, Plaintiffs exercised their right to amend as a matter of course. *See* ECF No. 56 (citing Fed. R. Civ. P. 15(a)(1)(B)). Even before that amendment, Plaintiffs had sought Defendants' agreement that "discovery should begin immediately and expeditiously." ECF No. 41 at 1. Defendants, on the other hand, rejected that approach—instead proposing that discovery be delayed until after a ruling on the motion to dismiss and, even then, be segmented into multiple "phases." *Id.* at 14. The Court immediately stayed discovery. *See* ECF No. 89. Then Plaintiffs, through new counsel, promptly sought leave and filed the proposed SAC within the time prescribed by the Court. *See* ECF Nos. 95-97.

Additionally, Defendants legal authority on delay is easily distinguishable. In *Nightingale Grp., LLC v. CW Capital Mgmt., LLC*, No. 11 Civ. 9293, 2012 WL 2674539, at *11 (S.D.N.Y. July 5, 2012), the plaintiffs "made a deliberate decision *not* to amend" in response to the motion to dismiss. (Emphasis added). For this reason, Judge Engelmayer could not grant the plaintiffs their "known opportunity to amend" permitted by his individual rules. *Id.* at *11. Here, by contrast, Plaintiffs have moved for leave to amend, rendering *Nightingale* inapposite. Likewise, *United States v. Pokerstars*, No. 11-CV-2564, 2016 WL 4411421, at *6 (S.D.N.Y. Aug. 19, 2016), involved a third party to an *in rem* proceeding—in its opposition to a dispositive motion—asserting a new theory of standing "in anticipation of an adverse ruling." This case presents an entirely different posture, in which the Court expressly permitted Plaintiffs to seek leave to amend to "remedy" the "factual deficiencies" in the prior pleading. *See* ECF No. 89 at 21. Plaintiffs did so. And, unlike the claimant in *Pokerstars*, Plaintiffs did not request leave to amend in opposition to a pending dispositive motion.

In any event, Plaintiffs have a valid, well-supported justification for declining to discuss the whistleblower's revelations previously. The whistleblower objectively fears for the safety of himself and his family, *see* ECF No. 98-1 ¶ 7, and reasonably asked not to be identified at the pleading stage unless absolutely necessary. That Plaintiffs did not plead Chalker's admissions to the whistleblower in prior versions of the complaint is of no moment now. Nothing about this process constitutes undue delay or dilatoriness.

**IV.     Plaintiffs have not acted in bad faith.**

Black letter law affords Plaintiffs discretion in choosing which facts to allege. *See Jennison v. Dick's Sporting Goods, Inc.*, No. 11 Civ. 4906, 2011 WL 6293061, at *2 (S.D.N.Y. Dec. 15, 2011) ("Plaintiff is the master of his complaint[.]"). Exercising this discretion does not amount to bad faith. Defendants accuse Plaintiffs of "bad faith" based on the alleged "promise" to produce a forensic link between Defendants and the IP addresses used in the hacking. *See* ECF No. 104 at 1 (stating that Plaintiffs went "all-in on the promise of 'forensic' evidence"), 3 ("Plaintiffs Have Based Their Entire Case on the Promise of 'Forensic' Evidence"), 6 ("Plaintiffs have never had any reliable 'forensic' evidence of hacking in the first place, and [] their prior reliance on the promise of such evidence was a falsehood designed to maintain a baseless complaint."). Plaintiffs never made this purported "promise." *See* Pls.' Mot. to Strike, Argument § II.

Defendants also argue that Plaintiffs exhibited bad faith by failing to plead Chalker's admissions of liability in prior versions of the complaint. *See* ECF No. 104 at 11 ("Plaintiffs hid the actual putative basis for their claims for upwards of three years …."). Under basic pleading rules, however, Plaintiffs had no obligation to allege every fact in their pleading. *See Scutti Enters., LLC v. Park Place Entm't Corp.*, 322 F.3d 211, 215 (2d Cir. 2003) (holding that "extensive pleading of fact is not required because the Federal Rules of Procedure provide other devices besides pleadings that will serve to define the facts and issues"). "The fact that plaintiff here may

7

have had more information than it alleged initially and waited to raise it after the [FAC] was dismissed does not mean it acted in bad faith." *Armstrong Pump, Inc. v. Hartman*, No. 10CV446S, 2012 WL 1795060, at *5 (W.D.N.Y. May 15, 2012).

Defendants' case law does not hold otherwise. In *Classicberry Ltd. v. Musicmaker.com, Inc.*, No. 01 CIV 1756, 2001 WL 1658241 (S.D.N.Y. Dec. 26, 2001), the court did not analyze the motion for leave to amend under a bad faith standard. Rather, it denied the motion because the movant "conducted no discovery whatsoever on any of the 9 counterclaims it originally asserted, and abandoned them only after plaintiffs moved [for summary judgment] against them." *Id.* at *5. This case is pre-discovery making *Classicberry* irrelevant. Defendants' only other case, *Leines v. Homeland Vinyl Prods., Inc.*, No. 2:18CV969, 2020 WL 6044037 (E.D. Cal. Oct. 13, 2020), is inapposite. Far from supporting Defendants' position, the *Leines* court rejected the bad faith argument and granted leave to amend under "Rule 15(a)'s liberal amendment policy." *Id.* at *2. This Court should follow *Leines* by rejecting bad faith as a purported basis for denying leave to amend.

## V.   Defendants cannot identify prejudice, let alone *substantial* prejudice.

Defendants are not unduly prejudiced by the proposed SAC. Defendants claim prejudice because "Plaintiffs have substantially multiplied the costs of investigating and responding to the SAC." ECF No. 104 at 13. Contrary to that argument, "time, effort, and money expended in litigation do not arise to the substantial prejudice that would justify denial of leave to amend." *McGee v. Doe*, 568 F. App'x 32, 40 (2d Cir. 2014) (internal quotation marks omitted). Moreover, Defendants' assertions of increased time and resources caused by the proposed SAC are unfounded.

There are no additional costs of investigation. The proposed SAC does not add any new claims or defendants, and it eliminates more than sixty allegations and claims as to some

8

defendants. The key allegation is Chalker's admission of liability, which he already knows to be true or false. Although Defendants imply that the proposed SAC now alleges that GRA furthered Qatar's interests through covert operations, *see* ECF No. 104 at 13 (quoting ECF No. 97-1 ¶ 91), that has been Plaintiffs' central allegation from day one. *See, e.g.*, ECF No. 1 ¶ 5. Thus, Defendants' complaint about the need for further investigation cannot overcome Rule 15's lenient standard. *See Maiaro v. Alarm Specialists, Inc.*, No. 13-cv-8658, 2014 WL 5285695, at *4 (S.D.N.Y. Oct. 15, 2014) ("Here, the 'prejudice' identified by Defendants—responding to pleadings that have since been amended, attending premotion conferences, and investigating new allegations—is not the 'substantial prejudice' that justifies denial of leave to amend.").

Defendants' complaint of increased litigation costs is equally baseless. If the Court allows Plaintiffs to amend, the *only* additional filing that will result is a renewed motion to dismiss. Even that will include, according to Defendants, recycled arguments from their earlier motion. *See* ECF No. 104 at 16. Other than this one potential filing, Defendants fail to identify a single litigation cost that would result from the pleading amendment. *See generally* ECF No. 104.

The Second Circuit has long held that the type of "prejudice" claimed by Defendants is legally insufficient. *See Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2d Cir. 1993). In a recent case, the Second Circuit reversed Judge Kaplan because "[t]he denial of leave to amend, based solely on delay and litigation expense, was an abuse of discretion." *See Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017). Importantly, the circumstances in *Pasternack* were identical to those here: "essentially no discovery has been undertaken in this case; [Plaintiffs'] proposed amended complaint would be the first complaint to be considered after the district court decided a motion to dismiss; and it does not appear that there is any allegation of untimeliness based on a scheduling order." *Id.*

9

The procedural posture shared by *Pasternack* and this case sharply contrasts with that of *AEP Energy Svcs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725-26 (2d Cir. 2010), the only case cited by Defendants. In *AEP*, discovery had closed and the parties filed cross-motions for summary judgment before the plaintiff sought to add a new claim that "may well have been dispositive of all other claims and counterclaims that had, until then, been the subject of extensive discovery and litigation between the parties." *Id.* at 726-27. Given those circumstances, the Second Circuit affirmed the denial of leave to amend because the proposed amendment would have caused the defendant to "expend significant additional resources to defend and would have significantly delayed the resolution of the dispute." *Id.* at 727 (internal quotation marks and brackets omitted). Here, by contrast, the only resulting cost is a potential renewed motion to dismiss. And because there is no trial date at this early stage, the SAC will not delay resolution of the case. Therefore, the Court should reject Defendants' argument of prejudice.[5]

## CONCLUSION

For the reasons discussed, the Court should grant Plaintiffs' motion for leave to amend.

Dated: July 27, 2021

Respectfully submitted,
ELLIOTT BROIDY
BROIDY CAPITAL MANAGEMENT, LLC
*By Counsel*

 s/ George J. Terwilliger III
George J. Terwilliger III
Michael Francisco
MCGUIREWOODS LLP
888 16th Street NW, Suite 500
Black Lives Matter Plaza
Washington, DC 20006

---

[5] In another attempt to show prejudice, Defendants claim reputational harm from the allegations. *See* ECF No. 104 at 13. That argument fails. *See, e.g.*, *Salt Lake Tribune Publ'g Co. v. Mgmt. Planning, Inc.*, No. 2:03CV565, 2006 WL 3692660, at *2 (D. Utah Dec. 12, 2006) ("As to reputational harm, that is something that follows ordinarily from the litigation process—not something extraordinary that would justify denying leave to amend.").

Phone: (202) 857-1700
Fax: (202) 857-1737
gterwilliger@mcguirewoods.com
mfrancisco@mcguirewoods.com

Brooks H. Spears
MCGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
Tysons, VA 22102
Phone: (703) 712-5000
Fax: (703) 712-5050
bspears@mcguirewoods.com

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing on the Court's CM/ECF system, which will send notice to all counsel of record.

       *s/ George J. Terwilliger III*
       George J. Terwilliger III