UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                          :

ELLIOTT BROIDY and BROIDY CAPITAL   :
MANAGEMENT, LLC,                              :

                Plaintiffs,              :

            - against -              :

GLOBAL RISK ADVISORS LLC,          :
GRA MAVEN LLC,                  :       Case No. 19-cv-11861-MKV
GRA QUANTUM LLC,              :
GLOBAL RISK ADVISORS EMEA LIMITED,  :     **Oral Argument Requested**
GRA RESEARCH LLC,            :
QRYPT, INC.,                   :
KEVIN CHALKER,               :
DENIS MANDICH,               :
ANTONIO GARCIA, and          :
COURTNEY CHALKER,          :

              Defendants.           :

---------------------------------------------------------------x

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................. 1

BACKGROUND ....................................................................................................... 2

LEGAL STANDARD................................................................................................. 4

ARGUMENT ............................................................................................................ 4

    I.       Plaintiffs' Causes of Action Against "All Defendants" Are Categorically Deficient................................................................................................. 5

    II.     Plaintiffs Fail to State a Claim Under the SCA (Count I)...................................... 6

    III.    Plaintiffs Fail to State a Claim Under the CFAA or Its State Analogue, CDAFA (Counts II, III). ................................................................. 8

    IV.    Plaintiffs Fail to State a Claim Under the DTSA (Count VII)............................. 10

    V.     Plaintiffs Fail to State A RICO Claim (Count IX)................................................ 14

    VI.    Plaintiffs Fail to State a Claim for RICO Conspiracy (Count X). ....................... 20

    VII.    Plaintiffs Fail to State a Claim Under CUTSA (Count VIII)............................... 21

    VIII.   Plaintiffs' Remaining State Law Causes of Action Should Be Dismissed (Counts IV, V, VI). ............................................................................. 21

    IX.    The Court Lacks Subject Matter and Personal Jurisdiction Over Defendants...... 25

    X.     Plaintiffs Should Not Be Granted Leave To Amend. .......................................... 25

CONCLUSION......................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*24 Seven, LLC v. Martinez*,
2021 WL 276654 (S.D.N.Y. Jan. 26, 2021) ..........................................................................12

*Accumulage Diagnostics v. TeraRecon, Inc.*,
260 F. Supp. 2d 941 (N.D. Cal. 2003) ................................................................................25

*Acrisure of California, LLC v. SoCal Com. Ins. Servs., Inc.*,
2019 WL 4137618 (C.D. Cal. Mar. 27, 2019) ....................................................................21

*Ad Lightning Inc. v. Clean.io, Inc.*,
2020 WL 4570047 (S.D.N.Y. Aug. 7, 2020) .......................................................................14

*In re Amaranth Nat. Gas Commodities Litig.*,
612 F. Supp. 2d 376 (S.D.N.Y. 2009) ................................................................................25

*Anza v. Ideal Steel Supply Co.*,
547 U.S. 451 (2006) .............................................................................................................19

*Applied Biological Lab'ys, Inc. v. Diomics Corp.*,
2021 WL 4060531 (S.D. Cal. Sept. 7, 2021) ......................................................................22

*Applied Equip. v. Litton Saudi Arabia.*,
869 P.2d 454 (Cal. 1994) ....................................................................................................24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................................4, 24

*ATS Prods., Inc. v. Champion Fiberglass, Inc.*,
2015 WL 6552698 (N.D. Cal. Oct. 28, 2015).................................................................21, 23

*Atuahene v. City of Hartford*,
10 F. App'x 33 (2d Cir. 2001) ...........................................................................................5, 6

*Bardwil Indus. Inc. v. Kennedy*,
2020 WL 2748248 (S.D.N.Y. May 27, 2020) .......................................................................5

*Barton v. Smartstream Techs., Inc.*,
2016 WL 2742426 (S.D.N.Y. May 9, 2016) .......................................................................25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................................................4, 24

*Bose v. Interclick, Inc.*,
2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) ......................................................................9

*Boyle v. United States*,
　556 U.S. 938 (2009) ................................................................................................20

*Broidy Cap. Mgmt. LLC v. Muzin*,
　2020 WL 1536350 (D.D.C. Mar. 31, 2020) .................................6, 7, 8, 14, 15, 16, 17, 24, 25

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
　69 F. Supp. 3d 342 (S.D.N.Y 2014) ..........................................................................20

*Cline v. Reetz-Laiolo*,
　329 F. Supp. 3d 1000 (N.D. Cal. 2018) ......................................................................24

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
　187 F.3d 229 (2d Cir. 1999) ....................................................................................15

*Cont'l Petrol. Corp. v. Corp. Funding Partners, LLC*,
　2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012) ......................................................15, 16, 20

*Cottle v. Plaid Inc.*,
　536 F. Supp. 3d 461 (N.D. Cal. 2021) ..........................................................................8

*Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*,
　891 F. Supp. 2d 13 (D.D.C. 2012) ...............................................................................7

*Davenport v. Litton Loan Servicing, LP*,
　725 F. Supp. 2d 862 (N.D. Cal. 2010) .......................................................................24

*DCR Mktg. Inc. v. Pereira*,
　2020 WL 91495 (S.D.N.Y. Jan. 8, 2020) ....................................................................10

*Democratic Nat'l Comm. v. Russian Fed'n*,
　392 F. Supp. 3d 410 (S.D.N.Y. 2019) ............................................................10, 13, 19, 20

*In re DoubleClick Inc. Priv. Litig.*,
　154 F. Supp. 2d 497 (S.D.N.Y. 2001) ..........................................................................8

*E. & J. Gallo Winery v. Instituut Voor Landbouw*,
　2018 WL 2463869 (E.D. Cal. June 1, 2018) ...............................................................21

*Elsevier Inc. v. Doctor Evidence, LLC*,
　2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) ...........................................................11, 12

*Elsevier Inc. v. W.H.P.R., Inc.*,
　692 F. Supp. 2d 297 (S.D.N.Y. 2010) .........................................................................19

*Erhart v. Bofl Holding, Inc.*,
　2020 WL 1550207 (S.D. Cal. Mar. 31, 2020) .............................................................22

*Exceed Holdings LLC v. Chi. Bd. Options Exch. Inc.*,
   2018 WL 4757961 (S.D.N.Y. Sept. 30, 2018) ....................................................................14

*In re Facebook Internet Tracking Litig.*,
   263 F. Supp. 3d 836 (N.D. Cal. 2017) ...............................................................................23

*Fink v. Time Warner Cable*,
   2009 WL 2207920 (S.D.N.Y. July 23, 2009) .......................................................................9

*First Cap. Asset Mgmt. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004) ...........................................................................15, 16, 18, 20

*Flaherty v. Lang*,
   199 F.3d 607 (2d Cir. 1999) ................................................................................................7

*Freeman v. DirecTV, Inc.*,
   457 F.3d 1001 (9th Cir. 2006) .............................................................................................7

*Freeney v. Bank of Am. Corp.*,
   2016 WL 5897773 (C.D. Cal. Aug. 4, 2016) .....................................................................23

*GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*,
   67 F.3d 463 (2d Cir. 1995) ................................................................................................15

*Hollander v. Flash Dancers Topless Club*,
   173 F. App'x 15 (2d Cir. 2006) .........................................................................................19

*Intrepid Financial Partners*,
   2020 WL 7774478 (S.D.N.Y. Dec. 30, 2020) ..............................................................11, 12

*Investment Science, LLC v. Oath Holdings, Inc.*,
   2021 WL 3541142 (S.D.N.Y. Aug. 11, 2021) ...............................................................12, 13

*Jus Punjabi, LLC v. Get Punjabi Inc.*,
   2015 WL 2400182 (S.D.N.Y. May 20, 2015) .....................................................................18

*K.F. Jacobsen & Co. v. Gaylor*,
   947 F. Supp. 2d 1120 (D. Or. 2013) ....................................................................................8

*Lawrence v. NYC Med. Prac., P.C.*,
   2019 WL 4194576 (S.D.N.Y. Sept. 3, 2019) ......................................................................13

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006) ...............................................................................................19

*Lundy v. Cath. Health Sys.*,
   711 F.3d 106 (2d Cir. 2013) ...............................................................................................18

*Medidata Sols., Inc., v. Veeva Sys. Inc.*,
  2018 WL 6173349 (S.D.N.Y. Nov. 26, 2018) ........................................................................10

*Nat'l Union Fire Ins. Co. v. Archway Ins. Servs. LLC*,
  2012 WL 1142285 (S.D.N.Y. Mar. 23, 2012) ........................................................................17

*Nesbeth v. New York City Mgmt. LLC*,
  2019 WL 110953 (S.D.N.Y. Jan. 4, 2019) ..............................................................................5

*New Show Studios LLC v. Needle*,
  2014 WL 2988271 (C.D. Cal. June 30, 2014) ........................................................................23

*NovelPoster v. Javitch Canfield Grp.*,
  140 F. Supp. 3d 938 (N.D. Cal. 2014) ...................................................................................10

*Ochre LLC v. Rockwell Architecture Plan. & Design, P.C.*,
  2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012) .......................................................................5, 6

*Opus Fund Servs. (USA) LLC v. Theorem Fund Servs.*,
  2018 WL 1156246 (N.D. Ill. Mar. 5, 2018)...........................................................................13

*PHL Assocs., Inc. v. Superior Ct. of Yolo Cnty.*,
  2020 WL 4012763 (Cal. Ct. App. Jul. 16, 2020)...................................................................22

*Phoenix Ancient Art, S.A. v. J. Paul Getty Trust*,
  2018 WL 1605985 (S.D.N.Y. Mar. 29, 2018) .......................................................................10

*Principia Partners LLC v. Swap Financial Group, LLC*,
  2019 WL 4688711 (S.D.N.Y. Sept. 26, 2019).......................................................................11

*Rajaratnam v. Motley Rice, LLC*,
  449 F. Supp. 3d 45 (E.D.N.Y. 2020) .....................................................................................18

*Ray Larsen Assocs., Inc. v. Nikko Am., Inc.*,
  1996 WL 442799 (S.D.N.Y. Aug. 6, 1996)............................................................................16

*Reis, Inc. v. Lennar Corp.*,
  2016 WL 3702736 (S.D.N.Y. July 5, 2016) ............................................................................9

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993).................................................................................................................19

*Roque v. Suntrust Mortg., Inc.*,
  2010 WL 546896 (N.D. Cal. Feb. 10, 2010) .........................................................................24

*Sathianathan v. Smith Barney, Inc.*,
  2007 WL 576097 (S.D.N.Y. Feb. 21, 2007)...........................................................................17

*Schatzki v. Weiser Cap. Mgmt., LLC*,
    2012 WL 2568973 (S.D.N.Y. July 3, 2012) ......................................................................9

*Sedima v. Imrex Co.*,
    473 U.S. 479 (1985) ........................................................................................................17

*Sporting Supplies Int'l v. Tulammo USA, Inc.*,
    2011 WL 13135282 (C.D. Cal. Jan. 3, 2011) ................................................................25

*Strategic Partners, Inc. v. FIGS, Inc.*,
    2021 WL 4813645 (C.D. Cal. Aug. 10, 2021) ...............................................................22

*Thea v. Kleinhandler*,
    807 F.3d 492 (2d Cir. 2015) ...........................................................................................25

*Turbon Int'l, Inc. v. Hewlett-Packard Co.*,
    769 F. Supp. 2d 262 (S.D.N.Y. 2011) .............................................................................21

*W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*,
    2004 WL 2187069 (S.D.N.Y. Sept. 29, 2004) ................................................................18

*Xavian Ins. Co. v. Marsh & McLennan Companies, Inc.*,
    2019 WL 1620754 (S.D.N.Y. Apr. 16, 2019) ..................................................................14

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ..............................................................................24

*Zirvi v. Flatley*,
    433 F. Supp. 3d 448 (S.D.N.Y. 2020) .............................................................................11

**Statutes**

18 U.S.C. § 1030(e)(8) ............................................................................................................9

18 U.S.C. § 1030(g) ................................................................................................................9

18 U.S.C. §§ 1831 and 1832 .............................................................................................10, 19

18 U.S.C. § 1836 ...................................................................................................................10

18 U.S.C. § 1839(3) ...............................................................................................................11

18 U.S.C. § 1839(3)(A) ..........................................................................................................11

18 U.S.C. § 1839(5)(B) ..........................................................................................................13

18 U.S.C. § 1957 ...................................................................................................................18

18 U.S.C. § 1961(5) ...............................................................................................................17

18 U.S.C. § 2510(15) .................................................................................................................8

18 U.S.C. § 2701(a)(1) ..............................................................................................................8

## PRELIMINARY STATEMENT

For more than four years, Plaintiff Elliott Broidy has been trying and largely failing to state an actionable claim against someone in the United States for an allegedly international "hack-and-smear operation" that took place in 2017. *See* Second Am. Compl. ("SAC") ¶ 116. Broidy's litigation campaign has been as persistent as it has been inconsistent. In eight complaints filed in three different federal courts since 2018, Broidy has alleged a litany of federal and state law violations against a total of 19 different defendants, including foreign sovereign officials and the State of Qatar (in the *Qatar* case), a slate of Washington, D.C. lobbyists (in the *Muzin* case), a Moroccan diplomat (in the *Benomar* case), and the cyber-security companies and employees who are Defendants here. But not a single claim against these Defendants has ever survived the pleading stage in any of these cases. At the same time, Broidy's wide-ranging conspiracy theory seeking to link alleged disseminators of his personal information (the *Muzin* defendants) to "hackers" and the State of Qatar as part of a supposed RICO enterprise was dismissed by the *Muzin* court in 2020.

Despite his long history of litigation failure, Broidy is at it again. Now on his third try in this case, Broidy's Second Amended Complaint offers 76 sprawling pages of warmed-over allegations—the vast majority of which appeared in previous complaints—in supposed support of a scattershot 10-claim barrage. A plaintiff cannot come into court with a grab bag of disparate and inapplicable claims in the hope that one will stick, but that is precisely what Broidy has done here. While the term "kitchen sink" is overused, this case is a textbook example of an abusive kitchen-sink pleading.

Broidy has thrown up against the wall a hodge-podge of ten different federal and state law claims against ten different Defendants, without any regard for the elements of those claims or the pleading standards applicable in this Court. Broidy lumps all the Defendants together, in violation

1

of clear Second Circuit precedent; he asserts three common-law claims that are preempted by the California Uniform Trade Secrets Act that he also invokes; he recycles two other claims the *Muzin* court dismissed, in violation of basic collateral estoppel principles; and he peddles two trade secrets claims while maintaining he does not have to tell the Court or the Defendants anything about the alleged trade secrets Defendants allegedly stole.  Broidy's grab bag of claims has only one common denominator:  the claims fail as a matter of law.

To make matters worse, Broidy has been on notice of these grave defects since Defendants first moved to dismiss the initial complaint back in June 2020.  That motion marched claim-by-claim and element-by-element through the complaint's failures.  The Court ultimately dismissed based on Broidy's threshold failure to link any Defendant to the hack.  In response, Broidy amended *only* to address that single defect, doing nothing to remedy the numerous other fatal defects that remain in his newest pleading.  In fact, Broidy has not made any material changes to his latest complaint, other than to introduce an anonymous so-called "whistleblower" who cannot salvage his claims.  Once again, for all his bluster and fury, Broidy fails to state a claim under law.

It is now time to bring this overreaching lawsuit to an end.  After eight complaints in three courts, Broidy is out of chances to state a claim against these Defendants.  The Court should dismiss the SAC with prejudice.

## BACKGROUND

Plaintiffs assert ten causes of action against Defendants, alleging Defendants designed a "spear phishing" campaign, at the direction of the State of Qatar, to "hack" Plaintiffs' computers and divulge Plaintiffs' confidential information.  *See* SAC ¶¶ 303, 308.  As the Court knows, this is the fourth lawsuit Brody has filed in connection with this unproven conspiracy theory since 2018.  Dkt. 89 (MTD Op. & Order) at 1.

On March 31, 2021, the Court dismissed Plaintiffs' First Amended Complaint ("FAC"), finding Plaintiffs failed to plausibly allege Defendants were connected to the purported hacking underlying all ten of Plaintiffs' causes of action.  *See* MTD Op. & Order at 20.  Plaintiffs claimed they had been able to connect Defendants to the hacking through the results of a "forensic investigation" linking IP addresses to Defendants.  *See* FAC ¶¶ 96-98, 102-03.  The Court ruled Plaintiffs failed to connect any of those IP addresses to any Defendant, dooming the FAC in its entirety.  MTD Op. & Order at 17 ("Plaintiffs never establish why that IP address make[s] it plausible that GRA or its agents were behind the hacking.");  *id.* at 18 (discussing Plaintiffs' "attempt to link the alleged hacks to Defendants through an IP address affiliated with the Carolina Research and Education Network," finding "any purported link to Defendants is wholly speculative").  In fact, the FAC's allegations actually made it "*less* plausible that GRA had a role in the hacking attacks."  *Id.* at 19 (emphasis added).  "This conclusion" was "fatal to each of Plaintiffs' claims."  *Id.* at 20.

Rather than provide the details regarding their purportedly extensive forensic examinations and the IP addresses they touted throughout the FAC, Plaintiffs sought leave to amend the FAC, removing these allegations altogether.  Dkt. 96 (MTA).  On February 28, 2022, the Court granted Plaintiffs' motion.  *See* Dkt. 114 (MTA Mem. Op. & Order).  In so doing, the Court recognized Plaintiffs had "pivot[ed] from their prior theory []that the IP addresses they believed were the culprits behind the hacking belonged to GRA . . . to one predicated on the argument that the majority of the IP addresses are untraceable."  *Id.*  at 3.

The SAC offers a brand-new theory: Defendant Kevin Chalker allegedly "told GRA personnel that Chalker and GRA were responsible for the hack-and-smear operation."  Dkt. 116 (SAC) ¶ 116.  This new allegation is in turn based on another new allegation: that a whistleblower

inside GRA has declared that "I was in a position to obtain knowledge that Kevin Chalker had knowledge of the Broidy hacking and GRA was responsible for the hacking." *Id.* Ex. A (Decl.) ¶ 6; *see also id.* ¶ 119; MTA Op & Order at 3.  In granting leave to amend, the Court found that these allegations rendered plausible Plaintiffs' allegations that Defendants were connected to the hacking in some way.  *See* MTA Op & Order at 3.  But the Court deferred ruling on whether Plaintiffs had actually pleaded any cause of action under Rule 8.  *See id.*

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id.*—in other words, when there are allegations sufficient to conclude that there has been an actionable violation of law.  Those allegations "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and cannot consist of "conclusory statements" or "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## ARGUMENT

Defendants respectfully disagree that Plaintiffs have adequately alleged a connection between the purported hacking activity and one or more Defendants.  But accepting that premise as true, as the Court has found, Plaintiffs have still not pleaded *any* cause of action.  The SAC is replete with improper group-pleading, and the individual counts suffer from multiple deficiencies, each of which independently warrants dismissal—*regardless* of whether the SAC adequately ties one or more Defendants to the purported hack.  Plaintiffs have been put on notice of these deficiencies

4

multiple times yet have failed to cure them.  The Court should dismiss the SAC with prejudice.

**I.      Plaintiffs' Causes of Action Against "All Defendants" Are Categorically Deficient.**

Plaintiffs assert six causes of action against "All Defendants" (Counts II, IV, VI, VII, IX, and X) and four causes of action against "GRA" and "Kevin Chalker" simultaneously (Counts I, III, V, VIII).  These claims should be dismissed because Plaintiffs fail to specify the allegedly wrongful conduct attributable to each Defendant, as this Circuit requires.

Plaintiffs have violated Rule 8(a) by failing to give each Defendant fair notice of the claims against it.  "Where a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of *each* of the defendants."  *Ochre LLC v. Rockwell Architecture Plan. & Design, P.C.*, 2012 WL 6082387, at *6–7 (S.D.N.Y. Dec. 3, 2012), *aff'd*, 530 F. App'x 19 (2d Cir. 2013) (emphasis added).  In this Circuit, plaintiffs "cannot merely 'lump[] all the defendants together in each claim'" and "force the various defendants to guess at the nature of [plaintiffs'] claims."  *Id.* at *6, *7 (first alteration in original) (quoting *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)); *see also Nesbeth v. New York City Mgmt. LLC*, 2019 WL 110953, at *3 (S.D.N.Y. Jan. 4, 2019) (Second Circuit bar on lumping defendants together "well-established").  Lumping even a few Defendants together is enough to violate this well-established rule.  *See Bardwil Indus. Inc. v. Kennedy*, 2020 WL 2748248, at *3 (S.D.N.Y. May 27, 2020) (dismissing claims against defendant-movant because of lumping with two co-defendants).

Yet that is precisely what Plaintiffs seek to do here.  In an attempt to avoid scrutiny of their undeveloped theories, most of the causes of action are asserted against "All Defendants."  *See, e.g.*, SAC ¶¶ 106–109.  Elsewhere, Plaintiffs fail to distinguish between Kevin Chalker and GRA, a company he founded.  *See, e.g.*, SAC ¶¶ 96–103.  The problem is only compounded where, as here, the "lumping" allegations pertain to specific *factual* issues (such as who allegedly sent a phishing email or accessed Plaintiffs' computer systems), as opposed to *legal* issues (such as who

may share liability for the acts of a given individual). *See Ochre LLC*, 2012 WL 6082387, at *6 (dismissing with prejudice for failure to specify which defendants engaged in infringing activities). Plaintiffs' vague allegations force Defendants to guess which one is alleged to have engaged in which alleged acts of misconduct—a clear violation of Rule 8. *See Atuahene*, 10 F. App'x at 34.

Plaintiffs' dragnet pleading appears designed to impose maximum discomfort on Kevin Chalker and the various entities associated with him, but these tactics reveal the implausibility of Plaintiffs' theories.  According to the SAC, multiple different people, working for multiple different companies simultaneously, all pressed "send" on the same phishing email.  And to the extent Plaintiffs sometimes purport to distinguish Kevin Chalker and the other original Defendant, GRA, from the rest of the Defendants, *see, e.g.*, SAC ¶¶ 195–200, 241, Plaintiffs still fail to distinguish between Chalker and the company.  And even in those causes of action directed to just Chalker and GRA, there remain dozens of allegations directed simply to "Defendants," with no elaboration. *See, e.g.*, *id.* ¶¶ 201–202; 240, 244.

Each Defendant is prejudiced by Plaintiffs' repeated insistence on asserting claims against an undifferentiated mass of parties without ever specifying the alleged conduct attributable to each. Courts in this Circuit do not countenance such gamesmanship, nor should this one.

## II.     **Plaintiffs Fail to State a Claim Under the SCA (Count I).**

Plaintiffs assert a claim against GRA and Kevin Chalker for violation of the Stored Communications Act ("SCA").  SAC ¶¶ 174–188 (Count I).  The Court should dismiss this claim to the extent it is predicated on a secondary liability theory that is legally incognizable, as explained by the *Muzin* court. *See Broidy Cap. Mgmt. LLC v. Muzin*, 2020 WL 1536350, at *1 (D.D.C. Mar. 31, 2020), *aff'd*, 12 F.4th 789 (D.C. Cir. 2021)).  That dooms the claim on its face, as well as under the doctrine of collateral estoppel.  Furthermore, Plaintiffs fail to plead the existence of covered "facilities," which is another independent basis for dismissal.

***No Secondary Liability.***   To the extent Plaintiffs allege "GRA and Chalker directed and controlled the hacking" underlying Plaintiffs' SCA claim, SAC ¶ 178, the claim fails, because the SCA does not create secondary liability.   *See Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1005–06 (9th Cir. 2006) (rejecting "argument that secondary liability should be imposed" under the SCA); *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 26 (D.D.C. 2012) (SCA does not create liability for a defendant who "conspire[s] with" others).

The *Muzin* court dismissed Plaintiffs' SCA claims against Defendants' alleged "co-conspirators" on this very basis, collaterally estopping Plaintiffs from bringing this cause of action. *See Muzin*, 2020 WL 1536350, at *11.   Collateral estoppel bars a plaintiff from re-litigating such a judgment where:

> (1) [T]he issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and [ ] decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue . . . was necessary to support a valid and final judgment on the merits.

*Flaherty v. Lang*, 199 F.3d 607, 613 (2d Cir. 1999) (citation omitted).   The four requirements are met here.   First, as Plaintiffs conceded in their prior pleadings, their SCA claims here and in *Muzin* "overlap substantially."   Compl. ¶ 127; *see also* FAC ¶ 10 (describing *Muzin* as a "parallel action"). Second, the *Muzin* defendants specifically raised Plaintiffs' inability to allege an SCA claim based on a secondary liability theory, which the court adopted as the basis for dismissal.   *See Muzin* Dkt. 40-1 at 30, 40; *id.* Dkt. 45 at 26; *Muzin*, 2020 WL 1536350, at *11.   Third, Plaintiffs had ample opportunity to litigate the issue in *Muzin*, through a full round of briefing and an amended pleading. *See id.* at *1.   Finally, because this issue was the sole grounds for dismissal of the SCA claim in *Muzin*, it was necessary to support a final decision on the merits of the claim.   *See id.* at *11. Plaintiffs are thus barred from re-litigating their SCA claim here.

***No Cognizable "Facilities."*** The SCA claim fails for the independent reason that the SAC also does not adequately allege Plaintiffs' "computer systems" and "email servers," SAC ¶¶ 179, 184, are a "facility through which an electronic communication service is provided." 18 U.S.C. § 2701(a)(1).

An "electronic communications service" is a service that provides the public with "the ability to send or receive" electronic communications. 18 U.S.C. § 2510(15). Personal computer systems do not constitute "facilities" under the statute. *See, e.g.*, *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 490 (N.D. Cal. 2021) (dismissing SCA claim under Rule 12(b)(6) because financial institutions' computers do not "provide[] an electronic communication service" under the SCA); *K.F. Jacobsen & Co. v. Gaylor*, 947 F. Supp. 2d 1120, 1126 (D. Or. 2013) (dismissing SCA claim because employer-plaintiff's computers were not facilities "through which 'electronic communications services' are provided"); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 511 n.20 (S.D.N.Y. 2001) (dismissing SCA claim where "[n]owhere do plaintiffs . . . allege facts that could give rise to th[e] inference" they provided electronic communications services to others).

Thus, Plaintiffs' SCA claim also fails because Plaintiffs merely label "BCM's computer systems, including its email servers," as "facilities" under the SCA. SAC ¶ 179. As courts analyzing SCA claims have found, *Twombly* requires more. *Cottle*, 2021 WL 1721177, at *19 (N.D. Cal. Apr. 30, 2021); *Gaylor*, 947 F. Supp. 2d at 1126.

## III.    Plaintiffs Fail to State a Claim Under the CFAA or Its State Analogue, CDAFA (Counts II, III).

Plaintiffs' claims under the Computer Fraud and Abuse Act ("CFAA") and California Comprehensive Computer Data Access and Fraud Act ("CDAFA") fail because Plaintiffs do not adequately plead the required damages under either statute.

***No CFAA Damages.***   The CFAA authorizes civil actions brought by "[a]ny person who suffers damage or loss by reason of a violation of this section."  18 U.S.C. § 1030(g).  "The CFAA narrowly defines 'damage' as 'any impairment to the integrity or availability of data, a program, a system, or information.'"   *Schatzki v. Weiser Cap. Mgmt., LLC*, 2012 WL 2568973, at \*2 (S.D.N.Y. July 3, 2012) (quoting 18 U.S.C. § 1030(e)(8)).   "Loss" is likewise "interpreted narrowly" to include "only costs actually related to computers."   *Id.*  at \*3.

Here, Plaintiffs fail to plead that they sought to "restor[e] the data, program, system or information to its condition prior to the offense, as required by courts in this Circuit."   *See Reis, Inc. v. Lennar Corp.*, 2016 WL 3702736, at \*6 (S.D.N.Y. July 5, 2016) (citation omitted).  Instead, Plaintiffs claim losses "associated with identifying and investigating the cyberattacks, and assessing and repairing the integrity and security of Plaintiffs' servers."  SAC ¶ 203.  But courts routinely find such general allegations of damage to be insufficient to state a CFAA claim.  *See Reis, Inc.*, 2016 WL 3702736, at \*6 (disregarding as conclusory Plaintiffs' statement that they "expend[ed] time, money, and resources . . . to conduct an investigation into the intrusion and a damages assessment"); *Schatzki*, 2012 WL 2568973, at \*3 (dismissing for failure to "make any specific allegation as to the cost of identifying, securing or remedying the alleged damage caused by the access"); *Fink v. Time Warner Cable,* 2009 WL 2207920, at \*4 (S.D.N.Y. July 23, 2009) (allegation defendant "impair[ed] the integrity or availability of data and information" was "insufficiently factual"); *Bose v. Interclick, Inc.*, 2011 WL 4343517, at \*4 (S.D.N.Y. Aug. 17, 2011) (allegation defendant "impaired the functioning and diminished the value of [plaintiff's] computer in a general fashion" insufficient).

To the extent Plaintiffs allege they also suffered losses associated "with remedial measures taken to prevent future attacks," "harm to Plaintiffs' business," and "loss in the value of Plaintiffs'

9

trade secrets," SAC ¶ 203, these are not damages or costs "related to computer impairment" and therefore "are not compensable under the CFAA." *See DCR Mktg. Inc. v. Pereira*, 2020 WL 91495, at *2 & n.1 (S.D.N.Y. Jan. 8, 2020) (collecting cases).

***No CDAFA Damages.*** Equally deficient are Plaintiffs' CDAFA allegations, which are a verbatim copy of the allegations made under the CFAA. *Compare* SAC ¶ 217(b), *with id.* ¶ 203. Such allegations cannot withstand Rule 12(b)(6) scrutiny. *See, e.g.*, *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 950 (N.D. Cal. 2014) (dismissing CDAFA claim where complaint did "not adequately plead that [plaintiff] suffer[ed] . . . loss") (alteration in original).

In short, Plaintiffs have failed to adequately allege damages cognizable under the CFAA or CDAFA. The Court should therefore dismiss Plaintiffs' CFAA and CDAFA claims.

## IV.    Plaintiffs Fail to State a Claim Under the DTSA (Count VII).

Plaintiffs' Defend Trade Secret Act ("DTSA") claim under 18 U.S.C. § 1836 fails because Plaintiffs do not adequately plead they possessed any trade secrets. Nor do Plaintiffs plausibly allege any Defendant misappropriated them.[1]

### A.    Plaintiffs Do Not Plead Possession of Any Trade Secrets.

Under the DTSA, "a plaintiff must plausibly allege that . . . it possessed a trade secret." *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 447-48 (S.D.N.Y. 2019) (alterations in original) (quoting *Medidata Sols., Inc., v. Veeva Sys. Inc.*, 2018 WL 6173349, at *3 (S.D.N.Y. Nov. 26, 2018)). But "trade secret" and "confidential information" are not synonymous. A trade secret is a "subset of confidential information," and "alleging that a trade secret exists requires much more specificity as to the information" purportedly owned by the plaintiff. *Elsevier*

---

[1] Sections 1831 and 1832 of the DTSA, also invoked by Plaintiffs, do not confer a private right of action. *See* SAC ¶¶ 248–251, 269; *Phoenix Ancient Art, S.A. v. J. Paul Getty Trust*, 2018 WL 1605985, at *9 (S.D.N.Y. Mar. 29, 2018).

*Inc. v. Doctor Evidence, LLC*, 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018).  Accordingly, "district courts in this circuit routinely require that plaintiffs plead their trade secrets with sufficient specificity to inform the defendants of what they are alleged to have misappropriated." *Principia Partners LLC v. Swap Financial Group, LLC*, 2019 WL 4688711, at *3 (S.D.N.Y. Sept. 26, 2019) (citation omitted).

To qualify for trade secret protection, the information at issue also "must derive[] independent economic value . . . from not being generally known to . . . another person who can obtain economic value" from the information.  18 U.S.C. § 1839(3); *see also Zirvi v. Flatley*, 433 F. Supp. 3d 448, 465 (S.D.N.Y. 2020) ("Courts dismiss trade secrets claims . . . when the plaintiffs have not alleged sufficiently how the secrets derive independent economic value from not being generally known.").  Finally, a trade secret must also be protected by "reasonable measures to keep [the] information secret."  18 U.S.C. § 1839(3)(A).

Plaintiffs do not plead any of these three elements.

***No Specificity.***  Plaintiffs allege BCM's computer systems and email servers contained the following broad categories of information:

> highly confidential business plans and proposals; research supporting those plans and proposals . . . information concerning business strategies and opportunities . . . contacts for important business relationships . . . contracts, business proposals, and cost estimates.

SAC ¶¶ 253, 256.  This generic list fails to put Defendants on notice of what information Plaintiffs claim is protected, and thus cannot give rise to a cognizable claim of trade secret misappropriation.

Numerous courts in this district have reached the same conclusion with respect to nearly identical broad and non-exhaustive lists.  In *Intrepid Financial Partners*, the court dismissed a DTSA claim where the claimed "trade secrets" allegedly included "detailed service and investment models" and "detailed pricing and investment history with [plaintiff's] clients," because the

plaintiff—like Plaintiffs here—failed to plead "supportive facts explaining, for example, how such strategies, techniques or models function."  2020 WL 7774478, at *4 (S.D.N.Y. Dec. 30, 2020). In *Elsevier*, the court dismissed plaintiff's DTSA claim based on a non-exhaustive list of "data configuration protocols and methods," "analytics programming," and "database field names, parameters and database schema," because these were "general categories of 'confidential information,'" and the plaintiff did not "define the trade secrets at issue."  2018 WL 557906, at *5–7.  Plaintiffs' scattershot list of "highly confidential information" is no different.

***No Independent Economic Value.***  Plaintiffs necessarily also fail to plead their "trade secrets" have derived independent economic value from being kept secret.  Plaintiffs merely assert in conclusory fashion their "trade secrets derive independent, . . . economic value from not being generally known or available to the public or other persons who can obtain economic value from their disclosure or use," and they were derived from a "significant investment of time and resources."  SAC ¶ 257–58.  Those conclusory allegations, which simply recite the independent economic value element of a trade secret claim, are deficient.

The plaintiff in *24 Seven, LLC v. Martinez*, alleged the same thing—*i.e.*, it restated the independent economic value element of a trade secret claim, then pointed to "expenditures" incurred in developing the alleged trade secrets.  2021 WL 276654, at *9 (S.D.N.Y. Jan. 26, 2021). The court found these allegations deficient because the plaintiff—just like Plaintiffs here—failed to allege *how* the information "gave it an economic leg up 'over competitors who do not know or use it.'"  *Id.* at *9.  Other courts in this district have reached the same conclusion.  *See, e.g.*, *Investment Science, LLC v. Oath Holdings, Inc.*, 2021 WL 3541142, at *4 (S.D.N.Y. Aug. 11, 2021); *Democratic Nat'l Comm.*, 392 F. Supp. 3d at 448; *Lawrence v. NYC Med. Prac., P.C.*, 2019 WL 4194576, at *5-6 (S.D.N.Y. Sept. 3, 2019).  Thus, Plaintiffs' inability to describe the

independent economic value of their still-unidentified trade secrets dooms their DTSA claim twice over.

***No Reasonable Measures.***  Plaintiffs contend they "take reasonable measures to maintain the secrecy of their trade secrets" by "maintain[ing] their information on secured servers that are protected by passwords, firewalls, and antivirus software."  SAC ¶ 255.  This is a far cry from adequately pleading reasonable measures, because Plaintiffs do not "make a particularized showing that the precise documents and information at issue" were subject to these measures.  *See 24 Seven*, 2021 WL 276654, at *8 (dismissing DTSA claim accordingly).  In fact, "passwords, firewalls, and antivirus software" (SAC ¶ 255) are normal business practices regularly used to protect all confidential information, and cannot suffice to meet this element.  *See Investment Science,* 2021 WL 3541152, at *4 (password protecting documents deemed "not a reasonable measure because it fails to differentiate from a protective measure that is used to safeguard any other corporate information"); *Opus Fund Servs. (USA) LLC v. Theorem Fund Servs*., 2018 WL 1156246, at *3 (N.D. Ill. Mar. 5, 2018) (same).

### B.    Plaintiffs Do Not Adequately Plead Misappropriation.

Misappropriation under the DTSA requires "disclosure or use of a trade secret" by one who "(i) used improper means to acquire knowledge of the trade secret; or (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret . . . derived from . . . improper means . . . ."  18 U.S.C. § 1839(5)(B).  "[I]mproper means" includes, among other things, "theft, bribery, misrepresentation" and "breach or inducement of a breach of a duty to maintain secrecy."  *Id.* § 1839(6)(A), (B).

Plaintiffs allege "GRA and Chalker . . . widely disseminated, or caused to be widely disseminated, those trade secrets to the media through intermediaries."  SAC ¶ 262.  Such rank speculation does not pass muster here.  Nowhere do Plaintiffs allege any facts that would render

plausible the bald allegation that *GRA and Chalker*, as opposed to anyone else, disclosed Plaintiffs' "trade secrets" to media outlets.  Courts in this district hold that such conclusory misappropriation allegations do not state a claim.  *See, e.g.*, *Ad Lightning Inc. v. Clean.io, Inc.*, 2020 WL 4570047, at *3–4 (S.D.N.Y. Aug. 7, 2020) (requiring a "concrete link" between "circumstantial datapoints" relied upon to allege misappropriation); *Xavian Ins. Co. v. Marsh & McLennan Companies, Inc.*, 2019 WL 1620754, at *6 (S.D.N.Y. Apr. 16, 2019) (requiring "non-conclusory factual allegations" that could "support a plausible inference" that defendants in fact used or disclosed the alleged trade secrets); *Exceed Holdings LLC v. Chi. Bd. Options Exch. Inc.*, 2018 WL 4757961, at *5–6 (S.D.N.Y. Sept. 30, 2018) (dismissing DTSA claim where plaintiff pleaded only "conclusory allegations and conjecture" in support of misappropriation).

## V.      Plaintiffs Fail to State A RICO Claim (Count IX).

As an initial matter, Plaintiffs are collaterally estopped from asserting a RICO claim against the *Muzin* defendants' alleged co-conspirators, because that theory was dismissed in *Muzin*.

The four elements of collateral estoppel, *see supra* Section II, are met here.  First, the same defect identified in *Muzin* is present in this case:  Plaintiffs fail to plead a "pattern of racketeering activity."  *See* SCA ¶¶ 300, 301 (attempting to claim both an open-ended and a closed-ended pattern); *Muzin*, 2020 WL 1536350, at *9–11.  Second, Plaintiffs' two theories in support of this element were actually litigated and decided in *Muzin*.  *See id.* at *9 (holding that, because Plaintiffs had failed to establish an open-ended continuity of future racketeering activity, "Broidy has failed to plead an open-ended scheme"); *id.* at *10 (holding that, because "the alleged scheme had a single goal, targeted only a few victims, and took just five months from start to finish[,] . . . [s]uch activities do not form a closed-ended pattern of racketeering activity").  Third, Plaintiffs had ample opportunity to litigate the issues in *Muzin*, through a full round of briefing and an amended pleading.  *Id.* at *1.  Finally, because these defects in the "pattern" element were the sole grounds

for dismissal of the RICO claim in *Muzin*, the court's analysis was necessary to support a final decision on the merits of the claim. *See id.* at *9–11. Thus, Plaintiffs are barred from asserting a RICO claim here.

Even if collateral estoppel does not apply, Plaintiffs' RICO theory fails for many other reasons.

### A. Plaintiffs Do Not Allege a "Pattern" of "Racketeering" Activity.

To plead the continuing "pattern" of "racketeering" activity required for RICO, a plaintiff must allege at least two predicate acts within a ten-year period, that "the predicate acts are related[,] and that they amount to, or pose a threat of, continuing criminal activity." *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 465 (2d Cir. 1995). To satisfy this "'continuity' requirement," *id.*, "a plaintiff 'must allege either an open-ended pattern of racketeering activity (*i.e.*, past criminal conduct coupled with an adequately pled threat of future criminal conduct) or a closed-ended pattern of racketeering activity (*i.e.*, past criminal conduct extending over a substantial period of time).'" *Cont'l Petrol. Corp. v. Corp. Funding Partners, LLC*, 2012 WL 1231775, at *7 (S.D.N.Y. Apr. 12, 2012) (quoting *First Cap. Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004)). Plaintiffs do not plausibly allege either type of pattern; instead, they posit a one-time scheme to hack and distribute Plaintiffs' confidential information.

***No Open-Ended Scheme.*** To plead open-ended continuity, the plaintiff must specifically allege "that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999). As the *Muzin* court observed, Plaintiffs allege only a "one time racket," not an open-ended scheme, because "[t]he alleged hacking already has happened, and the stories that were meant to silence Broidy already have been published." *Muzin*, 2020 WL 1536350, at *9

(citation omitted); *see also* SAC ¶ 111, 114–115 (alleged scheme was the "hacking scheme" of Broidy, which occurred through "February 25, 2018"); *id.* ¶ 303.

Plaintiffs nonetheless try to manufacture an open-ended scheme by reference to irrelevant articles that do not even mention hacks of Broidy.  *See, e.g.*, *id.* ¶ 56 n.10; *id.* ¶¶ 73–75 (alleging that GRA "was paid handsomely by Qatar for their work" in supporting Qatar's alleged "corrupt [FIFA] World Cup 2022 Bid").  But the *pertinent* acts alleged in the SAC—those that concern *Plaintiffs*—all ended well over two years ago.  *See, e.g.*, *id.* ¶¶ 132, 301; *cf. Ray Larsen Assocs., Inc. v. Nikko Am., Inc.*, 1996 WL 442799, at *7 (S.D.N.Y. Aug. 6, 1996) (noting that "acts . . . unrelated to the predicate acts which allegedly injured *plaintiff* . . . c[ould] not be considered as part of the activity to extend the scope of the 'pattern,'" and dismissing RICO claim) (emphasis added).

***No Closed-Ended Scheme.***  The *Muzin* court also concluded that Plaintiffs failed to allege closed-ended continuity, because "the alleged scheme had a single goal, targeted only a few victims, and took just five months from start to finish."  *Muzin*, 2020 WL 1536350, at *10.  To establish a closed-ended scheme, "a plaintiff must demonstrate that the activity involves predicate acts extending over a substantial period of time."  *Cont'l Petrol. Corp.*, 2012 WL 1231775, at *7 (citation omitted).  In this Circuit, "two years is 'the *minimum* duration necessary to find closed ended-continuity.'"  *Id.* at *7 (quoting *First Cap.*, 385 F.3d at 181).

Here, the first alleged predicate act that targeted Plaintiffs is the phishing email sent to Elliott Broidy's spouse on December 27, 2017.  SAC ¶ 98.  While the SAC alleges that the "closed-ended scheme . . . began no later than April 2017 and ended no earlier than August 2019," SAC ¶ 301 (*i.e.*, more than two years), Plaintiffs state no facts to support this time period.  Because this legally conclusory statement is unsupported by any factual allegations, the Court need not accept

16

it.[2]

Plaintiffs' attempt to expand the number of victims (and thus the timeline) by pointing to unrelated third parties, *e.g.*, *id.* ¶¶ 78–84, does not help with closed-ended continuity any more than it does with open-ended continuity. *See Sathianathan v. Smith Barney, Inc.*, 2007 WL 576097, at *4 (S.D.N.Y. Feb. 21, 2007) (no cognizable pattern where plaintiff "refer[red] to predicate acts against other victims"). Moreover, Plaintiffs' sheer speculation that "Qatar[] and . . . GRA[] were likely involved" in wire fraud "targeting over 1,000 people and entities," SAC ¶ 78, must be disregarded because it lacks the particularity required to allege fraud under Rule 9(b). *See infra.* The *Muzin* court seized on this defect as well. *See Muzin*, 2020 WL 1536350, at *10 (finding that Broidy's allusion to thousands of victims of wire fraud were insufficient to establish closed-ended continuity).

***Insufficient Predicate Acts.*** The SAC also fails to describe any "racketeering" acts, much less a sufficient "pattern" of them. To state a valid RICO claim, a plaintiff must allege that *each* defendant caused the plaintiff harm, through at least *two* predicate acts of racketeering activity committed by each such defendant within the last 10 years. 18 U.S.C. § 1961(5). Even then, a mere two acts for each defendant "may not be sufficient." *Sedima v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985); *see also Nat'l Union Fire Ins. Co. v. Archway Ins. Servs. LLC*, 2012 WL 1142285, at *5 (S.D.N.Y. Mar. 23, 2012) ("In a RICO case with more than one defendant, it is necessary for a plaintiff to particularize and prove each defendant's participation in the fraud and each defendant's enactment of the two necessary predicate acts.") (citation omitted). Here, Plaintiffs have not even adequately alleged a single predicate act—let alone the several required for each individual

---

[2] In the FAC, Plaintiffs unequivocally alleged that the scheme "ended in late 2018," FAC ¶ 322, belying any claim to the contrary here.

Defendant.  *See* SAC ¶ 299 (listing claimed acts).  None of these allegations would suffice, even if they were numerous enough.

*First*, as noted above, Plaintiffs cannot meet Rule 9(b)'s standard for pleading wire fraud. *See First Cap.*, 385 F.3d at 178 ("[A]ll allegations of fraudulent predicate acts[] are subject to the heightened pleading requirements of [Rule] 9(b)."). Plaintiffs needed to "adequately specify the statements [they] claim[ ] were false or misleading," "give particulars as to the respect in which plaintiff[s] contend[ ] the statements were fraudulent," "state when and where the statements were made," and "identify those responsible for the statements." *Jus Punjabi, LLC v. Get Punjabi Inc.*, 2015 WL 2400182, at *5 (S.D.N.Y. May 20, 2015) (alterations in original) (quoting *Lundy v. Cath. Health Sys.*, 711 F.3d 106, 119 (2d Cir. 2013)). The SAC does none of that. *See* SAC ¶¶ 299, 311, 314, 317 (alleging only that "Defendants" committed "acts of wire fraud").

*Second*, Plaintiffs fail to plead money laundering under 18 U.S.C. § 1957, which "outlaws monetary transactions in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity." *Rajaratnam v. Motley Rice*, LLC, 449 F. Supp. 3d 45, 75 (E.D.N.Y. 2020) (citing 18 U.S.C. § 1957). As an initial matter, money laundering cannot be a predicate act unless the underlying crime (*i.e.*, the "specified unlawful activity") is also adequately pleaded, and Plaintiffs have failed to state a claim for wire fraud, as described above. *See W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*, 2004 WL 2187069, at *9–10 (S.D.N.Y. Sept. 29, 2004). Moreover, because Plaintiffs do not adequately describe the material allegedly stolen from them, any claim that the "criminally derived property" is worth more than $10,000 is sheer speculation.

*Third*, Plaintiffs cannot rely on trade secrets claims as RICO predicates, because those too are inadequately alleged. *See supra* Section IV; *see also DNC*, 392 F. Supp. 3d at 442–43 (noting

that 18 U.S.C. §§ 1831 and 1832 "guard against the same types of threats to trade secrets," and dismissing RICO claims based on both sections together (citation omitted)).  The SAC therefore fails to plead any racketeering activity.

### B.    Plaintiffs Fail to Plead Standing or Damages Under the RICO Act.

Plaintiffs have failed to allege Defendants' acts caused any injuries cognizable under the RICO Act.  RICO requires the defendant enterprise members be both the proximate and a but-for cause of concrete injury.  *See Anza v. Ideal Steel Supply Co.*, 547 U.S. 451, 457, 461 (2006); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283–84 (2d Cir. 2006).  Here, Plaintiffs claim losses that were allegedly caused by *Plaintiffs' own response* to the alleged racketeering, e.g., "investigating the hacking, taking remedial measures in response to the hacking, and responding to . . . media inquiries."  SAC ¶ 339.  The Second Circuit does not recognize injuries "proximately caused not by the alleged racketeering violations, but by the public exposure of those activities or their discovery by the victim and the consequences of that exposure or discovery."  *Hollander v. Flash Dancers Topless Club*, 173 F. App'x 15, 17–19 (2d Cir. 2006).  Plaintiffs' RICO claim fails for this as reason well.

### C.    Plaintiffs Fail to Allege Operation or Management of an Enterprise.

***No Operation or Management.***  To state a RICO claim against a group of defendants, "the plaintiff must show that each defendant 'conduct[ed] or participate[d], directly or indirectly, in the conduct of [the] enterprise's affairs.'"  *DNC*, 392 F. Supp. 3d at 440–41 (alterations in original) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 177, 179 (1993)).  The requirement to plead such "operation or management" is "extremely rigorous," *id.* at 441, requiring allegations that would "demonstrate some degree of control over the enterprise," *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307–08 (S.D.N.Y. 2010).  It is implausible that *any* Defendant exercised *any* degree of control over the sovereign nation of Qatar, which Plaintiffs allege to be part of the enterprise,

19

SAC ¶ 291.  Plaintiffs' bald allegation that "Chalker told GRA personnel" he and GRA were responsible for the hacks, SAC ¶ 116, provides no plausible basis to infer otherwise.

    ***No Enterprise.***    Plaintiffs also fail to plead "any facts suggesting hierarchy or organization," as required to establish an enterprise.  *DNC*, 392 F. Supp. 3d at 439–40 (citing *Boyle v. United States*, 556 U.S. 938, 946 (2009)); *First Cap.*, 385 F.3d at 174–75 (affirming dismissal of RICO claim where plaintiffs "failed to provide . . . any solid information regarding the hierarchy, organization and activities of th[e] alleged . . . enterprise . . . from which [the court] could fairly conclude that its members functioned as a unit" (citation and internal quotation marks omitted)).  Instead, as Plaintiffs do throughout the SAC, Plaintiffs lump *all* Defendants together to avoid differentiating between their roles.  *See, e.g.*, SAC ¶¶ 288, 291–94 (conclusorily alleging "Defendants and their co-conspirator members of the Enterprise have functioned . . . as a unit"); *id.* ¶ 292 ("Defendants GRA, GRA Maven, GRA Quantum, GRA EMEA, Qrypt, and GRA Research, on information and belief . . . facilitate the Enterprise's activities.").  Plaintiffs thus "fail[] to provide any information whatsoever regarding the [d]efendants' respective roles in the enterprise," warranting dismissal.  *See BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 361 (S.D.N.Y 2014).

**VI.  Plaintiffs Fail to State a Claim for RICO Conspiracy (Count X).**

    The RICO conspiracy claim should be dismissed for the same reasons it was dismissed in *Muzin*—and Plaintiffs again are estopped from arguing otherwise.  *See supra* Section V.  First, "[d]ismissal of plaintiff's substantive RICO claim . . . mandates dismissal of the conspiracy to commit RICO claim . . . as well."  *Cont'l Petrol. Corp*, 2012 WL 1231775, at *8 (alterations in original) (citation omitted).  Second, to plead RICO conspiracy, a plaintiff must additionally allege, "as to *each* alleged co-conspirator:  (1) an agreement to join the conspiracy; (2) the acts of each co-conspirator in furtherance of the conspiracy; [and] (3) that the co-conspirator knowingly

participated in the same." *Id.* (emphasis added) (citation omitted). Plaintiffs' vague group pleading, which alleges only that the "Defendants" collectively engaged in racketeering, does not state a conspiracy claim against any one of them. *See, e.g.*, SAC ¶¶ 344–349.

## VII.   Plaintiffs Fail to State a Claim Under CUTSA (Count VIII).

Plaintiffs' California Uniform Trade Secrets Act ("CUTSA") claim fails for all of the same reasons as their DTSA claim.[3] The SAC does not adequately describe the contours of the purported trade secrets, does not adequately allege independent economic value and reasonable efforts to maintain secrecy, and does not plausibly plead misappropriation. *See, e.g.*, *Acrisure of California, LLC v. SoCal Com. Ins. Servs., Inc.*, 2019 WL 4137618, at *3 (C.D. Cal. Mar. 27, 2019) (dismissing DTSA and CUTSA claims, including on these grounds); *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 2015 WL 6552698, at *3 (N.D. Cal. Oct. 28, 2015) (same for DTSA claim); *see also supra* Section IV.

The CUTSA claim also fails because Plaintiffs "ha[ve] alleged no facts to support [their] statement that [D]efendants' actions damaged [them]." *See E. & J. Gallo Winery v. Instituut Voor Landbouw*, 2018 WL 2463869, at *7–8 & n.3 (E.D. Cal. June 1, 2018) (allegations that plaintiff has "sustained . . . damages" as a "direct and proximate result" of defendant's misappropriation dismissed as conclusory and deficient). The Court should dismiss Plaintiffs' CUTSA claim.

## VIII.   Plaintiffs' Remaining State Law Causes of Action Should Be Dismissed (Counts IV, V, VI).

Plaintiffs' remaining state law causes of action are for receipt and possession of stolen property (Count IV), intrusion upon seclusion (Count V), and civil conspiracy (Count VI). Each

---

[3] For purposes of this motion, Defendants do not dispute that California law governs Plaintiffs' state law claims. Thus, the Court need not engage in a choice-of-law analysis at this time. *See Turbon Int'l, Inc. v. Hewlett-Packard Co.*, 769 F. Supp. 2d 262, 266 (S.D.N.Y. 2011) (citation omitted).

of these claims should be rejected because it is categorically preempted by CUTSA.  Even if that were not the case, none of these claims is adequately pleaded under Rule 8.

      **A.**    **The CUTSA Preempts Plaintiffs' State Law Claims.**

"California law renders common law . . . claims preempted under § 3426.7 of the CUTSA if the claim asserts the same nucleus of facts as the trade secret misappropriation claim." *Applied Biological Lab'ys, Inc. v. Diomics Corp*., 2021 WL 4060531, at *5 (S.D. Cal. Sept. 7, 2021); *see also PHL Assocs., Inc. v. Superior Ct. of Yolo Cnty.*, 2020 WL 4012763, at *11 (Cal. Ct. App. Jul. 16, 2020), *review denied* No. S264120 (Cal. Oct. 14, 2020).  There can be no dispute that the CUTSA's preemption provision "displaces all claims premised on the wrongful taking and use of confidential business and proprietary information, *even if that information does not meet the statutory definition of a trade secret*." *Erhart v. Bofl Holding, Inc*., 2020 WL 1550207, at *37 (S.D. Cal. Mar. 31, 2020) (emphasis added); *see also Strategic Partners, Inc. v. FIGS, Inc.*, 2021 WL 4813645, at *4 (C.D. Cal. Aug. 10, 2021) (CUTSA preemption includes claims related to "information that does not fit the definition of a trade secret, and is not otherwise made property by some provision of positive law").  Thus, regardless of whether Plaintiffs' CUTSA claim is dismissed, all of Plaintiffs' subsidiary common law claims must be dismissed.

Plaintiffs' common law claims are indisputably based on the same nucleus of operative facts as their CUTSA claim—the purported "hacking" and theft of Plaintiffs' allegedly confidential information.  SAC ¶¶ 223, 231, 245.  Specifically, Plaintiffs' CUTSA claim and their claim for receipt and possession of stolen property are based on the identical set of "facts"—the alleged theft of information from Plaintiffs' servers—and both assert identical damages. *Compare id.* ¶¶ 271–80 (CUTSA), *with id.* ¶¶ 221–27 (stolen property).  The CUTSA also preempts Plaintiffs' intrusion upon seclusion claim because, again, both claims are based on the same set of facts. *See New Show Studios LLC v. Needle*, 2014 WL 2988271, at *11 (C.D. Cal. June 30, 2014)

(dismissing invasion of privacy claim as preempted by the CUTSA).  The CUTSA similarly preempts Plaintiffs' civil conspiracy claim, which also hinges on "the same nucleus of facts as trade secret misappropriation," *id.* at *10 (citation omitted), and which also seeks identical damages.  *See* SAC ¶ 279 (alleging GRA and Chalker "misappropriated Plaintiffs' trade secrets"); *id.* ¶ 280 (boilerplate damages allegation); *ATS Prods., Inc.*, 2015 WL 224815, at *1–2.

### B.   Plaintiffs' Common Law Claims Fail on Their Own Merits.

Even if Plaintiffs' state common law claims were not preempted by the CUTSA, each independently fails to pass muster under Rule 8(a).

***Stolen Property.***  Plaintiffs' claim should be dismissed because Plaintiffs fail to plausibly plead that any Defendant "receiv[ed] stolen property [and] . . . had actual knowledge that the [property] [] received . . . [was] in fact stolen." *Freeney v. Bank of Am. Corp.*, 2016 WL 5897773, at *12 (C.D. Cal. Aug. 4, 2016) (dismissing receipt of stolen property claim in amended complaint with prejudice).  Here as elsewhere, Plaintiffs provide nothing more than a threadbare recitation of the statutory language, which does not suffice.  *See, e.g.*, SAC ¶ 226 ("GRA and Chalker received . . . property knowing that it was stolen and obtained through theft.").

***Intrusion Upon Seclusion.***  To state a valid intrusion claim, a plaintiff must sufficiently allege "that the defendant intentionally intruded into a place, conversation, or matter as to which the plaintiff had a reasonable expectation of privacy." *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017).  To demonstrate such a reasonable expectation of privacy in emails, a plaintiff must "plead specific email content in specific emails." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1042 (N.D. Cal. 2014).

Once again, Plaintiffs' inability to plead with any specificity at all dooms their claim. Plaintiffs allege only in wholly conclusory terms that their "email servers and computer systems contained private information."  SAC ¶¶ 230; *see also id.* ¶ 231.  But "there is no legally protected

23

privacy interest and reasonable expectation of privacy in emails as a general matter." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1041 (dismissing invasion of privacy claim where plaintiffs "merely alleg[ed] that . . . emails were 'private' without alleging any facts related to what particular emails Yahoo intercepted, or the content within particular emails"); *cf. Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1052 (N.D. Cal. 2018) (focusing on "numerous examples of 'specific email content'" in declining to dismiss claim (citation omitted)). Absent such factual allegations, Plaintiffs' intrusion claim "stops short of the line between possibility and plausibility" and should be dismissed. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 558).[4]

The claim should also be dismissed because Plaintiffs have not alleged facts showing that *any* Defendant intentionally intruded upon Plaintiffs' seclusion, *see supra* Section III.A; *see also, e.g.*, SAC ¶¶ 232, 234.

***Civil Conspiracy.*** To state a claim for conspiracy, the plaintiff must plead an underlying tort, as well as: (1) an agreement to commit it; (2) acts in furtherance of that agreement; and (3) damages. *See Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 881 (N.D. Cal. 2010) (citing *Applied Equip. v. Litton Saudi Arabia.*, 869 P.2d 454, 457 (Cal. 1994)). Plaintiffs here have failed to plausibly allege any underlying torts. *See supra* pp. 6–23; *Roque v. Suntrust Mortg., Inc.*, 2010 WL 546896, at *5 (N.D. Cal. Feb. 10, 2010) (dismissing civil conspiracy claim where "[n]one of plaintiff's causes of action in the [complaint] states a valid tort claim."). Nor do Plaintiffs specifically allege acts taken in furtherance of the claimed "conspiracy." *See supra* Section VI; *Accumulage Diagnostics v. TeraRecon, Inc.*, 260 F. Supp. 2d 941, 948 (N.D. Cal. 2003) (requiring plaintiff to "clearly allege specific action on the part of each defendant"); *Sporting*

---

[4] The *Muzin* court declined to dismiss a similar claim on this ground, but did not address this case law. *See Muzin*, 2020 WL 1536350, at *19.

*Supplies Int'l v. Tulammo USA, Inc.*, 2011 WL 13135282, at *4 (C.D. Cal. Jan. 3, 2011) (same).

**IX.     The Court Lacks Subject Matter and Personal Jurisdiction Over Defendants.**

The Court previously (a) rejected Defendants' argument that they would be entitled to sovereign immunity if Plaintiffs' allegations were true; (b) held that Plaintiffs' forum choice does not violate the prior pending action doctrine; and (c) reserved judgment on certain Defendants' personal jurisdiction defenses, because they "depend in large part on whether Plaintiffs' RICO claims survive." *Broidy*, 2021 WL 1225949, at *5–8 & n.6.  To preserve Defendants' arguments on these points, as set forth in Sections I and II of Defendants' motion to dismiss the FAC, Defendants incorporate them by reference here.  *See* Dkt. 73 (MTD FAC) at 3–10; *In re Amaranth Nat. Gas Commodities Litig.*, 612 F. Supp. 2d 376, 381 (S.D.N.Y. 2009).

**X.     Plaintiffs Should Not Be Granted Leave To Amend.**

Because Plaintiffs have long been on notice of the defects in their pleading and are manifestly unable to cure them, it would be futile to allow Plaintiffs to replead for a third time. *See Thea v. Kleinhandler*, 807 F.3d 492, 496–97 (2d Cir. 2015) ("Proposed amendments are futile if they would fail to cure deficiencies or state a claim under Rule 12(b)(6).") (citation omitted); *Barton v. Smartstream Techs., Inc.*, 2016 WL 2742426, at *8 (S.D.N.Y. May 9, 2016).  The Court should therefore dismiss the SAC with prejudice.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should dismiss the SAC with prejudice.

Dated:   New York, New York
         May 3, 2022                              GIBSON, DUNN & CRUTCHER LLP


                                         By: */s/ Orin Snyder*
                                             Orin Snyder
                                             Zainab Ahmad (admitted *pro hac vice*)
                                             Paul J. Kremer
                                             Doran J. Satanove

                                             200 Park Avenue
                                             New York, NY 10166-0193
                                             Tel.: (212) 351-4000
                                             Fax: (212) 351-4035
                                             osnyder@gibsondunn.com
                                             zahmad@gibsondunn.com
                                             pkremer@gibsondunn.com
                                             dsatanove@gibsondunn.com

                                             *Attorneys for Defendants*