**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————— X

ELLIOTT BROIDY and BROADY CAPITAL :
MANAGEMENT, LLC, :
:
Plaintiffs, :          Case No. 1:19-CV-11861-MKV
:
v. :
:
GLOBAL RISK ADVISORS LLC, :
GRA QUANTUM LLC, GRA RESEARCH LLC, :
GLOBAL RISK ADVISORS EMEA LIMITED, :
GRA MAVEN LLC, QRYPT, INC., KEVIN :
CHALKER, DENIS MANDICH, ANTONIO :
GARCIA, AND COURTNEY CHALKER, :
:
Defendants. :

———————————————————— X

**MEMORANDUM OF LAW IN OPPOSITION TO**
**<u>MOTION TO DISMISS SECOND AMENDED COMPLAINT</u>**

KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019

*Oral Argument Requested*

## <u>TABLE OF CONTENTS</u>

TABLE OF ABBREVIATIONS ................................................................................. vii

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 4

   I.  THE SAC PROVIDES DEFENDANTS MORE THAN FAIR NOTICE OF
      ALL CLAIMS.................................................................................................. 4

   II.  PLAINTIFFS STATE A CLAIM UNDER THE SCA (COUNT I).................................... 6

   III.  PLAINTIFFS STATE A CLAIM UNDER THE CFAA AND CDAFA
       (COUNTS II, III) ....................................................................................... 8

   IV.  PLAINTIFFS STATE A CLAIM UNDER THE DTSA (COUNT VII) ......................... 10

      A. Plaintiffs Adequately Allege That They Possessed "Trade Secrets" .............................. 10

      B. Plaintiffs Adequately Allege Misappropriation................................................... 12

   V.  PLAINTIFFS STATE THEIR RICO CLAIM (COUNT IX)........................................... 13

      A. Plaintiffs Adequately Allege a "Pattern" of "Racketeering" Activity ............................ 13

      B. Plaintiffs Adequately Allege Standing and Damages ....................................... 17

      C. Plaintiffs Adequately Allege Operation and Management of an Enterprise ................... 18

   VI.  PLAINTIFFS STATE A CLAIM FOR RICO CONSPIRACY (COUNT X) ................. 19

   VII.  PLAINTIFFS STATE A CLAIM UNDER CUTSA (COUNT VIII).............................. 20

   VIII. PLAINTIFFS STATE THE REMAINING STATE LAW CLAIMS
       (COUNTS IV, V, VI) ................................................................................. 21

      A. The State Law Claims Are Not Preempted By CUTSA ................................... 21

      B. Defendants' Other Arguments Fail ................................................................. 22

   IX.  PLAINTIFFS' ABILITY TO AMEND THE SAC HAS NOT BEEN FORECLOSED .. 24

CONCLUSION.................................................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*24 Seven, LLC v. Martinez*,
2021 WL 276654 (S.D.N.Y. Jan. 26, 2021) ........................................................................12

*Ad Lightning Inc. v. Clean.io, Inc.*,
2020 WL 4570047 (S.D.N.Y. Aug. 7, 2020) ........................................................................13

*Angermeir v. Cohen*,
14 F. Supp. 3d 134 (S.D.N.Y. 2014)....................................................................................16

*Bardwil Indus. Inc. v. Kennedy*,
2020 WL 2748248 (S.D.N.Y. May 27, 2020) ........................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................................4

*Bose v. Interclick, Inc.*,
2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011)........................................................................9

*Boyle v. United States*,
556 U.S. 938 (2009).............................................................................................................18

*Broidy Cap. Mgmt. LLC v. Muzin*,
2020 WL 1536350 (D.D.C. Mar. 31, 2020)................................................................. *passim*

*Cardwell v. Davis Polk & Wardwell LLP*,
2021 WL 4434935 (S.D.N.Y. Sept. 23, 2021)......................................................................24

*Coldwell Solar, Inc. v. ACIP Energy LLC*,
2021 WL 3857981 (E.D. Cal. Aug. 30, 2021) ....................................................................21

*Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC*,
332 F. Supp. 3d 729 (S.D.N.Y. 2018)...............................................................................4, 5

*D'Addario v. D'Addario*,
901 F.3d 80 (2d Cir. 2018)..............................................................................................18, 19

*Dairy, LLC v. Milk Moovement, Inc.*,
2022 WL 1103822 (E.D. Cal Apr. 13, 2022)......................................................................20

*Dardashtian v. Gitman*,
2017 WL 6398718 (S.D.N.Y. Nov. 28, 2017)...............................................................10, 11

ii

*DCR Mktg. Inc. v. Pereira*,
2020 WL 91495 (S.D.N.Y. Jan. 8, 2020) ............................................................9

*Democratic Natl. Comm. v. Russian Fedn.*,
392 F. Supp. 3d 410 (S.D.N.Y. 2019)................................................12, 18, 19

*DFO Glob. Performance Com. Ltd. (Nevada) v. Nirmel*,
2021 WL 3475596 (S.D.N.Y. Aug. 6, 2021) ....................................................12

*In re DoubleClick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)..................................................................7

*E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*,
2018 WL 2463869 (E.D. Cal. June 1, 2018) ....................................................21

*Elsevier Inc. v. Doctor Evidence, LLC*,
2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) ....................................................11

*Erhart v. BofI Holding, Inc.*,
2020 WL 1550207 (S.D. Cal. Mar. 31, 2020) ..................................................21

*Exceed Holdings LLC v. Chicago Bd. Options Exch. Inc.*,
2018 WL 4757961 (S.D.N.Y. Sept. 30, 2018)..................................................13

*Fink v. Time Warner Cable*,
2009 WL 2207920 (S.D.N.Y. July 23, 2009) ....................................................9

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
385 F.3d 159 (2d Cir. 2004)................................................................15, 19

*Freeney v. Bank of Am. Corp.*,
2016 WL 5897773 (C.D. Cal. Aug. 4, 2016)....................................................22

*H.J. Inc. v. Nw. Bell Tel. Co.*,
492 U.S. 229 (1989)................................................................13, 14

*Hollander v. Flash Dancers Topless Club*,
173 F. App'x 15 (2d Cir. 2006) ........................................................17

*In re Welspun Litig.*, 2019 WL 2174089
(S.D.N.Y. May 20, 2019)..................................................................4

*Intrepid Fin. Partners, LLC v. Fernandez*,
2020 WL 7774478 (S.D.N.Y. Dec. 30, 2020) ..................................................11

*Inv. Science, LLC v. Oath Holdings Inc.*,
2021 WL 3541152 (S.D.N.Y. Aug. 11, 2021) ..................................................12

*Kaufman v. Nest Seekers, LLC*,
 2006 WL 2807177 (S.D.N.Y. Sept. 26, 2006) ........................................................8

*Kraus USA, Inc. v. Magarik*,
 2020 WL 2415670 (S.D.N.Y. May 12, 2020) ....................................................3, 10

*Lawrence v. NYC Med. Practice, P.C.*,
 2019 WL 4194576 (S.D.N.Y. Sept. 3, 2019) ........................................................12

*Medtech Prod. Inc. v. Ranir, LLC*,
 596 F. Supp. 2d 778 (S.D.N.Y. 2008) ...................................................................10

*Metromedia Co. v. Fugazy*,
 983 F.2d 350 (2d Cir. 1992) ..................................................................................14

*N.L.R.B. v. Thalbo Corp.*,
 171 F.3d 102 (2d Cir. 1999) ..................................................................................13

*Nesbeth v. New York City Mgt. LLC*,
 17 CIV. 8650 (JGK), 2019 WL 110953 (S.D.N.Y. Jan. 4, 2019) ...........................5

*NovelPoster v. Javitch Canfield Group*,
 140 F. Supp. 3d 954 (N.D. Cal. 2014) ...............................................................9, 10

*Obeid ex rel. Gemini Real Estate Advisors LLC v. La Mack*,
 2017 WL 1215753 (S.D.N.Y. Mar. 31, 2017) .........................................................8

*Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, 2012 WL 6082387
 (S.D.N.Y. Dec. 3, 2012) .........................................................................................5

*Opus Fund Servs. (USA) LLC v. Theorem Fund Servs.*,
 2018 WL 1156246 (N.D. Ill. Mar. 5, 2018) ..........................................................12

*Reis, Inc. v. Lennar Corp.*,
 2016 WL 3702736 (S.D.N.Y. July 5, 2016) .........................................................8, 9

*Related Companies, L.P. v. Ruthling*, RICO Bus. Disp. Guide 13053
 (S.D.N.Y. July 5, 2018) .....................................................................................17, 18

*Reves v. Ernst & Young*,
 507 U.S. 170 (1993) ................................................................................................19

*Sathianathan v. Smith Barney, Inc.*,
 2007 WL 576097 (S.D.N.Y. Feb. 21, 2007) ..........................................................14

*Schatzki v. Weiser Capital Mgt., LLC*,
 2012 WL 2568973 (S.D.N.Y. July 3, 2012) ............................................................9

*Shulman v. Grp. W Prods., Inc.*,
    955 P.2d 469 (Cal. 1998) ...................................................................................23

*Smart Team Glob. LLC v. HumbleTech LLC*,
    2022 WL 847301 (S.D.N.Y. Feb. 18, 2022) ..................................................11, 12

*Snyder v. Fantasy Interactive, Inc.*,
    2012 WL 569185 (S.D.N.Y. Feb. 9, 2012) .........................................................7

*Strategic Partners, Inc. v. FIGS, Inc.*,
    2021 WL 4813645 (C.D. Cal. Aug. 10, 2021) ....................................................21

*Strategic Partners Inc. v. Vestagen Protective Techs. Inc.*,
    2016 WL 10611186 (C.D. Cal. Nov. 23, 2016) ..................................................20

*Terminate Control Corp. v. Horowitz*,
    28 F.3d 1335 (2d Cir. 1994) ............................................................................14

*Town of Kearny v. Hudson Meadows Urban Renewal Corp.*,
    829 F.2d 1263 (3d Cir. 1987) ..........................................................................14

*United States v. Minicone*,
    960 F.2d 1099 (2d Cir.1992) ............................................................................15

*United States v. Yannotti*,
    541 F.3d 112 (2d Cir. 2008) ............................................................................20

*Vantone Group Ltd. Liability Co. v. Yangpu NGT Indus. Co., Ltd.*,
    2015 WL 4040882 (S.D.N.Y. July 2, 2015) .......................................................5

*Volmar Distrib., Inc. v. New York Post Co., Inc.*,
    825 F. Supp. 1153 (S.D.N.Y 1993) .................................................................16

*Waltree Ltd. v. Ing Furman Selz LLC*,
    97 F. Supp. 2d 464 (S.D.N.Y. 2000) .................................................................5

*Wyatt v. Union Mortg. Co.*,
    598 P.2d 45 (Cal. 1979) ..............................................................................23, 24

*Wynder v. McMahon*,
    360 F.3d 73 (2d Cir. 2004) .............................................................................2, 4

*Xavian Ins. Co. v. Marsh & McLennan Companies, Inc.*,
    2019 WL 1620754 (S.D.N.Y. Apr. 16, 2019) .....................................................13

*XpandOrtho, Inc. v. Zimmer Biomet Holdings, Inc.*,
    2022 WL 801743 (S.D. Cal. Mar. 15, 2022) ......................................................20

*In re Yahoo Mail Litigation*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) ..................................................................23

**Other Authorities**

18 U.S.C. § 1832 ..............................................................................................10

18 U.S.C. § 1836 ..............................................................................................10

18 U.S.C. § 1961 ..............................................................................................18

18 U.S.C. § 1962 ..............................................................................................19

18 U.S.C. § 2701 ............................................................................................3, 7

Cal. Penal Code § 496 .......................................................................................21

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| BCM | Plaintiff Broidy Capital Management LLC |
| Broidy | Plaintiffs Elliott Broidy and BCM |
| CDAFA | California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502 |
| CFAA | Computer Fraud and Abuse Act, 18 U.S.C., § 1030 *et seq.* |
| CUTSA | California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 |
| Defs. Mem. | Defendants' Memorandum of Law in Support of their Motion to Dismiss the Second Amended Complaint, May 3, 2022 (Dkt. 124) |
| DTSA | Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* |
| EMEA | Defendant Global Risk Advisors EMEA Ltd. |
| the Enterprise | The Qatari-Funded Enterprise (see SAC ¶ 2) |
| FAC | First Amended Complaint, June 26, 2020 (Dkt. 57) |
| Garcia | Defendant Antonio Garcia |
| GRA Defendants or GRA | Defendants EMEA, Global Risk Advisors, LLC, Maven, Qrypt, Quantum, Research, Kevin Chalker, Garcia and Mandich (*i.e.*, all except Courtney Chalker) |
| Mandich | Defendant Denis Mandich |
| Maven | Defendant GRA Maven LLC |
| Qrypt | Defendant Qrypt, Inc. |
| Quantum | Defendant GRA Quantum LLC |
| GRA Research | Defendant GRA Research LLC |
| SAC | Second Amended Complaint, March 1, 2022 (Dkt. 116) |
| SCA | Stored Communications Act, 18 U.S.C. § 2701, *et seq.* |
| UAE | United Arab Emirates |

**INTRODUCTION**

Defendants' unjustifiably derisive rhetoric does nothing to advance their meritless motion, which should be denied.  This Court, in granting leave to amend the FAC, Dkt. 114, has found plausible Plaintiffs' allegations tying Defendants to the illegal hacking of Plaintiffs' computers to steal and disseminate Plaintiffs' private information.  As alleged in the SAC, Defendants were paid by Qatar to illegally attack Plaintiff Elliott Broidy in retaliation for exercising his First Amendment right to criticize Qatar for sheltering and sponsoring some of the world's most notorious terrorist organizations.  Defendants thus are wrong — it is not "time to put this overreaching lawsuit to an end" (Defs. Mem. at 2); it is time for Defendants to be held accountable for their egregious misconduct.

In retaliation for Broidy's political advocacy and to silence him — and to instill fear in other Americans who might dare criticize Qatar — Qatar hired Defendants to hack into Plaintiffs' computer systems, steal thousands of private documents, and help curate and package the stolen material for the press, so as to cause maximum damage to Broidy.  While, as Defendants point out, Qatar has managed to avoid liability for this clandestine scheme on sovereign immunity grounds, that defense, as this Court and the D.C. Circuit have held, is unavailable to non-Qatar defendants such as these Defendants, who are all American citizens. *See* Dkt. 89 at 11-14; *Broidy Cap. Mgmt. LLC v. Muzin*, 12 F.4th 789 (D.C. Cir. 2021).  And, contrary to Defendants' repeated references to dismissals based on Qatar's successful assertion of the defense, that of course in no way means that Defendants, who are plausibly alleged to have carried out the illegal scheme, are not liable here.

Defendants' illegal attack was part of a pattern — a pattern frightening to anyone who values the First Amendment — of clandestine projects, funded by an enormously wealthy foreign country, designed to intimidate and silence its critics — projects carried out by a

partnership between Qatar and GRA that dates back to at least 2010.  Defendants are led by Kevin Chalker, who operates his collection of GRA-affiliated companies, which are intermingled with each other and are all under Chalker's complete control.  The Broidy operation was only one of a number Qatar hired GRA to conduct — including, among others, a "dirty trick" campaign to help advance Qatar's corrupt bid to host the 2022 FIFA World Cup, as well as a campaign, for which Qatar paid GRA tens of millions of dollars, to hack, conduct surveillance of, and denigrate the UAE ambassador to the United States and others close to him — including U.S. government officials and other politically active Americans — in an operation with striking similarities to the tactics GRA later used against Broidy and his business.

None of Defendants' arguments in support of dismissal are valid.  First, contrary to Defendants' feigned confusion, the SAC unquestionably provides each Defendant with fair notice of Plaintiffs' claims — not only are Defendants closely-affiliated entities specifically accused of joint conduct in detailed pleadings, but each is "explicitly tied to one or more of [the plaintiff's] allegations." *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) (Rule 8 does not "necessarily require . . . that a complaint separate out claims against individual defendants."). Indeed, this Court was not confused — it held, in granting leave to amend, that the SAC alleges "facts that would connect GRA to the hacking," including that "Chalker told GRA personnel that Chalker and GRA were responsible for the hack-and-smear operation targeting Broidy/BCM," that "Chalker also told GRA personnel that Chalker, Garcia, and Courtney Chalker had destroyed electronic devices and other materials containing evidence of the hacking," and that "Chalker and GRA also directed the electronic and physical surveillance of Broidy, according to former GRA personnel." Dkt. 114 at 3 (quoting SAC ¶¶ 116-118).

Second, Broidy states a claim under the federal anti-hacking SCA.  While Defendants argue that, as the *Muzin* court held, the SCA does not cover secondary liability, Defendants'

conduct here was hardly secondary, and the *Muzin* decision is therefore irrelevant.  As the SCA makes clear, GRA and Chalker themselves did the hacking — they "willfully and intentionally accessed the email accounts of" Plaintiffs "by transmitting fake spear phishing emails with links to malicious websites enabling GRA and Chalker to steal the login credentials."  SAC ¶¶ 181-82. Moreover, contrary to Defendants, inasmuch as the SAC (¶¶ 179, 184) alleges that Defendants accessed "Google's servers," it does properly allege, even under the Ninth Circuit authority they cite, that Defendants accessed a "facility through which an electronic communication service is provided," as the statute requires.  However, Defendants also ignore that Plaintiffs' allegations that they accessed Plaintiffs' personal computers also suffices under cases in this Circuit.  *See* 18 U.S.C. § 2701(a)(1).

Third, Broidy states claims under the CFAA and CDAFA anti-hacking laws. Defendants' sole argument for dismissal, that the SAC does not allege damages, ignores specific allegations regarding lost business deals and loss in value of trade secrets (among other damages) — and is further belied by, among other things, Defendants' own admission that the SAC alleges losses "associated with . . . repairing the integrity and security of Plaintiffs' servers."  *See* Defs. Mem. at 9 (citing SAC ¶ 203).

Fourth, Defendants' argument for dismissing Broidy's trade secret claims — that Broidy was supposed to describe in detail all the trade secrets GRA stole — is contrary to clear case law (including the *Muzin* case) that general descriptions suffice at the pleading stage.  *See Kraus USA, Inc. v. Magarik*, 2020 WL 2415670, at \*5 (S.D.N.Y. May 12, 2020) (denying motion to dismiss DTSA claim because at "the pleading stage, alleging categories of trade secrets" suffices).

Fifth, Defendants' scattershot challenge to Broidy's RICO claim likewise fails. Defendants' argument that Broidy has not alleged the required "pattern" of wrongdoing,

inexplicably focuses only on the scheme targeting Broidy.  But in the Second Circuit, a "pattern" includes targeting any victim, not just the plaintiff.  The SAC clearly alleges a RICO conspiracy, of which GRA personnel are the "boots on the ground" engaged in various intimidation/hacking schemes, only one of which targeted Broidy.

Finally, Broidy adequately pleads the various state law claims, which were upheld in *Muzin*, despite GRA's attempts to revive rejected arguments.

## ARGUMENT

### I.   THE SAC PROVIDES DEFENDANTS MORE THAN FAIR NOTICE OF ALL CLAIMS

Defendants assert that all of the claims in the SAC are "categorically deficient" under Rule 8(a) of the Federal Rules of Civil Procedure because Plaintiffs have "fail[ed] to give each Defendant fair notice of the claims against it."  Defs. Mem. at 5.  Defendants are wrong.

All that Rule 8 requires is that a complaint "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Here, Defendants are closely-affiliated entities that have been specifically accused of joint conduct in detailed pleadings.  *See* SAC ¶¶ 9-12, 20, 239, 244, 291-292 (Defendants acted jointly, as agents of one another and co-conspirators).  Nothing about Rule 8's lenient standard requires that a "complaint separate out claims against individual defendants," *In re Welspun Litig.*, 2019 WL 2174089, at *17 (S.D.N.Y. May 20, 2019), or "prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant," *Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 771 (S.D.N.Y. 2018), *aff'd in part, rev'd in part on other grounds and remanded,* 828 Fed. Appx. 68 (2d Cir. 2020).  *See also Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) (Rule 8 does not require separating out claims against individual defendants).  In other words, a

complaint may "allege[] joint activity" by various defendants without having to "elaborate extensively on the details with regard to each defendant." *Vantone Group Ltd. Liability Co. v. Yangpu NGT Indus. Co., Ltd.*, 2015 WL 4040882, at *4 (S.D.N.Y. July 2, 2015).

The *Consumer Fin.* decision likewise held that the case cited by Defendants, *Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, 2012 WL 6082387, at *6-7 (S.D.N.Y. Dec. 3, 2012), *aff'd*, 530 F. App'x 19 (2d Cir. 2013) (Defs. Mem. at 5), has "limited applicability" here, where "the corporate defendants share a principal place[] of business at the same address" and the same individual — Kevin Chalker — is "the founder and owner of each corporate defendant." *Consumer Fin.*, 332 F. Supp. 3d at 771.  The other two cases cited by Defendants (Defs. Mem. at 5) are factually distinguishable, as the complaints there, through group pleading, "lodge[] claims not applicable to individuals" against those individuals.  *Nesbeth v. New York City Mgmt. LLC*, 17 CIV. 8650 (JGK), 2019 WL 110953, at *3 (S.D.N.Y. Jan. 4, 2019); *Bardwil Indus. Inc. v. Kennedy*, 2020 WL 2748248, at *3 (S.D.N.Y. May 27, 2020) (relying on *Nesbeth*).

Likewise, and contrary to Defendants' argument (Defs. Mem. at 6) that Plaintiffs "fail to distinguish between Chalker and the company," it makes no sense to require a complaint to separate out someone who controls and acts on behalf of a company from the company itself. This is especially true where "facts surrounding the corporate relationship …, as well as the precise roles those entities played in the challenged transactions," are "exclusively within those entities' knowledge." *Waltree Ltd. v. Ing Furman Selz LLC*, 97 F. Supp. 2d 464, 469 (S.D.N.Y. 2000) (denying motion to dismiss).

Defendants feign confusion, but there is no mystery as to what the claims are, or to which defendants those claims apply.  The SAC explicitly accuses individual Defendants of specific wrongdoing (*see, e.g.*, SAC ¶¶ 58-59 (Garcia and Courtney Chalker destroyed evidence), 60 (GRA Research employed hackers for the Broidy operation), 81 (Mandich masterminded the

operation targeting the UAE Ambassador and numerous Americans, along with Chalker, John

Sabin, and Garcia), 116-118 (Kevin Chalker directed the activity of all Defendants), 120-126

(EMEA conspired with Qatari government officials to conduct "special projects"), 292 (GRA

Maven, Quantum, and Qrypt employed hackers who helped develop the plans to attack Plaintiffs

and UAE)), and contains detailed factual allegations regarding the particular role and

involvement of each of the Defendants in the broader Enterprise.  *See*, *e.g.*, *id.* ¶¶ 288-314.

Indeed, this Court was not confused — it held, in granting leave to amend, that the SAC

alleges facts that would connect GRA to the hacking, including that "Chalker told GRA

personnel that Chalker and GRA were responsible for the hack-and-smear operation targeting

Broidy/BCM," that "Chalker also told GRA personnel that Chalker, Garcia, and Courtney

Chalker had destroyed electronic devices and other materials containing evidence of the

hacking," and that "Chalker and GRA also directed the electronic and physical surveillance of

Broidy, according to former GRA personnel."  Dkt. 114 at 3 (quoting SAC ¶¶ 116-118).

In short, the SAC more than provides the necessary fair notice.

## II.  PLAINTIFFS STATE A CLAIM UNDER THE SCA (COUNT I)

Plaintiffs' claim against GRA and Chalker under the SCA is based on their liability as the

primary actors who did the hacking.  *See* SAC ¶¶ 58-61, 95-119, 181-182.  Accordingly,

Defendants' contention that the claim is foreclosed by the *Muzin* decision is simply misplaced.

*See* Defs. Mem. at 7.  On the contrary, the *Muzin* decision supports upholding the claim here.

The defendants in *Muzin* conspired with the actual hackers — GRA and Chalker — but did not

"themselves access[] BCM's computer systems."  *Broidy Cap. Mgmt. LLC v. Muzin*, 2020 WL

1536350, at *11 (D.D.C. Mar. 31, 2020), *aff'd*, 12 F.4th 789 (D.C. Cir. 2021).  The *Muzin* court

accordingly dismissed the SCA claim because the SCA does not permit secondary liability.  *Id*.

In contrast, here, the SAC makes clear that GRA and Chalker themselves "willfully and

intentionally accessed the email accounts of" Plaintiffs "by transmitting fake spear phishing emails with links to malicious websites enabling GRA and Chalker to steal the login credentials." SAC ¶ 181. GRA and Chalker then "used the information they obtained from their spear phishing attacks to gain unauthorized access to Plaintiffs' computer networks and email accounts." *Id.* ¶ 182. These allegations are more than sufficient to allege a primary liability claim under the SCA.

Equally unavailing is Defendants' assertion that the SAC fails to allege an SCA claim because Plaintiffs' personal "computer systems" and "email servers" (SAC ¶¶ 179, 184) are not a "facility through which an electronic communication service is provided." 18 U.S.C. § 2701(a)(1). *See* Defs. Mem. at 8. *First*, courts in the Second Circuit have held that the SCA is violated where a defendant "accessed communications . . . on Plaintiffs' personal computers," *Snyder v. Fantasy Interactive, Inc.*, 2012 WL 569185, at *3 (S.D.N.Y. Feb. 9, 2012), contrary to the Ninth Circuit cases cited by Defendants. Defs. Mem. at 8. The one older case from the Second Circuit cited by Defendants, *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 509 (S.D.N.Y. 2001) (Defs. Mem. at 8), supports Plaintiffs here, as the Court there did not reject the plaintiff's argument that her "personal computer" was a "facility," but instead dismissed her SCA claim on other grounds not relevant here (finding a web site is not a "user" under the statute).

*Second*, Defendants ignore the allegation in the SAC that Defendants accessed "BCM's email servers, *as well as Google's servers*," which unquestionably constitutes a "facility" that provides electronic communication services. *See* SAC ¶ 179 (emphasis added).

*Third*, "to make a definitive finding, based solely on the pleadings, as to whether the alleged unauthorized access was from a facility through which an electronic communication

service is provided would be 'premature.'" *Kaufman v. Nest Seekers, LLC*, 2006 WL 2807177, at *6 (S.D.N.Y. Sept. 26, 2006).  Accordingly, Plaintiffs' SCA claim should be upheld.

## III.    PLAINTIFFS STATE A CLAIM UNDER THE CFAA AND CDAFA (COUNTS II, III)

Defendants' only argument for dismissal of the claims under the CFAA and CDAFA is their assertion that the SAC does not "adequately plead the required damages under either statute."  Defs. Mem. at 8.  Defendants are wrong on both claims.

As Defendants admit, a plaintiff may recover as damages under the CFAA its costs associated with the restoration of either the "data, program, system, or information" to its prior condition.  *See* Defs. Mem. at 9 (citing *Reis, Inc. v. Lennar Corp.*, 2016 WL 3702736, at *6 (S.D.N.Y. July 5, 2016)).  Defendants also concede that the SAC does precisely that: Plaintiffs allege losses "associated with . . . repairing the integrity and security of Plaintiffs' servers." Defs. Mem. at 9 (citing SAC ¶ 203).  Nonetheless, Defendants still argue that Plaintiffs' CFAA claim must be dismissed because, according to Defendants, the SAC only contains "general allegations of damage" that are "insufficient to state a CFAA claim."  *Id.*  Contrary to Defendants' argument, the SAC alleges that GRA and Chalker directly caused Plaintiffs to "incur[] substantial losses and damage," including related to costs associated with "repairing" Plaintiffs' systems.  The SAC also alleges specifically that the losses were at least "in the hundreds of thousands of dollars."  SAC ¶¶ 203-204.  This clearly establishes damages that Plaintiffs are entitled to recover under the CFAA.  *Obeid ex rel. Gemini Real Estate Advisors LLC v. La Mack*, 2017 WL 1215753, at *8 (S.D.N.Y. Mar. 31, 2017) (upholding CFAA claim,

holding that plaintiffs sufficiently alleged that they incurred costs to repair the alleged damage as a result of unauthorized access to plaintiffs' computers.").[1]

Moreover, Plaintiffs also allege damages associated "with remedial measures taken to prevent future attacks," "harm to Plaintiffs' business," and "loss in the value of Plaintiffs' trade secrets."  SAC ¶ 203.  Defendants cite *DCR Mktg. Inc. v. Pereira*, 2020 WL 91495, at *2 & n.1 (S.D.N.Y. Jan. 8, 2020), to argue that these damages "are not compensable under the CFAA." Defs. Mem. at 10.  But *DCR* only states that funds transferred out of bank accounts are not losses under the CFAA, an irrelevant principle of law to the SAC here.  *See DCR,* 2020 WL 91495, at *3.

Defendants' arguments with respect to Plaintiffs' CDAFA claim fare no better. Defendants merely argue that the "verbatim" CDAFA allegations should suffer the same fate as the CFAA allegations.  *See* Defs. Mem. at 10.  As set forth *supra*, Plaintiffs have adequately alleged a CFAA claim, and thus, by Defendants' own reasoning, have also alleged a valid CDAFA claim.

Moreover, California law is clear that, like with damages under the CFAA, allegations that a plaintiff "incurred costs as a result of investigating and conducting a damage assessment" is sufficient for alleging damages under the CDAFA.  *NovelPoster v. Javitch Canfield Group*, 140 F. Supp. 3d 954, 964 (N.D. Cal. 2014) (denying motion to dismiss CDAFA claim).[2]

---

[1] Defendants' cases (Defs. Mem. at 9) are not to the contrary, as the plaintiffs in those cases did not allege proximate cause or identify any actual losses that were incurred.  *See Reis, Inc. v. Lennar Corp.*, 2016 WL 3702736, at *7 (S.D.N.Y. July 5, 2016) (plaintiffs "do not specify which portion of any investigatory expenses resulted from Defendants' conduct"); *Schatzki v. Weiser Capital Mgmt., LLC*, 2012 WL 2568973, at *3 (S.D.N.Y. July 3, 2012) ("CFAA claim might have been proper" if complaint "alleged that the Defendants' access to SmartOffice had damaged the data or the system itself, which caused the Plaintiffs to incur fees exceeding $5,000.00 to recover or restore it"); *Fink v. Time Warner Cable*, 2009 WL 2207920, at *4 (S.D.N.Y. July 23, 2009) (no "identification of 'loss'"); *Bose v. Interclick, Inc.*, 2011 WL 4343517, at *4 (S.D.N.Y. Aug. 17, 2011) (complaint "fails to quantify any damage").

[2] Defendants' claim that *NovelPoster* holds the *opposite* is as sloppy as it is wrong.  *See* Def. Mem. at 10.  The portion of the decision Defendants cite is actually a reference to *an earlier decision* of that court which concerned a

## IV.  PLAINTIFFS STATE A CLAIM UNDER THE DTSA (COUNT VII)

Defendants argue that Plaintiffs have not alleged that any of their "trade secrets" were "misappropriated," and thus Plaintiffs' claim under the DTSA fails.  *See* Defs. Mem. at 10. Defendants are incorrect.  Plaintiffs have adequately pled (i) that they possessed "trade secrets," and (ii) that such trade secrets were "misappropriated."[3]

### A.  Plaintiffs Adequately Allege That They Possessed "Trade Secrets"

The SAC adequately alleges the three elements that Defendants argue are necessary to "qualify for trade secret protection" under the DTSA.  *See* Defs. Mem. at 11.  First, the SAC satisfies the "specificity" element by alleging that the hacked BCM computer systems stored valuable, confidential information, such as business plans and proposals; research supporting those plans and proposals; information concerning business strategies and opportunities; and contacts for important business relationships.  *See* SAC ¶¶ 253-56, *see also id.* ¶ 114.  At "the pleading stage, alleging categories of trade secrets" suffices.  *Kraus USA, Inc. v. Magarik*, 2020 WL 2415670, at *5 (S.D.N.Y. May 12, 2020) (denying motion to dismiss DTSA claim); *Medtech Prod. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 789 (S.D.N.Y. 2008) ("specificity as to the precise trade secrets misappropriated is not required in order for [plaintiff] to defeat the present Motions to Dismiss").

*Dardashtian v. Gitman*, 2017 WL 6398718, at *5 (S.D.N.Y. Nov. 28, 2017) is instructive.  The plaintiff in *Dardashtian* alleged trade secrets almost identical to the SAC here,

---

previous version of the complaint.  The *NovelPoster* court actually found, in the decision that Defendants cite, that damages were "adequately plead[ed]" and thus the motion to dismiss was denied.  *NovelPoster,* 140 F. Supp. 3d at 955.

[3] In a footnote (Defs. Mem. at 10 n.1), Defendants argue for dismissal of Plaintiffs' claims under Sections 1831 and 1832 of the DTSA because those sections purportedly "do not confer a private right of action."  Courts in the Second Circuit hold otherwise.  *See Dardashtian*, 2021 WL 746133, at *23 (S.D.N.Y. Feb. 16, 2021) (holding that "a private right of action may be brought for misappropriation of trade secrets related to a product or service used or intended for use in interstate commerce" under "18 U.S.C. §§ 1832, 1836").

including "customer lists and addresses, vendor lists and addresses, computer software programs; computer pass codes and other protectable intellectual property and proprietary information." 2017 WL 6398718, at *5. The court held that this "level of detail is adequate for defendants to discern the trade secrets at issue," and thus "pleads breaches of the DTSA with sufficient specificity." *Id.*[4]

Second, the Plaintiffs allege that the misappropriated information derived independent economic value. Plaintiffs explain this, including at ¶¶ 253-258 of the SAC, where they allege that the stolen emails "contained confidential information involving contracts, business proposals, and cost estimates involving Broidy, BCM, and clients" and that these "contracts, proposals, and estimates contained sensitive information about Broidy's clients and his company's confidential technology and methods" that would benefit competitors. The misappropriated information thus "derive independent actual and potential economic value from not being generally known or available to the public or other persons who can obtain economic value from their disclosure or use." *See Smart Team Glob. LLC v. HumbleTech LLC*, 2022 WL 847301, at *9 (S.D.N.Y. Feb. 18, 2022) (satisfying element where complaint alleged that the plaintiff "derives substantial value from maintaining the confidentiality" of the information).

Third, the SAC satisfies the "reasonable measures" elements by alleging that Plaintiffs' misappropriated trade secrets were located on "secured servers that are protected by passwords, firewalls, and antivirus software." SAC ¶ 255. Such allegations are sufficient for a DTSA claim. *See Smart Team,* 2022 WL 847301, at *5 (upholding DTSA claim where complaint alleges that

---

[4] The cases Defendants cite (Defs. Mem. at 11-12) are inapposite. The courts in *Intrepid Fin. Partners, LLC v. Fernandez*, 2020 WL 7774478, at *4 (S.D.N.Y. Dec. 30, 2020) and *Elsevier Inc. v. Doctor Evidence, LLC*, 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018) found the plaintiffs only alleged general and vague references to trade secrets. Here, the SAC is anything but "vague," as it alleges a litany of specific categories of misappropriated materials. *See, e.g.*, SAC ¶ 114 ("personal emails and documents, contacts file, business calendar, business emails and documents, signed contracts, attorney-client privileged communications and documents, attorney-client work product, usernames, and passwords . . . .").

misappropriated information was protected by passwords); *DFO Glob. Performance Com. Ltd. (Nevada) v. Nirmel*, 2021 WL 3475596, at \*4 (S.D.N.Y. Aug. 6, 2021) (upholding DTSA claim where plaintiffs "explain the ways in which they protected this information from outsiders").[5]

## B. Plaintiffs Adequately Allege Misappropriation

The SAC contains numerous detailed allegations that GRA and Chalker used "improper means" to misappropriate and disclose Plaintiffs' trade secrets. For example, the SAC alleges that: (i) GRA hackers were "involved in many 'special projects' hacking and surveillance operations, including the hack-and-smear operation targeting Plaintiffs" (SAC ¶ 60); (ii) "GRA's extensive hacking and packaging of curated PDFs with hacked materials, as well as its intentional coordination with public relations professionals," damaged Plaintiffs (*id.* ¶ 162); and (iii) "GRA and Chalker . . . widely disseminated, or caused to be widely disseminated, those trade secrets to the media through intermediaries" (*id.* ¶ 262). These allegations are further supported by a declaration from a former GRA employee attesting to "GRA's involvement in the Broidy / BCM hack-and-smear operation." *See id.* ¶¶ 116-19. The cases Defendants cite all involve unsupported (or no) allegations concerning improper means used to disclose trade secrets, and are thus distinguishable. *See* Defs. Mem. at 14.[6]

---

[5] The cases Defendants cite (Defs. Mem. at 12) are factually distinguishable, as the plaintiffs in those cases failed to allege how the information was protected. *See 24 Seven, LLC v. Martinez*, 2021 WL 276654, at \*8 (S.D.N.Y. Jan. 26, 2021) ("Plaintiff does not establish that it took measures to safeguard the secrecy of the particular information at issue"); *Inv. Science, LLC v. Oath Holdings Inc.*, 2021 WL 3541152, at \*3 (S.D.N.Y. Aug. 11, 2021) ("the FAC does not allege that Investment Science employed reasonable measures to protect its claimed trade secrets"); *Lawrence v. NYC Med. Practice, P.C.*, 2019 WL 4194576, at \*5 (S.D.N.Y. Sept. 3, 2019) ("pleading falls far short of the specificity required to plead adequately that a party took reasonable measures to protect the secrecy of its confidential and trade secret documents and information"). In one case, *Democratic Nat'l. Comm. v. Russian Fed'n.*, 392 F. Supp. 3d 410, 448 (S.D.N.Y. 2019) (hereinafter "*DNC*"), the court only dismissed the DTSA claim because the plaintiff had "not identified anything" about the appropriated information to show "how their particular value derives from their secrecy." Similarly, Defendants' citation to *Opus Fund Servs. (USA) LLC v. Theorem Fund Servs.*, 2018 WL 1156246, at \*3 (N.D. Ill. Mar. 5, 2018) is not dispositive, as this case from the Northern District of Illinois sets forth a different standard for the DTSA than courts in the Second Circuit. *See Smart Team,* 2022 WL 847301, at \*5 (password-protection is sufficient to show "remedial measures").

[6] *See Ad Lightning Inc. v. Clean.io, Inc.*, 2020 WL 4570047, at \*4 (S.D.N.Y. Aug. 7, 2020) (no misappropriation where allegations did not explain why there was not an "equally reasonable explanation" for the facts); *Xavian Ins.*

## V.    PLAINTIFFS STATE THEIR RICO CLAIM (COUNT IX)

The SAC properly alleges a RICO claim against Defendants, including a "pattern" of "racketeering" activity by Defendants, damages, and Defendants' operation and management of an "enterprise."  *See* SAC ¶¶ 284-341.  Defendants' attempts to argue otherwise are unsuccessful.

As an initial matter, Plaintiffs' RICO claim against Defendants is not barred by collateral estoppel, contrary to Defendants' unsubstantiated argument otherwise.  *See* Defs. Mem. at 14 (arguing that the decision in *Muzin* collaterally estops Plaintiffs' RICO claim).  Collateral estoppel is triggered only where "the issues in both proceedings are identical."  *N.L.R.B. v. Thalbo Corp.*, 171 F.3d 102, 109 (2d Cir. 1999).  Here, they are not identical.  The SAC (like the predecessor complaint) was filed well after the complaint in *Muzin*, and, of course, contains numerous allegations concerning these Defendants, which the *Muzin* court had no opportunity to review, let alone decide.  *See*, *e.g.*, SAC ¶¶ 53, 79-87 (allegations of "black hat" operations and other hacking/intimidation targets, such as the UAE Ambassador and U.S. government officials and Americans associated with him).  The SAC also adequately alleges all the elements of its RICO claim, as detailed herein.

### A.  Plaintiffs Adequately Allege a "Pattern" of "Racketeering" Activity

A RICO "pattern" generally requires "continuity" of misconduct that is either "closed-ended" (*i.e.*, a "series of related predicates extending over a substantial period of time") or "open-ended" (*i.e.*, involves a "threat of continuity").  *H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 241–42 (1989).  Here, both are pleaded; either suffices.

---

*Co. v. Marsh & McLennan Cos.*, 2019 WL 1620754, at *6 (S.D.N.Y. Apr. 16, 2019) ("sole allegations" of misappropriation was that "a United Kingdom website displays both Marsh and MMC logos"); *Exceed Holdings LLC v. Chicago Bd. Options Exch. Inc.*, 2018 WL 4757961, at *6 (S.D.N.Y. Sept. 30, 2018) ("[T]he only allegations are conclusory ones that VEST's products are similar to Exceed's, without any elaboration or explanation that would permit the Court to reasonably infer that the similarities were the result of the misappropriation.").

*Closed-Ended Continuity*:  For closed-ended continuity, the Second Circuit has noted that 19 or 20 months is "sufficient to support a finding of continuity," and has upheld a jury verdict where the pattern spanned two years.  *Metromedia Co. v. Fugazy*, 983 F.2d 350, 369 (2d Cir. 1992); *see also* Defs. Mem. at 16 (conceding that two years is sufficient).  Here, Defendants concede that the SAC alleges a scheme of "more than two years" (*i.e.*, from "no later than April 2017" until after "August 2019"), but simply argue that Plaintiffs impermissibly "expand" the "timeline" by "pointing to unrelated third parties" who were also victims of Defendants' scheme.  *See* Defs. Mem. at 16 (citing SAC ¶ 301).

Defendants are incorrect, as the Second Circuit has acknowledged "that a pattern of racketeering activity may be based upon predicate acts directed against nonplaintiffs as long as one act injures the plaintiff so as to create standing."  *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1347 (2d Cir. 1994).  A rule to the contrary would make little sense.  The paradigmatic RICO "pattern" is a "protection racket" where a "hoodlum . . . sell[s] 'insurance' to a neighborhood's storekeepers to cover them against breakage of their windows," collecting monthly "premium[s]."  *H.J.*, 492 U.S. at 242.  If Defendants' narrow view of relevance under RICO were true — such that only conduct aimed at a plaintiff counted towards a "pattern" — "then each merchant's injury would be separate, and therefore . . . none could recover."  *Town of Kearny v. Hudson Meadows Urban Renewal Corp.*, 829 F.2d 1263, 1268 (3d Cir. 1987).[7]

*Open-Ended Continuity*:  As for open-ended continuity, the SAC makes clear (*see* ¶¶ 56, 73-75) that the conspiracy here is more akin to the ongoing unlawful activity of organized crime,

---

[7] The one case cited by Defendants (Defs. Mem. at 17) is not to the contrary, as the court there did not consider acts to a third-party only because that act "predate[d]" the current acts against plaintiffs "by more than ten years." *Sathianathan v. Smith Barney, Inc.*, 2007 WL 576097, at *4 (S.D.N.Y. Feb. 21, 2007).  Here, by contrast, the acts against the allegedly "unrelated" UAE Ambassador occurred only months before the acts against Plaintiffs.  *See* SAC ¶ 79.

*see*, *e.g.*, *United States v. Minicone*, 960 F.2d 1099, 1107 (2d Cir.1992), than "inherently terminable" acts such as a singular scheme, *see*, *e.g.*, *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 180-81 (2d Cir. 2004).  In arguing that the SAC alleges "only a 'one time racket'" (Defs. Mem. at 15), Defendants again undercount the campaign's duration and assume that only those acts victimizing Broidy should be considered.  That is not the law, and the SAC plainly includes allegations of ongoing misconduct, and therefore sufficiently establishes open-ended continuity for purposes of RICO.[8]

***Multiple Predicate Acts***:  Equally unavailing is Defendants' argument that the SAC fails to allege any "racketeering" acts.  Defs. Mem. at 17-19.  The SAC sufficiently details the predicate acts in furtherance of the Enterprise (SAC ¶¶ 299-336 (describing multiple acts of wire fraud, money laundering, trade secret misappropriation, and economic espionage)) and specifies each Defendant's participation in those acts (*id.* ¶¶ 292-293).

*First*, the SAC alleges that the Defendants committed wire fraud, unquestionably a "racketeering" act.  SAC ¶ 299.  Contrary to Defendants' unexplained assertion that Plaintiffs "cannot meet Rule 9(b)'s standard for pleading wire fraud" (Defs. Mem. at 18), the SAC details the many misrepresentations the Defendants made in connection with hacking Broidy's computer systems (SAC ¶¶ 60-61, 303-310, 314), and how they intentionally misled various individuals into clicking on fraudulent links and unwittingly granting the hackers access to their confidential log-in data (*id.* ¶¶ 98-111 (*e.g.*, spear phishing, deceptive account modification, unauthorized use of Google trademarks, use of shortened URLs)).  The SAC further details the Defendants' work silencing critics of Qatar's hosting status for the 2022 World Cup (*id.* ¶¶ 63-77

---

[8] Here again, the one case cited by Defendants (Defs. Mem. at 16) is not to the contrary, as the court there did not consider acts to a third-party only because "the relationship between the two types of conduct [was] simply too remote."  *See Ray Larsen Assocs., Inc. v. Nikko Am., Inc.*, RICO Bus. Disp. Guide 9110 (S.D.N.Y. Aug. 6, 1996).

(Defendants conducted covert cyber-ops to defraud targets through fraudulent representations transmitted across wires in interstate and/or foreign commerce, with the intent that targets rely on the false representations to their detriment)), and hacking and smearing the UAE Ambassador and Americans connected to him (*id.* ¶¶ 73-87 (defrauding the UAE Ambassador to hack his confidential information)).  All of these are separate predicate acts.

In any event, to the extent any factual details were somehow not sufficiently pled, or not sufficiently attributed to a specific Defendant, that is because the facts supporting the claim are "particularly within the defendant's knowledge," which is a "recognized exception" to Rule 9(b)'s particularity requirement.  *See Volmar Distrib., Inc. v. New York Post Co.*, 825 F. Supp. 1153, 1162 (S.D.N.Y 1993).  This was, after all, a covert (and illegal) operation.  Where, as here, many of the Defendants collectively planned and executed intentionally covert attacks, it would be impossible for Plaintiffs to know which hacker sent which email at any given time.  "In such cases, including 'complex civil RICO actions involving multiple defendants, . . . 'Rule 9(b) requires only that the plaintiff delineate with adequate particularity . . . the specific circumstances constituting the overall fraudulent scheme.'"  *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 145–46 (S.D.N.Y. 2014) (citations omitted).  That scheme is thoroughly delineated in the SAC.[9]

*Second*, Plaintiffs also adequately plead money laundering tied to the wire fraud.  SAC ¶¶ 314-19.  Defendants argue that Plaintiffs only speculate that the value of the criminally-derived property is more than the statutorily-required $10,000.  Defs. Mem. at 18.  But the satisfaction of

---

[9] Not surprisingly, the case cited by Defendants (Defs. Mem. at 18) supports Plaintiffs, as the court there agreed that "the rule that allegations may not be based on information and belief is relaxed if the matters are peculiarly within the adverse party's knowledge."  *Jus Punjabi, LLC v. Get Punjabi Inc.*, RICO Bus. Disp. Guide 12618 (S.D.N.Y. May 20, 2015).  The *Jus Punjabi* court only dismissed the RICO claim because the allegations must "be accompanied by a statement of the facts upon which the belief is founded," and the plaintiff, as opposed to Plaintiffs here, failed to do so.  *Id.*

this threshold is plainly evident in light of Defendants' lucrative compensation.  For example, Qatar paid the Defendants at least tens of millions of dollars to direct and engage in the hack-and-smear operations against Broidy and the UAE Ambassador and other Americans, as well as to conduct the covert black ops campaign to silence Qatar's perceived enemies in connection with World Cup 2022.  SAC ¶¶ 41, 68, 91.  These facts easily suffice, particularly since they are to be assumed true and given every favorable inference.

Finally, for the reasons discussed (Section IV, *supra*), Plaintiffs also properly allege predicate acts under the DTSA.  SAC ¶¶ 319-332.

### B.  Plaintiffs Adequately Allege Standing and Damages

Contrary to Defendants' standing arguments (Defs. Mem. at 19), Plaintiffs adequately allege injury from the RICO violation, including (among other things) "harm to . . . computers, servers and accounts," "losses associated with identifying and investigating the cyberattacks," replacement costs for computers and cell phones with dual authentication systems, and "lost revenue from business arrangements cancelled or lost due to the hack and associated media onslaught."  SAC ¶ 339.  Defendants argue that losses associated with Plaintiffs' "response to the alleged racketeering" are not recoverable (Defs. Mem. at 19), but that ignores all the other damages alleged (such as lost business), about which Defendants advance no argument.  And, of course, the losses associated with remedial measures are recoverable when "reasonably foreseeable or anticipated as a natural consequence."  *Related Companies, L.P. v. Ruthling*, RICO Bus. Disp. Guide 13053 (S.D.N.Y. July 5, 2018) (denying motion to dismiss RICO claim).

Arguing otherwise, Defendants misconstrue *Hollander v. Flash Dancers Topless Club*, 173 F. App'x 15 (2d Cir. 2006).  There, a *pro se* plaintiff alleged a global criminal enterprise of which he was not a target, but nevertheless sought compensation for having chosen to stop his "normal work" as a lawyer and consultant to investigate the enterprise.  *Id.* at 17.  The Second

Circuit found those losses were not compensable because "it was not the object of the conspiracy to cause him to cease work and thereby lose profits." *Id.* at 18. By stark contrast, here, the whole point of the scheme was to "inflict maximum damage on Mr. Broidy" via the hacking and media campaigns in order to silence Broidy's criticism of Qatar. SAC ¶ 128. The damages alleged — remedial costs for the hacking, the loss in value of trade secrets and other intellectual property, and lost business deals (among other things) — are "reasonably foreseeable" and "natural consequence[s]" of that conduct, and hence are recoverable. *Related Companies, L.P.*, RICO Bus. Disp. Guide 13053, at *12.

### C. Plaintiffs Adequately Allege Operation and Management of an Enterprise

An "enterprise" is "any union or group of individuals associated in fact," 18 U.S.C. § 1961(4), and the term is to be "liberally construed" and given a "broad and flexible reach." *D'Addario v. D'Addario*, 901 F.3d 80, 100 (2d Cir. 2018). While Defendants complain that the SAC does not provide enough detail about the Enterprise's "hierarchy" or Defendants' "respective roles" (Defs. Mem. at 20), the Supreme Court has specifically rejected the argument that an enterprise needs to have "structural attributes, such as a structural 'hierarchy,' [or] 'role differentiation.'" *Boyle v. United States*, 556 U.S. 938, 948 (2009). Still, the SAC spells out the relationships and roles of the various named conspirators, including, for example, that Kevin Chalker oversaw and managed the hacking operations, while "Mandich and Garcia [were] key operatives who at times shared oversight and management responsibility" with Chalker. SAC ¶ 292. The roles of the GRA subsidiaries, and other co-conspirators, are described in detail too, including the names and roles of the individual Qataris and U.S. media professionals involved. *Id.* ¶¶ 63-64, 133-139, 291-294.[10]

---

[10] Defendants assert that *DNC*, 392 F. Supp. 3d at 440, requires a plaintiff alleging RICO to allege "hierarchy" (Defs. Mem. at 20), but Defendants misconstrue the holding therein. The *DNC* court only dismissed the RICO claims "in part" because the plaintiff did not plead "any facts suggesting hierarchy," ultimately dismissing the

Defendants' argument concerning the "operation or management" allegations is likewise meritless.  Defs. Mem. at 19-20.  RICO reaches those who "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs," 18 U.S.C. § 1962(c), meaning "one must have some part in directing [the enterprise's] affairs."  *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).  This includes not only "upper management" but also "lower rung participants in the enterprise . . . under the direction of upper management."  *Id*. at 184.  The same allegations cited above demonstrate Defendants' operation and management of the Enterprise.  *See also* SAC ¶¶ 57-59 (detailing Kevin Chalker and GRA's control), ¶ 116 ("Chalker told GRA personnel" that he and GRA were "responsible for the hack-and-smear operation"), ¶¶ 291-295 (detailing operation and management of Enterprise).  Defendants do not address those allegations or explain their deficiency beyond the bizarre assertion that it is "implausible that any Defendant exercised any degree of control over the sovereign nation of Qatar."  Defs. Mem. at 19.  But Plaintiffs do not allege that Defendants operate or control Qatar; they allege that Defendants operate the Enterprise.[11]  *Id.* ¶ 290.

## VI.   PLAINTIFFS STATE A CLAIM FOR RICO CONSPIRACY (COUNT X)

Defendants argue that Plaintiffs' RICO conspiracy claim fails along with the substantive RICO count.  Defs. Mem. at 20.  This argument is meritless since the substantive RICO count is pleaded properly.  *See supra*, Section V.  Defendants' only other basis for dismissal of the RICO conspiracy is a repeat of its misguided "group pleading" argument, and should be rejected for the

---

entirety of the claims on other grounds.  *See DNC*, 392 F. Supp. 3d at 440 (dismissing claims because the enterprise did not have "an unlawful or fraudulent goal").  Indeed, *DNC* cannot stand for the proposition that "hierarchy" is a requirement, as *DNC* relies upon *D'Addario*, which expressly held that "the Supreme Court has rejected attempts to graft onto the statute formal strictures that would tend to exclude amorphous or disorganized groups of individuals from being treated as RICO 'enterprises.'"  *D'Addario*, 901 F.3d at 100.  *D'Addario* also distinguishes *First Cap Asset Mgmt. v. Satinwood, Inc.,* 385 F.3d 159, 181 (2d Cir. 2004), another case cited by Defendants here (Defs. Mem. at 20).

[11] The SAC, in fact, explicitly identifies the conspiracy in which Defendants are central figures as the "Qatari-***Funded*** Criminal Enterprise."  *See* SAC ¶¶ 153, 158, 279, 344, 346 (emphasis added).

reasons discussed *supra*, Section I.  In fact, what is required for Plaintiffs to state a claim for

RICO conspiracy is an allegation that Defendant "kn[e]w of, and agree[d] to, the general

criminal objective of a jointly undertaken scheme."  *United States v. Yannotti*, 541 F.3d 112, 122

(2d Cir. 2008) (citation omitted).  Here, the SAC plainly alleges that each Defendant knew of

and agreed to support and facilitate the alleged RICO violations: Chalker oversaw and managed

hacking operations; his brother Courtney Chalker, Garcia, and Chalker himself destroyed crucial

evidence tying GRA to the hacking operation; Mandich and Garcia were operatives who shared

oversight and management responsibility; and Global Risk Advisors LLC, Maven, Quantum,

EMEA, Qrypt, and GRA Research "employ[ed] hackers who help develop the plans to attack

perceived critics of Qatar."  SAC ¶ 292; *see also supra,* Section V.  As alleged in the SAC,

Defendants not only each agreed to support the conspiracy, they helped launch it in the first

place.  *See*, *e.g.*, *id*. ¶¶ 345 (Defendants helped launch conspiracy), 76-79 (Defendants expanding

Qatari operations to include geopolitical targets), 92 (same).

## VII.    PLAINTIFFS STATE A CLAIM UNDER CUTSA (COUNT VIII)

Plaintiffs' CUTSA claim should be upheld for the same reasons the DTSA claim should

be upheld.  *See supra*, Section IV; *see also Dairy, LLC v. Milk Moovement, Inc.*, 2022 WL

1103822, at *2 (E.D. Cal Apr. 13, 2022) ("analyz[ing]" and upholding "the DTSA and CUTSA

claims together" because the "elements are substantially similar").  Specifically, the SAC

adequately alleges trade secrets, independent economic value, reasonable efforts to maintain

secrecy, and misappropriation.  *See Strategic Partners Inc. v. Vestagen Protective Techs. Inc.*,

2016 WL 10611186, at *4 (C.D. Cal. Nov. 23, 2016) (even "broad categories of descriptions [of

trade secrets] suffice at the pleading stage"); *XpandOrtho, Inc. v. Zimmer Biomet Holdings, Inc.*,

2022 WL 801743, at *13 (S.D. Cal. Mar. 15, 2022) (upholding CUTSA claim because plaintiff

alleged "password protected file-sharing systems").

The SAC likewise adequately alleges damages under CUTSA, including "business arrangements cancelled or lost," resulting in a "total amount of . . . losses" that "far exceeds $75,000."  *See* SAC ¶¶ 280-81.  While Defendants argue that these damage allegations are insufficient (Defs. Mem. at 21), well-established law compels that this argument be rejected.  *See Coldwell Solar, Inc. v. ACIP Energy LLC*, 2021 WL 3857981, at *12 (E.D. Cal. Aug. 30, 2021) (upholding CUTSA claim where plaintiff "unequivocally alleges it was damaged in the amount of $100,000 as a result of having to renegotiate and decrease its proposal price to retain Creekside as a client").[12]

## VIII.   PLAINTIFFS STATE THE REMAINING STATE LAW CLAIMS (COUNTS IV, V, VI)

Plaintiffs properly plead state law claims for receipt and possession of stolen property (Cal. Penal Code § 496), intrusion upon seclusion, and civil conspiracy.  Defendants' arguments fail.

### A.  The State Law Claims Are Not Preempted By CUTSA

Plaintiffs' state law claims are not, as Defendants claim, preempted by CUTSA.  *See* Defs. Mem. at 22.  The *Muzin* court correctly explained that these very claims are not preempted because they do "not require that the confidential information qualify as a trade secret in order for Broidy to prevail."  2020 WL 1536350, at * 14 (citing *Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 704 (9th Cir. 2017)).  There is no reason to depart from this analysis.[13]

---

[12] *E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, 2018 WL 2463869, at *8 (E.D. Cal. June 1, 2018), cited by Defendants (Defs. Mem. at 21), is factually distinguishable, as the plaintiff there "divested itself of all interest in the RW dryer business well before defendants allegedly took any action with respect to plaintiffs' trade secrets."  Here, on the other hand, the SAC alleges that *both* Plaintiffs were damaged by Defendants' misappropriation.  *See* SAC ¶¶ 280-281.

[13] The two cases cited by Defendants (Defs. Mem. at 22) are not to the contrary, as the misappropriated material there were, in fact, trade secrets.  *See Strategic Partners, Inc. v. FIGS, Inc.*, 2021 WL 4813645, at *5 (C.D. Cal. Aug. 10, 2021) (plaintiff's "Confidential Information falls squarely within CUTSA's definition of a trade secret"); *Erhart v. BofI Holding, Inc.*, 2020 WL 1550207, at *37 (S.D. Cal. Mar. 31, 2020) ("[T]here is little doubt that some of the information BofI is trying to protect could be entitled to trade secret protection.").

### B. Defendants' Other Arguments Fail

Contrary to Defendants' cursory argument, Plaintiffs' state law claims are adequately pled. *See* SAC ¶¶ 223-27 (alleging in detail Defendants' actions for receipt and possession of stolen property claim); ¶¶ 114, 230 (alleging reasonable expectation of privacy for intrusion upon seclusion claim); ¶ 240 (alleging underlying tort for civil conspiracy claim).

***Stolen Property***:  Defendants' only argument with respect to Plaintiffs' stolen property claim, that the SAC only sets forth "threadbare" allegations as to Defendants' "actual knowledge" that the material was stolen (Defs. Mem. at 23), is nonsensical, given that Defendants stole the material.  SAC ¶¶ 88, 127, 223-26.  Defendants' citation is thus inapplicable, as the defendant there did not itself steal the material.  *See Freeney v. Bank of Am. Corp.*, 2016 WL 5897773, at *12 (C.D. Cal. Aug. 4, 2016) (stolen property claim dismissed against bank which had no "actual knowledge that the transfers associated with the RG accounts involved stolen money").

***Intrusion Upon Seclusion***:  Equally incorrect is Defendants' argument that Plaintiffs' intrusion upon seclusion claim fails because there is generally no expectation of privacy in emails, and the SAC does not "plead specific email content in specific emails" to state a claim. Defs. Mem. at 23-24.  Plaintiffs allege that Defendants accessed "personal emails and documents, contacts file, business calendar, business emails and documents, signed contracts, attorney-client privileged communications and documents, attorney-client work product, usernames, and passwords to access other non-Google accounts, including email accounts on the computer network of BCM, including Broidy's corporate email account, financial information, and confidential business process and methods information."  SAC ¶ 114.  The SAC also describes in detail how the materials stolen by Defendants were curated to present desired impressions and given to reporters who published damaging stories based on their contents. *See*,

22

*e.g.*, *id*. ¶¶ 148-50, 157-58.  Plaintiffs need not reprint all the emails that were reported on by the country's largest news outlets for the Court to recognize that there was an "intrusion into a private place" that was done "in a manner highly offensive to a reasonable person." *Shulman v. Grp. W Prods., Inc.*, 955 P.2d 469, 490 (Cal. 1998).  As the *Muzin* court recognized, "hacking into a person's private computer" is exactly this sort of "highly offensive" intrusion that triggers liability.  2020 WL 1536350, at *19 (citation omitted).

Defendants rely on *In re Yahoo Mail Litigation*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014) (Defs. Mem. at 23), but that case concerned the use of computer algorithms to scan emails to facilitate targeted advertising to given users.  This is categorically different from human operatives reading, and disclosing to the media, the full content of sensitive emails, with the express aim to inflict maximum damage in order to silence the victim.  *See also* Defs. Mem. at 24 (citing *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1052 (N.D. Cal. 2018), which merely relies upon *Yahoo*, and therefore, provides no support to Defendants).

***Civil Conspiracy***:  Defendants are wrong that Plaintiffs have failed to plead any "underlying tort[s]."  Defs. Mem. at 24.  As discussed *supra,* Sections II, III, and VIII, every substantive claim has been sufficiently pleaded.

Defendants' only other argument, that Plaintiffs did not "specifically allege acts taken in furtherance of the claimed 'conspiracy'" (Defs. Mem. at 24) is wrong on both the facts and law.  Plaintiffs allege numerous specific acts taken in furtherance of the conspiracy, as the Defendants agreed to and did act in concert with one another to plan and perpetrate the hacking of Broidy (SAC ¶¶ 95-119), the hacking/intimidation of the UAE Ambassador and numerous Americans (*id.* ¶¶ 79-87), and the covert black ops campaign to silence Qatar's critics (*id.* ¶¶ 133-43).  In addition, for purposes of a conspiracy claim, "[t]acit consent" is enough, and "may be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged

conspirators, and other circumstances." *Wyatt v. Union Mortg. Co.*, 598 P.2d 45, 52 (Cal. 1979) (citation omitted).  Here, as the *Muzin* court found, there are "detailed factual allegations [of] the hacking scheme purportedly perpetuated *by GRA* and other members of the Qatari Enterprise," and "the totality of the circumstantial evidence alleged plausibly supports a conspiracy claim." 2020 WL 1536350, at *12, 21 (emphasis added).

## IX.     PLAINTIFFS' ABILITY TO AMEND THE SAC HAS NOT BEEN FORECLOSED

Defendants conclude their brief by requesting the Court dismiss the SAC with prejudice because "it would be futile to allow Plaintiffs to replead for a third time."  Defs. Mem. at 25.  Of course, the SAC should not be dismissed for the reasons described herein.  But, even if Defendants were successful on this motion, Plaintiffs are not foreclosed from seeking leave to further amend the SAC, especially where, as here, Defendants masterminded a related series of "secretive covert operations" (SAC ¶ 10) designed to silence Qatar's critics (SAC ¶¶ 40, 60, 65-92), with additional details continuing to be discovered.[14]  *Cardwell v. Davis Polk & Wardwell LLP*, 2021 WL 4434935, at *41 (S.D.N.Y. Sept. 23, 2021) (allowing third amended complaint because "the proposed amendments . . . are based on documents Defendants produced (and facts Cardwell learned) after the January and November 2020 deadlines to amend had passed").[15]

**CONCLUSION**

For the foregoing reasons, Defendants' motion should be denied in its entirely.

---

[14] Additionally, media reports have recently revealed an ongoing pattern of similar conduct carried out by Defendants on behalf of Qatar for many years.  *See* Alan Suderman, *World Cup host Qatar used ex-CIA officer to spy on FIFA*, AP News (November 23, 2021), https://apnews.com/article/soccer-sports-business-migration-middle-east-d9716b62fc69ab88beb3553d402da7d1/.

[15] To the extent that Defendants "preserve" any "rejected" or previously briefed arguments by incorporating them by reference in their brief (Defs. Mem. at 25), Plaintiffs do the same.

Dated:  New York, New York
       May 31, 2022

Respectfully submitted,

KASOWITZ BENSON TORRES LLP

By: /s/ Daniel R. Benson
    Daniel R. Benson
    Sarah G. Leivick
    Andrew R. Kurland
    Jeffrey Ephraim Glatt

    1633 Broadway
    Tel.: (212) 506-1700
    New York, New York 11019
    dbenson@kasowitz.com
    sleivick@kasowitz.com
    akurland@kasowitz.com
    jglatt@kasowitz.com

    Henry B. Brownstein

    1399 New York Avenue, Suite 201
    Washington, D.C. 20005
    Tel.: (202) 760-3400
    hbrownstein@kasowitz.com

    *Counsel for Plaintiffs Elliott Broidy and*
    *Broidy Capital Management, LLC*