UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
:
ELLIOTT BROIDY and BROIDY CAPITAL :
MANAGEMENT, LLC, :
:
              Plaintiffs, :
:
      - against - :
:
GLOBAL RISK ADVISORS LLC, :
GRA MAVEN LLC, :         Case No. 19-cv-11861-MKV
GRA QUANTUM LLC, :
GLOBAL RISK ADVISORS EMEA LIMITED, :         **Oral Argument Requested**
GRA RESEARCH LLC, :
QRYPT, INC., :
KEVIN CHALKER, :
DENIS MANDICH, :
ANTONIO GARCIA, and :
COURTNEY CHALKER, :
:
              Defendants. :
:
-------------------------------------------------------------x

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS
## <u>THE SECOND AMENDED COMPLAINT</u>

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

    I.    Plaintiffs Fail to Plead Facts Attributing Misconduct to Any Defendant ............... 2

    II.    Plaintiffs Fail to State a Claim Under the SCA ....................................................... 3

    III.    Plaintiffs Fail to State A Claim Under the CFAA and the CDAFA ....................... 4

    IV.    Plaintiffs Fail to State a Claim Under the DTSA and the CUTSA ......................... 5

    V.    Plaintiffs Fail to State a RICO Claim or a Claim for RICO Conspiracy ................ 7

    VI.    Plaintiffs' State Common Law Claims Should Be Dismissed ............................... 8

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*24 Seven v. Martinez*,
  2021 WL 276654 (S.D.N.Y. Jan. 26, 2021) ................................................................................6

*Applied Biological Lab'ys, Inc. v. Diomics Corp.*,
  2021 WL 4060531 (S.D. Cal. Sept. 7, 2021) .............................................................................8

*Biesenbach v. Does 1-3*,
  2022 WL 204358 (N.D. Cal. Jan. 24, 2022) ..............................................................................3

*Broidy Capital Mgt. LLC v. Muzin*,
  2020 WL 1536350 (D.D.C. Mar. 31, 2020) ............................................................................7, 9

*Consumer Fin. Prot. Bureau v. RD Legal Funding LLC*,
  332 F. Supp. 3d 729 (S.D.N.Y. 2018) .......................................................................................2

*Dardashtian v. Gitman*,
  2017 WL 6398718 (S.D.N.Y. Nov. 28, 2017) .......................................................................5, 7

*In re Double Click*,
  154 F. Supp. 2d 497 (S.D.N.Y. 2011) .......................................................................................3

*Elsevier Inc. v. Doctor Evidence, LLC*,
  2018 WL 557906 ........................................................................................................................5

*Fido's Fences v. Radio Sys.*,
  999 F. Supp. 2d 442 (E.D.N.Y. 2014) .......................................................................................8

*Freeney v. Bank of Am. Corp.*,
  2016 WL 5897773 (C.D. Cal. Aug. 4, 2016) ..........................................................................10

*Int'l Chauffeured Serv. v. Fast Operating Corp.*,
  2012 WL 1279825 (S.D.N.Y. Apr. 16, 2012) ...........................................................................4

*Intrepid Acrisure of California v. SoCal Comm.*,
  2019 WL 4137618 (C.D. Cal. Mar. 27, 2019) ..........................................................................5

*Intrepid Fin. Partners v. Fernandez*,
  2020 WL 7774478 (S.D.N.Y. Dec. 30, 2020) ...........................................................................5

*Investment Science, LLC v. Oath Holdings, Inc.*,
  2021 WL 3541152 (S.D.N.Y. Aug. 11, 2021) ...........................................................................6

*Kaufman v. Nest Seekers*,
  2006 WL 2807177 (S.D.N.Y. Sept. 26, 2006) ..........................................................................3

*Kraus USA v. Magarik*,
    2020 WL 2415670 (S.D.N.Y. May 12, 2020) ................................................................5

*Mackintosh v. Lyft, Inc.*,
    2019 WL 5682826 (E.D. Cal. Nov. 1, 2019) ................................................................7

*Medtech Prods. Inc. v. Ranir, LLC*,
    596 F. Supp. 2d 778 (S.D.N.Y. 2008) ..........................................................................5

*Nelson Bros. Prof'l Real Estate LLC v. Beau Jaussi*,
    2017 WL 8220703 (C.D. Cal. Mar. 23, 2017) ..............................................................7

*New Show Studios v. Needle*,
    2014 WL 2988271 (C.D. Cal. June 30, 2014) ..............................................................9

*NovelPoster v. Javitch Canfield*,
    140 F. Supp. 3d 938 (N.D. Cal. 2014) .........................................................................4

*NovelPoster v. Javitch Canfield*,
    140 F. Supp. 3d 954 (N.D. Cal. 2014) .........................................................................4

*Opus Fund Servs. v. Theorem Fund Servs.*,
    2018 WL 1156246 (N.D. Ill. Mar. 5, 2018) ..................................................................6

*Smart Team v. Humble Tech*,
    2022 WL 847301 (S.D.N.Y. Feb. 18, 2022) ............................................................5, 6

*Snyder v. Fantasy Interactive*,
    2012 WL 569185 (S.D.N.Y. Feb. 9, 2012) ..................................................................3

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
    271 F. Supp. 3d 835 (E.D. Va. 2017) ..........................................................................7

*Strategic Partners, Inc. v. FIGS*,
    2021 WL 4813645 (C.D. Cal. Aug. 10, 2021) .............................................................8

*Turret Labs U.S. v. CargoSprint, LLC*,
    2022 WL 701161 (2d Cir. Mar. 9, 2022) .....................................................................6

*Vantone v. Yangpu*,
    2015 WL 4040882 (S.D.N.Y. July 2, 2015) ............................................................2, 3

*In re Welspun Litig.*,
    2019 WL 2174089 (S.D.N.Y. May 20, 2019) .............................................................2

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) .........................................................................10

**Statutes**

18 U.S.C. § 1831 ............................................................................................................................. 7

18 U.S.C. § 1832 ............................................................................................................................. 7

18 U.S.C. § 1836 ............................................................................................................................. 7

18 U.S.C. § 2701(a)(1) .................................................................................................................... 3

**PRELIMINARY STATEMENT**

Plaintiffs have been given multiple chances to state an actionable claim. But once again, none of the ten causes of action stuffed into Plaintiffs' Second Amended Complaint ("SAC") overcomes the fatal defects that pervaded their prior pleadings. This Court granted Plaintiffs leave to file the SAC, having found Plaintiffs could plead a plausible link to Defendants and the purported "hack-and-smear operation" directed against Broidy in 2017. But the SAC still comes up short—it does not plausibly allege the additional elements required to plead any of the asserted causes of action, and does not adequately tie the causes of action to any specific Defendant. Because the SAC continues to rely on insufficient conclusory allegations, every cause of action fails under both Rule 8(a) and Rule 12(b)(6). Plaintiffs are out of chances. The Court should dismiss this case with prejudice.

Defendants' motion established each of the SAC's specific defects, as supported by abundant precedent: failure to plead the conduct attributable to each Defendant (all Counts); failure to plead "facilities" under the Stored Communications Act ("SCA") (Count I); failure to plead damages under the Computer Fraud and Abuse Act ("CFAA") and its state analogue (Counts II, III); failure to plead the existence of a trade secret under the Defend Trade Secrets Act ("DTSA") and California Uniform Trade Secrets Act ("CUTSA"), let alone misappropriation of one (Counts VII, VIII); failure to plead a pattern of racketeering activity under RICO, standing or damages, operation or management of an enterprise, and conspiracy (Counts IX, X); and preemption of the state common law claims by the CUTSA, as well as failure to otherwise plead knowledge of stolen property, a privacy interest, or a civil conspiracy (Counts IV, V, VI). Broidy's opposition strategy—flooding the Court with irrelevant cases, summarily brushing away key case law, and relying on other conclusory allegations in the SAC—cannot salvage his claims.

Despite all of their bluster, Plaintiffs' efforts to pin liability on Defendants based on conclusory pleading are futile. Having now filed three complaints in this case—in addition to the five others in other courts arising from the same alleged hacking—Broidy has failed to allege the required elements to state a claim against any Defendant for the alleged wrongdoing. The motion to dismiss should now be granted with prejudice.

## ARGUMENT

**I.     Plaintiffs Fail to Plead Facts Attributing Misconduct to Any Defendant**

Plaintiffs acknowledge Rule 8 requires the SAC provide *each* Defendant with fair and adequate notice of the allegations against it. But again, Plaintiffs fail to explain how the SAC satisfies that burden. Many Defendants are accused only of being part of an "Enterprise"—with no allegations about how each contributed to the alleged hacking, SAC ¶¶ 291-292—while many others are nonsensically accused of pressing "send" on the same phishing email, and dozens of allegations are directed indiscriminately to "Defendants" without specifics or elaboration. *See, e.g.*, SAC ¶¶ 243, 304-05, 307-11, 317. Even where allegations pertain to Chalker and GRA (and not the rest of the Defendants) the SAC fails to distinguish between Chalker and the company.

In response to these fatal defects, Plaintiffs merely cite cases with incomparably individualized allegations. *See In re Welspun Litig.*, 2019 WL 2174089, at *17 (S.D.N.Y. May 20, 2019) (two defendants accused of distributing and marketing falsely labeled bed linens sufficient because parent company allegedly manufactured the linens, and marketing subsidiary distributed and labeled them); *Consumer Fin. Prot. Bureau v. RD Legal Funding LLC*, 332 F. Supp. 3d 729, 771 (S.D.N.Y. 2018) (multiple defendants respectively accused of misleading consumers into different usurious cash advance agreements), *rev'd in part on other grounds*, 828 Fed. App'x. 68 (2d Cir. 2020). Plaintiffs' reliance on *Vantone v. Yangpu* is inapt because the

2

plaintiffs there explicitly relied on an alter-ego theory alleged in detail in pleading trademark violations against multiple defendants. 2015 WL 4040882, at *6 (S.D.N.Y. July 2, 2015). Of course, the SAC includes no alter-ego allegations at all. *Cf. id.* (pleading alter-ego liability theory "requires more than conclusory allegations of control").

## II. Plaintiffs Fail to State a Claim Under the SCA

Plaintiffs concede they cannot state an SCA claim under a secondary liability theory. *See* Opp. at 6-7. They now say the claim is based on GRA and Chalker being primarily responsible for the alleged hacks. This primary liability theory also fails, because Plaintiffs do not adequately or plausibly allege hacking of a "facility through which an electronic communications service is provided." 18 U.S.C. § 2701(a)(1). Plaintiffs instead allege hacking of personal computers and BCM's servers which are not cognizable "facilities" under the SCA. *See* Mot. at 8 (citing cases).[1]

Plaintiffs' allegation that Google's servers were also hacked does not save the SCA claim for a simple reason: Plaintiffs "ha[ve] not fully described the nature of the communications, the server in question, [and] why it falls within the purview of 'electronic storage.'" *Biesenbach v. Does 1-3*, 2022 WL 204358, at *5 (N.D. Cal. Jan. 24, 2022) (vaguely pleaded hacking of Google servers insufficient). Plaintiffs' reliance on *Snyder v. Fantasy Interactive* and *Kaufman v. Nest Seekers* does not help them. *Snyder* concerned specific Skype communications (with detailed allegations supporting how they fell within the SCA's scope), 2012 WL 569185, at *3 (S.D.N.Y. Feb. 9, 2012), and *Kaufman* found discovery necessary to determine if a website qualified as a facility under the SCA based on detailed allegations concerning its various messaging functions, 2006 WL 2807177, at *6 (S.D.N.Y. Sept. 26, 2006). Neither case supports the notion that

---

[1] Plaintiffs say just one of Defendants' cases on this issue, *In re Double Click*, is irrelevant, but ignore the portion of the opinion cited in Defendants' motion finding "cookies" on plaintiffs' hard drives were outside the scope of § 2701. 154 F. Supp. 2d 497, 511 & n.20 (S.D.N.Y. 2011). The same goes for Plaintiffs' alleged servers here.

3

*Plaintiffs'* servers or alleged Google servers with no articulated connection to specific documents or storage are "facilities" under the statute. They are not. The SCA claim should be dismissed.

### III. Plaintiffs Fail to State A Claim Under the CAFA and the CDAFA

*No CFAA Damages.* Plaintiffs' allegations of loss "associated with . . . repairing the integrity and security of Plaintiffs' servers," Opp. at 8, doom their CFAA claim. Plaintiffs admit a CFAA claim fails where it "d[oes] not allege proximate cause or identify any actual losses that were incurred," *id.* at 9 n.1, but they ignore that the SAC suffers this precise defect. *See* Mot. at 9 (collecting cases). As in Defendants' cited cases, Plaintiffs merely parrot their alleged losses as defined under the CFAA, offering no facts tying the purported losses to specific remediation activity. Rule 12(b)(6) bars such conclusory pleading.

Plaintiffs also fail to dispute that "remedial measures taken to prevent future attacks" are not compensable under the CFAA. Mot. at 9; *Int'l Chauffeured Serv. v. Fast Operating Corp.*, 2012 WL 1279825, at *3 (S.D.N.Y. Apr. 16, 2012) ("cost constituting a loss" cannot be directed to "some potential future offense"). The same is true for the alleged "harm to Plaintiffs' business" and "loss in the value of Plaintiffs' trade secrets," Opp. at 9: those are not losses adequately tied to the remedying the purported hacks as required to plead loss under the CFAA. Mot. at 9-10.

*No CDAFA Damages.* Defendants do not dispute that "incur[ing] costs as a result of investigating and conducting a damage assessment" tied to a hack are cognizable under the CDAFA. Opp. at 9. But Plaintiffs neglect to explain how parroting the CDAFA's statutory language suffices to state a claim. It does not, and the CDAFA claim fails accordingly.[2]

---

[2] Plaintiffs point to *NovelPoster v. Javitch Canfield*, 140 F. Supp. 3d 954 (N.D. Cal. 2014), because the court denied a motion to dismiss the CDAFA claim. Opp. at 9 & n.1. As Plaintiffs concede, however, in the earlier opinion Defendants correctly cited (*NovelPoster v. Javitch Canfield*, 140 F. Supp. 3d 938, 949-51), the court dismissed the CDAFA claim where—as here—the plaintiffs' "assessment of loss [wa]s entirely speculative" and "devoid of any specific details from which a factfinder could calculate an amount of loss." *Id.* (citation omitted). The court only permitted the claim to proceed past the pleadings stage once the plaintiffs alleged *specific* efforts taken

4

## IV. Plaintiffs Fail to State a Claim Under the DTSA and the CUTSA

*No Specificity.* Plaintiffs say the SAC identifies the alleged trade secrets with enough specificity by describing them as "confidential information, such as business plans and proposals," including "research," "business strategies and opportunities," and "contacts for important business relationships." Opp. at 18 (citing SAC ¶¶ 114, 253–256). The cases cited by Defendants establish that this is *precisely* the description of "general categories of 'confidential information'" that requires "much more specificity" to "alleg[e] that a *trade secret* exists." *Elsevier Inc. v. Doctor Evidence, LLC*, 2018 WL 557906, at *6 (emphasis added); Mot. at 11-12 (citing *Intrepid Fin. Partners v. Fernandez*, 2020 WL 7774478, at *4 (S.D.N.Y. Dec. 30, 2020)).³ Plaintiffs also cannot rely on "business contacts" to plead a trade secret in a customer list, because they have not alleged the efforts undertaken to compile the list, or that the information is not readily ascertainable to the public. *See Intrepid Acrisure v. SoCal Comm.*, 2019 WL 4137618, at *4 (C.D. Cal. Mar. 27, 2019).

*No Independent Economic Value.* Plaintiffs say in mechanical boilerplate fashion the alleged trade secrets "derive independent . . . economic value from not being generally known." Opp. at 11 (citing SAC ¶¶ 253-258). Again, this is precisely the kind of generic allegation the case law holds is insufficient. Mot. at 12 (citing cases). Plaintiffs cite *Smart Team v. Humble Tech*, but the plaintiff there alleged its propriety source code underlying software services it provided to

---

by *specific* individuals to restore *specific* data and information to its pre-hacking condition. Plaintiffs have not done that here.

³ Plaintiffs claim *Elsevier* and *Intrepid* are distinguishable because the alleged trade secrets were "general and vague," but they were even *more specific* than in the SAC. *Compare Elsevier* at *6 ("field names, parameters and database schema" pertaining to data analytics software), *and Intrepid* at *4 ("customized pricing and investment models") *with* SAC ¶ 114 ("emails" and "business documents"). Plaintiffs' own cases also do not help them because the contours of the alleged trade secrets there were materially more defined. *See, e.g., Kraus USA v. Magarik*, 2020 WL 2415670, at *4-6 (S.D.N.Y. May 12, 2020) (product specifications for kitchen and bathroom plumbing fixtures); *Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 788 (S.D.N.Y. 2008) (manufacturing processes for dental protectors); *Dardashtian v. Gitman*, 2017 WL 6398718, at *5 (S.D.N.Y. Nov. 28, 2017) (software programs for e-commerce technology).

5

its clients derived economic value from the fact that the source code could not be easily replicated by competitors. 2022 WL 847301, at *5 (S.D.N.Y. Feb. 18, 2022) (finding that allegation sufficient to plead economic value on a default judgment motion). Plaintiffs' SAC merely declares the undefined purported trade secrets possess value, and nothing more. That is insufficient.

*No Reasonable Measures.* Plaintiffs' allegations that the purported trade secrets were located on "secured servers that are protected by passwords, firewalls, and antivirus software," Opp. at 11 (quoting SAC ¶ 255) are deficient. These protections are untethered to any specific trade secret category, and in no way differ from routine corporate practices. Mot. at 13 (citing cases).[4] To the extent Plaintiffs allege trade secrets in "contracts, business proposals, and cost estimates involving [Plaintiffs] and clients," Opp. at 11, Plaintiffs do not allege the "clients" with whom the information was shared were subject to non-disclosure obligations. The Second Circuit recently held this is *fatal* to pleading reasonable measures. *Turret Labs U.S. v. CargoSprint, LLC*, 2022 WL 701161, at *2-3 (2d Cir. Mar. 9, 2022) (citing cases). Plaintiffs' alleged "reasonable measures" do not pass muster under Rule 12(b)(6).

*No Misappropriation.* Plaintiffs claim they adequately pleaded misappropriation because they generally alleged GRA hackers were responsible for the hacks. But the misappropriation theory is that "GRA and Chalker . . . widely disseminated, or caused to be widely disseminated, th[e] trade secrets to the media through intermediaries." SAC ¶ 262. Plaintiffs' opposition points

---

[4] Plaintiffs argue these cases are "factually distinguishable" because the plaintiffs "failed to allege how the information was protected," Opp. at 12 n.5, but that is not correct. The plaintiffs there alleged that certain protective measures were taken—including confidentiality agreements (*24 Seven v. Martinez*, 2021 WL 276654, at *8 (S.D.N.Y. Jan. 26, 2021)) and passwords (*Investment Science, LLC v. Oath Holdings, Inc.*, 2021 WL 3541152, at *4 (S.D.N.Y. Aug. 11, 2021); *Opus Fund Servs. v. Theorem Fund Servs.*, 2018 WL 1156246, at *3 (N.D. Ill. Mar. 5, 2018)). The court deemed those allegations deficient because—like the SAC's allegations—they were not tied to the alleged trade secrets with adequate specificity, and they were no different than measures taken to protect basic corporate information. Plaintiffs' *Smart Team* case is not to the contrary. 2022 WL 847301, at *5. There, the plaintiffs protected trade secret source code through a special "Bitbucket"—a far cry from the generic measures purportedly taken to protect the hodge-podge of undefined information in the SAC.

6

to no *factual* allegations supporting that theory—i.e., GRA and Chalker facilitated the disclosure of Plaintiffs' purported trade secrets to media outlets. The misappropriation allegations are based on impermissible conjecture, which means they are subject to dismissal. *See* Mot. at 13-14.

Plaintiffs have failed to state a cause of action under the DTSA and the CUTSA.[5]

## V.    Plaintiffs Fail to State a RICO Claim or a Claim for RICO Conspiracy

Plaintiffs all but acknowledge their RICO theories are defective because they do not even attempt to respond to two independently sufficient grounds for dismissal.

***Estoppel.***  There is no dispute Plaintiffs are collaterally estopped from asserting the required "pattern of racketeering activity." Plaintiffs do not dispute (1) the *Muzin* court found no "pattern" with respect to the same alleged scheme; (2) the issue was actually litigated and decided in *Muzin*; (3) Plaintiffs had sufficient opportunity to litigate it; and (4) this lack of a "pattern" was dispositive of Plaintiffs' RICO claims. In opposition, Plaintiffs say the SAC was filed after the *Muzin* complaint (which is irrelevant) and the SAC "contains numerous allegations concerning these Defendants, which the *Muzin* court had no opportunity to review, let alone decide." Opp. at 13 (citing alleged acts reported publicly in 2017). This is all wrong. The "pattern" allegations in the SAC all predate the *Muzin* amended complaint (April 2, 2019) and dismissal order (March 31, 2020). *See* SAC ¶¶ 284–350 (alleging no acts after 2018); Opp. at 13-17 (relying on pre-2019 acts); *Broidy Capital Mgt. LLC v. Muzin*, 2020 WL 1536350 (D.D.C. Mar. 31, 2020). If the *Muzin* court failed to consider anything in the SAC, it is because Plaintiffs chose not to raise it. Failure

---

[5] Plaintiffs cannot state a claim under Sections 1831 and 1832 of the DTSA because those are *criminal* provisions of the statute that do not confer a private right of action. *See* Mot. at 10 n.1; *see also Mackintosh v. Lyft, Inc.*, 2019 WL 5682826, at *10 (E.D. Cal. Nov. 1, 2019). Plaintiffs cite one case in this District in which the court applied Section 1832 in the civil context, but the court did not consider whether the provision confers a private right of action in the first place. *Dardashtian*, 2021 WL 746133 (S.D.N.Y. Feb. 16, 2021). Numerous federal courts have held it does not. *See, e.g.*, *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 271 F. Supp. 3d 835, 842-43 (E.D. Va. 2017); *Nelson Bros. Prof'l Real Estate LLC v. Beau Jaussi*, 2017 WL 8220703, at *6 (C.D. Cal. Mar. 23, 2017). In any event, any claim under Section 1831 or 1832 independently fails, at least for the same reasons as Plaintiffs' claim under Section 1836: Plaintiffs have not alleged misappropriation of any trade secret.

to marshal the available facts to win the argument is not a defense to collateral estoppel. *Fido's Fences v. Radio Sys.*, 999 F. Supp. 2d 442, 458 (E.D.N.Y. 2014).

*Merits.* Plaintiffs concede defeat on the merits of the "pattern" issue. They admit closed-ended schemes require at least 19 months of continuity, but do not even attempt to identify two acts 19 months apart. *See* Opp. at 14; SAC ¶¶ 284–350 (alleging, at most, acts between "fall of 2017" and "late 2018"). For open-ended continuity, Plaintiffs proclaim "the SAC plainly includes allegations of ongoing misconduct," Opp. at 15, but cite none, because there are none.

Aside from these blatant defaults, Plaintiffs are simply wrong on the other elements of their RICO claim. *See* Mot. at 17-18 (failure to plead predicate acts); *id.* at 19 (failure to establish standing and plead injury), *id.* at 19-20 (failure to plead operation or management of an enterprise); *id.* at 20-21 (failure to plead agreement to conspire).

## VI. Plaintiffs' State Common Law Claims Should Be Dismissed

### A. CUTSA Preempts Plaintiffs' State Common Law Claims

The vast majority of California courts hold CUTSA broadly preempts *any* claim based on "the same nucleus of facts as the trade secret misappropriation claim," *Applied Biological Lab'ys, Inc. v. Diomics Corp.*, 2021 WL 4060531, at *6 (S.D. Cal. Sept. 7, 2021)—including claims based on alleged theft of information "that does not fit the definition of a trade secret, and is not otherwise made property by some provision of positive law." *Strategic Partners, Inc. v. FIGS*, 2021 WL 4813645, at *4 (C.D. Cal. Aug. 10, 2021); *see also* Mot. at 22 (citing cases).

Here, Defendants purportedly misappropriated *all* of the information at issue—whether "personal" or "private" communications, confidential business information, or trade secrets—through hacking Plaintiffs' systems. The CUTSA and common law claims arise from the same nucleus of facts—i.e., the hacking. Plaintiffs do not explain how any "provision of positive law"

8

beyond the CUTSA grants them a specific "property interest in [any of] th[e] information" they allege was stolen. *New Show Studios v. Needle*, 2014 WL 2988271, at *10 (C.D. Cal. June 30, 2014) (receipt of stolen property and intrusion upon seclusion claims preempted by CUTSA accordingly). The CUTSA squarely preempts Plaintiffs' state law claims.

Plaintiffs' response entirely relies on the *Muzin* court's finding that Broidy's common law claims there were not preempted because they rely on different factual allegations than the CUTSA claim. *Muzin*, 2020 WL 1536350, at *14; *Muzin*, 2022 WL 1801031, at *2 (denying reconsideration motion, which Plaintiffs recently filed in this case at Dkt. 128). *Muzin* found Broidy could prevail on his common law claims "without showing the conduct necessary to prevail on his CUTSA claim." *Id.* This Court should not adopt that finding because it is contrary to California law. To prevail on *both* their CUTSA claim *and* their common law claims, Plaintiffs must show Defendants actually committed the hacks—because that is the sole basis for Defendants' purported acquisition of the alleged trade secrets through improper means, receipt of stolen property, intrusion on Plaintiffs' privacy, and conspiracy. *See* Mot. at 23-24. That some of the alleged information may have contained personal information is irrelevant; the conduct underlying *how* Defendants allegedly obtained the commercial, as opposed to personal, information is identical. Because the "invasion of privacy" and other state law claims are "factually predicated on the same alleged conduct" giving rise to the CUTSA claim, they are all preempted.[6]

### B. The Common Law Claims Independently Fail

***Stolen Property.*** Plaintiffs assert their stolen property claim against all Defendants, and

---

[6] Even if the Court concludes the CUTSA does not preempt the state common law claims to the extent based on Defendants allegedly receiving and intruding upon *personal* communications, the claims must be dismissed to the extent based on non-trade secret, commercial information, for the reasons above.

9

summarily allege GRA and Chalker knowingly received stolen property. The claim fails, because the SAC lacks the necessary facts supporting any allegation that any individual Defendant knowingly obtained specific property from the purported hacks. *See* Mot. at 23.[7]

*Intrusion Upon Seclusion.* "[T]here is no legally protected privacy interest and reasonable expectation of privacy in emails as a general matter," yet that is what Plaintiffs ask this Court to hold. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014). Plaintiffs do not need to paste the specific contents of every email allegedly hacked and disclosed to state a claim for intrusion upon seclusion, but Plaintiffs must plead facts demonstrating that the emails actually contained confidential and sensitive information under California law. Mot. at 23-24. Plaintiffs' boilerplate list of stolen "information" fails to identify with enough specificity *what* private information Defendants allegedly disseminated. The intrusion claim should be dismissed.

*Civil Conspiracy.* Plaintiffs fail to plead the required underlying tort and further fail to allege specific action on the part of each defendant. *See* Mot. at 24-25. Plaintiffs do not dispute they have failed to make specific conspiracy allegations for each Defendant; instead, they argue that a Defendant's "[t]acit consent" to the acts of others is "enough" to sustain a claim against that Defendant. Opp. at 23 (alteration in original). That is not the law, *see* Mot. at 24-25, but even if it were, Plaintiffs cannot meet their own standard. *See* Opp. at 23 (citing SAC ¶¶ 79-87, 95-119, 133-43). These paragraphs consistently lump Defendants together, making it impossible to infer that any Defendant consented to specific actions of another, dooming the claim.

## CONCLUSION

The Court should dismiss this case with prejudice.

---

[7] Citing *Freeney v. Bank of Am. Corp.*, 2016 WL 5897773, at *12 (C.D. Cal. Aug. 4, 2016). Plaintiffs say *Freeney* is inapposite because the defendant "did not itself steal the material." Opp. at 22. That conclusion was the result of the plaintiff's failure to plead facts supporting the defendant's knowing theft, and the same is true here.

10

Dated: New York, New York
June 14, 2022

                                    GIBSON, DUNN & CRUTCHER LLP

                              By: /s/ *Orin Snyder*
                                  Orin Snyder
                                  Zainab Ahmad
                                  Paul J. Kremer
                                  Doran J. Satanove

                                  200 Park Avenue
                                  New York, NY 10166-0193
                                  Tel.: (212) 351-4000
                                  Fax: (212) 351-4035
                                  osnyder@gibsondunn.com
                                  zahmad@gibsondunn.com
                                  pkremer@gibsondunn.com
                                  dsatanove@gibsondunn.com

                                  *Attorneys for Defendants*