# KASOWITZ BENSON TORRES LLP

1633 BROADWAY
NEW YORK, NEW YORK 10019
(212) 506-1700
FAX: (212) 506-1800

DANIEL R. BENSON
DIRECT DIAL: (212) 506-1720
DIRECT FAX: (212) 880-8690
DBenson@kasowitz.com

ATLANTA
HOUSTON
LOS ANGELES
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

June 27, 2022

Via ECF
The Honorable Mary Kay Vyskocil
United States District Court
Southern District of New York
500 Pearl Street, Room 2230
New York, NY 10007

      Re:    *Broidy, et al. v. Global Risk Advisors LLC, et al.*, Case No. 19-cv-11861

Dear Judge Vyskocil:

      We represent Plaintiffs Elliott Broidy and Broidy Capital Management, LLC in the above action and write to respectfully request a pre-motion conference in advance of moving to disqualify Gibson, Dunn & Crutcher LLP as counsel for Defendants in this action.

      Disqualification is warranted here because recently obtained evidence shows that during her employment at the Department of Justice, Zainab Ahmad, a Gibson Dunn partner who is counsel of record for Defendants in this action, investigated the hacking of Mr. Broidy that is the gravamen of Plaintiffs' claims in this action and thereby came into possession of confidential government information concerning Mr. Broidy that could be used to Mr. Broidy's material disadvantage in this case. Ms. Ahmad's participation in this matter violates the New York Rules of Professional Conduct, and in the motion Plaintiffs will ask the Court to exercise its "inherent power to preserve the integrity of the adversary process," and disqualify Ms. Ahmad and Gibson Dunn. *Goodwine v. City of New York*, No. 15-CV-2868 (JMF), 2016 WL 379761, at *1 (S.D.N.Y. Jan. 29, 2016); 22 N.Y.C.R.R. § 1200.0, r. 1.11(c) (prohibiting former government lawyers "having information that the lawyer knows is confidential government information about a person, acquired when the lawyer was a public officer or employee" from representing "a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person").

      We bring this motion reluctantly, but as outlined below, the facts warranting Gibson Dunn's disqualification are set forth in a recently obtained declaration by a witness, which is corroborated by the witness's attorney. Plaintiffs have offered Gibson Dunn every opportunity to dispute the facts by providing a declaration from Ms. Ahmad, but Gibson Dunn has failed to do so.

KASOWITZ BENSON TORRES LLP

Honorable Mary Kay Vyskocil
June 27, 2022
Page | 2

  Moreover, Plaintiffs' prior counsel brought this disqualification issue to Gibson Dunn's attention almost two years ago, in August 2020. Had Gibson Dunn screened Ms. Ahmad from participating in this matter at that time, this motion could and would have been avoided. *See* 22 N.Y.C.R.R. § 1200.0, r. 1.11(c). Gibson Dunn did not do so and instead simply denied the facts. Based on those denials, Plaintiffs did not bring this matter to the Court's attention then.

  However, Plaintiffs recently have obtained new information, including the declaration of Richard W. Gates, III, confirming that Gibson Dunn's denials were not accurate. In his declaration, a copy of which is attached as Exhibit A, Mr. Gates attests that: he was interviewed three times in 2018 by Ms. Ahmad during her tenure at the Office of the Special Counsel ("OSC"), Ex. A, ¶ 46; during each of these interviews, Mr. Gates was asked numerous questions concerning Mr. Broidy, including about the hacking that is at the heart of this case, *id.* ¶¶ 12-19, 32-37, 39, 42-45, 47-48; and during a March 18 interview with Ms. Ahmad and others, Mr. Gates was specifically asked if he was aware that Mr. Broidy's emails had been hacked, and when he answered affirmatively, he was asked if he knew who had done the hacking and how it was carried out, *id.* ¶¶ 13-15. Mr. Gates also attests that during those interviews, he was shown a wide variety of documents, many of which were not from his own devices, and some of which appear to have been obtained through the hacking and have been reported on by the media. *Id.* ¶¶ 19-20, 24-25. Other documents related to Mr. Broidy that Mr. Gates attests he was shown have not been made public, to Plaintiffs' knowledge, such as screenshots of Mr. Broidy's WhatsApp messages. *See id.* ¶¶ 26, 40.

  After receiving Mr. Gates's declaration, which was signed on May 13, 2022, Plaintiffs informed Gibson Dunn of the newly-obtained evidence on May 16, and provided a copy of the declaration to Gibson Dunn on May 17. Gibson Dunn responded with a lengthy letter on May 18. Gibson Dunn's primary response was to impugn the veracity of Mr. Gates's sworn statements, and deny that Ms. Ahmad was present when Mr. Gates was interviewed about Mr. Broidy on March 18, 2018. Gibson Dunn's assertions are based on a redacted FBI "302 memo," which purports to memorialize the events on March 18 and was drafted two weeks later. This 302 memo indicates that Ms. Ahmad held a side meeting with Mr. Gates and then after she left, Mr. Gates was asked about Mr. Broidy. However, as Mr. Gates attests in his declaration, the 302 memo conflicts with his clear recollection that there were two distinct interviews on March 18, Ex. A, ¶¶ 6-11, and that Ms. Ahmad participated in the second interview, during which he was asked about the hacking and Mr. Broidy and which is memorialized in the last few pages of the 302 memo, *id.* ¶¶ 9-12.[1]

---

[1] As courts have acknowledged in other contexts, 302 memos are not reliable evidence and are generally considered inadmissible hearsay. *See, e.g.*, *United States v. Shulaya,* No. 1:17-cr-00350-LAP (S.D.N.Y. June 11, 2018), ECF 819 at 5; *see also United States v. Davis*, 845 F.3d 282, 292 n.4 (7th Cir. 2016); *United States v. Trujillo*, 136 F.3d 1388, 1396 (10th Cir. 1998).

KASOWITZ BENSON TORRES LLP

Honorable Mary Kay Vyskocil
June 27, 2022
Page | 3

      Gibson Dunn also argued in its May 18 letter that Ms. Ahmad did not obtain any confidential government information because the materials stolen from Mr. Broidy are publicly available.  However, while some of the documents shown to Mr. Gates may have been made public through the hack-and-dissemination campaign at issue in this action, other facts known only to Ms. Ahmad and the OSC remain confidential—including, among other things, the full scope of the materials obtained by the OSC related to the hacking, how the OSC came into possession of these materials, and any evidence concerning the hacking provided by other witnesses aside from Mr. Gates.  Thus, contrary to Gibson Dunn's assertion in its May 18 letter, it is not the contents of Mr. Broidy's hacked documents that could be used to Plaintiffs' material disadvantage, but any information Ms. Ahmad learned concerning, among other things, the origin of the hacked materials and the hacking itself.

      Mr. Gates's declaration is now corroborated by a June 9, 2022 statement of his counsel, Thomas C. Green, a copy of which is attached as Exhibit B, in which Mr. Green, who was present as Mr. Gates's counsel during OSC's questioning of Mr. Gates, states that Ms. Ahmad attended and participated in three interrogations of Mr. Gates, which he believes related to Mr. Broidy and other matters.

      On June 10, Plaintiffs emailed Gibson Dunn, noting that Plaintiffs had received corroboration of Mr. Gates's declaration and requesting that Ms. Ahmad provide her own declaration, which Plaintiffs would consider before raising this matter with the Court.  On June 14, Gibson Dunn responded that it would "reply shortly"; a week later, on June 21, Plaintiffs, having heard nothing, emailed Gibson Dunn again, noting that Gibson Dunn's silence was "tantamount to a reply"; and Gibson Dunn again responded that it would "reply shortly."  In response, Plaintiffs noted that "if Ms. Ahmad is in a position to deny what Mr. Gates says, she could and would have done so already."  Instead of providing the declaration Plaintiffs requested, Gibson Dunn responded on June 22, essentially repeating the arguments in its May 18 letter.  After Plaintiffs again responded, and provided additional explanation as to why disqualification is warranted, Gibson Dunn responded with threats of sanctions and demanded to meet and confer yet again.  On Friday, Plaintiffs agreed to a further meet and confer at Gibson Dunn's request.  The parties spoke today, but were unable to resolve the issue.

      Under these circumstances, Ms. Ahmad must be disqualified from representing Defendants.  Because Gibson Dunn did not screen her from participation in this matter two years ago, the conflict and taint extends to the firm as a whole, warranting disqualification of the entire firm.  *See* 22 N.Y.C.R.R. § 1200.0, r. 1.11(b), (c).

      We thank the Court for its consideration of this matter.

Respectfully,

*/s/ Daniel R. Benson*

Daniel R. Benson