# KASOWITZ BENSON TORRES LLP

|  | 1633 BROADWAY | ATLANTA |
|---|---|---|
|  | NEW YORK, NEW YORK 10019 | HOUSTON |
| DANIEL R. BENSON |  | LOS ANGELES |
| DIRECT DIAL: (212) 506-1720 | (212) 506-1700 | MIAMI |
| DIRECT FAX: (212) 880-8690 | FAX: (212) 506-1800 | NEWARK |
| DBenson@kasowitz.com |  | SAN FRANCISCO |
|  |  | SILICON VALLEY |
|  |  | WASHINGTON DC |

August 1, 2022

Via ECF
The Honorable Mary Kay Vyskocil
United States District Court
Southern District of New York
500 Pearl Street, Room 2230
New York, NY 10007

      Re:    *Broidy, et al. v. Global Risk Advisors LLC, et al.*, Case No. 19-cv-11861

Dear Judge Vyskocil:

      We represent Plaintiffs Elliott Broidy and Broidy Capital Management, LLC and write to respectfully request a pre-motion conference in advance of moving, under 28 U.S.C. § 1927, for an award against Defendants' prior counsel, Gibson, Dunn & Crutcher LLP, of the attorneys' fees Plaintiffs have incurred since August 2020 in connection with investigating and bringing to the Court's attention Gibson Dunn's conflict of interest. Those efforts resulted in the Court granting Plaintiffs leave to file a motion to disqualify Gibson Dunn (ECF 132) based on Gibson Dunn partner Zainab Ahmad's participation in a government investigation of Mr. Broidy during her prior employment at the Office of the Special Counsel ("OSC"). Gibson Dunn then rendered Plaintiffs' motion moot at the eleventh hour by withdrawing from its representation of Defendants, after the firm had adamantly denied for two years that it needed to withdraw. Plaintiffs also request permission to take discovery to determine, among other things, the full scope of any advantage obtained by Defendants as a result of Ms. Ahmad's work at the OSC, and whether any such advantage can be remedied merely by Gibson Dunn's belated withdrawal. The motion would not be on consent.

      In August 2020, Plaintiffs' prior counsel in this action, Steptoe & Johnson LLP, first brought to Gibson Dunn's attention Ms. Ahmad's conflict of interest in representing Defendants in this action given her prior employment. In response, Gibson Dunn unequivocally denied that there was any conflict, stating, "Ms. Ahmad did not investigate Mr. Broidy, or acquire any confidential government information regarding Mr. Broidy, during her tenure in the Special Counsel's office or any other part of the Department of Justice." Relying on the truthfulness of Gibson Dunn's denial, Steptoe and Plaintiffs did not pursue the issue, and Ms. Ahmad continued to participate in this action, including in connection with Defendants' recent motion to dismiss.

KASOWITZ BENSON TORRES LLP

Honorable Mary Kay Vyskocil
August 1, 2022
Page 2

      As set forth in my pre-motion letter to the Court concerning the contemplated motion to disqualify (ECF 131), we obtained, in May of this year, the declaration of Richard W. Gates, III, revealing that Gibson Dunn's representations were not true—specifically, that Ms. Ahmad, during her employment at OSC, had personally participated in at least three separate interviews of Mr. Gates relating to Mr. Broidy and the hacking that is the gravamen of Plaintiffs' claims.

      Before sending that pre-motion letter to the Court, we brought this evidence to Gibson Dunn's attention in May and for six weeks gave Gibson Dunn every opportunity to respond, including by providing a sworn declaration from Ms. Ahmad substantiating Gibson Dunn's denial. Gibson Dunn again flatly denied, both orally and in writing, that there was a conflict, but declined to provide any declaration, instead repeatedly disparaging Mr. Gates and Plaintiffs and their motivations. Gibson Dunn also made multiple threats to seek sanctions against Plaintiffs' counsel and Plaintiffs if we brought this issue to the Court's attention.

      Given the serious nature of the conflict and Gibson Dunn's failure to provide a declaration, Plaintiffs, on June 27, 2022, filed my prior pre-motion letter. Despite knowing about the conflict since 2020 and the new evidence for six weeks, Gibson Dunn did not respond. Instead, at 11:57 pm on June 30, three minutes before its response was due, Gibson Dunn emailed the Court and Staff that "we plan to file our response" by noon the next day "[b]ecause of unforeseen delays." On July 1, the Court granted Plaintiffs leave to file the motion, with a filing deadline of August 1, 2022. ECF 132. On July 25, one week before that deadline, and after Plaintiffs had expended substantial time and resources preparing their motion, we received an email from Hughes Hubbard & Reed LLP, stating that that firm would be replacing Gibson Dunn as counsel for Defendants, thereby rendering Plaintiffs' motion to disqualify moot. Later that evening, Defendants filed a stipulation and proposed order of withdrawal and substitution of counsel. ECF 136.

      Had Gibson Dunn screened Ms. Ahmad from this action from the outset, been truthful with Plaintiffs when the conflict issue was first raised, or timely withdrawn, the work Steptoe and this firm devoted to this issue could have been avoided or lessened. Instead, as a direct result of Gibson Dunn's conduct, Plaintiffs were compelled to devote time and money to investigating this issue, meeting and conferring with Gibson Dunn, and working on the disqualification motion.

      Plaintiffs therefore respectfully seek leave to bring a motion, under 28 U.S.C. § 1927, to recover Steptoe's and this firm's fees that Plaintiffs incurred in connection with this matter. Section 1927 provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Noting that "[t]he purpose of § 1927 is to ensure that those who create unnecessary costs also bear them," this Court awarded attorneys' fees under this provision in a similar situation, where, as here, counsel was forced to prepare a motion to disqualify because opposing counsel refused to acknowledge

K ASOWITZ  B ENSON  T ORRES  LLP

Honorable Mary Kay Vyskocil
August 1, 2022
Page 3

its conflict of interest.  *Madison 92nd Street Assocs., LLC v. Marriott Int'l, Inc.*, No. 13 Civ. 291 (CM), 2013 WL 5913382, at *12 (S.D.N.Y. Oct. 31, 2013) (McMahon, J.) (citation omitted), *aff'd*, 603 F. App'x 19 (2d Cir. 2015).  A fee award is also appropriate under the Court's "inherent power to impose attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . ."  *THOIP v. Walt Disney Co.*, No. 08 Civ. 6823 (SAS), 2009 WL 125074, at *4 (S.D.N.Y. Jan. 20, 2009) (Scheindlin, J.) (citation omitted).

The facts here warrant a finding of such misconduct.  Gibson Dunn repeatedly, unequivocally and adamantly denied that there was any conflict or need for it to withdraw.  Gibson Dunn maintained this position in the face of directly contrary evidence, while declining to offer sworn testimony in response and threatening to seek sanctions if Plaintiffs made the motion to disqualify.  It was only once Plaintiffs were days away from filing the motion that Gibson Dunn—presumably seeing the writing on the wall and wishing to avoid the public embarrassment of disqualification in a high-profile case—suddenly chose to voluntarily withdraw.  Gibson Dunn's conduct raises serious questions about the firm's candor and good faith in this matter, and an award of the attorneys' fees incurred as a result of that conduct is warranted.

Plaintiffs also respectfully request permission to serve a subpoena on Gibson Dunn seeking all communications and documents referring to or reflecting any information related to Plaintiffs and the hacking at issue that Ms. Ahmad obtained through her prior employment at OSC, as well as to take Ms. Ahmad's deposition and pursue other discovery appropriate to ascertain what information was obtained and to whom it was disseminated.  Plaintiffs are entitled to be placed on an even playing field by learning all confidential government information that Ms. Ahmad conveyed to Gibson Dunn, which may include how the OSC came into possession of the hacked materials stolen from Mr. Broidy and any information concerning the hacking provided by witnesses other than Mr. Gates.  *See* 22 N.Y.C.R.R. § 1200.0, r. 1.11, cmt. 4A ("[T]he purpose and effect of the prohibitions contained in Rule 1.11(c) are to prevent the private client of a law firm with which the former public officer or official is associated from obtaining an unfair advantage by using the lawyer's confidential government information about the private client's adversary.").  Such discovery is also essential to uncovering the extent of Gibson Dunn's conflict and whether it has so irreparably tainted this case that additional sanctions are warranted.  Although the Court has not yet set a discovery schedule, under these circumstances and given the transition from Gibson Dunn to Hughes Hubbard, Plaintiffs respectfully submit that it is appropriate to seek this information now, and request the Court's permission to do so.

We thank the Court for its consideration of this matter.

Respectfully,

DRR.B

Daniel R. Benson