# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Orin Snyder
Direct: +1 212.351.2400
Fax: +1 212.351.6335
OSnyder@gibsondunn.com

August 4, 2022

The Honorable Mary Kay Vyskocil
United States District Court
Southern District of New York
500 Pearl Street, Room 2230
New York, NY 10007

Re:   *Broidy et al. v. Global Risk Advisors et al.*, 19-cv-11861

Dear Judge Vyskocil:

Gibson, Dunn & Crutcher LLP respectfully submits this response to Plaintiffs' August 1, 2022 letter requesting a conference regarding Plaintiffs' anticipated motion for sanctions based on Gibson Dunn's recent withdrawal as counsel to Defendants.

Plaintiffs' letter is another litigation stunt. As a threshold matter, Plaintiffs do not even try to meet the demanding standard for obtaining sanctions. They fail to offer even a prima facie case that Gibson Dunn's opposition to Plaintiffs' claim of a conflict was "entirely without color" or that Gibson Dunn ever acted in bad faith. Plaintiffs' additional request to invade the attorney-client privilege and obtain information about a confidential government investigation through wide-ranging discovery is even more untethered and specious. There is not a thread of merit to Plaintiffs' punitive application, and leave to file the motion should be denied.

**Background**

Two years ago, Plaintiffs' prior counsel claimed a "conflict" arising out of Gibson Dunn partner Zainab Ahmad's previous service in the Special Counsel Office ("SCO") of Robert S. Mueller. Although their theory has repeatedly shifted over time, their core claim is that Ms. Ahmad participated in a March 18, 2018 interview of Rick Gates—a former top adviser in former President Trump's presidential campaign who pled guilty in February 2018 to financial fraud and lying to the SCO—during which Mr. Broidy was discussed. Plaintiffs have never claimed anything discussed during that meeting actually constitutes confidential government information giving rise to a conflict, instead speculating Ms. Ahmad may have had access to *other* information about Mr. Broidy while at the SCO. At the time, Gibson Dunn explained the factual premise for Plaintiffs' claims was wrong: The official FBI 302 memorandum of the interview made clear Ms. Ahmad was not present for the portion of interview discussing Mr. Broidy, and she instead participated in a separate interview segment on the same day that was separately documented. Ex. 1 at 2; Ex. 6 at 1–2; *see also* Exs. 7, 8 at 1–2. Plaintiffs' prior counsel took no further action in response.

On May 16, 2022—after Defendants had moved to dismiss Plaintiff's Second Amended Complaint—Plaintiffs' new counsel at Kasowitz Benson resuscitated Plaintiffs' abandoned disqualification threat. This time, Plaintiffs claimed they had new evidence: a declaration by Mr. Gates himself, who said Ms. Ahmad was, in fact, present for the interview Plaintiffs' prior

counsel had asserted as the basis for the alleged conflict in 2020. Gibson Dunn again promptly refuted Plaintiffs' theory, pointing out Mr. Gates's recollection was belied by the official FBI memoranda and was not credible for other reasons. Ex. 2. Plaintiffs then shifted theories yet again, recently claiming for the first time Ms. Ahmad personally participated in a government investigation specifically into the hacking of Mr. Broidy's materials. Ex. 3. Gibson Dunn explained why this too was false, but Plaintiffs pressed ahead with a pre-motion letter on June 27, 2022 seeking leave to file a motion to disqualify Gibson Dunn as counsel. Dkt. 131.

After Plaintiffs were granted leave on July 1, 2022 to file their motion, Dkt. 132, Gibson Dunn began preparing an opposition. On July 21, 2022, however, Defendants advised Gibson Dunn that they had decided to retain new counsel at Hughes Hubbard to represent them in this case going forward. Consistent with Defendants' decision, Gibson Dunn filed a stipulation to withdraw as counsel on July 25, 2022, shortly after Defendants' new attorneys entered their appearances. Dkts. 133–36. That stipulation was entered by the Court on August 1. Dkt. 137.

**There Is No Basis for Sanctions**

To impose monetary sanctions under 28 U.S.C. § 1927 or the Court's inherent authority, "there must be clear evidence that '(1) the offending party's claims were entirely without color, *and* (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay.'" *United States v. Prevezon Holdings, Ltd.*, 305 F. Supp. 3d 468, 478–79 (S.D.N.Y. 2018) (quoting *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000)). Plaintiffs do not even address the first of these two elements, mistaking Gibson Dunn's withdrawal at the behest of its clients for an admission there was a conflict. As for the second, they do not even have the confidence to allege bad faith—they say only "Gibson Dunn's conduct raises serious questions." Dkt. 138 at 3. That is not nearly sufficient.

*First*, Gibson Dunn's opposition to Plaintiffs' threatened disqualification motion was not only colorable, but demonstrably meritorious. Plaintiffs staked their argument for disqualification on New York Rule of Professional Conduct 1.11(c). Dkt. 131 at 1. To establish a conflict under that rule, Plaintiffs would have had to show both (1) Ms. Ahmad is currently in possession of "confidential government information" regarding Mr. Broidy, and (2) such information could be used to Plaintiffs' "material disadvantage" in this litigation. *See* N.Y. Rule Prof. Conduct 1.11(c). Plaintiffs could have done neither.

The sole basis for their claim that Ms. Ahmad possesses confidential government information is the Gates declaration, which is directly contradicted by the official government memorandum generated following the March 18 meeting in question. Ex. 1 at 2; Ex. 2 at 3. This kind of evidentiary conflict falls well short of meeting the "high standard of proof" Plaintiffs would have been required to satisfy. *All Star Crafts & Vehicles, Inc. v. BFI Canada Income Fund*, 2010 WL 2243351, at *4–5 (E.D.N.Y. June 1, 2010) (citation omitted). But even if Mr. Gates's declaration were accepted as true, Plaintiffs *to this day* have never articulated what information Ms. Ahmad supposedly obtained while at the SCO that remains confidential today and that could be used to Plaintiffs' disadvantage—let alone "material" disadvantage—in this litigation. Plaintiffs hypothesize Ms. Ahmad may have obtained information about the hacking through sources *other* than the March 18 meeting (during which nothing that remains

August 4, 2022
Page 3

confidential was discussed), Dkt. 138 at 3, but that is "[m]ere speculation" decidedly insufficient to justify disqualification. *Streichert v. Chester*, 2021 WL 735475, at *5 (S.D.N.Y. Feb. 25, 2021) (citation omitted).[1]

The above analysis makes clear there was never any conflict with Ms. Ahmad's or Gibson Dunn's representation of Defendants, but the ultimate merits of that question are not at issue. All that matters is that Gibson Dunn had at least a *colorable* argument in opposition to disqualification. *See Prevezon*, 305 F. Supp. 3d at 478–79. In light of the many factual and legal flaws with Plaintiffs' theory and the demanding standard for disqualification, it is beyond serious doubt that Gibson Dunn's opposition was colorable—in fact, it was meritorious.

*Second*, there is no evidence—not a speck—of bad faith. Plaintiffs' application is premised on the belief that Gibson Dunn knew all along it had a conflict and intended to withdraw if and when the dispute ripened, Dkt. 138 at 3, but there is nothing to support that false and imaginary narrative. Gibson Dunn has never wavered from its position that it is not conflicted from representing Defendants. That is as true today as it was when Gibson Dunn first articulated it. But Gibson Dunn was duty-bound to comply with its clients' decision to retain different counsel for this matter. Once Defendants communicated their decision on July 21, 2022, Gibson Dunn acted with all expedition—filing a stipulation to withdraw and substitute counsel concurrently with new counsel's appearance just two business days later. Dkts. 133–36. Nothing about this course of conduct suggests bad faith.

**There Is No Basis for Discovery**

Tacked on as an afterthought to Plaintiffs' application for sanctions is an extraordinary request to take discovery from Ms. Ahmad regarding her work for the SCO and Gibson Dunn's representation of Defendants in this matter. Plaintiffs cite no authority for this unprecedented discovery, and for good reason—the notion that Plaintiffs are entitled to probe both privileged communications *and* the confidential work of the federal government in one of the most high-profile investigations in this century is beyond the pale.[2] As set forth above, Plaintiffs' conspiracy theory is without any factual or legal basis, and certainly cannot justify the intrusion into protected communications that Plaintiffs demand. Even worse, Plaintiffs are hiding the ball as to the purported need for such discovery. Plaintiffs assert the discovery is necessary to probe "how the OSC came into possession of the hacked materials," but fail to disclose in their application that *they provided those materials to the government in the first place*, *see* Ex. 4 at 49–52, or that the documents concerning Mr. Broidy about which Mr. Gates was questioned *had been published in the press prior to the interview in question*, *see* Ex. 5. In any event, Ms. Ahmad did not obtain any information regarding the hacking of Mr. Broidy's emails while at the SCO, and there are no documents to produce and no basis for a deposition.

---

[1] Moreover, even if Plaintiffs could have established a violation of the rule, that violation would not automatically result in disqualification; instead, that decision "is left to the sound discretion" of the court and requires a showing of "significant risk of trial taint." *Colandrea v. Town of Orangetown*, 490 F. Supp. 2d 342, 352 (S.D.N.Y. 2007) (quotation marks omitted). Plaintiffs have never even attempted such a showing.

[2] Nor could such discovery be ordered without the "prior approval" of the Department of Justice after following the prescribed procedures for obtaining such approval. 28 C.F.R. § 16.22.

GIBSON DUNN

August 4, 2022
Page 4

Respectfully submitted,

*/s/ Orin Snyder*
Orin Snyder

cc: All Counsel of Record via ECF