# Exhibit 8

Filiberto Agusti
202 429 6428 direct
202 261 7512 fax
fagusti@steptoe.com



1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202 429 3000 main
www.steptoe.com

September 9, 2020

**By Email**

Mr. Orin Snyder
Gibson, Dunn & Crutcher
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
Email:  osnyder@gibsondunn.com

  Re: *Elliott Broidy and Broidy Capital Management, LLC v. Global Risk Advisors LLC, Kevin Chalker, et al. (S.D.N.Y.)*

Dear Orin:

  We raised a serious and troubling potential ethical issue in our letter of August 26, and instead of responding with facts that would resolve the point one way or the other, your letter of September 2 resorts to baseless attacks on our good faith and motivations.  On the substance of the ethical issue, the letter raises more questions than answers.  I will try one more time to see if we can address the issue informally.

  Before doing so, let me first respond to your needless and false personal attacks.  It is our duty and responsibility to act in the face of troubling and potentially unethical conduct.  Surely you cannot believe that a lawyer should stay silent upon discovering that an adversary was previously part of a government team investigating the lawyer's client.  That is particularly so on the facts act hand, where the government investigation appears to have been triggered by the very hacking scheme that is at the heart of the civil case.

  Your letter suggests there is no cause for concern, because GRA hiring your firm supposedly had nothing to do with Ms. Ahmad having previously investigated Mr. Broidy.  You can surely understand why we would be skeptical of that claim.  Of the tens of thousands of legal options in New York—and despite GRA having previously hired Wilmer Hale to defend against Mr. Broidy's claims in California—GRA just happened to hire one of a handful of former Department of Justice ("DOJ") attorneys who had participated in a government investigation of Mr. Broidy that appears to have been triggered by the hacking scheme underlying the civil case.  We doubt this is a coincidence, and you have disclosed no facts to dissuade us.

  Turning to the substantive ethical issue, your careful description of that Gates interview pointedly—and perhaps tellingly—does not deny that Ms. Ahmad had discussed Mr. Broidy with Mr. Gates, nor does it specifically deny that she had discussed Mr. Broidy with her former colleagues and subordinates at DOJ.

Mr. Orin Snyder
September 9, 2020
Page 2

**Steptoe**

To the extent you addressed this broader issue, your letter contained the following representation: "Ms. Ahmad did not acquire any 'confidential government information' during her tenure at the Department of Justice that could be used to Mr. Broidy's "material disadvantage' in this litigation." This suggests that Ms. Ahmad may have acquired "confidential government information" about Mr. Broidy, but that your firm has made a subjective judgment—based on an assessment of facts nowhere in your letter—that the information could not materially disadvantage Mr. Broidy in this case.

We cannot be expected to simply take your word for it. Please let us know immediately if: 1) Ms. Ahmad had ever participated in any witness or source interview or otherwise discussed Mr. Broidy or the hack-and-smear campaign targeting him with any DOJ officials (including prosecutors and FBI agents), whether during her government service or afterwards, and 2) if, in fact, the representations in your September 2 letter are indeed based on weighing what may or may not disadvantage Mr. Broidy, and, if so, the basis for your conclusion that the information would not materially disadvantage Mr. Broidy in the civil case.

If you are representing instead that that Ms. Ahmad's only involvement with any governmental inquiry or discussion relating to Mr. Broidy was her supposedly partial participation in the interview of Rick Gates on March 18, 2018, then we ask that you (or she) say so plainly. Your September 2 letter does not. And if that is, in fact, what you are representing, then please address whether or not her portion of the interview included a discussion at least in part relating to Mr. Broidy, as that would plainly constitute "confidential government information" concerning Mr. Broidy.

Your letter argues that the interview could not constitute "confidential government information" because there are notes of the interview that have since been made public, but there are at least two obvious flaws with that view. First, the interview lasted multiple hours, but is summarized in four-and-one-half pages of notes that were made two weeks after the fact. There are undoubtedly details not captured in the notes. Second, when Ms. Ahmad appeared for the interview, the notes indicate that that portion of the interview would be "documented in a separate 302." So far as we are aware, that "separate 302" either was never created or never made public. This undisclosed portion of the interview is confidential government information.

More broadly, it is doubtful that Ms. Ahmad, a senior prosecutor with a well-known cyber background and long working relationships with other prosecutors and FBI agents on the Mueller team and throughout DOJ, never discussed confidential information concerning Mr. Broidy with her colleagues. Ms. Ahmad throughout her DOJ career worked extensively on cybersecurity issues and, according to her own resume, was known throughout DOJ for this expertise. It would be surprising if someone in her senior position and involved in investigations that touched upon Mr. Broidy, had no involvement relating to the high-profile hack of Mr. Broidy, the documents of which largely formed the basis for DOJ's investigation.

Mr. Orin Snyder
September 9, 2020
Page 3

**Steptoe**

    Finally, compounding the reasons for concern, we understand that Ms. Ahmad has known Kevin Chalker personally for many years, and have reason to believe that Mr. Chalker and his associates had provided materials hacked from Mr. Broidy to the Department of Justice in early 2018.  This, too, raises questions about the role of Ms. Ahmad in investigating Mr. Broidy, and on this point, as well, we cannot accept unexplained denials or evasive answers.

    We urge you to give these matters the serious investigation and attention they deserve, and, for the avoidance of doubt, reserve all rights.

    We look forward to your responses.

                                              Very truly yours,

                                              Filiberto Agusti

cc:    Jason C. Schwartz, jschwartz@gibsondunn.com
        Paul J. Kremer, pkremer@gibsondunn.com
        Zainab N. Ahmad, zahmad@gibsondunn.com
        Charles Michael, cmichael@Steptoe.com