# EXHIBIT E

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Orin Snyder
Direct: +1 212.351.2400
Fax: +1 212.351.6335
OSnyder@gibsondunn.com

September 2, 2020

VIA ELECTRONIC MAIL

Filberto Agusti, Esq.
Steptoe & Johnson LLP
1330 Connecticut Ave NW
Washington, DC 20036

Re:  *Elliott Broidy, et al., v. Global Risk Advisors LLC, et al.*, Case No. 19-cv-11861-MKV (S.D.N.Y.)

Dear Mr. Agusti:

I write in response to your August 26, 2020 letter addressed to Gibson Dunn's General Counsel Jason Schwartz regarding Zainab Ahmad's and Gibson Dunn's representation of Global Risk Advisors LLC and other defendants (collectively, "GRA") in the above-captioned litigation.

Your letter alleges that Ms. Ahmad's and Gibson Dunn's representation of GRA in this litigation presents a conflict of interest because Ms. Ahmad "participated in at least one investigation" during her tenure in the U.S. Office of Special Counsel in which she "acquired confidential government information that could be used to the material disadvantage" of Mr. Broidy in the litigation. Ltr. at 1 (citing N.Y. Rule Prof. Conduct 1.11(c)). Nothing in your letter supports this allegation, and it is false.

Notably, your letter does not identify *any* specific "confidential government information" regarding Mr. Broidy that you believe Ms. Ahmad may have acquired during her government service, nor how any such information could be used to Mr. Broidy's "material disadvantage" in this litigation. That is unsurprising—the Special Counsel's investigation had nothing to do with the circumstances of the alleged hacking of Mr. Broidy's information, much less Mr. Broidy's claims that GRA was responsible for the alleged hacking. Indeed, as you acknowledge in your letter and as Mr. Broidy alleges in his complaint, Mr. Broidy "was never a target of the Mueller investigation," "was never interviewed by Mueller's team," and "does not appear once in the Mueller Report." Ltr. at 1; Compl. ¶ 321.

The *only* specific information cited in your August 26 letter in support of this allegation is the "*public* information" that Ms. Ahmad "participated in [an] interview of Rick Gates," which (according to your letter) "focused extensively on Mr. Broidy, *and in particular on issues that became public*" when his "private emails were hacked and leaked to the media."

**GIBSON DUNN**

Filberto Agusti, Esq.
September 2, 2020
Page 2

Ltr. at 1 (emphases added).  Although your letter does not identify the date of this interview or the "particular [] issues" on which the interview allegedly "focused extensively," I can only assume that you are referring to an interview of Mr. Gates on March 18, 2018, during which Mr. Gates—according to a memorandum of the interview that was released by the Department of Justice in response to Freedom of Information Act ("FOIA") requests—discussed efforts by an individual whose name is redacted in the memorandum to influence the Department of Justice's investigation into the 1MDB scandal.*  (As you know, Mr. Broidy's alleged efforts to influence the 1MDB investigation—for which the *Washington Post* reported yesterday Mr. Broidy is likely to be indicted—were reported on in early 2018 by certain news organizations that were provided documents that Mr. Broidy alleges were obtained through hacking.)  Regardless of whether Mr. Broidy is the individual whose name is redacted, the memorandum from that interview reflects that Ms. Ahmad *was not present* during the portion of the interview in which Mr. Gates discussed the individual's activities to influence the 1MDB investigation.  And in any event, information about emails that were provided to and published by "media organizations and the world at large" (Compl. ¶ 224) and therefore "became public" (Ltr. at 1)—as well as any information in memoranda from interviews with Mr. Gates that have been released pursuant to FOIA and made public—do not and cannot constitute "confidential government information" under Rule 1.11(c).  *See* N.Y. Rule Prof. Conduct 1.11(c) (information that is "otherwise available to the public" cannot constitute "confidential government information"); *see also id.* cmt. 4 (information must be "obtainable *only* through the lawyer's government service" to constitute "confidential government information" (emphasis added)).

Equally meritless is the rank speculation in your letter that Ms. Ahmad may have acquired some unidentified "additional confidential information about Mr. Broidy" of which "Mr. Broidy himself would not be aware," by virtue of the "broad powers of DOJ" and/or Ms. Ahmad's "role in the Mueller investigation and access to grand jury information."  Ltr. at 2. And given the absence of any support for the purported conflict you have imagined, the thinly-veiled suggestions in your letter that GRA "sought [Ms. Ahmad] out for the case" *because of* her purported knowledge of confidential government information about Mr. Broidy are factually incorrect (GRA retained me given my prior relationship with the company), gratuitous, and highly unprofessional.  *Id.* at 1-2.

To be clear, Ms. Ahmad did not acquire any "confidential government information" during her tenure at the Department of Justice that could be used to Mr. Broidy's "material

---

* The interview memoranda and related records that the Department of Justice has produced in response to FOIA requests reflect that Mr. Gates was interviewed dozens of times by the Special Counsel's office, and that Ms. Ahmad was not in attendance for the vast majority of those interviews.

**GIBSON DUNN**

Filberto Agusti, Esq.
September 2, 2020
Page 3

disadvantage" in this litigation, and nothing in your letter credibly suggests otherwise. Rather, it is clear that the purpose of your August 26 letter—which you sent several months after Ms. Ahmad entered her appearance in the litigation, and well over six months since you learned that Gibson Dunn was representing GRA in this matter—is to distract from the lack of merit to Mr. Broidy's claims against GRA in this litigation, and to improperly exert pressure on GRA by impugning its chosen counsel and her more than a decade of distinguished government service. The timing of your letter—coming on the eve of public reports that Mr. Broidy is once again facing possible criminal charges—also suggests that it was not written in good faith.

If you believe you have additional, specific information regarding the purported conflict you have asserted, we request that you share it with us immediately, and we will consider it in good faith. Any motion to disqualify Ms. Ahmad or Gibson Dunn based on the allegations and speculation in your August 26 letter would be without a good faith basis in fact or law, and we and GRA reserve all rights and remedies under Rule 11 and otherwise.

Sincerely,

*Orin Snyder*
Orin Snyder

cc: Gwendolyn Prothro Renigar
    Jason C. Schwartz