# EXHIBIT N

Case 1:17-cr-00350-LAP Document 165-14 Filed 06/02/23 Page 2 of 9
Case 1:18-cr-00356-VM Document 8-5 Filed 06/11/18 Page 1 of 2

Post to docket
APPROVED
6/11/18



# GUIDELINES REGARDING APPROPRIATE USE OF 302 FORMS IN CRIMINAL TRIALS

Hon. Katherine B. Forrest

## I. INTRODUCTION

In this Court's experience, there is significant confusion regarding the use of purported witness statements reflected in FBI FD-302 Forms ("302s"). Statements contained in 302s can be very useful—and properly so—for impeachment purposes during criminal trials. However, the manner of use in that context is governed by the Rules of Evidence. This Court has found that at trial, counsel are often unclear as to the lines for proper 302 use. Accordingly, this Court sets forth herein guidelines for such use.

A 302 is a third party's (usually an FBI agent's) memorandum regarding a witness's out-of-court statement, typically an interview. (The principles set forth herein are also applicable to other "3500" materials reflective of witness statements.) There are certainly instances in which a witness's statement during an interview differs from the manner in which similar events may be described at trial. It is entirely appropriate for defense counsel to ask a witness if his/her story has changed, and, as part of that, to show the witness a 302 to see whether it refreshes recollection.

However, it is clear that (1) 302s do not per se fall within any exception to the hearsay rule, and (2) statements attributed to a witness that are contained in 302s are not relevant unless the witness adopts them or is otherwise shown to have made them. See, e.g., U.S. v. Almonte, 956 F.2d 27, 29 (2d Cir. 1992) (holding that a

1

"'third party's characterization' of a witness's statement does not constitute a prior statement of that witness unless the witness has subscribed to that characterization" and that "[t]he problem, in essence, is one of relevancy"). In the absence of adoption by the witness, demonstrating that a witness made a statement in a 302 by way of the 302 itself (that is, attempting in some manner to suggest the 302 is "evidence") has numerous evidentiary impediments. Rarely does a 302 come into evidence. Nonetheless, there are appropriate ways to use a 302 to impeach a witness. Accordingly, this memorandum addresses the most common issues related to the proper use of 302s in this Court.

## II. LEGAL PRINCIPLES

There are multiple rules of evidence that bear on the proper use of 302s at trial. The first two deal with relevance and admissibility of evidence. As a threshold matter, evidence is only considered "relevant" if it has "any tendency to make a [consequential] fact more or less probable that it would be without the evidence." See Fed. R. Evid. 401. While relevance is a necessary condition for admissibility, it is not, by itself, sufficient. The Federal Rules of Evidence ("FRE") set forth various bars to the admissibility of evidence that, while relevant, lacks some indicia of reliability or creates some risk of prejudice or confusion. See generally Fed. R. Evid. 402. In addition, a court may in all events exclude relevant evidence when:

> . . . its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

See Fed. R. Evid. 403.

The FRE also generally prohibit the admission of "hearsay" statements, which are out of court statements offered in evidence to prove the truth of the matter asserted. See Fed. R. Evid. 801(c). Although there are numerous exclusions and exceptions to this general bar, only one is worth reciting here: the exclusion for "a declarant-witness's prior statement." Under that exclusion, an out of court statement is <u>not</u> hearsay if: (1) "[t]he declarant testifies and is subject to cross-examination about a prior statement"; and (2) the statement "is inconsistent with the declarant's testimony <u>and was given under penalty of perjury at a [prior proceeding.]</u>" Fed. R. Evid. 801(d)(1)(A) (emphasis added).

Finally, Rule 613(b) provides that "[e]xtrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it." Fed. R. Evid. 613(b). But Rule 613(b) does not itself provide a separate, stand-alone basis for the admissibility of such extrinsic evidence—it only governs the proper use of otherwise admissible evidence. In other words, if the underlying extrinsic evidence is inadmissible (because, for instance, it is hearsay), it cannot come in under Rule 613(b).

### III. DISCUSSION

The purpose of impeachment is to undermine a witness's credibility in general and/or attack the truthfulness of his or her testimony. Impeachment may be directed at, and often specifically seeks to undermine testimony developed on

direct examination (though it could of course go to general truthfulness).  With regards to purported witness statements contained in 302s, it is clear that if the 302 reflects a prior purported statement by a witness that is inconsistent with the witness's trial testimony, the demonstration of such inconsistency has impeachment value. That value alone, however, does not <u>ipso facto</u> provide a basis for its admissibility.

4

A 302 is an FBI agent's notes of a meeting or interview with a witness. Unless demonstrated otherwise, a 302 is not presumed to be a verbatim transcript of the questions asked or the answers given. Furthermore, as the witness is not placed under oath, the purported witness statements are not sworn (and therefore could not constitute an "inconsistent statement" under FRE 801(d)(1)(A)). Issues that may impact reliability include the fact that different agents have different practices regarding how much detail they choose to include in a 302, and whether to include facts learned elsewhere as part of the investigation or editorial content that were not actually stated during the interview. As an example, 302s created early in an investigation may include more facts than what an agent may feel is necessary to include at a later date when many details are better known. In addition, agents with less background in an investigation may also make errors in their note taking—for instance, assuming the identity of a person that the witness refers to by an alias or nickname, or making references unsupported by the facts of the investigation.

It is clear that statements included in 302s are therefore classic hearsay without—in and of themselves—requisite indicia of reliability. Thus, statements reflected in the 302, even if attributed to the witness and even if inconsistent with what was said at trial, are not themselves admissible by way of the 302. The question then arises, how can counsel <u>properly</u> question a witness as to whether he or she made a particular statement at an interview that may <u>impeach</u>[1] something

---

[1] Counsel cannot successfully introduce a 302 statement for a non-impeachment purpose in any circumstance, since that would be a hearsay use.

5

said at trial? Without showing (or waving around or obviously reading from) a document, the following lines of inquiry are appropriate:

- Q: On direct you testified "X". Isn't it true that you previously told FBI agents "Y"?
- Q: Do you recall being interviewed by the FBI on X date? Didn't you tell the FBI agents "Y"?

The 302 may be used to refresh recollection, but counsel should not be permitted to identify a statement as contained in "notes" and confront the witness with it (since the 302 itself is inadmissible).

The most common issue with the use of 302s at trial arises when counsel builds into the question facts suggesting that the statement at issue is contained in a <u>written document</u> (thereby giving it an indicia of reliability), and that such document was <u>written by an FBI agent</u> or any <u>other government representative</u> (also giving it indicia of reliability). Those types of questions are improper for at least the following reasons:

- The fact that the 302 is a written document or that FBI agents took notes during the meeting/interview is irrelevant to any triable issue.
- Reference to the <u>written document</u> inappropriately suggests that the prior statement is a "prior inconsistent statement" (as that term is defined and understood in the Federal Rules of Evidence)—that is, it suggests that the prior statement was pulled from a sworn transcript at a prior proceeding, when it was not.

6

- Reference to the FBI agent's notes has the potential to mislead the jury into belief that a person, cloaked with the credibility of the U.S. Government, wrote the statement down.

References to "notes" from an FBI agent (or other Government representative) may be particularly problematic since the Court will not instruct the jury on the nuances of hearsay, and it is not in anyone's interest to have the Court repeatedly instruct the jury that counsel's "questions" are not evidence. Accordingly, unless a party can proffer why, under the circumstances in a case it would be proper, **this Court will preclude: (1) questions asking if individuals at the meeting took notes; (2) specific references to FBI agents or other government agents taking notes; (3) unless there is a good faith basis to believe the witness has ever been shown the notes or the 302, questions suggesting or indicating that the statements are in a written document.**

Additionally, problems may also arise when a writing containing the statement is held up or in any way displayed to the jury during the questioning. This kind of conduct raises at least the same issues described above, and therefore **this Court will not permit counsel to hold up or otherwise display a 302 to the jury at any point.**

7

## IV. CONCLUSION

The guidelines established herein are important to ensure the appropriate use of a 302. Counsel are directed to abide by these guidelines in all proceedings before this Court.