GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Nancy E. Hart
Direct: +1 212.351.3897
Fax: +1 212.351.6273
NHart@gibsondunn.com

March 24, 2023

VIA ECF

The Honorable Mary Kay Vyskocil
United States District Judge for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   *Broidy v. Global Risk Advisors LLC*, No. 19-cv-11861

Dear Judge Vyskocil:

I write as counsel for Gibson, Dunn & Crutcher LLP ("Gibson Dunn") to respectfully request that the Court strike from the record the three new declarations submitted by Plaintiffs for the first time on reply in support of its pending motion for sanctions:  (1) the Declaration of Matthew Grimes dated March 9, 2023 (Dkt. 186-1) ("Grimes Declaration"); (2) the Declaration of Alvin Schmidt IV dated March 19, 2023 (Dkt. 186-3) ("Schmidt Declaration"); (3) the second Declaration of Richard W. Gates, III dated March 20, 2023 (Dkt. 186-2) ("Second Gates Declaration"), as well as the portions of Plaintiffs' reply brief (Dkt. 185) that purport to rely on these new submissions.

It is black-letter law that a moving party cannot present new arguments or evidence for the first time in their reply briefs.  *See, e.g.*, *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief."); *Wolters Kluwer Fin. Servs. Inc. v. Scivantage*, 2007 WL 1098714, at *1 (S.D.N.Y. Apr. 12, 2007) (same for evidence); *Barrows v. Brinker Restaurant Corp.*, 2020 WL 1511077, at *2 (N.D.N.Y. Mar. 30, 2020) (refusing to consider new declarations and exhibits offered for the first time on reply); *Bravia Cap. Partners, Inc. v. Fike*, 296 F.R.D. 136, 144 (S.D.N.Y. 2013) (stating that the submission of new evidence in a reply is improper).  These rules exist for sound reason: to provide the opposing party a level playing field and a full and fair opportunity to respond.  *See Playboy Enters., Inc. v. Dumas*, 960 F. Supp. 710, 720, n.7 (S.D.N.Y. 1997) ("It would be manifestly unfair to allow [defendant] to make a[n] . . . argument after [plaintiff's] opportunity to respond has passed, thereby silencing [plaintiff] on the issue and depriving the Court of [plaintiff's] views on the question raised."), *aff'd*, 159 F.3d 1347 (2d Cir. 1998).  In any motion, this rule should be honored and enforced to achieve fairness and due process.  In a motion like this one where the movant is seeking the drastic remedy of sanctions, this rule should apply with full force.

"Typically, in such situations, the Court strikes the evidence presented for the first time in reply, and does not consider it for purposes of ruling on the motion."  *Wolters Kluwer Fin. Servs. Inc.*, 2007 WL 1098714, at *1.  The Court also has the inherent authority to strike the portions of a reply brief that rely on such new arguments or evidence.  *See Madorskaya v.*

Hon. Mary Kay Vyskocil
March 24, 2023
Page 2

*Frontline Asset Strategies, LLC*, 2021 WL 3884177, at *18 (E.D.N.Y. Aug. 31, 2021) ("Ultimately, it is within the Court's discretion whether to strike portions of reply papers."); *Aurora Loan Servs., Inc. v. Posner, Posner & Assocs.*, P.C., 513 F. Supp. 2d 18, 19 (S.D.N.Y. 2007) (explaining that a Court's discretion to strike portions of reply falls squarely within the ambit of the Court's inherent authority).

Here, Plaintiffs' reply papers improperly attempt to bolster their deficient sanctions motion with entirely new evidence and arguments. Moreover, Plaintiffs could have submitted these declarations in their opening papers (yet apparently chose to hold them back to weaponize on reply), as ***all*** of this new evidentiary information was available to them "at the time that [they] filed [their] motion." *Monaghan v. Airlines*, 2018 WL 3682482, at *4 (E.D.N.Y. Aug. 2, 2018) (quoting *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010). "[I]t is plainly improper to submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden." *Burroughs v. Cnty. of Nassau*, 2014 WL 2587580, at *13 (E.D.N.Y. June 9, 2014). Yet that is exactly what Plaintiffs have done here.

First, the Schmidt Declaration—clocking in at a whopping ***130 pages*** with exhibits—attempts to manufacture doubt regarding that accuracy of the two "302" FBI forms that memorialize two March 18, 2018 interviews with Richard Gates. Of course, these 302 forms were ***affirmatively submitted*** by Plaintiffs as part of their opening brief (Dkt. 165-3, 165-8) (Benson Decl. Ex. C), and Plaintiffs purported to attack the accuracy of the forms then. Dkt. 163 at 14 n.9.[1] Mr. Schmidt's Declaration is nothing more than an improper attempt to bolster this argument by making ***new claims*** that the "2470" 302 form indicates investigative activity that occurred later in time (despite the fact that the form itself refers to a March 18, 2018 interview with Mr. Gates). Mr. Schmidt further muses that he finds it "unusual" that the "2456" 302 form contains a bracketed paragraph stating that mid-way through the March 18, 2021 meeting, Ms. Ahmad and another agent joined and conducted another interview which would be the subject of another, separate 302 form and noted the time of their departure before the original interview resumed. Dkt. 186-3 ¶ 48. He also quibbles with the fact that Mr. Gates' recollection of the materials he claims to have been shown (described in his first declaration, four years after the fact) is different from the much more limited set of documents described in detail in

---

[1] Indeed, Plaintiffs have had the 302 forms at issue in their possession for ***years***. The two 302s were originally sent to Plaintiffs' counsel on October 4, 2020 by Gibson Dunn (Dkt. 165-8) (Benson Decl. Ex. H); again to Plaintiffs' new counsel Kasowitz Benson on May 18, 2022 (Dkt. 165-9) (Benson Decl. Ex. I); and filed publicly with the Court on August 4, 2022 (Dkt. 139-2).

GIBSON DUNN

Hon. Mary Kay Vyskocil
March 24, 2023
Page 3

the 2456 302 form (*Id.* ¶¶ 6-7)—which of course, likely says more about Mr. Gates' memory than the contemporaneous document created by a trained FBI agent.

While Mr. Schmidt does not and cannot say these contemporaneous records are inaccurate, the insinuation of Plaintiffs' eleventh-hour "expert" that there is something "unusual" about them is wholly improper here, as **none of this is based on new information**.[2]  Plaintiffs have had these 302 forms for years; they attempted to challenge their accuracy in the opening brief; and none of this purported "evidence" was presented to rebut a specific point raised for the first time in Gibson Dunn's opposition brief.  As such, Mr. Schmidt's Declaration, and all references to it in Plaintiffs' reply brief, should be stricken from the record.

The bareboned Grimes Declaration is similarly improper.  There is no reason why Plaintiffs could not have submitted this "new" information with their original papers, given it involves alleged testimony given in 2018.  Of course, the Grimes Declaration is also irrelevant: He merely claims that during his testimony before a Grand Jury, Ms. Ahmad questioned him and asked "several questions relating to Elliott Broidy." Dkt. 186-1 ¶ 2.  Mr. Grimes says nothing about the alleged content of those questions—much less that they have ***anything to do with this litigation***.

Finally, the Gates Declaration, which similarly introduces purported recollections from years prior that could have been included in his original declaration, should also be stricken.  Mr. Gates takes this opportunity to try to introduce yet more "memories" of his interviews with the Office of Special Counsel, now claiming that Ms. Ahmad "repeatedly" brought up Mr. Broidy. Dkt. 196-2 ¶ 6.  He concedes that he was only asked a handful of questions regarding the alleged "hack[ ]" of Mr. Broidy (to which he responded he knew nothing), but now speculates that her questions were on topics based on materials "derived" from the alleged hack.  *Id.* ¶ 5.  (He does not claim that those materials contained confidential information, much less confidential information relevant to this litigation—nor could he, as the contents of those materials were publicly reported in the press and detailed in the government's indictment of and subsequent guilty plea agreement with Mr. Broidy).  The new Gates Declaration further submits new evidence, including his 5K1.1 letter.  Dkt. 186-2, Ex. A.  Tellingly, this letter does ***not*** state that Gates provided "helpful evidence and information" relating to Mr. Broidy

---

[2] And of course, it is also totally irrelevant.  Ms. Ahmad stated that the 302 form echoed her recollection that she was not present during the portion of the March 18, 2018 interview where Mr. Gates was allegedly asked three anodyne questions regarding the hack.  But even if she was (and she was not), it would not change the analysis one whit.  Mr. Gates never identifies in his two declarations any confidential information that was shared or discussed during that interview (or any other interview), much less any that could be used to the material detriment of Plaintiffs in this litigation.

GIBSON DUNN

Hon. Mary Kay Vyskocil
March 24, 2023
Page 4

in the course of cooperation with *the OSC*, which is the office Ms. Ahmad worked at. Instead, this 5K1.1 indicates Mr. Gates met with **Public Integrity Section prosecutors**, a separate branch of DOJ that was conducting a *separate* investigation into Mr. Broidy which led to his indictment and plea. Again, there is no reason why Mr. Gates could not have provided this material in his original declaration. Mr. Gates' attempt to bolster his prior declaration with new evidence is as improper as it is unavailing.

As demonstrated in Gibson Dunn's Opposition, Plaintiffs' motion for sanctions is utterly meritless. This backdoor attempt to muddy the waters with new irrelevant evidence should be rejected out of hand. "[P]laintiffs will not be heard to advance for the first time in reply papers new arguments that could and should have been made in their opening papers. ***To countenance such action would promote litigation by ambush*** and, in any case, deprive defendant of a fair opportunity to respond." *White v. First Am. Registry,* 592 F. Supp. 2d 681, 683 (S.D.N.Y. 2009) (emphasis added). For these reasons, the Court should strike the Schmidt Declaration, the Grimes Declaration, and the Gates Declaration, as well as the portions of the reply brief that rely on those improperly submitted materials, *see* Ex. A.[3]

Respectfully submitted,

*/s/ Nancy Hart*
Nancy Hart

cc: All counsel of record (via ECF)

---

[3] Exhibit A is a copy of Plaintiffs' reply brief with the portions that should be stricken highlighted for the Court's convenience.