

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Office: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

March 20, 2024

**VIA ECF**
The Honorable Mary Kay Vyskocil
United States District Court
Southern District of New York
500 Pearl Street, Room 2230
New York, NY 10007

Re:   *Broidy, et al. v. Global Risk Advisors, et al.*, 19 Civ. 11861 (MKV) (JW)

Dear Judge Vyskocil:

We represent Defendants Global Risk Advisors ("GRA"), Kevin Chalker, Denis Mandich and Antonio Garcia and write pursuant to Section 3.D of the Court's Individual Rules of Practice in Civil Cases to request that the Court compel Plaintiffs Elliot Broidy and Broidy Capital Management to immediately, and by no later than the day following the Court's Order, disclose the identities of their anonymous witnesses, whom Plaintiffs disclosed in their January 12, 2024 Initial Disclosures (the "Initial Disclosures") as persons likely to have discoverable information on whom Plaintiffs may rely to support their claims. As set forth in Defendants' Position, Defendants have been attempting to obtain the identities of the anonymous witnesses from, and to negotiate a reasonable protective order with, Plaintiffs for two months, to no avail. As set forth in Plaintiffs' Position, Plaintiffs oppose this request and seek to be heard *in camera* concerning why appropriate safeguards are necessary to limit disclosure, given that Plaintiffs assert that the five confidential witnesses have reasonable fears of retaliation. The parties have met-and-conferred, but that process was unsuccessful. The parties' respective positions are included below.

Defendants' Position

Plaintiffs' Second Amended Complaint (the "SAC") survived a motion to dismiss by relying on a purported and unnamed "GRA Whistleblower" and other anonymous sources, who *allegedly* connected Defendants to the alleged hack-and-smear operation. *See* ECF 116 ¶¶ 116-19; 200 at 13. In their Initial Disclosures, Plaintiffs stated that they may rely on "Confidential Witnesses Referenced in the SAC" to support their claims and that such purported witnesses would be able to speak to "Defendants' hacking of Plaintiffs and Defendants' subsequent cover-up and destruction of evidence." Initial Disclosure at 8. Contrary to the explicit requirements of Rule 26(a)(1)(A)(i) of the Federal Rules of Civil Procedure, Plaintiffs did not disclose the identities of, and contact information for, those witnesses.

Honorable Mary Kay Vyskocil
March 20, 2024
Page | 2

Defendants promptly raised this issue in the January 12, 2024 Joint Amended Letter in advance of the Initial Pretrial Conference.  ECF 210 at 6.  In that letter, Plaintiffs argued that they "need to confer further with the confidential witnesses . . . on appropriate protections to safeguard the disclosure of their identities given their view of the threat to their lives and livelihood *public* disclosure poses."  *Id.* at 2 (emphasis added).  At the January 19, 2024 Initial Conference, the Court unequivocally stated that "[Plaintiffs are] going to need to disclose the identity [of their anonymous declarant] because there's a right to depose that person[,]" and directed that the parties "talk to each other and work out a consensual protective order."  Tr. at 11:6-10.

In the two months since the Initial Conference, Defendants have repeatedly pressed Plaintiffs' counsel to promptly identify the anonymous witnesses, but Plaintiffs have continued to stall.  Following the Initial Conference, on January 19, Defendants asked Plaintiffs to disclose the identities of the anonymous witnesses and offered both to keep that information confidential from third parties, and to meet and confer immediately in the event Plaintiffs believed a protective order was necessary.  On January 26, Plaintiffs sent Defendants a draft protective order – which was still tentative and under consideration by Plaintiffs – and which designated the identities of the anonymous witnesses Attorneys' Eyes Only ("AEO").  During a telephonic meet-and-confer the same day, defense counsel explained that in order to adequately defend this action, they cannot consent to an AEO designation and must be able to share the identities of the anonymous witnesses with Defendants.  On February 5, Defendants provided line edits and detailed comments on Plaintiffs' draft protective order, and followed up with Plaintiffs on February 12 and February 23, with a telephonic conference on February 24.

On February 28, having heard nothing from Plaintiffs, Defendants sent Plaintiffs' counsel a draft of this letter, seeking Plaintiffs' section in order to submit the discovery dispute to the Court.  Plaintiffs ignored that request, and instead, on March 5, sent a new proposed protective order which not only prevented disclosure to Defendants, but also prevented disclosure from certain Hughes Hubbard attorneys who work on and have appeared in court on this matter.  Defendants informed Plaintiffs that the new proposed draft was not designed to reach an agreement.  Since that time, and despite Defendants' repeated efforts to obtain either disclosure of the witness identities or Plaintiffs' section of this letter, Plaintiffs provided nothing other than excuses to further delay.  Finally, on March 19, Plaintiffs provided their section of this letter for submission to the Court.  Nothing in Plaintiffs' position warrants handicapping Defendants' ability to defend themselves in this case.

Plaintiffs' prolonged failure to disclose the identities of their anonymous witnesses is prejudicial to Defendants.  Defendants must be able to take discovery, including document discovery in advance of depositions, related to the only witnesses Plaintiffs claim have knowledge of the purported hack-and-smear operation.

It is also unreasonable and prejudicial for the identities of those witnesses to be designated AEO, and only for certain defense attorneys at that.  These witnesses are purportedly former GRA employees who allegedly heard or were "in a position to obtain knowledge" that

Honorable Mary Kay Vyskocil
March 20, 2024
Page | 3

Defendants were involved in the hack-and-smear operation and the alleged destruction of evidence related to that operation.  SAC ¶¶ 116-119, Ex. A.  Defense counsel must be able to confer with Defendants regarding these former GRA personnel, including their participation in alleged conversations and their alleged "position[s] to obtain knowledge."  Any contention by Plaintiffs that their anonymous witnesses, all purportedly former CIA or U.S. military personnel, must be safeguarded from GRA or Mr. Chalker is entirely without factual basis and disrespectful of Mr. Chalker's honorable government service. [1]   Plaintiffs appear intent on using this litigation to smear a perceived enemy rather than proving the legal claims asserted against them in the complaint.  Judicial intervention is necessary to end this campaign to impair Defendants' reputations and instead advance this litigation.  Accordingly, Defendants respectfully request that the Court issue an order directing Plaintiffs to immediately identify the anonymous witnesses to Defendants, who agree to treat that information as confidential from third parties. To the extent Plaintiffs' request to be heard *in camera* also means *ex parte*, Defendants object to any procedure which does not afford Defendants an adequate opportunity to be heard based on all information provided to the Court.

<u>Plaintiffs' Position</u>

Plaintiffs have provided defendants with a draft protective order that specifically addresses the concerns of five confidential witnesses (the "Confidential Witnesses") by limiting disclosure of their identities to certain persons from outside counsel of record.  Plaintiffs respectfully request an opportunity to be heard *in camera* why a robust protective order is necessary and appropriate under the circumstances.  Should this Court determine after such a hearing that disclosure to the parties themselves is necessary, plaintiffs propose that their identities not be disclosed to defendants until, at the earliest, three days prior to agreed-upon scheduled depositions—to occur after the completion of initial document discovery—and that suitable safeguards be imposed, including prohibitions against harassment or other forms of retaliation and unsanctioned contact without counsel present.  *See Western Pennsylvania Electrical Employees Pension Fund v. Alter*, No. 09-4730 (E.D. Pa.), Dkt. Nos. 115, 157.

The Confidential Witnesses are personally acquainted with defendant Kevin Chalker— the founder and principal of defendant Global Risk Advisors LLC ("GRA")—based on interactions they had with Mr. Chalker while he worked for the CIA and/or while working directly with Mr. Chalker after he left government service.  The Confidential Witnesses—who have served in the CIA and/or U.S. military—fear for their own and/or their families' physical safety, livelihoods, and/or reputations if their identities were to be disclosed to Defendants. Therefore, the Confidential Witnesses have asked, after consultation with plaintiffs, for a

---

[1] Plaintiffs fail to note that the primary authority on which they rely below, provided the stringent protections they seek for only *one* of eleven confidential witnesses.  *See Plumbers & Pipefitters Loc. Union No. 630 Pension-Annuity Tr. Fund v. Arbitron, Inc.*, 08 Civ. 4063 (PAE) (ECF Nos. 129-31).  And in *Plumbers*, the allegations from the confidential witnesses were categorically different from those here: the *Plumbers* witnesses provided business allegations that presumably could be verified with business records.  (*See generally id.* at ECF 52.)  By contrast, Plaintiffs' unsupported claims here live and die on the allegations by the Exhibit A declarant and other anonymous witnesses.

Honorable Mary Kay Vyskocil
March 20, 2024
Page | 4

protective order to limit disclosure of their identities.

 The Confidential Witnesses are willing to submit extensive and more detailed declarations for *in camera* review explaining the bases for these fears, which include, among other things, knowledge of retaliatory actions that GRA has taken against others. *See Plumbers & Pipefitters Loc. Union No. 630 Pension-Annuity Tr. Fund v. Arbitron, Inc.*, 278 F.R.D. 335, 344 (S.D.N.Y. 2011) (noting that "[i]n an appropriate case, a court may decline to order disclosure of a CI's name, or fashion an appropriate protective order, in order to guard against" risk of retaliation and allowing submission of "ex parte affidavit setting forth particularized facts . . . that would substantiate the concern that disclosure of a particular CI's name would result in retribution. Upon review of such an affidavit, the Court will promptly determine whether these facts justify (a) non-disclosure, (b) disclosure but with limitations on further dissemination to be set forth in an appropriate protective order, or (c) a follow-up telephonic inquiry of the witness by the Court, to be arranged and attended by Plaintiff's counsel."); *Plumbers & Pipefitters Loc. Union No. 630 Pension-Annuity Tr. Fund v. Arbitron, Inc.*, 1:08-c-04063-PAE, Dkt Nos. 131 (S.D.N.Y. filed Dec. 16, 2011) (protective order limiting disclosure of confidential witnesses' identity on an attorneys' eyes only basis).

 Plaintiffs are also prepared to discuss *in camera*, among other things, why the Confidential Witnesses' identities should not be disclosed at this particular time.

 Accordingly, plaintiffs respectfully request the opportunity to be heard *in camera* on the need for robust safeguards to protect the Confidential Witnesses under these unique circumstances.

Respectfully submitted,

/s/ Paul J. Burgo

Daniel R. Benson
Paul J. Burgo
Kasowitz Benson Torres LLP
*Counsel for Plaintiffs*

/s/ Marc A. Weinstein

Marc A. Weinstein
Kevin T. Carroll
Amina Hassan
Kiran Rosenkilde
Hughes Hubbard & Reed LLP
*Counsel for Defendants*